Marc P. Miles (SBN: 197741)
  mmiles@shb.com
Frank C. Rothrock (SBN: 54453)
  frothrock@shb.com
Naoki S. Kaneko (SBN: 252285)
  nkaneko@shb.com
SHOOK, HARDY & BACON L.L.P.
5 Park Plaza, Ste. 1600
Irvine, CA 92614
Telephone: 949-475-1500
Fax: 949-475-0016

Attorneys for Plaintiff
Monster Energy Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | Case No. 5:18-cv-1882 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **VIOLATION OF LANHAM ACT** |
| VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, a Florida corporation; and JOHN H. OWOC a.k.a. JACK OWOC, an individual, | 2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW** 3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW** 4. **TRADE LIBEL** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

483661 v10

Plaintiff Monster Energy Company ("Monster") brings this action against Defendants Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX"), and John H. Owoc a.k.a. Jack Owoc ("Owoc") (collectively "Defendants"), and alleges as follows:

## GENERAL ALLEGATIONS

1.     Defendants VPX and Owoc sell BANG by misleading and deceiving the public about the product's ingredients and the benefits of consumption. Simply put, Defendants' advertising and marketing scheme tricks consumers into believing they are getting something they are not. BANG is marketed as a modern-day snake oil. In addition to serving as VPX's founder, CEO, and owner, Owoc is BANG's leading pitchman.

2.     According to Defendants, BANG is nothing short of a miracle drink that delivers benefits and cures that have evaded scientists for decades. For example, Defendants claim that:

- BANG contains significant amounts of "Super Creatine" – a purportedly "new" compound "invented" by VPX—and branched chain amino acids ("BCAAs"). This is false. Super Creatine is nothing more than water-soluble creatine—a popular supplement.

- Super Creatine is 20 times more effective at reaching the brain than other forms of creatine. This is false.

- Consuming BANG can "reverse mental retardation." It cannot.

- Consuming BANG can also help cure Alzheimer's Disease, Parkinson's Disease, Huntington's Disease, and other forms of dementia. It cannot.

- BANG is the "healthiest energy drink" on the market. It is not.

3.     Even if BANG could deliver Defendants' promised benefits, which again it does not, the ingredients at the heart of Defendants' claims—Super Creatine and

BCAAs—are sprinkled into BANG in such low amounts that none of the purported benefits could ever be delivered through safe consumption of BANG.

4.     To further deceive consumers and give the false impression of medical and scientific support for its snake oil products, VPX holds itself out as a pharmaceutical company.  First, the company's formal name is Vital *Pharmaceuticals*, Inc.  (Emphasis added.)  Second, Owoc admittedly designed the company logo to resemble the "Rx" symbol associated with pharmaceutical drugs:



He stated, "This is precisely why the acronym VP(X) actually stands for Vital Pharmaceuticals with the X appearing lower than VP similar to how it appears in RX." (https://vpxsports.com/about-us/, last visited on August 31, 2018).

5.     In what looks like projection, Owoc claims the company was founded based on his "disgust for unscrupulous supplement manufacturers who were intentionally mislabeling their supplements and ripping the public off . . . This is why VPX/Bang . . . does things differently!"  As part of the marketing, he goes on to affirmatively say that his company does not "engage in unethical and deceptive advertising practices," (https://vpxsports.com/about-us/), which is an odd thing to say unsolicited unless he has a guilty conscience.

6.     While Owoc also touts himself as VPX's "Chief Scientific Officer," his science background is not as robust as one would expect.  His qualifications seem to be based exclusively on his previous stint as a high school science teacher.

7.     The misinformation does not stop there. Although VPX claims to "have more university proven double-blind placebo-controlled sports and performance nutrition studies on [its] finished products than all the supplement companies in [its]

industry combined," not a single published peer-reviewed study is identified on the VPX website to support Defendants' claims about BANG. (https://vpxsports.com/about-us/.)

8. VPX has a long history of unlawful practices, which have resulted in investigations and actions by the National Advertising Division (NAD) and the U.S. Food and Drug Administration (FDA).

9. For example, the NAD has repeatedly taken issue with VPX's use of ingredient studies, which are misconstrued to make performance claims about VPX's products. Despite multiple actions targeting VPX's violations, the company continues to defy the NAD's orders:

- In 2008, the NAD found there was no evidence to support VPX's advertising claims that its "Redline Princess" dietary supplements could "enhance mood, energy, and fat loss." NAD demanded VPX correct its labeling. (Vital Pharmaceuticals, Inc. (Redline Princess), Report #4868, NAD/CARU Case Reports (July 2008).) Upon information and belief, VPX continues to make unsubstantiated claims about Redline Princess and its purported effects on mental clarity, mood, energy, fat loss, and appetite suppression.

- In 2010, the NAD found that VPX was making unsubstantiated performance claims for its "Meltdown Fat Assault" dietary supplements. NAD demanded VPX correct its print, labeling, and Internet advertising. (Vital Pharmaceuticals, Inc. (Meltdown Fat Assault RTD beverage and Fat Incinerator Capsules/NARB Panel #171), Report #5227, NAD/CARU Case Reports (September 2010).) Upon information and belief, VPX continues to make similar unsubstantiated claims on product packaging and on the Internet about Meltdown Fat Assault and its purported ability to burn fat.

- In 2012, the NAD found that VPX was making unsubstantiated claims for its "Medivin" multivitamins and implying that Medivin was "more

bioavailable" than a competing product.  NAD demanded VPX correct its labeling and advertising.  (Vital Pharmaceuticals, Inc. (Medivin 100% Natural Liquid Vitamin & Mineral Delivery System), Report #5475, NAD/CARU Case Reports (June 2012).)  Upon information and belief, VPX continues to make similar unsubstantiated claims on product packaging and on the Internet about the purported bioavailability of Medivin relative to other products in general.

