John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Steven N. Feldman, State Bar No. 281405
sfeldman@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Plaintiff
MONSTER ENERGY COMPANY,
a Delaware Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, a Florida corporation; and JOHN H. OWOC a.k.a. JACK OWOC, an individual,<br><br>Defendants. | Case No. 5:18-cv-1882-JGB-SHK<br><br>**PLAINTIFF MONSTER ENERGY COMPANY'S APPLICATION FOR LEAVE TO FILE UNDER SEAL PORTIONS OF ITS EXHIBITS IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION AND FOR THE DOCUMENTS TO BE MAINTAINED OUTSIDE ATTORNEYS' EYES ONLY** |

## I. INTRODUCTION

Pursuant to Local Rule 79-5.2.2(a), Plaintiff Monster Energy Company ("Monster") respectfully seeks leave to file under seal limited portions of Exhibits 35–36 and 47–55 to the Declaration of Steven N. Feldman in Support of Monster's Motion for a Preliminary Injunction ("Feldman Decl."). Monster has narrowly targeted its sealing request to portions of materials that include Monster's and third-parties' confidential financial and business strategy information—including, for example, extraordinarily sensitive information about pricing arrangements between Monster and retailers that Defendants Vital Pharmaceuticals, Inc. ("VPX") and John H. Owoc could use to harm Monster and third parties.

Because this information is highly sensitive—and given that Defendants have already interfered with Monster's contractual rights and attempted to steal Monster's proprietary information—Monster also requests that the Court issue an order prohibiting disclosure of the information sought to be sealed to anyone other than Defendants' outside counsel (*i.e.* render the sealed material "Outside Attorneys' Eyes Only"). As discussed herein, a California federal court found reason to maintain a similar order against VPX in the past. *See CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 2010 WL 728454, at *4 (E.D. Cal. Mar. 2, 2010). During a meet and confer, Defendants did not agree to Monster's request that they voluntarily treat this information as Outside Attorneys' Eyes Only, further demonstrating that such an order is necessary to protect Monster's and third-parties' confidential information.

## II. ARGUMENT

### A. Compelling Reasons Warrant Sealing

Though there is generally a common law right of access to filings in civil proceedings, public "access to judicial records is not absolute," *Kamakana v. City & Cnty of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and courts prevent public access to records to protect "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598

(1978) (citations omitted); *see also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) ("[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing."). With respect to "dispositive pleadings," a court may seal a document if there is a "compelling reason" to do so. *Kamakana*, 447 F.3d at 1179.

The information that Monster requests to seal falls into two main categories: (1) non-public financial information of Monster and third-parties; and (2) non-public strategic and business-making information of Monster and third-parties. Declaration of Emelie Tirre in Support of Monster's Application for Leave to File Under Seal ¶ 3.

Courts routinely find both categories to be "compelling reasons" and grant motions to seal on that basis. *See Rodman v. Safeway, Inc.*, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) (granting motion to seal "nonpublic information discussing [] pricing strategy, business decision-making, customer research, and financial records"); *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2013 WL 3958232, at *3 (N.D. Cal. July 29, 2013) (granting motion to seal portions of documents that related to party's "pricing terms" and "payments"); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045-46 (N.D. Cal. Dec. 5, 2018) (granting motion to seal portions of documents "containing nonpublic pricing terms"); *Bean v. Pearson Educ., Inc.*, 2012 WL 2929631, *2 (D. Ariz. July 18, 2012) (sealing "nonpublic financial, sales, and distribution information"). Sealing is also granted where, as here, the information relates to business dealings with third parties. *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2011 WL 6182346, *4 (D. Ariz. Dec. 13, 2011) ("disclosing confidential business dealings with third parties, [as well as] certain customer and pricing information ... could harm [the movants'] competitive standing").

