T<small>IMOTHY</small> K. B<small>RANSON</small>
TBRANSON@GRSM.COM
D<small>IRECT</small> D<small>IAL</small>: (619) 230-7441



A<small>TTORNEYS</small> A<small>T</small> L<small>AW</small>
101 W. B<small>ROADWAY</small>, S<small>UITE</small> 2000
S<small>AN</small> D<small>IEGO</small>, CA 92101
WWW.GRSM.COM

September 13, 2019

**V<small>IA</small> CM/ECF**

Magistrate Judge Shashi H. Kewalramani
USDC, Central District of California
George E. Brown, Jr. Federal Building
United States Courthouse
3470 12th St.,
Riverside, CA 92501

Re:   *Monster Energy Company v. Vital Pharmaceuticals, Inc.*
      USDC – Central District of California, Case No. 5:18-cv-01882-JGB-SHK

Honorable Shashi H. Kewalramani:

Pursuant to the Court's Minute Order dated September 6, 2019 (ECF 128), Defendant Vital Pharmaceuticals Inc. ("VPX") respectfully submits the following 2-page letter brief in response to Plaintiff Monster Energy Company's ("Monster") motion to compel further response to Monster's Interrogatory No. 1 to VPX: "State the formula for YOUR BANG energy drink, including the amount used of each ingredient. To the extent the formula is different for each flavor of BANG, state the formula for each flavor." (*See* ECF 129, Exhibit A at 6-9).

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI

By:   /s/ *Michael D. Kanach*
      M.D. Scully
      Timothy K. Branson
      Holly L.K. Heffner
      Michael D. Kanach
      Marc J. Kesten
      Attorneys for Defendant
      VITAL PHARMACEUTICALS, INC.,
      d/b/a VPX Sports

Cc: All Counsel

By its motion, Monster – a notorious bully in the marketplace[1] – requests the production of VPX's secret formulas, quantities of ingredients, and supplier information ("Trade Secrets"), although this highly confidential, propriety information is irrelevant to the parties' claims and defenses. Monster's ulterior motives for this request are thinly veiled and quickly exposed by the lack of authority supporting its request and by the fact that Monster made no effort to reach an agreement regarding testing protocols or cost shifting before demanding VPX disclose its most precious Trade Secrets. Monster's motion should be denied. *See* ECF 61, First Amended Complaint (FAC).

### A. The Trade Secret Information Should Not be Produced to Monster.

The protective order is insufficient protection against unnecessary disclosure of VPX's highly sensitive trade secret information to its direct and most aggressive competitor. *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 U.S. Dist. LEXIS 163624 (M.D. Pa. Sep. 28, 2017) ("[I]t would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial." (*quoting Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990)). This Court should deny Monster access to VPX's proprietary formula, as "courts have routinely recognized that 'disclosure to a competitor is more harmful that to a noncompetitor.'" *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (*citing Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985).

In the *Coca-Cola Bottling* case, the court did **not** order Coca-Cola to disclose its secret formula to its direct competitor, i.e., Pepsi. Rather, in that case, Coke bottlers sought information from Coca-Cola necessary to resolve a contract dispute that hinged on whether the formula for Diet Coke was identical to the formula for Coca-Cola. The bottlers sufficiently established that *the only way* to answer this question was to make a direct comparison. Unlike the present case, the bottlers had an incentive to keep Coca-Cola's confidential formula secret. Here, Monster has the opposite incentive -- to copy the formula for use in its BANG knockoff product (REIGN) and/or to disclose the information to harm VPX.

### B. Monster Seeks Proprietary Trade Secrets From its Direct Competitor.

**Monster admits that VPX is a competitor of Monster**; in fact, Monster's position that VPX is a competitor is the basis for this lawsuit. *See, e.g.,* the Introduction to Monster's Motion for a Preliminary Injunction. ECF 67, 1:1-4;[2] *see also*, FAC, *e.g.*, 3:2-5 ("Monster's shelf space is BANG's primary target."); 25:5 ("VPX and Owoc Falsely Disparage Competing Energy

---

[1] For example, Judge Andre Birotte of the Central District of California found that Monster was using litigation to crush a competitor, stating: "I don't know why we're here, other than you're trying to crush this root beer company out of business." Monster Energy Living Up To Name With TM Suit, Judge Says, Lauren Berg, Law360, Los Angeles (August 30, 2019, 7:27 PM EDT) https://www.law360.com/articles/1194422/monster-energy-living-up-to-name-with-tm-suit-judge-says (last visited September 13, 2019); Monster #1 as the Biggest Bully in 2013, 2014, 2015, 2016, 2017, and 2018. *See also*, "Biggest Bullies" https://www.trademarkia.com/opposition/opposition-brand.aspx (last visited September 13, 2019).