10.     And in 2015, the FDA sent VPX a warning letter for selling dietary supplements that were considered "adulterated" because they contained a potentially unsafe ingredient, DMBA, which had not been approved for use as a dietary ingredient. (https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm444377.htm, last visited on August 31, 2018.)

11.     Here, VPX is yet again engaging in a deliberate and deceptive advertising campaign, which involves making repeated false and/or misleading statements to boost the position, appeal and sales of its BANG energy drinks.

12.     Defendants' false and deceptive advertising campaign is being carried out to the detriment of the consuming public and the energy drink industry, including Monster.

13.     The competitive harm of Defendants' illegal behavior is substantial. Defendants unfairly and unlawfully boost BANG's goodwill and affect consumer preferences in the energy drink market where both VPX and Monster compete. Unless curtailed, Defendants' unlawful conduct will cause irreparable injury to Monster by reducing the value of Monster's products.  Among other things, Monster seeks equitable relief including injunctive relief and corrective advertising.  Monster also seeks VPX's ill-gotten profits and damages caused by Defendants' conduct.

COMPLAINT
Case No. 5:18-cv-1882

**THE PARTIES**

14.     Monster is a Delaware corporation with its principal place of business at 1 Monster Way, Corona, California 92879.

15.     Upon information and belief, Defendant VPX is a Florida corporation with its principal place of business at 1600 North Park Drive, Weston, FL 33326.

16.     Upon information and belief, Defendant John H. Owoc a.k.a. Jack Owoc is the founder, CEO, Chief Scientific Officer, and owner of Vital Pharmaceuticals, Inc., and he is a citizen of Florida.

**JURISDICTION AND VENUE**

17.     This action for false advertising is brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

18.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. §§ 1338 and 1367.  The Court also has original jurisdiction under 28 U.S.C. § 1332(a) because VPX is not a citizen of the same states as Monster, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

19.     This Court has specific personal jurisdiction over Defendants because they have purposefully availed themselves of California's laws through their activities.  *CollegeSource, Inc. v. Academy One, Inc.*, 653 F.3d 1066 (9th Cir. 2011).  Upon information and belief, Defendants and their agents knew or should have known that their unlawful conduct, as set forth in this Complaint, would harm Monster, a competitor located in Corona, California.  According to the VPX website, the company has a vast network in California of fifteen direct store distributors.

COMPLAINT
Case No. 5:18-cv-1882

(https://vpxsports.com/about-us/.)   By committing acts of false advertising and unfair competition and targeting consumers in California and in this Judicial District, including but not limited to, making false statements in connection with the advertising and marketing of BANG to California customers, Defendants' acts form a substantial part of the misrepresentations giving rise to Monster's claims.

20.     Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events or omissions giving rise to this action occurred and are occurring in this Judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

21.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing energy drinks.  Monster's energy drinks have achieved substantial commercial success, with estimated retail sales in excess of $7 billion per year worldwide.  Monster has established itself as the best-selling energy drink brand in the United States by unit volume and dollar value.

22.     In 2002, long before VPX's acts described herein, Monster launched its Monster Energy® brand of energy drinks.  Monster's successful line of energy drinks has grown to include other well-known products including but not limited to original "green" Monster Energy and Lo-Carb Monster Energy; Monster Energy Absolutely Zero; Monster Energy Assault; Monster Energy Zero Ultra and line extensions; Juice Monster and line extensions; Monster Hydro and line extensions; Monster Rehab and line extensions; Java Monster and line extensions; and Muscle Monster and line extensions, Café Monster and line extensions; Expresso Monster and line extensions, among others.

23.     Since 2002, Monster has spent over $5 billion in advertising, promoting, and marketing its brand and products.  In 2017 alone, Monster spent $537 million on such endeavors.

COMPLAINT
Case No. 5:18-cv-1882

24. VPX is a company engaged in the manufacture, distribution, advertising, and sale of, among other things, energy drinks and dietary supplements. VPX's website identifies BANG energy drinks as one of the company's "best sellers."

25. BANG energy drinks are sold at retail stores such as 7-Eleven, gas stations including Chevron, and other specialty stores domestically (including throughout California) and internationally. The products are further sold online via VPX's website, www.vpxsports.com, and are also available from other online retailers, including but not limited to, www.bodybuilding.com; www.GNC.com; and www.vitaminshoppe.com.

26. Unable to keep pace with Monster in the marketplace and compete on a level playing field, Defendants have waged a nationwide advertising and marketing campaign that falsely promotes the health benefits and quality of BANG. As demonstrated herein, there are no limits to what Defendants will say to unlawfully increase sales and promote BANG.

27. At all relevant times, flavors of BANG include or have included: Cotton Candy, Lemon Drop, Root Beer, Blue Razz, Sour Heads, Peach Mango, Star Blast, Power Punch, Champagne, Black Cherry Vanilla, Pina Colada, Purple Guava Pear, Citrus Twist, Purple Haze, Cherry Blade Lemonade, Lemon Drop Sweet Tea, Sweet Ice Tea, Rainbow Unicorn, and Georgia Peach Sweet Tea.

28. VPX also sells caffeine-free versions of BANG, which are offered in three flavors: Sour Heads, Cotton Candy, Black Cherry Vanilla, Purple Guava Pear, and Cherry Blade Lemonade.

29. At all relevant times, Defendants have made, and continue to make, misrepresentations and/or omissions regarding BANG on both product labels and in other forms of advertising. Examples of BANG labels include:

"By the makers of the legendary REDLINE® ENERGY PRODUCTS."

"Make no Mistake -- BANG® is not your stereotypical high sugar, life-sucking soda masquerading as an energy drink!  High sugar drinks spike blood sugar producing metabolic mayhem causing you to crash harder than a test dummy into a brick wall."

"Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids)."