Critically, if the information that Monster seeks to seal is publicly disclosed, there is a substantial risk that Monster's and the third-parties' competitors will use the information to the competitive disadvantage of Monster and the third-parties. In fact,

Defendant VPX has already made brazen attempts to steal and obtain Monster's proprietary and confidential pricing information. First Amended Complaint ¶¶ 111–19; *see also In re Incretin-Based Therapies Prods. Liability Litig.*, 2015 WL 11658712, at *1 (S.D. Cal. Nov. 18, 2015) ("Courts have long-acknowledged that the risk of competitive harm through disclosure of confidential and proprietary information warrants maintaining documents under seal, even in light of the general presumption of public access to judicial documents.").

Respecting the general public right to access court records, Monster is proposing to narrowly redact exhibits, where possible, rather than seal them in their entirety. Monster's proposed redactions are set forth in the chart below and in the concurrently filed Declaration of Emilie Tirre:

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
| --- | --- | --- |
| Ex. 35 | Parts of Pages 0280 and 0281 | The "Funding Elements" and "Cold Equipment Placement Funding" tables on p. 0280 contain nonpublic information about the contracted rate and payment between Monster and its partner American Gas & Oil ("AGO") in 2019. And the first paragraph of the "Miscellaneous Terms and Conditions" section on page 0281 contains detailed information about the negotiated cooperative marketing agreement ("CMA") funding rate between Monster and AGO.<br><br>Monster considers this funding and payment information highly confidential and proprietary financial and business strategy information. Release of this sensitive information would allow Monster's and AGO's competitors to use that information to negotiate more favorable contracts to the detriment of Monster and AGO. |
| Ex. 36 | Page 0283 paragraph 3; Page 0293; Portions of | These sections contain information relating to the specific contracted-for products, promotions, and product placement between Monster and its partner BP West Coast Products, LLC ("BP"). |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | pages 0295 and 0296; Pages 0297-300. | This is highly confidential business strategy information of Monster and BP. Release of this sensitive information could harm Monster and BP and benefit competitors by allowing them to decipher Monster's contracted-for promotions and provide insight to Monster's business negotiations with BP. |
| Ex. 36 | Page 0284, paragraph 6; Page 0286, paragraph 12; Portions of pages 0295 and 0296 | These sections contain information about contracted-for payments between Monster and BP and other financial-related information.<br><br>Monster considers this funding, payment, and financial information to be highly confidential financial and business strategy information of Monster and BP. Release of this sensitive business strategy and financial information will harm Monster and BP and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 47 | Page 0338, section 4; 0348-49; Page 0353; Page 0354 | These sections contain information relating to the specific contracted-for pricing and rebate information, particulars of the calculation of space, and shelf life requirements between Monster and its partner Circle K Procurement and Brands Limited ("CK Brands").<br><br>This is highly confidential business strategy information of Monster and CK Brands. Release of this sensitive business strategy and financial information will harm Monster and CK Brands and benefit their competitors by allowing them to decipher Monster's contracted-for pricing and rebate information and specific calculations of space in the store. |
| Ex. 47 | Pages 0338-39, sections 4-5; | These sections contain information about contracted-for payments between Monster and CK Brands and other financial-related |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | Pages 342-43, section 11.2; Page 0352 | information.<br><br>Monster considers this funding, payment, and financial information to be highly confidential financial and business strategy information of Monster and its partner CK Brands.  Release of this sensitive business strategy and financial information will harm Monster and CK Brands and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 48 | Page 0360, section 1.1; Pages 0362-63, section 4 | These sections contain information relating to the distribution of products, specific contracted-for discounts, and agreed-upon growth incentives.<br><br>This is highly confidential business strategy information of Monster and CK Brands. Release of this sensitive business strategy and financial information will harm Monster and CK Brands and benefit their competitors by allowing them to decipher, among other things, Monster's contracted-for discounts and promotions. |