[2] "Defendant Vital Pharmaceuticals, Inc.'s ('VPX') BANG energy drink has recently achieved massive sales growth (784% in 2018 alone), taking market share from its competitors, including Plaintiff Monster Energy Company ('Monster')."

Drinks"); 28:6 ("VPX and Owoc Have Deceived Consumers and Harmed Competitors"). *See also*, ECF 122, Order denying Defendants' Motion to Dismiss the first three causes of action because Monster sufficiently alleged VPX was a competitor.

**Monster admits the BANG® formula is a valuable trade secret** and that VPX has not disclosed the quantity of creatyl-L-leucine in the BANG® energy drink. *Id.*, 16:2-3 ("VPX conceals how much Super Creatine is in BANG…"); 18:4-6 (regarding how much Super Creatine is in BANG®: "'Unfortunately, that is proprietary information,' Owoc says."). *See also*, attached Declarations of Marc J. Kesten, Esq. and Dr. Liangxi Li regarding the importance and trade secret nature of the requested information. It is irrelevant that VPX testing results in a lawsuit and includes the quantity of one ingredient on the label of a different product. Neither a test result nor the quantity of a single ingredient in a different product equate to disclosure of the BANG® formula.

### C. Monster Cannot Show That Quantities of the BANG® Ingredients Are Relevant.

VPX's Trade Secrets are not relevant to Monster's claims or VPX's defenses. The FAC asserts twelve causes of action, four of which were dismissed. ECF 61, 95. Monster argues that that VPX's trade secrets are relevant to its first three causes of action that hinge on whether VPX made false statements related to its BANG® energy drink. ECF 129. This argument fails. Monster does not allege that consumers chose BANG® over a Monster product because BANG® is advertised as having a certain *quantity* of any ingredient or that VPX even advertises certain *quantities* of ingredients for which consumers would rely. Monster's allegations in support of those three causes of action are not about the quantities of any ingredient in BANG®, including creatyl-L-leucine. *See* FAC, Paragraphs 122, 132, 141. The only relevant factual information is 1) whether BANG contains creatyl-L-leucine, to which Monster admits and its own testing confirms (*See* Exhibit A to the FAC) and 2) whether BANG® provides "Fuel" for the body and mind, which is abundantly supported by the uncontroverted fact that BANG® contains 300 mg of caffeine, as stated on the BANG® label. Similarly, Monster's knockoff Reign energy drink advertises 300 mg of caffeine, BCAA Aminos, CoQ10, and B Vitamins, with the copycat tagline "Total Body Fuel". Monster cannot, in good faith, argue to this Court that a certain quantity of creatyl-L-leucine must be present to advertise an energy drink as "fuel" given Monster calls its copycat REIGN product "fuel" and it contains no creatyl-L-leucine.

### D. Monster's Stated Concern Over the Cost of Testing Is a Red Herring.

Monster argues "if VPX simply produced the BANG formula, this needless and expensive testing could be avoided altogether." Yet, Monster provides no evidence that testing would be cost-prohibitive or disproportionate to the case. To the contrary, Monster has established that it unquestionably has the resources to perform testing. ECF 65, 4:17-20; ECF 67, 9:25 (spending "over $5 billion on brands and product promotion since 2002; spending $90 million on shelf space annually). Monster has repeatedly tested VPX's products in this and other litigation, and there is no reason – and Monster offers none – to expect it to stop testing VPX's products once it has VPX's Trade Secrets in hand. Critically, Monster has not proposed a stipulation or even attempted to meet and confer with VPX regarding testing protocols or costs. Thus, this new issue related to the expense of testing is nothing but a red herring and, even if ingredient quantities were to become relevant (which is unlikely), it is not ripe for this discovery dispute.