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## BCAA AMINOS

# bang

POTENT BRAIN AND BODY FUEL

BY THE MAKERS OF THE LEGENDARY
REDLINE® ENERGY PRODUCTS

Make no Mistake – BANG® is not your stereotypical high sugar, life-sucking soda masquerading as an energy drink! High sugar drinks spike blood sugar producing metabolic mayhem causing you to crash harder than a test dummy into a brick wall. Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids).

Life is an Xtreme Sport and BANG® is the Xtreme Energy source to Live Life Xtreme!

PATENT 8,445,688





Made in USA from Domestic and Imported Ingredients






| 0g TOTAL CARBS PER CAN | 0 SUGARS PER CAN | 0 CALORIES PER CAN | 0 ARTIFICIAL COLORS |

**CAUTION:** Do not use this product if you are pregnant or nursing. Do not consume this product if you are taking any prescription drug and/or have any medical condition. The user of this product assumes all liability if this product is used in a manner not consistent with label guidelines.

This product contains caffeine and should not be used with any other caffeine containing products. This product is intended for use by healthy individuals only.

†At the time of manufacturing, some vitamins are likely to degrade.


©2017 VITAL PHARMACEUTICALS, INC. ALL RIGHTS RESERVED.
To report a serious adverse event or obtain product information, contact 1600 North Park Drive, Weston, FL 33326 USA • (954) 641-0570
PLEASE RECYCLE
**VPXSPORTS.COM**

---

# ULTRA COQ10

CONTAINS NO FRUIT JUICE

Stable Aqueous Amide-Protected Bioactive Creatine Species –U.S. Patent No. 8,445,466

## Nutrition Facts
Serving Size 1 Can (16 fl oz [473 mL])

**Amount Per Serving**

| Calories 0 | Calories from Fat 0 |

| | % Daily Value* |
|---|---|
| **Total Fat** 0 g | 0% |
| Saturated Fat 0 g | 0% |
| *Trans* Fat 0 g | |
| **Cholesterol** 0 mg | 0% |
| **Sodium** 40 mg | 2% |
| **Potassium** 85 mg | 2% |
| **Total Carbohydrate** 0 g | 0% |
| Dietary Fiber 0 g | 0% |
| Sugars 0 g | |
| **Protein** 0 g | |

| Vitamin C 50%† | • | Niacin 25%† |
| Vitamin B6 25%† | • | Vitamin B12 25%† |
| Magnesium 2%† | | |

*Percent Daily Values are based on a 2,000 calorie diet.
Not a significant source of vitamin A, calcium and iron.

**INGREDIENTS:** Carbonated water, citric acid anhydrous, natural and artificial flavors, caffeine anhydrous, sodium benzoate (preserves freshness), potassium citrate monohydrate, sucralose, L-Leucine, potassium phosphate dibasic, vitamin C (ascorbic acid), calcium chloride, acesulfame potassium, potassium sorbate (preserves freshness), calcium disodium EDTA, magnesium chloride, SUPER CREATINE® (Creatyl-L-Leucine [Creatine bonded to L-Leucine]), L-isoleucine, L-valine, vitamin B3 (niacinamide), CoQ10 (coenzyme Q10), vitamin B6 (pyridoxine hydrochloride), and vitamin B12 (methylcobalamin).

**Warning:** Too much caffeine may cause nervousness, irritability, sleeplessness, and occasionally, rapid heartbeat. Not recommended for use by individuals under 18 years of age. One serving of BANG® provides 300 mg of caffeine which is more than two cups of coffee.

BEST BY DATE AT BOTTOM



---

10

30.     Defendants' labeling, advertising, and marketing also suggests that BANG contains significant amounts of its "Super Creatine."  For example, the words "SUPER CREATINE" are prominently displayed at the top of every can of BANG in capital letters.  The front labels of the cans for both the caffeine and caffeine-free versions also describe BANG as "brain and body fuel," while the back labels similarly describe BANG as "brain and body-rocking fuel."

31.     VPX's website similarly describes BANG as "potent brain & body-rocking fuel."



(https://vpxsports.com/product/bang-12-pack/, last visited on August 31, 2018.) Further, as shown above, VPX falsely suggests that all industry leading energy drinks—which necessarily includes each of Monster's many products—are unsafe and

COMPLAINT
Case No. 5:18-cv-1882

inferior relative to BANG because all other energy drinks are "high sugar, life-sucking soda[s] masquerading as [] energy drink[s]."

32.    But VPX's claims ignore the fact that many energy drinks, including many of Monster's products, do not contain high amounts of sugar.  Indeed, more than one third of Monster's energy drink offerings are either low-sugar or sugar-free.  For example, in addition to the original Monster Energy, the Lo-Carb Monster Energy (with just 3 milligrams of sugar per serving) and the Monster Zero Ultra (with zero milligrams of sugar per serving) are Monster's best-selling products.  Monster also sells several other low- or no-sugar energy drinks including:

| ULTRA SUNRISE | REHAB - TEA+LEMONADE+ENERGY |
|---|---|
| ULTRA BLUE | REHAB - RASPBERRY TEA+ENERGY |
| ULTRA RED | REHAB - PEACH TEA + ENERGY |
| ULTRA VIOLET | REHAB - TEA+ORANGEADE+ENERGY |
| ULTRA BLACK | REHAB - TEA+DRAGON FRUIT+ ENERGY |
| ABSOLUTELY ZERO | |

33.    VPX's claims that other energy drinks, including Monster's products, cause consumers to experience a "crash" is false.  First, there is no credible scientific evidence that energy drinks containing sugar—in many cases different sugars and different combinations of sugars which are specially formulated—cause consumers to experience a crash.  Second, there is no credible scientific evidence that energy drinks that do not contain sugar (of which there are many) cause consumers to experience a crash.  VPX's claims that other low or no sugar energy drinks, including Monster's products, cause consumers to experience a crash (whereas BANG does not) falsely implies that there are other ingredients in BANG that prevent consumers from experiencing a crash.