| Ex. 48 | Pages 0362-63, section 4; Pages 0368-69, section 11.2; Pages 0375-76; Pages 0378-82 | These sections contain information about pricing information, funding information, specific payment requirements, specific rates for products between Monster and CK Brands and other financial-related information.<br><br>Monster considers this funding, payment, and financial information to be highly confidential financial and business strategy information of Monster and its partner CK Brands. Release of this sensitive business strategy and financial information will harm Monster and CK Brands and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners and |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | | price their products to retailers in an advantageous way to Monster's products. |
| Ex. 49 | Portions of Pages 0384 and 0385 | These pages contain nonpublic information about financial payment information between Monster and its partner Walmart Global Shared Services North America ("Walmart").<br><br>Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Walmart. Release of this sensitive business strategy and financial information will harm Monster and Walmart and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 49 | Pages 0386 to 0408 | These pages contain Walmart product allocation and space information that it shares with its partners, like Monster. Indeed, Walmart has marked each of the pages "Confidential."<br><br>This information represents confidential business information of Walmart and its partner Monster. Release of this sensitive business strategy and financial information will harm Walmart and Monster and benefit their competitors by allowing them to decipher, among other things, Walmart's product allocation and space information, including relating to Monster. |
| Ex. 50 | Parts of Pages 0410 and 0411 | The "Funding Elements" and "Cold Equipment Placement Funding" tables on these pages contain nonpublic information about the contracted rate and payment between Monster and its partner Dunne Manning. And the first paragraph of the "Miscellaneous Terms and Conditions" section on page 0411 contains detailed information about the negotiated CMA |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | | funding rate between Monster and Dunne Manning.  Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Dunne Manning. Release of this sensitive business strategy and financial information will harm Monster and Dunne Manning and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 51 | Parts of Page 0413 | The "Funding Elements" table on this page contains nonpublic information about the contracted rate and payment between Monster and its partner Duchess.  And the first paragraph of the "Miscellaneous Terms and Conditions" section on this page contains detailed information about the negotiated CMA funding rate between Monster and Duchess.<br><br>Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Duchess.  Release of this sensitive business strategy and financial information will harm Monster and Duchess and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 52 | Parts of Pages 0416 and 0417 | The "Funding Elements" table on page 0416 contains nonpublic information about the contracted rate and payment between Monster and its partner Duchess.  And the second paragraph of the "Package Authorization Requirements" section on page 0417 contains detailed information about the negotiated CMA funding rate between Monster and Duchess. |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | | Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Duchess. Release of this sensitive business strategy and financial information will harm Monster and Duchess and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 53 | Parts of Pages 0419 and 0420 | The "Funding Elements" table on page 0419 contains nonpublic information about the contracted rate and payment between Monster and its partner Big Red Valero. And the first paragraph of the "Miscellaneous Terms and Conditions" section on page 0420 contains detailed information about the negotiated CMA funding rate between Monster and Big Red Valero. Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Big Red Valero. Release of this sensitive business strategy and financial information will harm Monster and Big Red Valero and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 54 | Parts of Pages 0422 and 0423 | The "Funding Elements" and "Equipment Placement Funding" tables on page 0422 contain nonpublic information about the contracted rate and payment between Monster and its partner Big Red Valero. And the second paragraph of the "Package Authorization Requirements" section on page 0423 contains detailed information about the negotiated CMA funding rate between Monster and Big Red Valero. Monster considers this |