34.    In the billboard below, VPX again falsely touts BANG as "potent brain and body fuel" capable of providing "Clean Energy," "Laser Focus," and "No Crash."



35.    However, as alleged herein, because Super Creatine and BCAAs are sprinkled into BANG in such small amounts as to make them virtually useless—i.e., below any potential effective dose levels—Defendants' descriptions of BANG are false.

36.    Based on scientific testing of BANG, BANG contains less than 40 milligrams of Super Creatine—which as discussed herein is more than *100 times* lower than the minimum amount of creatine shown to be an effective dose.[1]

37.    In addition to the product labels, VPX's advertising falsely highlights the purported "health" benefits of consuming BANG.  Defendant Owoc has been and is directly involved with and responsible for directing and/or authorizing the advertising and marketing of BANG.  On May 10, 2017, VPX issued a press release written by Owoc, titled, "The Bang Revolution," in which he falsely describes BANG as a "health promoting beverage" that is superior to other "health robbing energy drinks."

---

[1] VPX conceals, and does not disclose, the amount of Super Creatine in its energy drinks.

COMPLAINT
Case No. 5:18-cv-1882

Owoc further highlights the inclusion of, among other things, water-soluble Super Creatine and BCAAs:

> Most energy drinks on the market are health robbing energy drink [sic] which leaves you with a "crash."  BANG® optimizes synergistic ingredients for energy, not just an immediate effect.  BANG® [is] unlike any carbonated beverage on the market because it's sugar-free, calorie-free, and contains *no artificial ingredients*.  Additionally, BANG® contains my patented creatine-amino acid peptide which is the world's only water-stable creatine.  BANG® also contains BCAAs and a water soluble CoQ10 developed by my colleague, Philip Bromley over at VIRUN.
>
> …
>
> Fast forward to 2017 and the growth of BANG® has been phenomenal.  BANG is ideal for gamers, *health enthusiasts*, athletes, extreme sports lovers, or anyone that wants a great tasting carbonated beverage that doesn't contain high sugar and other unproven ingredients.  I call the explosion of this new *health promoting beverage* the "BANG® Revolution."

(https://www.bevnet.com/news/2017/the-bang-revolution (emphasis added), last visited on August 31, 2018.)

38.     The VPX press release falsely claims that BANG contain "no artificial ingredients." Of the ingredients listed on each BANG can, almost every ingredient is artificial.  For example, each BANG can states that it contains "artificial flavors."  BANG also contains artificial preservatives, artificial sweeteners, and artificial vitamins and supplements (including Owoc's "patented creatine-amino acid peptide" and "water-soluble CoQ10" "developed" by his colleague).  VPX claims that BANG is a "health promoting beverage" for "health enthusiasts," but instead it contains

almost all artificial ingredients. (https://www.bevnet.com/news/2017/the-bang-revolution.)  This is misleading and creates a false image of the product.

39.    On its website, VPX falsely claims that Owoc's patented Super Creatine, which is nothing more than water-stable creatine,[2] is somehow more effective than creatine monohydrate (commonly known as "creatine")—a popular supplement for those seeking to gain muscle mass and increase strength.  VPX further represents that Super Creatine is "much more bioavailable than regular creatine" and therefore more effective in crossing the blood-brain barrier. (https://vpxsports.com/creatine-super-creatine, last visited on August 31, 2018.)  Based on these misrepresentations, VPX falsely claims BANG is the "perfect mental enhancement drink" and that Super Creatine can "beef up your muscles and your brain."  *Id.*

40.    In an effort to mislead students into buying its energy drinks, VPX claims that BANG can help them "ace" their exams.  In a May 2, 2017 post on its website, VPX claims that BANG "provides *healthy and potent fuel* to keep your mind sharp during long hours of studying . . . Boost your brain power with a clean dose of energy. Bang Energy is the best energy drink for focus because it contains ingredients such as, *Super Creatine*, that not only energize *but have been proven to improve brain function*." (https://vpxsports.com/ace-exams-bang/ (emphasis added), last visited on August 31, 2018.)  The representation here—that scientific studies have confirmed that the Super Creatine in BANG improves brain function—is false.

41.    On June 28, 2017, in a post on the "VPX Bang Energy" YouTube Channel, titled "How Does Creatine Work? – Supplement Showdown," Owoc explains why BANG energy drinks are purportedly "potent brain and body fuel":

---

[2] A video on Owoc's Instagram account demonstrates the "solubility" of Super Creatine relative to creatine monohydrate. (https://www.instagram.com/p/BiiHkQfFW_a/?utm_source=ig_twitter_share, last visited on June 5, 2018.)

The future of creatine . . . is going to be more about the brain than the body.  As you age, you have creatine transport deficiency syndrome where creatine does not cross the blood-brain barrier as well as it does when you are younger.  Because of this, as you age, you become mentally retarded . . . every day that goes by, you are becoming more and more mentally retarded . . . now we have great news though, we can possibly reverse that with these new creatine peptides that I've patented. They're miraculous because peptides can cross the blood-brain barrier better than creatine alone.  In fact, creatine alone is very poor at crossing the blood-brain barrier . . . If you have a creatine peptide . . . you can solve creatine transport deficiency syndrome, you can solve mental retardation as we age . . . Bang Energy drinks, yes, it says Super Creatine across the top.  Super Creatine does refer to the patent [sic] creatine amino acid peptide and it is in Super Creatine.  That's why we call Bang, 'Potent Brain and Body Fuel.'  So it's in the drink, the Bang drink, the Bang beverage, which is coming out in a caffeine-free version very soon.

(https://www.youtube.com/watch?v=_hYcTX9jYr0, last visited on August 31, 2018.)