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | | funding and payment information highly confidential financial and business strategy information of Monster and its partner Big Red Valero. Release of this sensitive business strategy and financial information will harm Monster and Big Red Valero and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 55 | Parts of Pages 0425 and 0426 | The "Funding Elements" table on page 0425 contains nonpublic information about the contracted rate and payment between Monster and its partner Pit Stop – NY (Marshalls) ("Pit Stop"). And the first paragraph of the "Miscellaneous Terms and Conditions" section on page 0426 contains detailed information about the negotiated CMA funding rate between Monster and Pit Stop.<br><br>Monster considers this funding and payment information highly confidential financial and business strategy information of Monster and its partner Pit Stop. Release of this sensitive business strategy and financial information will harm Monster and Pit Stop and benefit their competitors by allowing them to use that information to negotiate more favorable contracts with retail partners. |
| Ex. 55 | Parts of Page 0425 | The "2019 Promotional Calendar" contains detailed nonpublic information about Monster's upcoming promotions in 2019.<br><br>This is highly confidential business strategy information of Monster and Pit Stop. Release of this sensitive business strategy and financial information could benefit their competitors by allowing them to decipher, among other things, Monster's promotions ahead of time to then develop their own copycat promotions, to the |

- 9 -
MONSTER'S APPLICATION FOR LEAVE TO FILE UNDER SEAL

| Exhibit to Feldman Decl. | Portion(s) to be Sealed | Reason |
|---|---|---|
| | | detriment of Monster and Pit Stop. |

### B. The Information Sought to be Sealed Should be Disclosed to Defendants' Outside Attorneys Only

Monster and VPX are direct competitors in the energy drink space. As discussed in Monster's Motion for a Preliminary Injunction ("Motion"), VPX and its CEO Owoc have engaged in predatory conduct to steal market share from Monster with the goal to take "over a billion dollars in market share from Monster." Motion at 8, 9–12. What's more, VPX and Owoc have recently attempted to steal Monster's proprietary information by offering Monster employees employment at VPX in exchange for bringing Monster's confidential pricing data to VPX. Dkt. No. 61 (First Amended Complaint) ¶¶ 111–119.

Due to these concerns, it is imperative that Monster's confidential pricing and business strategy information in the documents proposed to be sealed are not shared internally at VPX or with Owoc. This restriction should also extend to VPX's in-house counsel.

Importantly, a California federal court found reason to issue a similar order against VPX in the past. In *CytoSport,* 2010 WL 728454, at *4, the court denied VPX's motion to modify a protective order to allow disclosure of highly confidential information to in-house counsel. The court held that VPX "is a relatively small company" and it would be difficult for in-house counsel to "'lock away' information in her mind every time she faces a company issue or has interactions with the CEO who is responsible for all competitive decision making." *Id.; see also id.* ("If she cannot disclose important information learned from this case to the CEO, she may not be able to render legal advice to her client."). This is especially true where, as here, "it does not appear that the CEO would accept a passive role in th[e] litigation." *Id.*; *see* Feldman Decl. Ex. 4.

Monster attempted to address this issue without this Court's involvement, but Defendants refused to stipulate. On April 8, 2019, Monster sent Defendants a proposed protective order that allows the parties to designate documents as "Highly Confidential" and limit their disclosure to outside attorneys only. Feldman Decl. ¶ 3. Even though this case will inevitably involve the production of documents containing both parties' proprietary and confidential information, Defendants refused to enter into the protective order. *Id.* ¶ 5. Defendants also informed Monster that Defendants oppose Monster's sealing request. *Id.*

In response, Monster asked Defendants to agree that they would treat the materials that Monster seeks to seal as Outside Attorneys' Eyes Only pending this Court's ruling on Monster's Application. *Id.* ¶ 6. Defendants' counsel stated that he could not agree at that time. Upon Monster's request, Defendants' counsel agreed to check with his clients again and provide a response before Monster filed this motion. *Id.* He did not do so. Nor did he respond to Monster's attempts to follow up via e-mails and a phone call. *Id.* Defendants' actions further demonstrate a substantial risk that Defendants intend to and will share Monster's proprietary and confidential information internally at VPX and use it to Monster's disadvantage. *Id.*

For these reasons, Monster needs and respectfully requests an order prohibiting Defendants' outside counsel from sharing any information ordered to be sealed with VPX, Owoc, or anyone else.

**III.   CONCLUSION**

Portions of Exhibits 35–36 and 47–55 to the Feldman Declaration contain Monster's and third-parties' sensitive, confidential financial and business strategy information. Monster respectfully requests leave to file these materials under seal and an order prohibiting the disclosure of these materials to anyone other than Defendants' outside counsel.

| | | |
|---|---|---|
| 1 | Dated: April 10, 2019 | HUESTON HENNIGAN LLP |
| 2 | | |
| 3 | | By: /s/ *John C. Hueston* |
| 4 | | John C. Hueston |
| 5 | | Moez M. Kaba<br>Steven N. Feldman |
| 6 | | *Attorneys for Plaintiff Monster Energy Company* |

MONSTER'S APPLICATION FOR LEAVE TO FILE UNDER SEAL

5528132