42.    Owoc goes on to claim that research shows that creatine-peptides like Super Creatine can cross the blood brain barrier "twenty times more efficiently than regular creatine," and also helps with "all forms of dementia, including Alzheimer's, Parkinson's, Huntington's, and other forms of dementia."  As a result, he encourages viewers to consume BANG energy drinks to get Super Creatine.

(https://www.youtube.com/watch?v=_hYcTX9jYr0, last visited on August 31, 2018.)

43.    On May 1, 2018, VPX issued another press release, titled, "Bang® Shocks Beverage World With TRIPLE THREAT 'Tea'SE™ Launch!," to promote the

COMPLAINT
Case No. 5:18-cv-1882

introduction of three new flavors.  Doubling-down on Defendants' prior false statements, VPX states:

>The NEW Bang Energy Teas are non-carbonated and contain 300 mgs of caffeine, BCAA's, COQ10, and Bang's Energy's patented Super Creatine®. Regular creatine is not stable in water. However, Owoc's patented and GRAS-compliant Super Creatine® is chemically bonded to the amino acid Leucine. These are currently the two most potent natural performance-enhancing amino acids known to man.
>
>**"Creatine is the ultimate brain and brawn booster. While many are only aware of creatine's positive effect on muscle and performance, creatine is also super important for brain health. In fact, when creatine doesn't cross the Blood Brain Barrier (BBB) dementia takes place and we become mentally retarded due to CRT or creatine transport deficiency states Jack Owoc, Bang inventor and author of the soon-to-be-released Meltdown Anti-Diet book. It is believed that creatine-amino acid peptides have a far greater capacity to cross the BBB than ordinary creatine."**
>
>The reason is that creatine is not stable in a water-based drink because it converts to a useless substance known as creatinine. Super Creatine® is the only water-stable Super Creatine peptide contained exclusively in Bang® Energy Products.

(https://www.prnewswire.com/news-releases/bang-shocks-beverage-world-with-triple-threat-tease-launch-300639620.html, last visited on August 31, 2018.)

44.     On June 2, 2018, Owoc uploaded a video to his Instagram account (@bangenergy.ceo) with an explanation of how his "PATENTED SUPER CREATINE WORKS!":

1
2
3
4
5
6
7
8
9

Super Creatine is special in many ways . . . it's the world's only stable creatine-amino acid peptide contained in @BangEnergy . . . Super Creatine is the most soluble creatine peptide known to man.  Furthermore, scientifically speaking, increased solubility means increased bio-availability . . . from an efficacy standpoint, combining the world's most studied and most potent performance-enhancing and muscle building amino acids into one peptide that are also able to initiate protein synthesis by way of mTOR activation is arguable the greatest innovation in the history of sports nutrition and beverages.

10
11
12
13
14

(https://www.instagram.com/p/BjiVCkeFv-6/?utm_source=ig_twitter_share&igshid=p9olrabg5b2m, last visited on August 31, 2018.)  That same day, a link to the Instagram post was also uploaded to Owoc's Twitter account (@BangEnergyCEO). (https://twitter.com/BangEnergyCEO, last visited on August 31, 2018.)

15
16
17
18
19
20
21

45.     To support claims regarding Super Creatine and its purported benefits in comparison to creatine monohydrate, VPX cites two studies on its website.[3] (https://vpxsports.com/creatine-super-creatine/ (emphasis added), last visited on August 31, 2018.)  Yet, even VPX's reference to scientific studies is misleading. Both studies involve creatine monohydrate, <u>not</u> "Super Creatine," and neither study supports VPX's claims.  Instead, one even suggests that brain creatine levels are not affected by oral creatine supplementation of up to 20 grams per day.[4]

22
23

46.     Tellingly, the patent for Super Creatine (Patent No. 8,350,077 B2) also says nothing about its bioavailability relative to creatine monohydrate and is silent on

24
25
26
27

[3] Rae et al., *Oral creatine monohydrate supplementation improves brain performance: a double-blind, placebo-controlled, cross-over trial*, Royal College of London B., 2003, Vol. 270(1529), 2147-2150; Solis et al., *Effect of age, diet, and tissue type on PCr response to creatine supplementation*, Journal of Applied Physiology, 2017, Vol. 123, 407-414.

28

[4] Solis, *supra* note 3.

COMPLAINT
Case No. 5:18-cv-1882

any purported ability to effectively cross the blood brain barrier.  Instead, the sole claim in the patent is that Super Creatine does not readily degrade in solution.

47.     But *even if* Defendants' claims regarding the alleged benefits and curing effects of taking Super Creatine were true, which they are not, the amount of Super Creatine in BANG is so miniscule—again, more than ***100 times*** lower than the minimum amount of creatine shown to be an effective dose—such that none of Defendants' claimed benefits could ever be delivered to consumers.

48.     For example, in one article cited in the Super Creatine patent, the authors reviewed over twenty studies analyzing the effect of creatine supplementation: "[s]upplementation protocols ranged from 20 to 25 g **[20,000-25,000 milligrams]** of creatine per day for the entire supplementation period, loading doses of creatine were for 3-7 days, followed by a maintenance dose for the remainder of the supplementation period and lower doses **[5,000 milligrams per day]** of creatine for the entire supplementation period." [5]

49.     And in another study cited in the Super Creatine patent, the authors state:

The quickest method of increasing muscle creatine stores appears to be to consume ~0.3 grams/kg/day of creatine monohydrate for at least 3 days followed by 3-5 g/d **[3,000-5,000 milligrams per day]** thereafter to maintain elevated stores. Ingesting smaller amounts of creatine monohydrate (e.g., 2-3 g/d) **[2,000-3,000 milligrams per day]** will increase muscle creatine stores over a 3-4 week period, however, the performance effects of this method of supplementation are less supported.[6]

---

[5] Rawson et al., *Effects of Creatine Supplementation and Resistance Training on Muscle Strength and Weightlifting Performance*, J. of Strength & Conditioning Research, 2003, Vol. 17(4), 822-831.

[6] Buford et al., *International Society of Sports Nutrition position stand: creatine supplementation and exercise*, J. of the Int'l Society of Sports Nutrition, Aug. 2007, Vol. 4(6).

50.     In sum, the scientific literature relied on by Defendants to obtain a patent for Super Creatine indicates that a person should start by taking **20,000-25,000 milligrams** of creatine per day for three to seven days (loading period) and then **5,000 milligrams** per day thereafter (maintenance period).  Despite all of Defendants' misleading claims of benefits and cures, a can of BANG contains less than 40 *milligrams* (0.040 grams) of Super Creatine, which again is more than ***100 times*** lower than the minimum amount of creatine shown to be an effective dose.

51.     The notion that the amount of Super Creatine in BANG—less than 40 milligrams—is an effective dose is further contradicted by VPX's own website, which identifies several studies involving creatine supplementation, all of which involved dosing in the range of **5,000-20,000 milligrams** per day.  Indeed, in promoting its Bang Master Blaster products (which contain both creatine monohydrate and Super Creatine), VPX notes:

> For optimal gains in strength and size, take ***Bang Master Blaster before*** exercise and ***Stim-Free Bang Master Blaster Post Exercise***. Bang Master Blaster is the only product on the market to contain both creatine monohydrate and Super Creatine (Creatine bound to Leucine). The total dose of creatine in each product is 5 grams [5,000 milligrams], so taking both products would equal a combined dose of 10 grams [10,000 milligrams].

(https://vpxsports.com/super-creatine-pre-post-workout/, last visited on August 31, 2018.)

52.     The National Institute of Health's Office of Dietary Supplements has also analyzed the "evidence of efficacy" of creatine supplementation. (https://ods.od.nih.gov/factsheets/ExerciseAndAthleticPerformance-HealthProfessional/, last visited on August 31, 2018.)  According to the NIH, the typical effective doses of creatine for exercise and athletic performance are **20,000**

**milligrams** per day (loading dose) for up to seven days, and then **3,000 to 5,000 milligrams** per day for up to twelve weeks. (*Id.*)  Yet, BANG contains less than 40 milligrams of Super Creatine.

53.    Not only does Super Creatine not deliver the benefits claimed by VPX, nor is there enough in the BANG energy drink to have any performance effects whatsoever, VPX has violated the federal *Food, Drug and Cosmetics Act* (FDCA) by including an ingredient in its drink which is not an FDA-approved food additive or a substance Generally Recognized as Safe ("GRAS").  Even if BANG was marketed as a dietary supplement, it would be adulterated and violate the Dietary Supplement Health and Education Act of 1994 (DSHEA) because Super Creatine is not a lawful dietary ingredient under DSHEA.

54.    Under sections 201(s) and 409 of the FDCA, any substance that is intentionally added to food is a food additive that is subject to premarket review and approval by FDA, unless the substance is generally recognized, among qualified experts, as having been adequately shown to be safe under the conditions of its intended use.  General recognition of safety through scientific procedures is based upon the application of generally available and accepted scientific data, information, or methods, which ordinarily are published, as well as the application of scientific principles, and may be corroborated by the application of unpublished scientific data, information, or methods.

55.    Upon information and belief, here, outside of one self-serving study funded by VPX, the Super Creatine patented by Owoc has not received a general recognition among qualified experts that it is safe for its intended use.

56.    Defendants also falsely represent that BANG contains significant amounts of "BCAA AMINOS" (branched-chain amino acids), when they do not.

57.    Along with "SUPER CREATINE," the words "BCAA AMINOS" are also prominently displayed at the top of every can of BANG in capital letters.

58.     Based on scientific testing of BANG, however, BANG contains approximately 150 milligrams of BCAAs.[7]

59.     In 2010, the European Food Safety Authority (EFSA), which is similar to a European counterpart to the FDA, conducted scientific research into a number of health claims being made about BCAAs.  EFSA found there was a lack of scientific data to support certain health claims being made about BCAAs.  For example:

- On the basis of the data presented, the Panel concludes that a cause and effect relationship has not been established between the consumption of BCAA and growth or maintenance of muscle mass over and above the well established role of protein on the claimed effect.

- On the basis of the data presented, the Panel concludes that a cause and effect relationship has not been established between the consumption of BCAA and faster recovery from muscle fatigue after exercise.

- On the basis of the data presented, the Panel concludes that a cause and effect relationship has not been established between the consumption of BCAA and improvement of cognitive function after exercise.

- On the basis of the data presented, the Panel concludes that a cause and effect relationship has not been established between the consumption of BCAA and a beneficial effect related to a healthy immune system.[8]

---

[7] VPX similarly conceals, and does not disclose, the amount of BCAAs in its energy drinks.

[8] EFSA Panel on Dietetic Products, Nutrition and Allergies (NDA), *Scientific Opinion on the substantiation of health claims related to branched-chain amino acids (BCAA) and growth or maintenance of muscle mass (ID 442, 444, 445, 447, 448, 451, 1478), attenuation of the decline in muscle power following exercise at high altitude (ID 443), faster recovery from muscle fatigue after exercise (ID 447, 448, 684, 1478), improvement of cognitive function after exercise (ID 446), reduction in perceived exertion during exercise (ID 450) and "healthy immune system" (ID 449) pursuant to Article 13(1) of Regulation (EC) No 1924/2006*, EFSA Journal, 2010, Vol. 8(10): 1790.

483661 v10

COMPLAINT
Case No. 5:18-cv-1882

60.     Like creatine, the NIH's Office of Dietary Supplements also analyzed the "evidence of efficacy" of BCAA supplementation, and found, "There's not much scientific evidence to support taking BCAA supplements to improve performance, build muscle, or help tired and sore muscles to recover after exercise." (https://ods.od.nih.gov/factsheets/ExerciseAndAthleticPerformance-Consumer/, last visited on August 31, 2018.)

61.     *Even if* BCAAs could provide some benefit, the notion that the amount of BCAAs in BANG—approximately 150 *milligrams* (0.15 grams)—has any meaningful impact on the body is again contradicted by VPX's own website, which identifies one study in which subjects "were dieting and consuming seven grams of BCAA before and after each workout for a total of **14g** BCAA." (https://vpxsports.com/bcaas-maintain-muscle-while-dieting/  (emphasis  added),  last visited on August 31, 2018.)

62.     In short, the amount of BCAAs in BANG—approximately 150 milligrams—is almost **100 times lower** than the amounts tested in VPX's own cited research.

63.     Upon information and belief, Defendants also engage in other forms of deceptive advertising and marketing of BANG energy drinks, including but not limited to print advertisements, point-of-purchase displays, and other forms of social media.

64.     In short, by falsely highlighting the presence of certain ingredients, underscoring their positive qualities, providing detailed descriptions of the health benefits and cures of the ingredients, but at the same time, failing to disclose that these ingredients are sprinkled into BANG at such low levels as to make them useless, Defendants have misled, and continue to mislead, consumers who reasonably expect that BANG energy drinks contain certain ingredients and can deliver the benefits promised by Defendants.

65.     By spreading false claims about BANG and its purported benefits, Defendants seek to divert consumers from purchasing products manufactured by other energy drink companies, including Monster, to purchasing BANG energy drinks.

66.     Monster has invested substantial resources to launch and grow the Monster Energy® brand.  If Defendants' false advertising campaign is allowed to continue unchecked, Monster will continue to lose sales and profits and will suffer loss of reputation that will impact the company's brand equity, all of which will not be fully compensable through monetary damages.

67.     Further, unless prohibited by the Court, Defendants' false advertising campaign will continue to induce consumers to make purchasing decisions and potentially incur costs based on false advertising and misleading representations about the purported benefits and quality of BANG.

## FIRST CAUSE OF ACTION

### Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

68.     Monster incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

69.     Through the actions described above, Defendants have made false and misleading descriptions and representations of fact about BANG energy drinks, which are offered in interstate commerce.  These statements misrepresent the nature, characteristics, or qualities of BANG.  Defendants' statements are expressly false, impliedly false, or both.  As just one of many examples, Defendants claim BANG is a health promoting drink with no artificial ingredients—yet nearly every ingredient in BANG is artificial.

70.     At all relevant times, Defendants knew or should have known that their advertising and promotional activities described herein were false, misleading, and deceptive.

71.     Defendants' false and misleading statements have deceived, or have the tendency to deceive, a substantial segment of their intended audience about matters that are material to purchasing decisions.

72.     At all relevant times, Defendants' false and misleading statements were and are made in commercial advertising and promotion in interstate commerce and violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.      Monster is likely to suffer, has suffered, and will continue to suffer damages to its business and goodwill, the loss of sales and profits it would have made but for Defendants' wrongful acts, and increased advertising and marketing costs, all in an amount to be proven at trial.

74.     Defendants' conduct has injured Monster and the general public, and unless enjoined, will continue to cause irreparable harm to Monster and the general public.  The balance of equities and the public interest favor enjoining Defendants' unlawful conduct.  Monster is therefore entitled to equitable relief including injunctive relief as set forth in its Prayer for Relief.

## SECOND CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

75.     Monster incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

76.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Under the UCL:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

77.     Defendants violated the "unlawful" prong of the UCL by violating the Lanham Act and California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), as alleged above and below.

78.     Defendants violated the "unfair" prong of the UCL because its conduct is substantially injurious to consumers and Monster, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.

79.     Defendants violated the "fraudulent" prong of the UCL by falsely highlighting the presence or absence of certain ingredients, underscoring their positive qualities, providing detailed descriptions of the purported health benefits of consuming BANG, but at the same time, failing to disclose that certain ingredients are sprinkled into BANG at such low levels as to make them virtually useless.  Defendants have misled, and continue to mislead, consumers who reasonably expect that BANG energy drinks contain certain ingredients and can deliver Defendants' promised benefits.  As another example of many, Defendants claim BANG is a health promoting drink with no artificial ingredients, yet nearly every ingredient in BANG is artificial.

80.     Defendants further violated the "fraudulent" prong by falsely claiming that BANG is the "healthiest" energy drink and that all other energy drinks, including Monster's products, are unsafe and inferior because they are "high sugar, life-sucking soda[s] masquerading as [] energy drink[s]."

81.     Defendants' conduct has injured Monster and the general public, and unless enjoined, will continue to cause irreparable harm to Monster and the general public.  The balance of equities and the public interest favor enjoining Defendants' unlawful, unfair, and fraudulent conduct.  Monster is therefore entitled to equitable relief including injunctive relief as set forth in its Prayer for Relief.

**THIRD CAUSE OF ACTION**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

82.    Monster incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83.    Defendants are subject to California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Under the FAL, it is "unlawful, for any person . . . to make or disseminate or cause to be made or disseminated before the public in this states, . . . [in] any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement concerning . . . personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the existence of reasonable care should be known, to be untrue or misleading."

84.    Defendants committed acts of false advertising, as defined in sections 17500, *et seq.*, by highlighting the presence or absence of certain ingredients, underscoring their positive qualities, providing detailed descriptions of the purported health benefits of consuming BANG, but at the same time, failing to disclose that certain ingredients are sprinkled into BANG at such low levels as to make them virtually useless.  As just one of many examples, Defendants advertise BANG as a health promoting drink with no artificial ingredients—yet nearly every ingredient in BANG is artificial.  Defendants have misled, and continue to mislead, consumers who reasonably expect that BANG energy drinks contain certain ingredients and can deliver Defendants' promised benefits.

85.    Defendants knew or should have known through the exercise of reasonable care that their representations about BANG were untrue and misleading.

86.     Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

87.     Monster is likely to suffer, has suffered, and will continue to suffer irreparable injuries as a result of Defendants' wrongful acts.  Monster has lost and will continue to lose money or property due to Defendants' false advertising campaign, which has induced and continues to induce consumers to make purchasing decisions based on misleading representations about the ingredients in BANG and its purported benefits.

88.     Consumers would not have purchased BANG on the same terms if they knew the truth about the ingredients in BANG and its purported benefits.  BANG energy drinks do not have the characteristics, uses, or benefits as promised.

89.     Defendants' conduct has injured Monster and the general public, and unless enjoined, will continue to cause irreparable harm to Monster and the general public.  The balance of equities and the public interest favor enjoining Defendants' unlawful conduct.  Monster is therefore entitled to equitable relief including injunctive relief as set forth in its Prayer for Relief.

## FOURTH CAUSE OF ACTION
### Trade Libel

90.     Monster incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

91.     Launched in 2002, Monster has established itself as the best-selling energy drink brand in the United States by unit volume and dollar value.  Monster has spent over $5 billion in advertising, promoting, and marketing its brand and products.  In 2017 alone, Monster spent $537 million on such endeavors.

92.     Defendants have made false statements disparaging the quality and performance of Monster Energy drinks to achieve economic advantage.  These false

COMPLAINT
Case No. 5:18-cv-1882

statements include but are not limited to those shown on the labels (paragraph 29), the VPX website (e.g., paragraphs 31, 39, 40), and in press releases (e.g., paragraphs 37, 38), and are not matters of opinion or mere puffery, but rather are objectively false statements of fact.

93.     For example, the labels for every can of BANG, along with the VPX website, falsely claim:

> Make No Mistake – Bang® is not your stereotypical high sugar, life-sucking soda masquerading as an energy drink!  High sugar drinks spike blood sugar producing metabolic mayhem causing you to crash harder than a test dummy into a brick wall.

94.     These false statements are clearly understood by reasonable consumers to refer to and include Monster's energy drinks—the established leader in the energy drink market.

95.     Defendants' false and disparaging statements' about Monster Energy drinks have damaged, and will continue to damage, Monster's hard-earned reputation as a provider of superior, quality products because the statements falsely cast Monster as a provider of unsafe, inferior products.

96.     Defendants knew these statements were false, or made these false and disparaging statements of fact with reckless disregard for the truth.  Further, Defendants knew or should have recognized that consumers might act in reliance on Defendants' false and disparaging claims, thereby causing harm to Monster.

97.     Defendants have published the false statements identified above by distributing them to consumers on a national basis, including within this judicial district.

98.     Defendants' false and disparaging statements were and are a substantial factor in causing direct financial harm to Monster by deterring customers from purchasing Monster Energy drinks.  Monster has lost and will continue to lose money

or property due to Defendants' false advertising campaign, which has induced and continues to induce consumers to make purchasing decisions based on false and disparaging claims about Monster Energy drinks.

99.    Defendants' conduct has injured Monster and the general public, and unless enjoined, will continue to cause irreparable harm to Monster and the general public. The balance of equities and the public interest favor enjoining Defendants' unlawful conduct. Monster is therefore entitled to equitable relief including injunctive relief as set forth in its Prayer for Relief.

100.   Defendants' acts as alleged herein were willful, oppressive, malicious and/or fraudulent. Accordingly, Plaintiff seeks both actual damages in tort and punitive or exemplary damages in an amount appropriate to punish and make an example of Defendants, and to deter such wrongful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Monster respectfully requests the following relief:

A.    Judgment be entered in Monster's favor on each cause of action in the complaint;

B.    An order permanently enjoining Defendants, and their agents, servants, employees, and all others in active concert or participation with Defendants, from (a) falsely claiming, whether directly or by implication, in any advertising or promotional communications, that BANG has certain qualities when it does not; and (b) otherwise unfairly competing against Monster or falsely advertising or promoting VPX's products;

C.    An order directing an accounting of all gains, profits, savings and advantages realized by Defendants from their false advertising, unfair competition, and other violations of law as identified above;

COMPLAINT
Case No. 5:18-cv-1882

D.     An order directing VPX to disseminate, in a form to be approved by the Court, advertising designed to correct the false and misleading claims made by Defendants through advertising or promotional communications;

E.     An award to Monster of damages attributable to Defendants' false and deceptive advertising, in excess of $75,000 but in an amount to be determined at trial;

F.     An award to Monster of profits earned by Defendants attributable to their false advertising, in excess of $75,000 but in an amount to be determined at trial;

G.     A declaration that this is an "exceptional case" due to the willful nature of Defendants' false advertising, and awarding damages and attorneys' fees and costs to Monster pursuant to 15 U.S.C. § 1117, and any other damages including treble damages and attorneys' fees to the full extent allowable under the law;

H.     An order pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a) requiring Defendants to serve on Monster, within 30 days after service on Defendants of an injunction or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner in which Defendants have complied with the injunction;

I.     An award to Monster of pre-judgment interest on any monetary award in this action;

J.     An award of the costs and disbursements of this action;

K.     Punitive and exemplary damages as permitted by law and in an amount to be proven at trial; and

L.     Such other and further relief as the Court may deem just and proper.


Dated: September 4, 2018            SHOOK, HARDY & BACON L.L.P.


                                    By: _____/s/ Marc P. Miles_____
                                         Marc P. Miles
                                         Attorneys for Plaintiff
                                         Monster Energy Company

## **Demand for Jury Trial**

Plaintiff hereby demands trial by jury.

Dated: September 4, 2018          SHOOK, HARDY & BACON L.L.P.


By: _____*/s/ Marc P. Miles*_____
          Marc P. Miles
          Attorneys for Plaintiff
          Monster Energy Company