**MOEZ M. KABA**

mkaba@hueston.com

D: 213 788 4543

T: 213 788 4340

F: 888 775 0898

523 West 6th Street

Suite 400

Los Angeles, CA 90014

# HUESTON HENNIGAN LLP

Wednesday, November 20, 2019

**SUBMITTED THROUGH ECF**

Honorable Shashi H. Kewalramani
George E. Brown, Jr. Federal Building and United States Courthouse
3470 12th Street
Riverside, CA 92501

**Re:** ***Monster Energy Co. v. Vital Pharm., Inc.***, **Case No. 5:18-cv-1882-JGB-SHK (C.D. Cal.)**

Dear Honorable Shashi H. Kewalramani:

Plaintiff Monster Energy Company ("Monster") submits the below letter brief in support of its request for Defendant Vital Pharmaceuticals, Inc. ("VPX") to further supplement its responses to Interrogatories 4, 7, and 8.

# HUESTON HENNIGAN LLP

## A.  Introduction

An important component of Monster's false advertising case against VPX is its allegation that VPX's promotion of the "Super Creatine" in BANG energy drinks is deceptive.  (ECF No. 61 ¶¶ 42-59.)  Monster's position on "Super Creatine" has been clear for months: Super Creatine "is functionally useless," "does not release creatine," and "offers no health benefits to consumers."  (*Id.* at 15 & ¶ 53.)

In June and July 2019, Monster served three interrogatories to determine, and understand the basis for, VPX's position on the purported benefits of Super Creatine:

- **Interrogatory No. 4:** "If YOU contend that the 'Super Creatine' in BANG creates positive health effects for drinkers, identify all publications, research papers, and DOCUMENTS supporting YOUR claim, and how that source supports YOUR claim that the 'Super Creatine' in BANG creates positive health effects for drinkers."

- **Interrogatory No. 7:** "If YOU contend that the Super Creatine contained in BANG has an effect on the VITALS and SUBSTANCES[1] in the human body, identify all such effects and all DOCUMENTS that support YOUR contention."

- **Interrogatory No. 8:** "If YOU contend that the Super Creatine contained in BANG increases the circulating levels of creatine or creatinine in the human body, identify all bases supporting YOUR contention, including the approximate amount of the alleged increases."

(See Ex. 1 at 4; Ex. 2 at 3-4.)  These interrogatories ask VPX to clearly state whether, *in this litigation*, they contend that Super Creatine (i) creates positive health effects, (ii) has an effect on vitals and substances in the human body, and (iii) increases the circulating level of creatine or creatinine in the human body.  If VPX is not making these contentions, these Interrogatories require VPX to make only a short and simple statement saying "VPX is not making this contention."

VPX served its responses in July and August 2019.  Monster then met-and-conferred with VPX on multiple occasions to see if VPX would supplement its responses to provide the requested information.  (*See* Exs. 3, 4.) Monster agreed to provide VPX

---

[1] "VITALS" is defined to "include body temperature, blood pressure, heart rate and respiratory rate."  (Ex. 2 at 3.)  "SUBSTANCES" is defined as "all substances naturally produced by the human body, including creatine and creatinine."  (*Id.*)

# HUESTON HENNIGAN LLP

<u>five</u> separate extensions for VPX to supplement its responses.[2]  VPX provided its final supplemental responses on October 30, 2019.  (*See* Ex. 5 at 15, 27, 35)

Despite these extensions and supplementation, VPX still has not clearly answered whether VPX is making any of these three contentions and, if so, VPX's factual basis for making these contentions.  Instead, VPX's lengthy objections and evasive responses include confusing and irrelevant information and state that VPX is "***explicitly reserv[ing] the right to make [these] contention[s] in this case in the future***."  (Ex. 5 at 29, 37 (emphasis added).)   Monster still does not know whether VPX intends to make these contentions in this lawsuit, even though it is plainly entitled to this information.

Thus, Monster has been forced to bring this motion to compel.  For the reasons discussed below, this Court should compel VPX to provide clear and concise answers to the questions asked by these interrogatories.

## B.    Monster's Interrogatories Seek Relevant Information

"Relevance" for purposes of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019).

Monster's interrogatories easily satisfy this standard.  By seeking VPX's position on the effects of Super Creatine in the human body, these interrogatories directly relate to the allegations in Monster's complaint and the issues framed by Judge Bernal's prior orders.  (*See* Order Denying Motion to Dismiss, ECF No. 95 at 14 (holding that Monster had stated a false advertising claim by alleging that "Super Creatine is unlike creatine in that it has no health benefits"); Order Denying Motion for Preliminary Injunction, ECF No.

---

[2] *See* Ex. 4 at 6 ("Please let us know **by Tuesday, October 1 by 5pm PT** if VPX intends to supplement its answers to Interrogatories 4, 7, and 8 to answer the queries posed by those interrogatories."); *id.* at 5 ("[I]t has now been 13 days since Monster served its LR 37-1 letter. Please provide us with VPX's final position by **4pm PT this Friday, October 4** so that we can either settle this discovery dispute or bring it to the attention of the Court."); *id.* at 4 ("If you cannot send us a final answer by **Monday, October 7 at 5pm PT**, we will e-mail Judge Kewalramani and offer Tuesday, Thursday, and Friday as the parties' availability for a telephonic conference."); *id.* at 3 ("I hope that taking this extra time is in furtherance of a genuine desire to meet and confer to resolve our disputes and not simply a delay tactic. We look forward to your final response by this **Friday, 10/11, at 4pm PT**."); *id.* (VPX on October 11 stating: "VPX is working on a response to supplement those 4 interrogatories and anticipates serving it on Monster within 2 weeks, by October 25."); *id.* at 2 (VPX on October 25 stating: "In connection with those objections and likely supplementation of that interrogatory, we are still working on the supplemental responses to other interrogatories (4, 6, 7, 8) and will do so on [October 30].") (emphasis added).

# HUESTON HENNIGAN LLP

122 at 6 ("[I]n order to prevail, Monster must demonstrate that Super Creatine does not provide the benefits of creatine.").)

And as this Court has recognized, Monster's allegations about Super Creatine bear on at least three of Monster's causes of action: "the Lanham Act false advertising claim, the unfair competition claim, and the false advertising claim."  (ECF No. 136 at 7.)

Because Monster's requests are relevant, the burden shifts to VPX to show that it properly resisted discovery.  *McGraw-Hill Companies, Inc.*, 2014 WL 1647385, at *8; *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").  As set forth below, VPX cannot meet this burden.

## C. VPX Has Failed to Provide Clear and Concise Answers to the Questions Asked

Parties "have a duty to provide true, explicit, responsive, complete and candid answers to interrogatories."  *United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923, at *4 (C.D. Cal. July 24, 2015).  Said another way, "answers to interrogatories must be responsive, full, complete and unevasive."  *In re Rivera*, 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017).

The opinion in *Lincoln Benefit Life Co. v. Fundament*, 2018 WL 7051064, at *3 (C.D. Cal. Dec. 6, 2018), illustrates this rule and is on point. In that case (a life insurance dispute), the claimant posed several interrogatories "prefaced by the phrase 'if YOU contend that PAULO is not dead.'"  *Id.*  To each interrogatory, the insurance company answered "not applicable."  *Id.*  The court held that such responses were deficient because they "did not answer the question asked: does [the insurance company] contend that Paulo is not dead."  *Id.*  As here, the propounding party "has a right to an answer to that question, and to the facts supporting such contention if [the responding party] so contends, in order to fairly prepare for trial."  *Id.*

Just as in *Lincoln Benefit*, VPX has not satisfied its obligation to provide clear and precise answers.  In response to each of Monster's straightforward interrogatories, VPX provided ***8 pages*** of irrelevant information.  For example, responding to Monster's request for VPX's position on whether Super Creatine "increases the circulating levels of creatine or creatinine in the human body," VPX stated, among other things, that:

- "VPX's BANG product is so successful that Monster introduced a nearly identical product called REIGN."  (Ex. 5 at 40.)

# HUESTON HENNIGAN LLP

- "BANG is infinitely safer and healthier than Monster."  (*Id.* at 43.)

- BANG is "a great tasting drink."  (*Id.* at 41.)

- "Monster has the burden of proving all elements of each cause of action. Monster has not done so."  (*Id.* at 39.)

These statements—and many others like them—have nothing to do with the interrogatories Monster posed to VPX.

While packing its answer with irrelevant information, VPX also fails to answer the questions posed to it.  Monster sought to identify VPX's positions in this litigation by asking a series of "if you contend" interrogatories."  (Ex. 1 at 3-4; Ex. 2 at 3-4.)  But VPX's responses don't even answer the threshold question imbedded in each interrogatory: whether VPX is or is not making these contentions in the first place.

In fact, VPX not only fails to answer this inquiry, but "explicitly" refuses to do so. In its responses, VPX states: "While Responding Party is not aware of any previous contention that Responding Party has made in this litigation . . . , ***Responding Party explicitly reserves the right to make that contention in this case in the future***."  (*See* Ex. 5. at 29, 37 (emphasis added).)

VPX's equivocation is inappropriate.  Monster is entitled to plain responses to the questions it actually asked VPX.  *Lincoln Benefit*, 2018 WL 7051064, at *3–4 (ordering party to serve verified, supplemental responses without objection where the plaintiff provided "an answer to the question asked" and "the facts supporting such contention if Plaintiff so contends").

VPX may argue that it has adequately answered Monster's interrogatories by disclosing that it has not *previously* made the contentions at issue.  In its responses, VPX notes, for example, that it "is not aware of any *previous* contention."  (Ex. 5 at 29 (emphasis added).)  VPX likewise responds that it "is not aware of any contentions VPX *has made* in this case or publicly."  (*Id.* at 21, 34, 42 (emphases added).)  And during both the pre-motion conference and the meet-and-confer process, VPX argued that it would respond to Monster's interrogatories only if Monster "point[ed] [VPX] to the specific contentions so VPX can review."  (Ex. 4 at 1; *id.* ("Monster has not provided any information for where VPX has made those contentions.").)

VPX misunderstands the proper scope of contention interrogatories.  "It is proper for a party to propound contention interrogatories seeking identification of the opposing party's positions and the evidence in support of those positions."  *Bos. v. ClubCorp USA, Inc.*, 2019 WL 1873293, at *8 (C.D. Cal. Mar. 11, 2019).  Interrogatories can properly be

# HUESTON HENNIGAN LLP

used "to require one's opponent to state its position on an issue in controversy in writing and under oath." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 3 (D.D.C. 2011). Such contention interrogatories serve the basic purpose of discovery: to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible." *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958).

Monster therefore has the right to learn not only whether VPX has made a statement *in the past*, but also whether VPX is presently making a contention *in this litigation*, and if so, what are the facts supporting the contention. Monster seeks to learn—and has a right to learn—whether VPX is taking these positions as a defense to Monster's claims. *See Rivera*, 2017 WL 5163695, at *2 ("The purpose of interrogatories is to limit and clarify the issues for the parties in preparation for further trial proceedings.").[3]

### D.    Monster is Not Seeking "Premature" Expert Testimony

VPX objects to Monster interrogatories "as seeking information that calls for expert opinion or a legal conclusion." (Ex. 5 at 28, 36.) VPX believes that "[t]o the extent information will be analyzed by an expert, such information may be provided in an expert report." (*Id.* at 36.)

VPX is again wrong on the law. The mere fact that information will be provided to an expert does not shield it from discovery. Courts have repeatedly held that "[n]on-privileged facts known to" a party "are not immune from discovery simply because they will ultimately become part of an expert's opinion." *Montgomery v. Wal-Mart Stores, Inc.*, 2015 WL 11233384, at *4 (S.D. Cal. July 17, 2015); *Sony Corp. v. Vizio, Inc.*, 2009 WL 10675358, at *1 (C.D. Cal. Oct. 23, 2009) (rejecting party's argument that interrogatory on damages is solely "the subject of expert opinion" and ordering the party to "respond fully and completely to all discovery requests to the best of their knowledge, based on the information they have to date"). Indeed, courts have awarded sanctions for parties who withheld factual information in their possession "until the exchange of expert reports." *California v. Kinder Morgan Energy Partners, LP*, 613 F. App'x 561, 563 (9th Cir. 2015) (affirming sanctions).

---

[3] In any event, even if VPX had a responsibility to identify only *past* statements and provide sources for those statements, VPX's responses would still be deficient. In response to each of the interrogatories at issue, VPX claims that it "is not aware" of having made the statement, "**except as compared to other energy drinks offered by competitors**." (Ex. 5 at 21, 34, 42 (emphasis added).) VPX's qualification of its answer is material. If VPX is aware of having made these contentions about "competitors"—presumably including Monster—it should at minimum disclose these contentions and the bases for the same.

# HUESTON HENNIGAN LLP

Thus, VPX must provide Monster its best answer based on its current knowledge. It would be surprising if VPX—which calls itself a "pharmaceuticals" company;[4] claims to have conducted an "unprecedent 27 Double-Blind Placebo Controlled Gold Standard University Human Test Subject Studies"; and purports to be led by "the world's leading authority, author, and developer of performance enhancing supplementation" (ECF No. 61 ¶¶ 25, 33, 37)—knew so little about the ingredient it allegedly invented, patented, and now advertises so heavily.  But, if so, that too is a significant fact to which Monster is entitled.

\*      \*      \*

Monster's interrogatories seek relevant information from VPX.  VPX's responses are deficient and VPX lacks any valid objection for failing to provide complete and concise answers.  The Court should therefore compel VPX to comply with its discovery obligations and to supplement its responses to provide clear and concise responses to Monster's interrogatories.  Specifically, VPX should be ordered to either say that does not contend—and will not contend in this litigation—that Super Creatine (1) creates positive health effects for drinkers; (2) has an effect on the VITALS and SUBSTANCES in the human body; and (3) increases the circulating levels of creatine or creatinine in the human body; or that VPX does contend that Super Creatine has those effects and provide the facts supporting that contention.

Sincerely,

Moez Kaba

Attachments

cc:      Counsel of Record

---

[4] "In Owoc's words, 'the acronym VP(x) actually stands for Vital Pharmaceuticals with the X appearing lower than VP similar to how it appears in RX.'"  (ECF No. 61 ¶ 25.)

# EXHIBIT 1

1 | John C. Hueston, State Bar No. 164921
jhueston@hueston.com
2 | Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
3 | Steven N. Feldman, State Bar No. 281405
sfeldman@hueston.com
4 | HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
5 | Los Angeles, CA 90014
Telephone:   (213) 788-4340
6 | Facsimile:   (888) 775-0898

7 | Attorneys for Defendant
MONSTER ENERGY COMPANY, a Delaware
8 | corporation

9 |                UNITED STATES DISTRICT COURT

10 |               CENTRAL DISTRICT OF CALIFORNIA

11 |

12 | MONSTER ENERGY COMPANY, a        Case No. 5:18-cv-1882-JGB-SHK
Delaware corporation,
13 |                                  **PLAINTIFF MONSTER ENERGY
Plaintiff,              COMPANY'S FIRST SET OF
14 |                                  SPECIAL INTERROGATORIES TO
vs.                    DEFENDANT VITAL
15 |                                  PHARMACEUTICALS, INC.**
VITAL PHARMACEUTICALS, INC.,
16 | d/b/a VPX Sports, a Florida corporation;
and JOHN H. OWOC a.k.a. JACK
17 | OWOC, an individual,

18 |         Defendants.

19 |

20 |     PROPOUNDING PARTY:     Plaintiff Monster Energy Company

21 |     RESPONDING PARTY:      Defendant Vital Pharmaceuticals, Inc.

22 |     SET NO.:               One

23 |

24 |

25 |

26 |

27 |

28 |

PLAINTIFF MONSTER ENERGY COMPANY'S FIRST SET OF SPECIAL INTERROGATORIES TO
DEFENDANT VITAL PHARMACEUTICALS, INC.

0

**PLEASE TAKE NOTICE** that Plaintiff Monster Energy Company hereby requests that Defendant Vital Pharmaceuticals Inc. d/b/a VPX Sports answer, in writing, the following First Set of Interrogatories within thirty (30) days after service hereof pursuant to Federal Rule of Civil Procedure 33, *et seq.*

## DEFINITIONS AND INSTRUCTIONS

1.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Requests inclusive rather than exclusive; the singular shall include the plural and the plural shall include the singular; the use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Requests any response that might otherwise be construed outside their scope.

2.     The terms "reflecting, "referring," or "relating to," or any part thereof, in addition to their customary and usual meaning, mean and refer to discussing, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, concerning, constituting, mentioning, pertaining to, assessing, embodying, recording, stating, concerning, describing touching upon, or summarizing.

3.     The term "BANG" refers to the Bang Energy line of energy drink products.

4.     The term "DOCUMENT(S)" includes all written and graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, and drafts, and both sides thereof, including but not limited to: letters, correspondence, papers, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, studies, billings, invoices, worksheets, jottings, projections, notes, abstracts, advertisements, drawings, audits, charges, balance sheets, income statements, checks, diagrams, diaries, calendar logs, recordings, instructions, lists, minutes of meetings, orders, resolutions, audio or visual images, facsimile transmissions, telegrams, wires, cables, telexes, electronic mail, messages, text messages, chat messages sent via any

online messaging service (including, without limitation, WeChat, WhatsApp, Signal,

Facebook Messenger, Instagram, Hangouts, Google chat, and Skype), comments and

posts (whether text, photo, video, or otherwise) on SOCIAL MEDIA applications

(including, without limitation, Facebook, Instagram, and Twitter), resumes,

summaries, tabulations, tallies, statistical analyses, tapes, computer files stored by

any electronic means (including, without limitation, on cloud-based storage

platforms such as Dropbox, Google Drive, iCloud, OneDrive, and SharePoint),

computer printouts, and all other informal or formal writing or tangible things on

which any handwriting, typing, printing, video or sound is recorded or reproduced,

and any and all amendments or supplements to all of the foregoing, whether prepared

by a party or another PERSON.

5.      The term "MONSTER" refers to Plaintiff Monster Energy Company.

6.      The term "YOU" or "YOUR" refers to VPX, as well as its agents and
representatives.

7.      The term "VPX" refers to Vital Pharmaceuticals, Inc. d/b/a VPX Sports,
as well as its agents and representatives.

## <u>REQUEST FOR INTERROGATORIES</u>

**INTERROGATORY NO. 1**

State the formula for YOUR BANG energy drink, including the amount used
of each ingredient.  To the extent the formula is different for each flavor of BANG,
state the formula for each flavor.

**INTERROGATORY NO. 2**

If YOU contend that BANG contains creatine, state all bases for YOUR
contention.

**INTERROGATORY NO. 3**

If YOU contend that BANG contains creatine, identify all publications,
research papers, and DOCUMENTS supporting YOUR claim, and ***how*** that source
supports YOUR claim that BANG contains creatine.

PLAINTIFF MONSTER ENERGY COMPANY'S FIRST SET OF SPECIAL INTERROGATORIES TO
DEFENDANT VITAL PHARMACEUTICALS, INC.

**INTERROGATORY NO. 4**

If YOU contend that the "Super Creatine" in BANG creates positive health effects for drinkers, identify all publications, research papers, and DOCUMENTS supporting YOUR claim, and how that source supports YOUR claim that the "Super Creatine" in BANG creates positive health effects for drinkers.

**INTERROGATORY NO. 5**

State the locations and custodians of all DOCUMENTS and nonwritten files—including video and audio files—relating to the allegations and claims in Monster's First Amended Complaint (ECF 61).

Dated:  June 7, 2019                    HUESTON HENNIGAN LLP


By:  ___/s/ Steven N. Feldman_____
                                            Steven N. Feldman
                                            Attorney for Plaintiff Monster
                                            Energy Company

PLAINTIFF MONSTER ENERGY COMPANY'S FIRST SET OF SPECIAL INTERROGATORIES TO DEFENDANT VITAL PHARMACEUTICALS, INC.

# EXHIBIT 2

1  John C. Hueston, State Bar No. 164921
   jhueston@hueston.com
2  Moez M. Kaba, State Bar No. 257456
   mkaba@hueston.com
3  Steven N. Feldman, State Bar No. 281405
   sfeldman@hueston.com
4  HUESTON HENNIGAN LLP
   523 West 6th Street, Suite 400
5  Los Angeles, CA 90014
   Telephone:  (213) 788-4340
6  Facsimile:  (888) 775-0898

7  Attorneys for Defendant
   MONSTER ENERGY COMPANY, a Delaware
8  corporation

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  MONSTER ENERGY COMPANY, a          Case No. 5:18-cv-1882-JGB-SHK
    Delaware corporation,
13                                     **PLAINTIFF MONSTER ENERGY**
              Plaintiff,               **COMPANY'S SECOND SET OF**
14                                     **SPECIAL INTERROGATORIES TO**
          vs.                          **DEFENDANT VITAL**
15                                     **PHARMACEUTICALS, INC.**
    VITAL PHARMACEUTICALS, INC.,
16  d/b/a VPX Sports, a Florida corporation;
    and JOHN H. OWOC a.k.a. JACK
17  OWOC, an individual,

18            Defendants.

19

20

21        PROPOUNDING PARTY:     Plaintiff Monster Energy Company

22        RESPONDING PARTY:      Defendant Vital Pharmaceuticals, Inc.

23        SET NO.:               Two

24

25

26

27

28

**PLEASE TAKE NOTICE** that Plaintiff Monster Energy Company hereby requests that Defendant Vital Pharmaceuticals Inc. d/b/a VPX Sports answer, in writing, the following Second Set of Interrogatories within thirty (30) days after service hereof pursuant to Federal Rule of Civil Procedure 33, *et seq.*

## DEFINITIONS AND INSTRUCTIONS

1.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Requests inclusive rather than exclusive; the singular shall include the plural and the plural shall include the singular; the use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Requests any response that might otherwise be construed outside their scope.

2.     The term "BANG" refers to the Bang Energy line of energy drink products.

3.     The term "DOCUMENT(S)" includes all written and graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, and drafts, and both sides thereof, including but not limited to: letters, correspondence, papers, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, studies, billings, invoices, worksheets, jottings, projections, notes, abstracts, advertisements, drawings, audits, charges, balance sheets, income statements, checks, diagrams, diaries, calendar logs, recordings, instructions, lists, minutes of meetings, orders, resolutions, audio or visual images, facsimile transmissions, telegrams, wires, cables, telexes, electronic mail, messages, text messages, chat messages sent via any online messaging service (including, without limitation, WeChat, WhatsApp, Signal, Facebook Messenger, Instagram, Hangouts, Google chat, and Skype), comments and posts (whether text, photo, video, or otherwise) on SOCIAL MEDIA applications (including, without limitation, Facebook, Instagram, and Twitter), resumes, summaries, tabulations, tallies, statistical analyses, tapes, computer files stored by

any electronic means (including, without limitation, on cloud-based storage platforms such as Dropbox, Google Drive, iCloud, OneDrive, and SharePoint), computer printouts, and all other informal or formal writing or tangible things on which any handwriting, typing, printing, video or sound is recorded or reproduced, and any and all amendments or supplements to all of the foregoing, whether prepared by a party or another PERSON.

4.     The term "SUBSTANCES" refers to all substances naturally produced by the human body, including creatine and creatinine.

5.     The term "YOU" or "YOUR" refers to VPX, as well as its agents and representatives.

6.     The term "VITALS" includes body temperature, blood pressure, heart rate, and respiratory rate.

7.     The term "VPX" refers to Vital Pharmaceuticals, Inc. d/b/a VPX Sports, as well as its agents and representatives.

## REQUEST FOR INTERROGATORIES

**INTERROGATORY NO. 6**

Explain what the letters and numbers on the bottom of each BANG can refer to, including by identifying the information necessary to confirm date of production, location of production, production facility, and/or expiration date of the product indicated by each combination of letters and/or numbers.  For reference, Exhibit A contains pictures of bottoms of a sample of BANG cans.

**INTERROGATORY NO. 7**

If YOU contend that the Super Creatine contained in BANG has an effect on the VITALS and SUBSTANCES in the human body, identify all such effects and all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 8**

If YOU contend that the Super Creatine contained in BANG increases the circulating levels of creatine or creatinine in the human body, identify all bases

1  supporting YOUR contention, including the approximate amount of the alleged

2  increases.

3

4  Dated:  July 10, 2019                    HUESTON HENNIGAN LLP

5

6                                    By:  ___/s/ Steven N. Feldman_____

7                                         Steven N. Feldman
                                          Attorney for Plaintiff Monster
8                                         Energy Company

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MONSTER ENERGY COMPANY'S SECOND SET OF SPECIAL INTERROGATORIES TO
DEFENDANT VITAL PHARMACEUTICALS, INC.

# EXHIBIT A









1

## **PROOF OF SERVICE**

2       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

3

4       On July 10, 2019, I served the foregoing document(s) described as:

5   **PLAINTIFF MONSTER ENERGY COMPANY'S SECOND SET OF SPECIAL INTERROGATORIES TO DEFENDANT VITAL PHARMACEUTICALS, INC.**

6

on the interested parties in this action as stated below:

7

8       E-MAIL: hheffner@gordonrees.com;
        tbranson@gordonrees.com; mkanach@grsm.com;

9       mscully@grsm.com; sflynn@grsm.com;
        erica@ericawstump.com; frank.massabki@vpxsports.com;

10      jlewis@grsm.com; marc@kestenlex.com

11      *Counsel for Defendants Vital Pharmaceuticals, Inc. and John H. Owoc*

12  ☒   (BY E-MAIL) I transmitted a true copy of the foregoing document(s) to the e-mail addresses set forth above.

13

14  I declare under penalty of perjury that the foregoing is true and correct.

15      Executed on July 10, 2019, at Los Angeles, California.

16

17  _____          */s/ Sourabh Mishra*
        Sourabh Mishra

        (Type or print name)                    (Signature)

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

STEVEN N. FELDMAN

sfeldman@hueston.com
D: 213 788 4272
T: 213 788 4340
F: 888 775 0898

523 West 6th Street
Suite 400
Los Angeles, CA 90014

# HUESTON HENNIGAN LLP

Wednesday, September 18, 2019

**VIA E-MAIL**

Michael D. Kanach
Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
mkanach@gordonrees.com

*Attorney for Defendants Vital Pharmaceuticals, Inc. & John H. Owoc*

Re:    *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, No. 5:18-cv-01882-JGB-SHK,
       (United States District Court, Central District of California)

Dear Mr. Kanach:

I write regarding deficiencies in Defendants Vital Pharmaceuticals, Inc.'s ("VPX") response to Plaintiff Monster Energy Company's ("Monster") discovery requests. Specifically, I address herein Defendants' inadequate responses to Monster's (1) First Set of Special Interrogatories ("ROGs") to VPX; and (2) Second Set of ROGs to VPX.

In light of the below deficiencies, please let me know when you are available to meet and confer regarding the below issues and pursuant to Local Rule 37-1.

## I.    Monster's ROGs Concerning VPX's Positions Relating to Super Creatine

As VPX is aware, a key issue relating to Monster's false advertising claims is whether the alleged Super Creatine in BANG creates positive health effects for drinkers. (*See, e.g.*, ECF 61 (FAC) ¶ 53.) Indeed, Judge Bernal, held in his motion to dismiss order that "the FAC makes the specific and fully consistent allegations that…(2) Super Creatine is unlike creatine in that it has no health benefits…." (ECF 95 at 14.)

Monster thus served multiple ROGs targeted at assessing VPX's positions and evidence relating to this claim. Specifically:

- **ROG No. 4.** "If YOU contend that the 'Super Creatine' in BANG creates positive health effects for drinkers, identify all publications, research papers, and DOCUMENTS supporting YOUR claim, and how that source supports YOUR claim that the 'Super Creatine' in BANG creates positive health effects for drinkers."

- **ROG No. 7.** "If YOU contend that the Super Creatine contained in BANG has an effect on the VITALS and SUBSTANCES in the human body, identify all such effects and all DOCUMENTS that support YOUR contention."

# HUESTON HENNIGAN LLP

- **ROG No. 8.** "If YOU contend that the Super Creatine contained in BANG increases the circulating levels of creatine or creatinine in the human body, identify all bases supporting YOUR contention, including the approximate amount of the alleged increases."

In its answer to these ROGs, Defendants largely provided the same response, that: (1) the ROGs seek expert testimony; (2) VPX has never made a contention that Super Creatine in BANG has an effect on the human body but reserves its right to do so; and (3) cites irrelevant articles that do <u>not</u> identify what effect Super Creatine has on the human body.

VPX's offered responses are plainly inadequate. "Super Creatine" is a compound that VPX claims that its CEO developed and that only VPX can purportedly use in beverages based on its patent. There is no reason why VPX cannot state its position and any support for how the Super Creatine in BANG affects the human body, including, but not limited to, whether it creates positive health effects on its own, whether it has an effect on the vitals and substances in the human body, and whether it increases the circulating levels of creatine in the human body. Indeed, it would be surprising if VPX did not already have this information, as it has widely marketed the Super Creatine in BANG and sold BANG beverages that allegedly contain Super Creatine.

With the upcoming opening expert report deadline and fact discovery deadline, it is imperative that VPX promptly supplement its responses to clearly identify its position with respect to how the Super Creatine in BANG affects the human body.

## II.     Monster's ROG Concerning the BANG Can

In **ROG No. 6**, Monster asked that VPX "Explain what the letters and numbers on the bottom of each BANG can refer to, including by identifying the information necessary to confirm date of production, location of production, production facility, and/or expiration date of the product indicated by each combination of letters and/or numbers." To make clear what letters and numbers the ROG referred to, Monster attached Exhibit A as an example with pictures of bottoms of a sample of BANG cans.

In response, VPX stated generally what the letters and numbers refer to, but only included the requested specific information about the four sample cans that Monster provided.

VPX's response is incomplete. To fully answer this ROG, VPX must identify all of the location symbols that VPX uses on BANG and what they refer to. Moreover, VPX must identify how a person can determine the date of production, including, but not limited to, by using the "best by" date.

\*\*\*

As stated above, Monster wishes to resolve these disputes without Court intervention and thus respectfully requests that Defendants provide a time that they are available to meet and confer. If Defendants do not provide such a time, Monster intends to move to compel.

# HUESTON HENNIGAN LLP

Sincerely,

Steven N. Feldman

cc: Other counsel of record

# EXHIBIT 4

| | |
|---|---|
| From: | Sourabh Mishra |
| To: | Michael Kanach |
| Cc: | hheffner@grsm.com; Steven N. Feldman; Michael Todisco; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com; Moez M. Kaba |
| Subject: | RE: Monster v VPX - VPX Supplementing interrogatories |
| Date: | Monday, November 4, 2019 4:23:14 PM |

Michael,

We have discussed the point you raised below multiple times by e-mail and phone.  To name just one example:

- In the October 1 email below, you stated: "Please point to the specific statements where you believed VPX has made those contentions . . . ."
- The same day, I responded: "It seems from your below e-mail that VPX's position is that it has never claimed that the Super Creatine in BANG creates positive health effects.  As shown by, among other things, paragraphs 46 to 48 of the First Amended Complaint ('FAC'), this is wrong.  Monster is simply seeking VPX's support for its positions based on the information in its possession, as is its right."
- And then on October 11, you claimed: "VPX is working on a response to supplement those 4 interrogatories and anticipates serving it on Monster within 2 weeks, by October 25."

You then last week served interrogatory responses that do not address the deficiencies Monster identified and now are making the *same* flawed arguments you made more than a month ago before you agreed to supplement.  Based on these responses and your email below, Monster is forced to conclude that VPX is not willing to state whether it is or is not taking these positions.

Monster thus has no choice but to move to compel.  We will let the Court know that the parties are available on November 5, 8, 12, and 13.

Regards,
Sourabh

**Sourabh Mishra**
D: 949.356.5536

---

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Monday, November 4, 2019 3:24 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com; Moez M. Kaba <mkaba@hueston.com>
**Subject:** RE: Monster v VPX - VPX Supplementing interrogatories

Hi Sourabh,
I understand Monster doesn't like the answers to which VPX has responded, for the "if you contend" contention interrogatories (Interrogatories 4, 7, and 8), which are essentially hypothetical questions at this point.  If you believe that these are not hypothetical statements, please point us to those specific contentions so VPX can review and supplement if necessary.

We have conducted a reasonable investigation (which continues via the document review under way) in an effort to furnish all information available to VPX; however, at this time, we are still not aware of any such contentions made by VPX.  As you know, we asked and Monster has not provided any information for where VPX has made those contentions.  For example, as addressed in the supplemental interrogatory responses, Monster stated during meet and confer discussions that there were statements in the allegations in specific paragraphs of the First Amended Complaint.  We reviewed those statements and related video and public statements from VPX and Jack Owoc and have determined that those half-quotations were not made about the creatyl-l-leucine in BANG.  Monster has not – despite requests for this information – provided any information for where these half quotes originate.
If you point us to specific statements that Monster claims VPX has made related to these interrogatories, VPX can review those and try to avoid unnecessary motion practice.

If Monster does not want to provide this information and would rather move the court to compel further supplemental interrogatory responses, Holly and I are available November 12 and 13.

Regards,   -MIKE

---

**MICHAEL D. KANACH**  |  Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn

---

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Sunday, November 3, 2019 5:42 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>; Moez M. Kaba <mkaba@hueston.com>
**Subject:** RE: Monster v VPX - VPX Supplementing interrogatories

Michael,

We have not heard from you on the below.  We intend to e-mail Judge Kewalramani by close of business tomorrow with our availability for a pre-motion telephonic

hearing: November 5, 8, 11, 12, and 13.  Please let us know if any of these dates do <u>not</u> work for you.  If we do not hear from you by 5pm PT tomorrow, we will assume all of those dates work for you.

Regards,
Sourabh

**Sourabh Mishra**
_____

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Thursday, October 31, 2019 3:58 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com;
sfrey@grsm.com; Moez M. Kaba <mkaba@hueston.com>
**Subject:** RE: Monster v VPX - VPX Supplementing interrogatories

Michael,

We received VPX's supplemental responses this morning.  Despite Monster's willingness to provide VPX an additional 2 weeks to supplement these responses, VPX has still not answered the questions requested by the interrogatories.

For example, we still cannot tell from VPX's eight-page answer to Interrogatory 4 whether VPX contends that the Super Creatine in BANG creates positive health effects for drinkers.  If the answer is yes, VPX must provide what those positive health effects are and its support, which VPX has still not done.  If the answer is no, VPX must clearly state so in its response, which VPX has also not done.

Similarly, we cannot tell from VPX's confusing and meandering responses to Interrogatories 7 and 8 whether VPX contends that the Super Creatine contained in BANG has an effect on the VITALS and SUBSTANCES in the human body and whether VPX contends that the Super Creatine contained in BANG increases the circulating levels of creatine or creatinine in the human body.  Again, VPX needs to clearly state whether the answer to either question is yes or no and, if yes, provide its basis.

Based on these responses, Monster is forced to move forward to compel responses to Interrogatories 4, 7, and 8 next week with Magistrate Kewalramani and will send him an e-mail tomorrow evening with the availability for a telephonic conference that you included in your e-mail below.

However, if VPX supplements the above interrogatories in a straightforward and clear manner—including, but not limited to, answering the precise questions posed by the interrogatories—by **5 pm PT tomorrow**, Monster is willing to consider putting off the conference for now.  Without receiving an additional supplementation by then, Monster will send Magistrate Kewalramani an e-mail tomorrow evening.

Regards,
Sourabh

**Sourabh Mishra**
_____

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Friday, October 25, 2019 7:59 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com;
sfrey@grsm.com
**Subject:** Monster v VPX - VPX Supplementing interrogatories

Sourabh,
Given Defendants' deadline next Wednesday related to the objections to the Magistrate Judge's Order compelling production of BANG's formula, VPX anticipates that it will supplement Interrogatory No. 1 on that day along with filings its objections.
In connection with those objections and likely supplementation of that interrogatory, we are still working on the supplemental responses to other interrogatories (4, 6, 7, 8) and will do so on Wednesday next week.

In your prior email, you asked for dates available the week of November 4th in the event that Monster chooses to move to compel with respect to those supplemented Interrogatories, even after VPX supplements them.  I can be available on the 4th, 5th, or 8th.

Regards,   -MIKE

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Friday, October 11, 2019 4:31 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson
<tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

Thank you for your e-mail.  We hope that VPX's supplemental response will sufficiently address the deficiencies in its interrogatory responses.  Please confirm by Monday, 10/14, that VPX's supplemental responses will include the substantive responses that Monster has requested throughout this meet and confer process.

If Monster does not receive interrogatory responses by October 25 or the supplemental responses do not sufficiently address the deficiencies, we will have no choice but to request a prompt telephonic conference with Judge Kewalramani for the week of November 4.  Please be prepared to promptly give us your availability for a telephonic conference for that week.  We cannot delay this issue any longer.

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Friday, October 11, 2019 4:22 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,
Thanks for your email.

VPX is working on a response to supplement those 4 interrogatories and anticipates serving it on Monster within 2 weeks, by October 25.

Regards,   -MIKE

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Friday, October 11, 2019 4:17 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael – What is your final answer on the below?  We'll assume that you are available Tuesday (10/15); Thursday (10/17); and Friday (10/18) for a conference with Judge Kewalramani if we do not hear otherwise from you today.

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Tuesday, October 8, 2019 12:28 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

As I stated in our correspondence below, I hope that taking this extra time is in furtherance of a genuine desire to meet and confer to resolve our disputes and not simply a delay tactic.  We look forward to your final response by this **Friday, 10/11, at 4pm PT**.  If VPX is not willing to amend as Monster requests, please let us know which three days next week you are available for a telephonic conference with Judge Kewalramani:  Monday (10/14); Tuesday (10/15); Thursday (10/17); and/or Friday (10/18).

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Monday, October 7, 2019 3:45 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,
I am hoping to provide you with a further response by this Friday as to supplementation of those 3 interrogatories.
As you know, we have been parallel-tracking several discovery matters with Monster in this case including last week's document production, ongoing meet and confer regarding both parties' proposed search terms and objections, and objections to discovery to third party customers (GNC and The Vitamin Shoppe).  We will let you know if we have a final position sooner.

Regards,   -MIKE

---

**MICHAEL D. KANACH**  |  Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Friday, October 4, 2019 3:39 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

When do you expect to provide us with a final position on whether VPX will agree to supplement Interrogatories 4, 7, and 8?  It has now been well beyond ten days since Monster served its LR 37-1 letter and so Monster is well within its right to begin the formal motion to compel process.

If you cannot send us a final answer by **Monday, October 7 at 5pm PT**, we will e-mail Judge Kewalramani and offer Tuesday, Thursday, and Friday as the parties' availability for a telephonic conference.  Please let us know as soon as possible.

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN LLP**

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Friday, October 4, 2019 3:33 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,
We are still considering Monster's request to VPX to supplement certain interrogatories.  You asked for our position by today.  I don't have a final position.

Regards,   -MIKE

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Tuesday, October 1, 2019 5:55 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

It would have been helpful if you had requested the below clarifications during the 10 days provided in LR 37-1 for the parties to meet and confer. We hope that your below requests are truly in furtherance of a genuine desire to meet and confer and not simply a delay tactic.

With respect to your questions:

1.  Interrogatory No. 4 asks whether VPX contends that the "Super Creatine" in BANG creates positive health effects and, if so, what the support for that is. It seems from your below e-mail that VPX's position is that it has never claimed that the Super Creatine in BANG creates positive health effects. As shown by, among other things, paragraphs 46 to 48 of the First Amended Complaint ("FAC"), this is wrong. Monster is simply seeking VPX's support for its positions based on the information in its possession, as is its right. Relatedly, Interrogatories Nos. 7 and 8 further attempt to clarify these health effects by asking how the Super Creatine in BANG effects the vitals, substances, and circulating levels of creatine in the body. To reiterate, it would be surprising if VPX did not have this type of basic information about the effects of its own product on humans – especially when it makes claims about the health effects of Super Creatine – and thus Monster is not requesting any information that VPX should not reasonably already have in its possession. This thus does not implicate a need for expert testimony at this stage.

2.  Interrogatories Nos. 4, 7, and 8 relate to Monster's false advertising claims in its First, Second, and Third Causes of Action. And they also relate to Monster's allegation in paragraph 53 of the FAC that the Super Creatine in BANG is useless.

3.  Interrogatories Nos. 4, 7, and 8 all request information relating to the "Super Creatine contained in BANG" or "in BANG." This necessarily relates to the effect of the amount of Super Creatine in BANG.

That said, it has now been 13 days since Monster served its LR 37-1 letter. Please provide us with VPX's final position by **4pm PT this Friday, October 4** so that we can either settle this discovery dispute or bring it to the attention of the Court. If VPX is not willing to amend its interrogatory responses, please let us know which three days next week (other than Wednesday (10/9)) you are available for a telephonic conference with the Court.

Regards,
Sourabh

**Sourabh Mishra**
_____
**HUESTON HENNIGAN** LLP
D: 949.356.5536
smishra@hueston.com
Biography

---

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Tuesday, October 1, 2019 4:42 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,

First, I will start by saying that VPX is still considering your request that VPX amend its responses to provide further substantive responses – in addition to the substantive responses already provided.
This email is intended to move the discussion forward.

Second, Monster's interrogatories are drafted as "if you contend" and I have not been able to locate any statements in this litigation or otherwise where VPX has made the contentions referred to in these interrogatories. Essentially, Monster is serving early contention interrogatories where VPX hasn't even made those contentions; and VPX maintains its objections that this is not proper at this time and that they seek early expert testimony. To that end, I will note that Monster appears to be recognizing that these interrogatories are contention interrogatories and require expert testimony, regardless of how VPX responds.

As mentioned above, however, VPX is still considering Monster's meet and confer positions.
To the extent Monster believes that VPX has made these contentions in the past, please advise so that VPX can consider these Interrogatories in context (or as you put it "VPX's current knowledge" or "to the best of their knowledge").
Please point to the specific statements where you believe VPX has made those contentions (either by providing a link or an attachment, etc.).

Third, I suspect the Court will likely ask which causes of action these contentions relate to, so please advise.
I don't see how these interrogatories are relevant to the remaining causes of action brought by Monster which were not dismissed.

Fourth, it seems from your email that you are reframing your Interrogatory requests to seek information that the Interrogatories do not seek.
Specifically, your email below references the amount of an ingredient, but that is not what the interrogatories ask for.

We look forward to your response to #2 and #3 so VPX can continue to discuss the sufficiency of VPX's responses to these interrogatories.

Regards,  -MIKE

_____
**MICHAEL D. KANACH** | Partner

**GORDON REES SCULLY MANSUKHANI**

**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn

---

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Sunday, September 29, 2019 6:52 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

Thank you for confirming that VPX intends to supplement its response to Interrogatory No. 6, the interrogatory concerning can stamps.  We look forward to receiving that amended response soon.

With respect to the interrogatories concerning the Super Creatine in BANG discussed in Monster's Rule 37-1 letter, I believe we discussed each of the issues presented in your e-mail below during our September 23 meet and confer.  To reiterate, Monster is permitted in discovery to understand what VPX's current knowledge and positions are on these issues, regardless of who has the ultimate burden of proof at trial.  *See, e.g.* *Sony Corp. v. Vizio, Inc.*, 2009 WL 10675358, at *2 (C.D. Cal. Oct. 23, 2009) ("[T]he parties must respond fully and completely to all discovery requests to the best of their knowledge, based on the information they have to date.").  It would be very surprising if VPX did not have internal information about basic facts about the effect of the Super Creatine in BANG on humans when it has been selling BANG in this form for several years.  Your current responses are insufficient because they do not provide that basic information requested by interrogatories served: for example, how does the amount of the Super Creatine in BANG affect body temperature, blood pressure, heart rate, and circulating creatine levels in the body?

Again, Monster wants to resolve this issue as soon as possible.  Please let us know by **Tuesday, October 1 by 5pm PT** if VPX intends to supplement its answers to Interrogatories 4, 7, and 8 to answer the queries posed by those interrogatories.  If VPX does not intend to supplement its answer, we will e-mail Judge Kewalramani to set up a telephonic conference on this issue, and so please let us know by that same time if Wednesday (10/2), Thursday (10/3), and Friday (10/4) of this week do not work for you.  (If any of those dates do not work, please offer alternate dates of availability.)

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

---

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Friday, September 27, 2019 4:06 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** Re: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,
At this time, we are still in discussion with our client about Monster's request that VPX consider amending the Interrogatories referenced in your letter.  I understand VPX will supplement its response to at least one Interrogatory (#8 as to can stamps), but that supplemented response is not ready to serve today.

To help assess your position, can you please provide Monster's basis for why a non-expert opinion from a corporate defendant, VPX, is relevant to issues (legal contentions) for which the jury may rely on experts?  I will note that Monster, who has not disputed that it has the burden, has not provided any initial expert or non-expert position for VPX to rebut.

Can you please also explain why Plaintiff believes Defendants' responses so far are not sufficient in response to those Interrogatories?  Your email below misrepresents the actual responses (below you state "With respect to VPX's positions relating to creatyl-L-leucine, you claim that it is a matter for expert discovery and that VPX will not offer a substantive position before expert discovery.")  Your email is not accurate.  VPX has provided substantive responses.  Please let us know why you believe those responses are not sufficient (other than because Monster seeks early expert disclosures).

Regards,  -MIKE

On Sep 27, 2019, at 2:52 PM, Sourabh Mishra <smishra@hueston.com> wrote:

    Michael,

Have you had a chance to check with your client about the parties' dispute concerning VPX's positions relating to creatyl-L-leucine presented in Monster's Rule 37-1 letter?  If VPX does not anticipate changing its position on this issue, please send us three days you are available for a telephonic conference with Judge Kewalramani.   We are available next week on Wednesday, Thursday, and Friday.  We can also be available the week after, but we would like to settle this dispute as soon as possible.

Regards,
Sourabh


**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Tuesday, September 24, 2019 3:56 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Hi Sourabh,
We are looking into it.
We are also preparing a first set of document production, which will give us a better idea of timing.

(While this reply addresses your follow up email, I will note that this email does not attempt to correct differences in the summary below – some of which we have already addressed separately.)

Regards,   -MIKE


**MICHAEL D. KANACH** | Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn


**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Tuesday, September 24, 2019 3:52 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>; JoAnna Doherty <jmdoherty@grsm.com>; Sara Anderson Frey <sfrey@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

You had said that you would let us know by yesterday if next Tuesday, 10/1, is realistic for VPX's first production of documents.  Can you please let us know?

Regards,
Sourabh


**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
smishra@hueston.com
Biography

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Monday, September 23, 2019 6:08 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Michael,

Thanks for speaking with us today.  I'm sending this email to summarize our call to ensure that we're on the same page moving forward. Any time frames discussed on our call are **bolded** below.

### Search Terms

Both parties have previously sent objections to certain search terms.  We agreed that by this **Wednesday, September 25, at 4 p.m.,** both parties will respond to the other side's objections by, for example, withdrawing the search term, narrowing the search term, or standing by the term as written.

### Production Schedule

We discussed beginning rolling productions **by next Tuesday, October 1,** for those search terms that neither party objected to.  You stated that you would follow up with us **today** about whether your vendor would have issues meeting that schedule.  You also stated that certain non-ESI information might be ready for earlier production.

### Production of Social Media Information

You stated that you would provide Monster with a list of VPX/Owoc social media accounts and document production related to several of those accounts.

### Third-Party Subpoenas

- Dr. Antonio: We stated that we have taken Dr. Antonio's deposition off calendar and are likely to reschedule for October or November.

- ISSN: We informed you that we had not yet heard from ISSN's counsel.  You requested that we provide proof of service, which we will send separately.

- GNC & Vitamin Shoppe: You requested that we withdraw our document subpoenas to GNC and Vitamin Shoppe.  We declined.  You then stated that you would send further objections in writing regarding your basis for a motion to quash.

You also expressed concern that our subpoenas seek privileged information.  We clarified that we are seeking only non-privileged documents and only require that the third parties produce a privilege log if they are withholding documents based on privilege grounds, as is typical and required.  You further stated that you would provide us information about Mr. Kesten's potential representation of Vitamin Shoppe so that we can consider your request to narrow our subpoena.

Your e-mail below mischaracterizes Monster's positions, the parties' ongoing meet and confers about search terms, and the relevance of these third party documents.  For example, your point below that the terms "GNC," "Vitamin Shoppe," and others are directed toward litigation documents is misguided and incorrect.  Indeed, as we mentioned on the call, the issue of *why* retailers are choosing to stock BANG and what they believe differentiates BANG from other products is clearly relevant to this litigation.  That issue should not pose any "privilege" concerns.

You also requested proof of service for the ISSN, GNC, Vitamin Shoppe subpoenas.  We will send those separately.  With respect to Dr. Antonio, as discussed, Dr. Antonio's counsel accepted service of his subpoenas.

### Monster Responses to RFPs 90-93

You had asked to meet and confer about VPX's RFP requests relating to formulas.  We agreed that Judge Kewalramani's order on VPX's motion to compel Monster's Reign formula will inform this dispute and that we would discuss those requests after he issues his order.

You also asked to meet and confer regarding Monster's M Claw trade dress.  You stated that you would send us Rule 37-1 letter describing your basis for requesting this information.

### Monster's Rule 37-1 Letter

We discussed Monster's Rule 37-1 letter.  You stated that you hadn't had the chance to speak with your client yet about this request.

With respect to VPX's positions relating to creatyl-L-leucine, you claim that it is a matter for expert discovery and that VPX will not offer a substantive position before expert discovery.  With respect to the letters and numbers on the bottom of BANG can, we discussed that Monster requires VPX to identify all iterations of the production facility code and what they correspond to; and to disclose how the "best by" date relates to the production date of an individual can.

We will follow up this **Friday, September 27** to see if you have had a chance to check with your client on these issues and/or if there is any chance to resolve our disagreements.

**

Regards,
Sourabh

Sourabh Mishra

**HUESTON HENNIGAN** LLP

D: 949.356.6536
smishra@hueston.com
Biography

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Monday, September 23, 2019 3:29 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** hheffner@grsm.com; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; tbranson@grsm.com; jmdoherty@grsm.com; sfrey@grsm.com
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Sourabh and Steven,
As discussed on our meet and confer call today, below are the email search terms to which I said Defendants are specifically objecting based on privilege, in addition to Thermolife.
These terms seem aimed specifically at litigation-related documents.

1. GNC
2. Vitamin Shoppe
3. Thermolife
4. Jose Antonio
5. Catherine w/3 Davis (an attorney)

As discussed during today's call, Defendants will provide further comments regarding the search terms VPX proposed to which Monster objected – and that mutual exchange will take place on Wednesday at 4pm PST.

Privileged documents:
Mr. Feldman mentioned on today's call that Monster was not specifically seeking the prior litigation documents from VPX relating to GNC and Vitamin Shoppe.  He said you were not aware of prior litigation involving Thermolife and Vitamin Shoppe where Marc Kesten was counsel for Vitamin Shoppe.  You asked us to provide proof.  *See* US District Court case 0:16-cv-60691 in the Southern District of Florida: WERTEKS CLOSED JOINT STOCK COMPANY d/b/a WERTEKS PHARMACEUTICAL COMPANY and THERMOLIFE INTERNATIONAL, LLC v. VITAMIN SHOPPE, INC., and VITAL  PHARMACEUTICALS, INC. d/b/a VPX.  The docket is clear in that case that Mr. Kesten made an appearance on behalf of Vitamin Shoppe in November 2016, and that case is currently on appeal.  GNC was likewise sued by Werteks and Thermolife.

Mr. Feldman mentioned that Monster was not seeking privileged documents from GNC or Vitamin Shoppe, however, he also said that Monster would not specifically narrow the requests to obviate the need for review and production of a privilege log.  We request that you reconsider your position.

With respect to Vitamin Shoppe, GNC, and Jose Antonio, we expect Monster will continue to meet and confer as to search terms (i.e., Monster will propose narrower terms instead of withdrawing those search terms).  We suspect the parties' efforts to further meet and confer as to those terms may obviate the need for Monster's subpoenas to those third parties (specifically GNC, Vitamin Shoppe, and Jose Antonio) seeking duplicative information and documents.  Until then, Defendants continue to object to Monster's subpoenas to those third parties for the reasons raised in Defendants' written objections including those based on privilege, harassment, and proportionality, to name a few.

We understand from today's call that Monster is not willing to either withdraw those subpoenas or amend the scope of the broad document requests.  We also note you represented during today's call that those subpoenas to GNC and Vitamin Shoppe were broader than the document requests you sent to VPX.  And you used that as a basis for seeking documents from those third parties instead of from VPX.  That is not proper and appears to be in contrast to the Stipulated ESI Order (ECF 126) where the parties agreed to work together to limit discovery to relevant documents, custodians, and search terms.  Now, instead, Monster is using subpoenas as an "end run" around the ESI order.

Again, Defendants raise our objections related to proportionality and harassment of these third parties, including VPX's customers, and ask that Monster withdraw these subpoenas to GNC and Vitamin Shoppe.

As requested on today's call, please provide us with proof of service of the subpoena and witness fees to GNC, Vitamin Shoppe, Jose Antonio, and ISSN.

Regards,   -MIKE

---

**MICHAEL D. KANACH**  |  Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn

---

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Friday, August 30, 2019 10:10 AM

**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>
**Subject:** RE: [Monster/VPX] Meet and Confer re Search Terms

Sourabh,

Here are the remaining terms. We think this is everything Monster proposed.
We apologize for the fact that our vendor missed these terms and given the number of terms we did not realize this earlier.

**Objections Based on Relevance, Overbroad, Number of Hits, and Proportionality, and further objections referenced in the chart below:**

| |
|---|
| MONS* OR MNST OR Sacks OR Hilton OR Schlosberg |
| Creat* – over 300,000 hits, overbroad, relevance. Note: VPX has agreed to review other more narrow terms which contain this "creat" prefix with other terms. |
| (SUPER w/3 CREATINE) OR "creatyl-l-leucine" OR (creatyl w/3 leucine) OR supercreatine OR "Super Creatine" – overbroad |
| (stud* OR test* OR Scien*) w/50 (sponsor* OR fund* OR pay* OR paid OR promot* OR support*) – overbroad, relevance, seeks publicly available information about what public studies VPX sponsored/promoted/supported, etc. |
| (shelf w/3 space) OR (retail w/3 space) OR ((place* OR arrang*) w/10 BANG) OR (retail w/50 (shelf OR cooler)) – overbroad, relevance. |
| contract w/50 (retail* OR distrib* OR store*) – over 75,000 hits, overbroad, relevance, seeks proprietary business information unrelated to this case. |

Regards,   -MIKE

---

**MICHAEL D. KANACH** | Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211  |  P: 415-986-5900  |  mkanach@grsm.com

www.grsm.com
vCard  |  Bio  |  LinkedIn

---

**From:** Michael Kanach <mkanach@grsm.com>
**Sent:** Thursday, August 29, 2019 12:28 PM
**To:** Sourabh Mishra <smishra@hueston.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>; Timothy Branson <tbranson@grsm.com>
**Subject:** Re: [Monster/VPX] Meet and Confer re Search Terms

Sourabh,
In reviewing previous emails today between counsel, and comparing to the list of objections we sent to you last night, we just realized our vendor did not provide us with hit information for all of the search terms you provided to us. This was not intentional. And we are looking into it. However, more importantly, we have requested the hit reports again.

We will follow up with further information once we receive it from our vendor and have an opportunity to review.

Regards,   -MIKE

Sent from my iPhone

On Aug 28, 2019, at 11:59 PM, Michael Kanach <mkanach@grsm.com> wrote:

Hi Sourabh,
Thanks for your email.  The email below is on behalf of Owoc and VPX, even where it just refers to VPX.

I will begin by saying we are still reviewing some of these objections and non-objectionable terms with our vendor to try to determine proposed ways to make some of these search terms more manageable (either by reducing the number and/or by targeting to documents that are more likely to be relevant and responsive), and to determine if there are any further bases for objections.

Below are terms to which we do not currently object based on the search terms by themselves, followed by objections and some proposed solutions (some of which we discussed on our call yesterday).
We are working with our vendor to determine the burden of this review set based on quantity of direct hits and families and unique hits, so we can determine if we have any further objections or solutions, including limiting searches to date ranges or specific custodians.  Likewise, we also reserve the right to continue to meet

and confer after review begins if additional burdens or proportionality concerns arise, including related to redactions (e.g., formulas).  Defendants do not waive any objections raised in their responses to requests for documents, including as to responsiveness, relevance, proportionality, privileged, and the other objections raised.

We also have a list below of search terms to which we object based on relevance and we seek Monster's position as to why they are relevant to Monster's claims or VPX's defenses in this case.  We also object to one term based on privilege and we object with respect to Marc Kesten who is in house counsel with respect to privilege.

**No current objections to these terms:**

| | |
|---|---|
| 1. | BANG w/50 creatinine |
| 2. | BANG w/50 influenc* |
| 3. | GRAS AND ((SUPER w/3 CREATINE) OR creatyl-l-leucine OR (creatyl w/3 leucine) OR creat*) |
| 4. | Recruit* w/50 pric* |
| 5. | GRAS AND creat* |
| 6. | BANG AND psychomot* |
| 7. | BANG AND (blood w/50 brain w/50 barrier) |
| 8. | BANG AND depress* |
| 9. | BANG AND "cell swell" |
| 10. | BANG AND (water w/50 retention) |
| 11. | BANG AND cogniti* |
| 12. | BANG AND (attention w/50 span) |
| 13. | BANG AND neuroprotec* |
| 14. | BANG AND "antioxidant" |
| 15. | BANG AND (creat* w/50 transport w/50 deficiency w/50 syndrome) |
| 16. | BANG AND artificial |
| 17. | REIGN w/50 (trademark OR first OR rip-off OR ripoff) |
| 18. | Vigorous w/3 train* w/3 program |
| 19. | Patent w/50 BANG |
| 20. | 466 w/3 patent |
| 21. | Owoc w/50 inventor |
| 22. | ISSN |
| 23. | (sports w/3 nutrition w/3 society) |
| 24. | Kalman |
| 25. | "Ziegenfuss Rawson" |
| 26. | Schwartz |
| 27. | BANG AND ("UCLA") |
| 28. | BANG AND ("Florida State") |
| 29. | BANG AND ("Baylor") |
| 30. | BANG AND ("Southern Maine") |
| 31. | BANG AND (Nova) |

**Search Terms that Must be Narrowed**

Objections with Proposed Solutions:
Below are some objections we have as to relevance, number of hits and proportionality, and proposed potential solutions that we are looking into.
Some of these solutions we discussed during the call on August 27, 2019. We need to continue discussions with our vendor to see if these proposals make a difference and how much of a difference they make with respect to narrowing.  We will need to follow up with you after we receive further information.

| Objectionable Term | Proposed Solution |
|---|---|
| 1. Jose OR Antonio OR ISSN OR (sports w/3 nutrition w/3 society) OR Kalman OR "Ziegenfuss Rawson" OR Schwartz | • As discussed on our call August 27 call, we are working with our vendor to determine whether "Jose /3 Antonio" remains objectionable. Monster proposed that narrower term.<br>• As set forth in the chart above, VPX removed objections to the remaining terms: OR ISSN OR (sports w/3 nutrition w/3 society) OR Kalman OR "Ziegenfuss Rawson" OR Schwartz<br>• Over 100,000 hits |
| 2. BANG w/50 (Insta* OR Faceb* OR FB OR IG OR Twit* OR Yout* OR (social w/3 media)) | • As discussed on our call August 27 call, we are working with our vendor to determine whether full spelling of the names of these social media companies (Instagram, Facebook, Twitter, and Youtube) to replace these shorthand references remains objectionable. Monster appeared willing to agree to those narrower terms.<br>• Over 100,000 hits |
| 3. REIGN OR (Royalt* w/5 nutrit*) | • We are working with our vendor to determine whether "REIGN AND (Royalty* w/5 nutrit*)" remains objectionable. This potential proposal was not discussed during our call. |
| 4. BANG AND ("UCLA" OR "Florida State" OR "Baylor" OR "Southern Maine" OR "Tampa" OR "Pittsburgh" OR "Memphis" OR Nova) | • As discussed on our call August 27 call, we are working with our vendor to determine whether adding the word "University" to the terms (1) Tampa, (2) Pittsburgh, and (3) Memphis remains objectionable. Monster appeared willing to agree to those narrower |

| | terms. |
|---|---|
| | • As set forth in the chart above, VPX removed objections to the remaining terms: BANG AND ("UCLA" OR "Florida State" OR "Baylor" OR "Southern Maine" OR Nova) |
| 5. Nova OR (Southeast/ w/5 (univ* OR coll* OR Florid*)) OR NSU | • We are working with our vendor to determine whether adding BANG to this search term remains objectionable. This potential proposal was not discussed during our call. |
| | • However, we did discuss the BANG AND NOVA term, discussed above (#4 of this section). |

**Objections Based on Relevance, Overbroad, Number of Hits, and Proportionality, and further objections referenced in the chart below:**

| | |
|---|---|
| 1. | Anheuser OR Busch OR Anheuser-Busch OR "AB" – third party |
| 2. | Stephen w/3 Cohen |
| 3. | Laitinen OR McMahon – custodians, overbroad |
| 4. | GNC OR (Vita* w/3 Shop*) – third parties, over 75,000 hits |
| 5. | Owoc w/50 (author OR write* OR book OR article OR journal*) – custodians, overbroad |
| 6. | Sponsor* w/50 BANG |
| 7. | BANG w/50 (market* OR advert*) – over 200,000 hits |
| 8. | BANG w/50 dev* -- redaction concerns relating to formula |
| 9. | ("Red Bull" OR "RB") AND (recruit* OR pric*) – third parties |
| 10. | BANG AND ("health" OR phys*) |
| 11. | Consum* AND compl* -- over 75,000 hits |
| 12. | FTC OR "Federal Trade" OR NAD OR (National w/2 advertising w/2 division) – third parties |
| 13. | BANG w/50 (design OR packag* OR formu*) – redaction concerns relating to formula, over 100,000 hits |
| 14. | Financ* OR sales or "market share" OR profit OR (annual w/5 report) OR volum* -- over 600,000 hits |
| 15. | FDA OR "Food and Drug" OR "Food & Drug" – third party |
| 16. | BANG AND ("I.Q." OR IQ) |
| 17. | BANG AND CoQ* -- redaction concerns relating to formula |
| 18. | BANG AND BCA* -- redaction concerns relating to formula |
| 19. | BANG AND (branch* w/50 chain* w/50 amino* w/50 acid*) -- redaction concerns relating to formula |
| 20. | BANG AND Alzheimer* |

In addition to the objections above based on number of hits and proportionality, VPX is objecting to the following terms based on relevance, and it is VPX's position that these are no basis for these searches and review would be harrasing.

| | |
|---|---|
| 21. | Calif* |
| 22. | RX w/50 (pharm* OR (drug w/3 co*) OR prescript*) |
| 23. | Lobby* w/50 (diet* OR drink* OR energ*) |
| 24. | "high school" w/50 science |
| 25. | Catherine w/3 Davis |
| 26. | BANG AND IFG-1 |
| 27. | Pixie OR pixiedust* OR (Pix* w/3 dust*) |
| 28. | BANG AND Sarco* |
| 29. | BANG AND "satellite cell" |
| 30. | BANG AND retard* |
| 31. | Thermo* |

**Objections: Privilege:**
In addition to those objections previously raised, VPX further objects to this term as seeking privileged information about other litigation with Thermolife.

| | |
|---|---|
| 1. | Thermo* |

Regards,   -MIKE

**MICHAEL D. KANACH**  |  Partner

**GORDON REES SCULLY MANSUKHANI**
**YOUR 50 STATE PARTNER™**

275 Battery Street, Suite 2000
San Francisco, CA 94111
D: 415-875-3211   |   P: 415-986-5900   |   mkanach@grsm.com

www.grsm.com
vCard   |   Bio   |   LinkedIn

---

**From:** Sourabh Mishra <smishra@hueston.com>
**Sent:** Wednesday, August 28, 2019 12:32 PM
**To:** Michael Kanach <mkanach@grsm.com>
**Cc:** Holly Heffner <hheffner@grsm.com>; Steven N. Feldman <sfeldman@hueston.com>; Michael Todisco <mtodisco@hueston.com>
**Subject:** [Monster/VPX] Meet and Confer re Search Terms

Michael,

As discussed yesterday, please find below: (1) the proposed search terms Monster is not objecting to reviewing (production is of course subject to Monster's stated objections in its RFP responses); (2) the proposed search terms that have a substantial number of hits or a large number of likely irrelevant hits, and so Monster requests that VPX narrow each search term; and (3) the proposed search terms that clearly touch upon privileged matters and thus are not properly asserted.

Please promptly send us your corresponding list.  We are happy to meet and confer as soon as possible to attempt to resolve disagreements and agree upon a production schedule.

(1)   **Agreed-Upon Search Terms**

| Search Term |
|---|
| !Glutamine |
| !Leucine |
| $500M |
| 08-cv-01545 |
| 8,445,466 |
| BANG! |
| BCAA! |
| CoQ10 |
| Creatin! |
| Creatyl! |
| Good will OR Goodwill |
| Influencer! |
| Laitinen |
| Market share |
| McMahon |
| Owoc! Or Owok! |
| Planogram & (BANG or Mon! or MNST or Reign) |
| Shel! or cooler or retail! /s (space or steal) |
| Vital! |
| VPX! |

(2)   **Search Terms that Must be Narrowed**

| Search Term | Objection |
|---|---|
| Adverse NEAR/5 affects or effects or events | Almost 300,000 results |
| Agreement! | Almost 200,000 results |
| Body NEAR/5 Fuel | Over 100,000 results |
| Caffeine | Search term is overbroad |
| Contract! | Almost 200,000 results |
| FDA | Search term is overbroad |
| Hanson OR HBC w/5 Vital OR VPX | Almost 500,000 results |
| Heart NEAR/5 attack or arrhythmia | Search term is overbroad |
| Monster NEAR/5 benefit! | Over 1.3 million results |
| Monster NEAR/5 health! | Almost 1.8 million results |
| Patent! | Search term is overbroad |
| Personal NEAR/5 injury | Almost 500,000 results |
| | |

| Pricl /3 Mon! or MNST or BANG or Reign | Over 2.0 million results |
|---|---|
| Pricing NEAR/3 model | Almost 300,000 results |
| Reign | Search term is overbroad |
| Sponsor! | Over 100,000 results |
| Test or Tests or Testing | Over 100,000 results |
| Wrongful NEAR/5 death | Search term is overbroad |

(3)   **Search Terms that Clearly Request Privileged Information**

| Miles & Redline |
|---|
| Shook & Redline |

Regards,
Sourabh

**Sourabh Mishra**

**HUESTON HENNIGAN** LLP

D: 949.356.5536
T: 213.788.4340
smishra@hueston.com
Biography

523 West 6th St Suite 400
Los Angeles CA 90014

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**GORDON REES SCULLY MANSUKHANI, LLP**
**YOUR 50 STATE PARTNER™**
http://www.grsm.com

# EXHIBIT 5

M. D. SCULLY (SBN: 135853)
mscully@grsm.com
TIMOTHY K BRANSON (SBN: 187242)
tbranson@grsm.com
SEAN P. FLYNN (SBN: 220184)
sflynn@grsm.com
HOLLY L.K. HEFFNER (SBN: 245384)
hheffner@grsm.com
MICHAEL D. KANACH (SBN: 271215)
mkanach@grsm.com
PETER G. SIACHOS (*Pro Hac Vice*)
psiachos@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W Broadway, Suite 2000
San Diego, CA  92101
Phone:  (619) 230-7441
Fax:  (619) 696-7124

Attorneys for Defendants
VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS, A FLORIDA CORPORATION; AND JOHN H. OWOC A.K.A. JACK OWOC, AN INDIVIDUAL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a VPX SPORTS, a Florida corporation; and JOHN H. OWOC a.k.a. JACK OWOC, an individual,<br><br>                    Defendants. | CASE NO.:  18-cv-1882-JGB-SHK<br><br>**DEFENDANT VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF MONSTER ENERGY COMPANY'S SPECIAL INTERROGATORIES, SETS ONE AND TWO**<br><br>Dist. Judge: Hon. Jesus G. Bernal<br>Mag. Judge: Hon. Shashi H. Kewalramani |

PROPOUNDING PARTY:        Plaintiff, MONSTER ENERGY COMPANY

RESPONDING PARTY:         Defendant, VITAL PHARMACEUTICALS INC.,

                          D/B/A VPX SPROTS

SET NO.:                  ONE and TWO (Supplemental)

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

1

2

3    Defendant VITAL PHARMACEUTICALS, INC., d/b/a VPX SPORTS

4    ("Responding Party") provides the following **SUPPLEMENTAL** responses to the

5    Special Interrogatories, Sets ONE AND TWO, of Plaintiff MONSTER ENERGY

6    COMPANY ("Propounding Party"), specifically Nos. 4, 6, 7, and 8, as follows:

7    1.      These Interrogatories seek all documents and communications,

8    including electronically stored information ("ESI").  The parties have begun to

9    meet and confer to establish ESI/document production protocols, identify

10   custodians, and propose search terms and date ranges.  To facilitate this process,

11   the parties have agreed to exchanged names of potential custodians on June 25,

12   2019, along with dates of employment and a brief statement as to relevance;

13   proposed search terms and date ranges on July 2, 2019; and have continued their

14   meet and confer efforts through and including October 23, 2019.  VPX has agreed

15   to review more than 30 search terms for emails and attachments for more than a

16   dozen custodians including current and former employees, including Dr. Liangxi

17   Li, John Owoc, Paul Borrelli, Gene Bukovi, Meg Owoc, and Marc Kesten.  VPX

18   has been reviewing the documents with the agreed-to search terms, has begun to

19   produce documents, has additional documents to be produced and has more in

20   quality control review prior to production, and will continue to review and produce

21   documents.  The parties have agreed to continue their discussion regarding

22   narrowing, scope, and burden.  Responding Party reserves the right to further

23   object to Interrogatories that are unduly burdensome or harassing or otherwise

24   objectionable as discovery continues.

25   2.      Discovery is ongoing.  Responding Party's responses to these

26   Interrogatories are made to the best of its present knowledge, information, and

27   belief.  Said responses are at all times subject to additional or different information

28   that discovery or further investigation may disclose and, while based on the present

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-2-

state of Responding Party's recollection, are subject to refreshing of such recollection with such additional knowledge or facts that may result from further discovery or investigation.  Responding Party reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to these Interrogatories that is discovered subsequent to the date of these responses, including, but not limited to, any information obtained and discovered herein.

3.      Responding Party reserves all objections or other questions as to the confidentiality, relevance, materiality, privilege, or admissibility as evidence, in any subsequent proceeding or trial of this or any other action for any purpose whatsoever, of these responses and any documents or things identified in these responses.

4      Responding Party reserves the right to object on any ground at any time to such other or supplemental discovery as Propounding Party may propound involving or relating to the subject matter of these Interrogatories.

5.      Responding Party objects to the extent these Interrogatories seek information protected by the attorney-client privilege and/or attorney work product privilege and/or other applicable privileged or protection.  Such information shall not be provided in response.  Any inadvertent disclosure thereof shall not be deemed a waiver.

6.      Responding Party objects to the extent these Interrogatories seek to require Responding Party to identify persons, entities, or events not known on the grounds that such instructions, definitions, or Interrogatories are overbroad and seek to require more of Responding Party than any obligation imposed by law, subject Responding Party to unreasonable and undue annoyance, oppression, burden, and expense, and seek to impose upon Responding Party an obligation to investigate and discover information and materials from third parties or sources that are equally accessible to Propounding Party such as, for example and without limitation, research, articles, press releases, blogs, social media posts or comments,

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

product reviews, and publicly available websites.

7.      Responding Party objects to the definition of "BANG" as vague, ambiguous, overbroad, and harassing.  Propounding Party defines BANG in these Interrogatories as "the Bang Energy line of energy drink products."  Yet, Propounding Party's First Amended Complaint (ECF 61, "FAC") defines "BANG" both more broadly and more narrowly than as defined in the Interrogatories. Paragraphs 44, 56, 68, for example, explicitly limit Propounding Party's claims to products with certain images of products and certain words on the package, such as those cans that contain the words "Super Creatine" (*e.g.*, Paragraph 44; *see also*, Paragraphs 3, 4, 45-56), or containing United States Patent Number 8,445,466 (e.g., Paragraphs 60-62, 68), or containing certain advertised ingredients on the label (*e.g.*, Paragraph 56: "Each can of BANG states: 'Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs.'"; *see also*, Paragraph 84)  Propounding Party further uses an inconsistently broad definition in footnote 1 of the FAC:

> VPX began selling BANG to consumers in 2012. VPX currently produces and sells over a dozen flavors of BANG, including caffeine-free flavors.

Accordingly, for all Interrogatories that seek documents or communications related to BANG®, Responding Party requests a time to meet and confer to consistently define and narrow the Request.

Monster's Requests for Admission set one, dated October 1, 2019, defined the scope of relevant products to a specific list of products, "the Bang Energy line of ready-to-drink 16 oz. energy drink products…," and excluded from the definition other products as follows: "BANG does not include 'Bang Keto Coffee,' 'Bang Master Blaster,' 'Bang Shots,' 'Bang ThermIQ,' formulations of Bang produced for consumption outside of the United States, or any other Bang-branded product materially different from the line of products featured in the above

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-4-

photograph."

8.      Responding Party further objects to the definition of "SUPER CREATINE" as "the 'stable aqueous compositions comprising amide-protected creatine species' identified in the '466 PATENT" from Propounding Party's first set of Interrogatories as vague and ambiguous and not consistent with Propounding Party's use of the term in the FAC (*e.g.*, Paragraph 44; *see also*, Paragraphs 3, 4, 45-56).  Responding Party further objects that the term SUPER CREATINE is referenced in this second set of Interrogatories, but not defined.

9.      Responding Party further objects to the definition of "VITALS" as vague and ambiguous.  Propounding Party defines "VITALS" as "includes body temperature, blood pressure, heart rate, and respiratory rate."  Responding Party objects to the word "includes" in the definition as ambiguously broad and undefined as to scope.  It is unclear what is and is not included in the definition for VITALS as defined by Propounding Party. *See* Interrogatory No. 7.

10.      Responding Party further objects to the definition of "SUBSTANCES" as vague and ambiguous.  Propounding Party defines "SUBSTANCES" as "all substances naturally produced by the human body, including creatine and creatinine."  Responding Party objects to the phrases "all substances" and "including" as ambiguously broad and undefined as to scope.  It is unclear what is and is not included in the definition for SUBSTANCES as defined by Propounding Party, and it is unclear if the specific substances, such as creatine or creatinine, that are naturally produced by the human body are included or not within the Interrogatory as the term is used. *See* Interrogatory No. 7.

## SPECIFIC RESPONSES
## TO SPECIAL INTERROGATORIES

Without waiving or rebutting in any manner any of the foregoing general objections, but rather incorporating them into each of the following responses to the extent applicable, Responding Party responds to Propounding Party's special

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  interrogatories as follows:

2  ## RESPONSES TO SPECIAL INTERROGATORIES

3  ## SPECIAL INTERROGATORY NO. 1:

4      State the formula for YOUR BANG energy drink, including the amount

5  used of each ingredient.  To the extent the formula is different for each flavor of

6  BANG, state the formula for each flavor.

7  ## RESPONSE TO INTERROGATORY NO. 1:

8      Responding Party objects to this Interrogatory to the extent it seeks

9  privileged attorney client communications or work product.  Responding Party

10  further objects to this Interrogatory on the basis that it seeks information that is

11  confidential and proprietary in nature and, as such, will not be produced until a

12  Protective Order is in place.  Responding Party objects to this Interrogatory as

13  seeking proprietary information regarding trade secrets, including ingredients,

14  recipes, formulations, formulae, which would be extremely detrimental to

15  Defendant if disseminated or distributed publicly or if provided to Responding

16  Party's competitors or potential competitors.  Responding Party further objects to

17  this Interrogatory as vague as to scope and time and seeking irrelevant information

18  and documents.  Responding Party further objects to this Interrogatory as unduly

19  burdensome, harassing, and not proportional to the needs of this case under Rule

20  26(b)(1).  Responding Party objects to this Interrogatory as vague and ambiguous

21  as to the scope and time.  Responding Party objects to the definition of "BANG" as

22  vague, ambiguous, overbroad, and harassing.  Defendant objects to this

23  Interrogatory as vague and ambiguous with respect to the undefined terms

24  "formula," "amount," "ingredient," and "flavor."  Responding Party further objects

25  to this Interrogatory to the extent this Interrogatory seeks information subject to

26  expert analysis or opinion.  To the extent information will be analyzed by an

27  expert, such information may be provided in an expert's report as set forth

28  according to the Court's schedule.  Further, this Interrogatory appears to be

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

duplicative of document requests, including specifically request no. 4 which seeks "All DOCUMENTS and COMMUNICATIONS relating to YOUR studies, research, and tests of BANG products, including but not limited to:

    a.    The amount of creatine in BANG products;

    b.    The amount of SUPER CREATINE in BANG products;

    c.    The amount of creatine in SUPER CREATINE;

    d.    The incremental effect of including additional SUPER CREATINE in BANG products;

    e.    The contents of BANG products;

    f.    Comparisons between BANG products and products manufactured or sold by MONSTER;

    g.    The health impacts of creatyl-L-leucine; and

    h.    Discussions or analyses relating to creatinine."

Further, this Interrogatory is duplicative of request no. 50 which seeks "All DOCUMENTS and COMMUNICATIONS relating to the formulation or changes to the formulation of BANG products."  Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4 and 50.

Subject to the foregoing general and specific objections, Defendant responds as follows:

It is undisputed that certain BANG products contain a form of creatine called Super Creatine, or creatyl-L-leucine, which combines creatine and an amino acid L-leucine, as alleged by Monster and allegedly proven by tests performed by Monster's expert, Dr. Neil Spingarn.  Creatyl-L-leucine in certain BANG products is branded under the trademark SUPER CREATINE.  Responding Party also incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for a Preliminary Injunction (ECF 100 and exhibits 100-1 through 100-3).  Responding Party will not produce its proprietary

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-7-

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

and trade secret formulas to a competitor, Monster, who just introduced a knock-out drink, REIGN, to compete against Responding Party's BANG® energy drink. Responding Party may supplement this response to provide certain, redacted information sought by this Interrogatory that is relevant to the question of Creatyl-L-Leucine in certain BANG® drinks, but Responding Party will not produce its proprietary formulas and lists of amounts for all ingredients in all BANG® drinks. Responding Party further objects to the extent the relevant information sought by this Interrogatory is duplicative of other Interrogatories (e.g., No. 2) and requests for production of documents.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party.  Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the non-privileged information in Responding Party's possession, custody, or control sufficient to respond to this Request is proportionate to the needs of this case and will be produced subject to a Protective Order.  Specifically, Responding Party will continue to meet and confer with Propounding Party regarding ESI protocols, custodians, search terms, and date ranges.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows:

Statements that BANG contains creatine are true statements.  Plaintiff moved to compel further response to this Interrogatory No. 1, and VPX has agreed to disclose the quantity of that ingredient as well as caffeine.  In order to resolve

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

discovery disputes during the discovery process in this case, VPX has disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300 mg.  VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG product is so successful that Monster introduced an almost identical product called REIGN with almost identical packaging, formula, and branding, which specifically targets and is directed to VPX's customers.  VPX discloses the amount of caffeine on the can label, which Monster recently copied in its knock-off REIGN product which also has 300 mg of caffeine.  VPX maintains its objections to the formula being unnecessary as stated in VPX's motions and objections filed with the Court which objections are incorporated herein.

As stated in response to Interrogatory No. 2, creatyl-l-leucine is a bond of creatine and leucine. It is undisputed that many forms of creatine exist in the marketplace, including formulations combining creatine with amino acids.  It is also undisputed that certain BANG products contain a form of creatine called creatyl-L-leucine, which combines creatine with the amino acid L-leucine, as alleged by Monster and allegedly proven by tests performed by Monster's expert, Dr. Neil Spingarn.  Creatyl-L-leucine in certain BANG products is branded under the trademark SUPER CREATINE.

See also Court order denying Monster's Motion for a Preliminary Injunction and related briefing, including those citations in the Order, excerpted below:

It appears, however, that Monster's claims rely on an overly narrow understanding of the word "creatine," since, as discussed in their own evidentiary submissions, "[m]any forms of creatine exist in the marketplace," including formulations combining creatine with other amino acids. Thomas W. Buford, et al., International Society of Sports Nutrition position stand: creatine supplementation and exercise, J. Int.

Soc. Sports. Nutr., Aug. 2007; see also Robert Cooper, et al., <u>Creatine supplementation with specific view to exercise/sports performance: an update</u>, J. Int. Soc. Sports. Nutr., July 2012. The parties agree that "Super Creatine" is a dipeptide – a chemical composed of two amino acids – which consists of the amino acids creatine and L-leucine. ("Declaration of Dr. Liangxi Li," Dkt. No. 100 ¶ 24; Spingarn Decl. ¶ 13.) Defendants have submitted the declaration of Dr. Liangxi Li, Research & Development Manager at VPX, which details the many forms of creatine compound which are available on the market, many of which consist of creatine bonded with other molecules, and describes the process of developing Super Creatine by joining creatine to other amino acids. ("Declaration of Dr. Liangxi Li," Dkt. No. 100 ¶¶ 13-16, 21.) Li states that the purpose of joining the creatine and L-leucine amino acids was to create a form of creatine which is "more stable and more bioavailable than other forms of creatine." (Li Decl. ¶ 35.)

ECF 122, page 6.

## SPECIAL INTERROGATORY NO. 2:

If YOU contend that BANG contains creatine, state all bases for YOUR contention.

## RESPONSE TO INTERROGATORY NO. 2:

Responding Party objects to the extent this Interrogatory is duplicative of Interrogatory No. 1.  Responding Party objects to this Interrogatory to the extent it seeks privileged attorney client communications or work product.  Responding Party further objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and, as such, will not be produced until a Protective Order is in place.  Responding Party objects to this Interrogatory as seeking proprietary information regarding trade secrets, including ingredients, recipes, formulations, formulae, which would be extremely detrimental to Defendant if disseminated or distributed publicly or if provided to Responding Party's competitors or potential competitors.  Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents.  Responding Party further objects to this Interrogatory as unduly

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

-10-

burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Responding Party objects to this Interrogatory as vague and ambiguous as to the scope and time. Responding Party objects to the definition of "BANG" as vague, ambiguous, overbroad, and harassing. Defendant objects to this Interrogatory as vague and ambiguous with respect to the undefined terms "contains" and "creatine." Responding Party further objects to this Interrogatory to the extent this Interrogatory seeks information subject to expert analysis or opinion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including specifically request no. 4 which seeks "All DOCUMENTS and COMMUNICATIONS relating to YOUR studies, research, and tests of BANG products, including but not limited to:

    a.    The amount of creatine in BANG products;

    b.    The amount of SUPER CREATINE in BANG products;

    c.    The amount of creatine in SUPER CREATINE;

    d.    The incremental effect of including additional SUPER CREATINE in BANG products;

    e.    The contents of BANG products;

    f.    Comparisons between BANG products and products manufactured or sold by MONSTER;

    g.    The health impacts of creatyl-L-leucine; and

    h.    Discussions or analyses relating to creatinine."

Further, this Interrogatory is duplicative of request no. 50 which seeks "All DOCUMENTS and COMMUNICATIONS relating to the formulation or changes to the formulation of BANG products." Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4 and 50. Responding Party further objects to this Interrogatory

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-11-

as seeking information that calls for a legal conclusion.

Subject to the foregoing general and specific objections, Defendant responds as follows:

It is undisputed that many forms of creatine exist in the marketplace, including formulations combining creatine with amino acids.  It is also undisputed that certain BANG products contain a form of creatine called creatyl-L-leucine, which combines creatine with the amino acid L-leucine, as alleged by Monster and allegedly proven by tests performed by Monster's expert, Dr. Neil Spingarn. Creatyl-L-leucine in certain BANG products is branded under the trademark SUPER CREATINE.  Responding Party also incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for a Preliminary Injunction (ECF 100 and exhibits 100-1 through 100-3). Responding Party also incorporates by reference exhibits to the Declaration of Steven Feldman in support of Monster's Motion for a Preliminary Injunction (ECF 69, Exhibits 24 and 25, Thomas W. Buford, et al., International Society of Sports Nutrition position stand: creatine supplementation and exercise, J. Int. Soc. Sports. Nutr., Aug. 2007; see also Robert Cooper, et al., Creatine supplementation with specific view to exercise/sports performance: an update, J. Int. Soc. Sports. Nutr., July 2012, respectively).

This Interrogatory appears to seek expert testimony, which is improper prior to the deadline for expert reports.  Expert reports and testimony will be served according to the Federal Rules and the Court's schedule.  This Interrogatory appears to seek documents from third parties: "all bases for YOUR contention." Propounding Party will not produce "all" bases or DOCUMENTS in response to this Interrogatory.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting,

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1   or summarizing Responding Party business records (including electronically stored

2   information), and the burden of deriving or ascertaining the answer will be

3   substantially the same for either party.  Responding Party will meet and confer

4   with Propounding Party to narrow the scope of this Request so that the non-

5   privileged information in Responding Party's possession, custody, or control

6   sufficient to respond to this Request is proportionate to the needs of this case and

7   will be produced subject to a Protective Order.  Specifically, Responding Party will

8   continue to meet and confer with Propounding Party regarding ESI protocols,

9   custodians, search terms, and date ranges.

10   **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

11   VPX maintains the foregoing and previously asserted general and special

12   objections and supplements its response in light of meet and confer efforts to

13   resolve the discovery dispute between the parties, as follows:

14   Statements that BANG contains creatine are true statements.  Plaintiff

15   moved to compel further response to Interrogatory No. 1, and VPX has agreed to

16   disclose the quantity of that ingredient, creatyl-l-leucine, as well as the quantity of

17   caffeine.  In order to resolve discovery disputes during the discovery process in

18   this case, VPX has disclosed through meet and confer efforts that the quantity of

19   creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks

20   with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300

21   mg.  VPX maintains that its formula and the quantity of creatyl-l-leucine is

22   proprietary and a valuable trade secret which Monster seeks for competitive

23   reasons because VPX's BANG product is so successful that Monster introduced an

24   almost identical product called REIGN with almost identical packaging, formula,

25   and branding, which specifically targets and is directed to VPX's customers.  VPX

26   discloses the amount of caffeine on the can label, which Monster recently copied in

27   its knock-off REIGN product which also has 300 mg of caffeine.  VPX maintains

28   its objections to the formula being unnecessary as stated in VPX's motions and

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-13-

objections filed with the Court which objections are incorporated herein. As stated in the original response above, creatyl-l-leucine is a bond of creatine and leucine. It is undisputed that many forms of creatine exist in the marketplace, including formulations combining creatine with amino acids.  It is also undisputed that certain BANG products contain a form of creatine called creatyl-L-leucine, which combines creatine with the amino acid L-leucine, as alleged by Monster and allegedly proven by tests performed by Monster's expert, Dr. Neil Spingarn. Creatyl-L-leucine in certain BANG products is branded under the trademark SUPER CREATINE.

See also Court order denying Monster's Motion for a Preliminary Injunction and related briefing, including those citations in the Order, excerpted below:

> It appears, however, that Monster's claims rely on an overly narrow understanding of the word "creatine," since, as discussed in their own evidentiary submissions, "[m]any forms of creatine exist in the marketplace," including formulations combining creatine with other amino acids. Thomas W. Buford, et al., International Society of Sports Nutrition position stand: creatine supplementation and exercise, J. Int. Soc. Sports. Nutr., Aug. 2007; see also Robert Cooper, et al., Creatine supplementation with specific view to exercise/sports performance: an update, J. Int. Soc. Sports. Nutr., July 2012. The parties agree that "Super Creatine" is a dipeptide – a chemical composed of two amino acids – which consists of the amino acids creatine and L-leucine. ("Declaration of Dr. Liangxi Li," Dkt. No. 100 ¶ 24; Spingarn Decl. ¶ 13.) Defendants have submitted the declaration of Dr. Liangxi Li, Research & Development Manager at VPX, which details the many forms of creatine compound which are available on the market, many of which consist of creatine bonded with other molecules, and describes the process of developing Super Creatine by joining creatine to other amino acids. ("Declaration of Dr. Liangxi Li," Dkt. No. 100 ¶¶ 13-16, 21.) Li states that the purpose of joining the creatine and L-leucine amino acids was to create a form of creatine which is "more stable and more bioavailable than other forms of creatine." (Li Decl. ¶ 35.)
>
> ECF 122, page 6.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**SPECIAL INTERROGATORY NO. 4:**

If YOU contend that the "Super Creatine" in BANG creates positive health effects for drinkers, identify all publications, research papers, and DOCUMENTS supporting YOUR claim, and how that source supports YOUR claim that the "Super Creatine" in BANG creates positive health effects for drinkers.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party objects to this Interrogatory to the extent it seeks privileged attorney client communications or work product. Responding Party further objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and, as such, will not be produced until a Protective Order is in place. Responding Party objects to this Interrogatory as seeking proprietary information regarding trade secrets, including ingredients, recipes, formulations, formulae, which would be extremely detrimental to Defendant if disseminated or distributed publicly or if provided to Responding Party's competitors or potential competitors. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Responding Party objects to this Interrogatory as vague and ambiguous as to the scope and time. Responding Party objects to the definitions of "BANG" and "SUPER CREATINE" as vague, ambiguous, overbroad, and harassing. Defendant objects to this Interrogatory as vague and ambiguous with respect to the undefined terms "supporting," "YOUR claim," "positive health effects," "health effects." Responding Party further objects to this Interrogatory to the extent this Interrogatory seeks information subject to expert analysis or opinion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

specifically request no. 4 which seeks "All DOCUMENTS and COMMUNICATIONS relating to YOUR studies, research, and tests of BANG products, including but not limited to:

     a.    The amount of creatine in BANG products;

     b.    The amount of SUPER CREATINE in BANG products;

     c.    The amount of creatine in SUPER CREATINE;

     d.    The incremental effect of including additional SUPER CREATINE in BANG products;

     e.    The contents of BANG products;

     f.    Comparisons between BANG products and products manufactured or sold by MONSTER;

     g.    The health impacts of creatyl-L-leucine; and

     h.    Discussions or analyses relating to creatinine."

Further, this Interrogatory is duplicative of request no. 50 which seeks "All DOCUMENTS and COMMUNICATIONS relating to the formulation or changes to the formulation of BANG products."  Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4, 36, 37, 48, and 50.  Responding Party further objects to the extent this request seeks information from third-parties.  Responding Party further objects to this Interrogatory as seeking information that calls for a legal conclusion.

Subject to the foregoing general and specific objections, Defendant responds as follows:

Even though Responding Party is responding to this Interrogatory, Responding Party does not have the burden of proof as to the topic raised in this Interrogatory.  *See e.g.*, Order Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF 122, page 6.  For example, Propounding Party has the burden of demonstrating that Creatyl-L-Leucine does not provide the benefits of creatine.  This Interrogatory appears to seek expert testimony, which is

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-16-

improper prior to the deadline for expert reports.  Expert reports and testimony will be served according to the Federal Rules and the Court's schedule.  Responding Party reserves the right to provide a rebuttal to Propounding Party's position after Propounding Party provides its position, evidence, expert reports, or testimony. Responding Party incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3 (ECF 100 and exhibits 100-1 through 100-3).  Exhibit L3 to Dr. Li's Declaration is a true and correct copy of the poster presentation for this latest study of BANG®.  VPX sponsored a double-blind, placebo-controlled, crossover trial study of BANG®, performed by Nova Southeastern University, entitled "The Effects of BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey Peacock, Jaime Tartar, and Jose Antonio.  In conclusion, the BANG® energy drink resulted in a significantly lower (i.e., faster) ($p<0.05$) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses. Creatyl-L-leucine in certain BANG products is branded under the trademark SUPER CREATINE.

This Interrogatory specifically seeks documents from third parties: "all publications, research papers, and DOCUMENTS supporting YOUR claim." Propounding Party will not produce "all" DOCUMENTS in response to this Interrogatory.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party.  Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the non-

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-17-

1   privileged information in Responding Party's possession, custody, or control

2   sufficient to respond to this Request is proportionate to the needs of this case and

3   will be produced subject to a Protective Order.  Specifically, Responding Party will

4   continue to meet and confer with Propounding Party regarding ESI protocols,

5   custodians, search terms, and date ranges.

6   **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

7   VPX maintains the foregoing and previously asserted general and special

8   objections and supplements its response in light of meet and confer efforts to

9   resolve the discovery dispute between the parties, as follows:

10   The Parties have met and conferred as to email search terms and protocols

11   and have agreed to review certain documents which appear targeted at this request

12   and may be responsive to this Interrogatory, such as studies, etc.  VPX is reviewing

13   numerous documents and will supplement its rolling production and may

14   supplement this Interrogatory if additional information is discovered.  VPX

15   maintains that Monster has the burden of proving all elements of each of the

16   asserted causes of action.  Monster has not done so.  During meet and confer

17   correspondence relating to this Interrogatory, while this Interrogatory does not seek

18   information regarding *the quantity* of creatyl-l-leucine in BANG energy drinks,

19   Monster claimed that the information regarding the quantity of creatyl-l-leucine

20   and these interrogatories were relevant to claims 1-3 of the First Amended

21   Complaint (FAC), which relate to claims of false advertising, specifically related to

22   alleged statements made to consumers upon which those consumers would rely.  In

23   response to Paragraph 51 of the FAC, VPX responded that "Defendants admit

24   Owoc has been asked on social media how much Super Creatine is in BANG® and

25   that such is proprietary information."  Monster does not dispute that the BANG

26   formula is a trade secret; in fact, Monster claims that its own formulas (e.g.,

27   REIGN) are trade secrets and such disclosure would harm the owner of the formula

28   if such information was in the hands of a competitor.  Monster does not allege that

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-18-

VPX has ever disclosed the formula for BANG or that any consumer has ever relied on any statements from VPX relating to the formula or quantities of ingredients, other than 300 mg of caffeine, in BANG.  VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG product is so successful that Monster introduced an almost identical product called REIGN with almost identical packaging, formula, and branding, which specifically targets and is directed to VPX's customers.  In order to resolve discovery disputes during the discovery process in this case, VPX has disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300 mg.  VPX has not disclosed the quantities of the other ingredients in BANG.  VPX has not previously disclosed the quantity of creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready to drink cans.  No competitors of VPX sell an energy drink with more creatyl-l-leucine than BANG.  No consumers seeking a specific quantity of creatine in any form have been told by VPX how much creatyl-l-leucine is in the proprietary blend of BANG.  Thus, no consumers could reasonably rely on such statements in advertisements (as VPX has not made those statements).  In addition, no false statements of fact were made about the quantities of ingredients or their impact on consumers for this product, no consumer could have relied on or did rely on such statements, no statements deceived consumers or were likely to deceive consumers, and no alleged "deception" (as Monster alleges) was or would be material to a consumer.  Further, Monster could not have been harmed by any statements relating to creatyl-l-leucine related to the BANG energy drink.  As set forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the first to use creatyl-l-leucine in an energy drink.  To date, VPX is not aware of any

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-19-

competitors who have sold an energy drink containing creatyl-l-leucine.  Upon
information and belief, Monster has never made and does not sell an energy drink
with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  *See*
Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1:
"…Monster admits that it has never released an energy drink product with Monster
branding that contains creatine."; RFA No. 2: "Monster admits that it has never
released an energy drink product with Monster branding that contains creatyl-L-
leucine."

Creatine supplements come in many forms in the marketplace and such
supplements have been scientifically proven to provide positive health effects,
including building muscle and strength and boosting athletic performance, and
research has also shown that creatine supplements have the potential for helping
with age-related neurological diseases, such as improving brain function and
boosting memory.  Dr. Li cites to some studies in his Declaration, other studies are
available publicly, and studies that are responsive to Monster's proposed email
search terms that are agreed upon by the parties will be reviewed and responsive,
non-privileged documents will be produced.  Further, there is no dispute that
studies show that exercise, a healthy lifestyle, and low carbohydrate and low sugar
diets can provide benefits (unlike many of Monster's energy drinks) can provide
health benefits and new articles and studies come out all the time.  See, e.g., an
article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link
Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes
can improve cognition." https://www.wsj.com/articles/the-link-between-diet-
exercise-and-alzheimers-11572427802.  That article cites to a study released on
October 30, 2019.

The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not
intended to be a sole source of creatine and does not advertise that it is, but rather
is a great tasting drink to add to a well-balanced diet that includes the consumption

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-20-

of other foods containing creatine, such as beef, chicken, pork, eggs, and fish.  Further, Bang as a complete product with zero sugars and zero calories is a healthier option than most energy drinks manufactured by its competitors, including Monster, which contain large quantities of sugar, carbohydrates, and other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super Creatine), Bang contains many ingredients that have been characterized as providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids.  In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.

VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can creates "positive health effects for drinkers" as phrased in this Interrogatory, except as compared to other energy drinks offered by competitors.  In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category. *See e.g.*, Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6.  Below is an excerpt from Exhibit C, page 24 of 27, showing Reign's description of

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-21-

ingredients mirroring BANG's description.

| | Reign |
|---|---|
| All Natural Flavors | Yes |
| Zero Calories | Yes |
| Zero Sugar | Yes |
| No Artificial Colors | Yes |
| 300 MG Caffeine | Yes |
| Electrolytes | Yes |
| BCAA's | Yes |
| CO Q10 | Yes |

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales and EPS CAGR of 10% and 14%, respectively. The sustainable growth outlook is supported by … 3) innovation in energy-adjacent segments such as coffee and "performance energy" with REIGN…"

Monster's counsel stated during meet and confer correspondence that certain paragraphs of the First Amended Complaint were the basis of Monster's Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the First Amended Complaint ("FAC").  Paragraphs 46-48 of the FAC, however, do not provide any context for where those statements come from, none of these alleged statements are full quotes, and Monster provided no citations to where these statements were made.  As such, it does not appear from the quoted language or the descriptions made by Monster in Paragraphs 46 to 48 that these statements are about any specific health effects of creatyl-l-leucine in a can of BANG ready to drink energy drinks or related to the quantity of creatyl-l-leucine in a can.  Monster does not allege that these statements were made in public, to consumers, or in advertisements.  The fact that those statements are not in quotes indicates that the statements are taken out of context and that none of them are about Super Creatine when considered in context.  Further, as stated in the prior objections, there is no

evidence from Monster or its experts that any of these statements are false.  VPX has already addressed and denied many of these statements in a post on its website: https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolous-lawsuit-against-vpx/, including the following statement by Jack Owoc addressing numerous false allegations in Monster's Complaint: "I never claim that Bang can reverse intellectual disability and help cure diseases such as Alzheimer's, Parkinson's, Huntington's and other forms of dementia. Bang is infinitely safer and healthier than Monster – consumption of Monster is associated with 17 deaths, heart attack, heartbeat irregularities and countless adverse event reports."

**SPECIAL INTERROGATORY NO. 6:**

Explain what the letters and numbers on the bottom of each BANG can refer to, including by identifying the information necessary to confirm date of production, location of production, production facility, and/or expiration date of the product indicated by each combination of letters and/or numbers.  For reference, Exhibit A contains pictures of bottoms of a sample of BANG cans.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party further objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and is subject to the Protective Order.  Specifically, this Interrogatory seeks trade secret information from a competitor pertaining to the reference to internal codes and production facilities and such information is not typically shared with competitors and may be used by Propounding Party to compete against Responding Party.  Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents.  Responding Party further objects to this Interrogatory as unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1).  Responding Party objects to this request as vague and ambiguous with respect to "each BANG can," "date of production," and "expiration date," as those terms are not defined or included on the bottom of a can

-23-

in the images in Exhibit A.  Responding Party further objects to the extent other information necessary to respond to this Interrogatory is within the possession of Propounding Party but has not been produced, such as other information identifying the packaging of the can, and it is not clear from the four photographs in Exhibit A that the cans depicted are cans of Responding Party's BANG® product.  To the extent the images on the bottom of the cans depicted in Exhibit A are not BANG® products, Responding Party objects to this Interrogatory as misleading, irrelevant, seeking information from third-parties, and/or calling for speculation.  Responding Party will respond with respect to the examples provided in Exhibit A to the Interrogatories to the best of Responding Party's knowledge based on information and belief.

Subject to the foregoing general and specific objections, Responding Party responds as follows:

The following is an explanation of the information included on the bottom of the BANG® cans depicted in the images in Exhibit A.  Generally, the phrase "best by" refers to the date by which the beverage will be of best flavor or quality.  This "best by" phrase is followed by a six-digit numerical code specifying the month, day, and year, by which the beverage is "best by."  This six-digit numerical code (for the "best by" date) is followed by a two- or three-digit internal abbreviation for the location (or site "ID") where the beverage was co-packed.  Finally, this location or site ID is followed by a four-digit numerical code specifying when, in military time, the beverage was co-packed.  Otherwise, the information necessary to confirm the date of production is contained within the "best by" date; the information necessary to confirm the location of production is contained within the site ID; and, the information necessary to confirm the production facility also is contained within the site ID.

For example:

-24-

DEFENDANT VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF MONSTER ENERGY COMPANY'S SPECIAL INTERROGATORIES, SETS ONE AND TWO

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

- With respect to the information on the bottom of the can depicted in the first image in Exhibit A (copied below), the "best by" date is March 5, 2020; the beverage was co-packed at a facility located in Jacksonville, FL, at 6:13 PM.



- With respect to the information on the bottom of the can depicted in the second image in Exhibit A (shown below), the "best by" date is November 17, 2019; the beverage was co-packed at a facility located in Portland, OR, at 3:08 PM.



- With respect to the information on the bottom of the can depicted in the third image in Exhibit A (shown below), the "best by" date is March 18, 2020; the beverage was co-packed at a facility located in Sikeston, MO, at 7:52 AM.



- With respect to the information on the bottom of the can depicted in the fourth image in Exhibit A (shown below), the "best by" date is

February 24, 2020; the beverage was co-packed at a facility located in San Antonio, TX, at 1:16 AM.



## SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 6:

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows:

VPX has provided information above to sufficiently respond to this Interrogatory. During meet and confer correspondence related to the these interrogatories, Monster stated that it needed co-packer information because it was relevant to the formula for BANG. In light of the disclosure in this lawsuit of the amount of creatyl-l-leucine in BANG and the amount of caffeine, and based on the importance of maintaining trade secret information from a competitor which would now only be used for non-litigation, competitive purposes or to harrass, VPX objects to the production of further information regarding all of VPX's co-packers. VPX contends that this is proprietary trade secret information which VPX contends Monster has no reason to seek this information other than for competitive reasons outside this litigation. Based on information disclosed during meet and confer correspondence, it is not necessary for Monster to have this information regarding co-packers. Monster apparently seeks this information regarding co-packers or relevant dates in order to confirm testing of creatyl-l-leucine or to seek further information specifically regarding VPX's formulas for BANG, as alleged in the First Amended Complaint. Since VPX has disclosed the quantity of creatyl-l-leucine in meet and confer correspondence in this lawsuit, there is no reason for

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  Monster to seek further information from or harass VPX's co-packers, other than

2  for competitive reasons.  To disclose the information regarding co-packers would

3  necessarily put VPX at a competitive disadvantage and provide a competitive

4  advantage to Monster completely separate from this lawsuit specifically because

5  those co-packers may have finite capacity and Monster may seek to disadvantage

6  VPX by targeting those co-packers for Monster's competitive reasons.  This

7  information is not proportional to the needs of the case or necessary to disclose.

8       As stated above, the information regarding the co-packers is not relevant

9  other than for purposes of Monster seeking information regarding the formula.

10  Plaintiff moved to compel further response to Interrogatory No. 1, and VPX has

11  agreed to disclose the quantity of that ingredient as well as caffeine.  In order to

12  resolve discovery disputes during the discovery process in this case, VPX has

13  disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a

14  can of BANG® ready to drink cans of BANG® energy drinks with the reference to

15  SUPER CREATINE® is less than 40 mg and caffeine is 300 mg.  VPX maintains

16  that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable

17  trade secret which Monster seeks for competitive reasons because VPX's BANG

18  product is so successful that Monster introduced an almost identical product called

19  REIGN with almost identical packaging, formula, and branding, which specifically

20  targets and is directed to VPX's customers.  VPX discloses the amount of caffeine

21  on the can label, which Monster recently copied in its knock-off REIGN product

22  which also has 300 mg of caffeine.  VPX maintains its objections to the formula

23  being unnecessary as stated in VPX's motions and objections filed with the Court

24  which objections are incorporated herein.

25  **SPECIAL INTERROGATORY NO. 7:**

26       If YOU contend that the Super Creatine contained in BANG has an effect on

27  the VITALS and SUBSTANCES in the human body, identify all such effects and

28  all DOCUMENTS that support YOUR contention.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-27-

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and is subject to the Protective Order. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as overbroad, vague, and ambiguous as to the terms "BANG" (as defined), "Super Creatine" (as it is not defined in this set of Interrogatories), "contend/contention," "an effect/all such effects," "VITALS," and "SUBSTANCES," as defined in this Interrogatory and the terms used in the definitions of VITALS and SUBSTANCES including the overbroad phrase "including" used in in the definitions. Responding Party further objects to this Interrogatory as irrelevant, unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Propounding Party further objects to this Interrogatory to the extent it seeks information regarding documents and nonwritten files that may be within the scope of electronic requests for emails, and the Parties are meeting and conferring regarding document production, including custodians, search terms, and objections. Responding Party will not produce documents that are publicly available in response to this Request. Responding Party has no obligation to investigate and discover information and materials from third parties or sources that are equally accessible to Propounding Party such as, for example and without limitation, third party information regarding testing and studies. Responding Party further objects to this Interrogatory as seeking information that calls for expert opinion or a legal conclusion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including specifically request No. 4, 36, and 37. Responding Party incorporates by reference all objections made in response to Request for

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1    Documents, including but not limited to Nos. 4, 36, and 37.

2        Subject to the foregoing general and specific objections, Responding Party

3    responds as follows:

4        Even though Responding Party is responding to this Interrogatory, to the

5    extent this Interrogatory seeks relevant information, Responding Party does not

6    have the burden of proof as to the topic raised in this Interrogatory. *See e.g.*, Order

7    Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF

8    122, page 6.  For example, Propounding Party has the burden of demonstrating that

9    Creatyl-L-Leucine or Creatyl-L-Glutamine do not provide the benefits of creatine.

10   This Interrogatory appears to seek expert testimony, which is premature at this

11   time and improper prior to the deadline for expert reports.  Expert reports and

12   testimony will be served according to the Federal Rules and the Court's schedule.

13   Responding Party reserves the right to provide a rebuttal to Propounding Party's

14   position after Propounding Party provides its position, evidence, expert reports,

15   and/or testimony.  While Responding Party is not aware of any previous contention

16   that Responding Party has made in this litigation that SUPER CREATINE in

17   BANG® has "an effect" on "VITALS" or "SUBSTANCES," as those terms are

18   defined in this Interrogatory, and because any such contention in an expert report

19   would be premature at this time, Responding Party explicitly reserves the right to

20   make that contention in this case in the future.  To the extent Propounding Party is

21   referring to a specific contention that Propounding Party believes Responding

22   Party has made about effects on VITALS or SUBSTANCES as those terms are

23   defined, Responding Party objects to this Interrogatory as vague in scope and

24   Responding Party seeks that information from Responding Party so that the scope

25   of this Interrogatory can be clearly defined and Responding Party can respond to

26   any specific contention(s) to which this Interrogatory is targeted.  Responding

27   Party incorporates by reference the declaration by Dr. Li in support of Defendants'

28   Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3

-29-

1   (ECF 100 and exhibits 100-1 through 100-3) and documents referred to therein,

2   including United States Patent No. 8,445,466.  Exhibit L3 to Dr. Li's Declaration

3   is a true and correct copy of the poster presentation for this latest study of BANG®.

4   VPX sponsored a double-blind, placebo-controlled, crossover trial study of

5   BANG®, performed by Nova Southeastern University, entitled "The Effects of

6   BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline

7   Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey

8   Peacock, Jaime Tartar, and Jose Antonio.  In conclusion, the BANG® energy drink

9   resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean

10  reaction time versus the placebo as well as fewer lapses. Both Creatyl-L-leucine

11  and Creatyl-L-glutamine in certain BANG® products have been branded under the

12  trademark SUPER CREATINE.

13          This Interrogatory specifically seeks documents from third parties: "identify

14  all such effects and all DOCUMENTS that support YOUR contention."

15  Propounding Party will not produce "all" DOCUMENTS in response to this

16  Interrogatory.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant

17  reserves the right to produce business records in this action from which the answer

18  to the reasonable scope of this Interrogatory may be ascertained. The answer to this

19  Interrogatory may be determined by examining, auditing, compiling, abstracting,

20  or summarizing Responding Party business records (including electronically stored

21  information), and the burden of deriving or ascertaining the answer will be

22  substantially the same for either party.  Responding Party will meet and confer

23  with Propounding Party to narrow the scope of this Request so that the non-

24  privileged information in Responding Party's possession, custody, or control

25  sufficient to respond to this Request is proportionate to the needs of this case and

26  will be produced subject to a Protective Order.  Specifically, Responding Party will

27  continue to meet and confer with Propounding Party regarding ESI protocols,

28  custodians, search terms, and date ranges.

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-30-

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows:

The Parties have met and conferred as to email search terms and protocols and have agreed to review certain documents which appear targeted at this request and may be responsive to this Interrogatory, such as studies, etc.  VPX is reviewing numerous documents and will supplement its rolling production and may supplement this Interrogatory if additional information is discovered.  VPX maintains that Monster has the burden of proving all elements of each of the asserted causes of action.  Monster has not done so.  During meet and confer correspondence relating to this Interrogatory, while this Interrogatory does not seek information regarding *the quantity* of creatyl-l-leucine in BANG energy drinks, Monster claimed that the information regarding the quantity of creatyl-l-leucine and these interrogatories were relevant to claims 1-3 of the First Amended Complaint (FAC), which relate to claims of false advertising, specifically related to alleged statements made to consumers upon which those consumers would rely.  In response to Paragraph 51 of the FAC, VPX responded that "Defendants admit Owoc has been asked on social media how much Super Creatine is in BANG® and that such is proprietary information."  Monster does not dispute that the BANG formula is a trade secret; in fact, Monster claims that its own formulas (e.g., REIGN) are trade secrets and such disclosure would harm the owner of the formula if such information was in the hands of a competitor.  Monster does not allege that VPX has ever disclosed the formula for BANG or that any consumer has ever relied on any statements from VPX relating to the formula or quantities of ingredients, other than 300 mg of caffeine, in BANG.  VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1   product is so successful that Monster introduced an almost identical product called
2   REIGN with almost identical packaging, formula, and branding, which specifically
3   targets and is directed to VPX's customers.  In order to resolve discovery disputes
4   during the discovery process in this case, VPX has disclosed through meet and
5   confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to
6   drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is
7   less than 40 mg and caffeine is 300 mg.  VPX has not disclosed the quantities of
8   the other ingredients in BANG.  VPX has not previously disclosed the quantity of
9   creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX
10  ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready
11  to drink cans.  No competitors of VPX sell an energy drink with more creatyl-l-
12  leucine than BANG.  No consumers seeking a specific quantity of creatine in any
13  form have been told by VPX how much creatyl-l-leucine is in the proprietary blend
14  of BANG.  Thus, no consumers could reasonably rely on such statements in
15  advertisements (as VPX has not made those statements).  In addition, no false
16  statements of fact were made about the quantities of ingredients or their impact on
17  consumers for this product, no consumer could have relied on or did rely on such
18  statements, no statements deceived consumers or were likely to deceive
19  consumers, and no alleged "deception" (as Monster alleges) was or would be
20  material to a consumer.  Further, Monster could not have been harmed by any
21  statements relating to creatyl-l-leucine related to the BANG energy drink.  As set
22  forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the
23  first to use creatyl-l-leucine in an energy drink.  To date, VPX is not aware of any
24  competitors who have sold an energy drink containing creatyl-l-leucine.  Upon
25  information and belief, Monster has never made and does not sell an energy drink
26  with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  *See*
27  Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1:
28  "…Monster admits that it has never released an energy drink product with Monster

-32-

1  branding that contains creatine."; RFA No. 2: "Monster admits that it has never

2  released an energy drink product with Monster branding that contains creatyl-L-

3  leucine."

4  Creatine supplements come in many forms in the marketplace and such

5  supplements have been scientifically proven to provide positive health effects,

6  including building muscle and strength and boosting athletic performance, and

7  research has also shown that creatine supplements have the potential for helping

8  with age-related neurological diseases, such as improving brain function and

9  boosting memory.  Dr. Li cites to some studies in his Declaration, other studies are

10  available publicly, and studies that are responsive to Monster's proposed email

11  search terms that are agreed upon by the parties will be reviewed and responsive,

12  non-privileged documents will be produced.  Further, there is no dispute that

13  studies show that exercise, a healthy lifestyle, and low carbohydrate and low sugar

14  diets can provide benefits (unlike many of Monster's energy drinks) can provide

15  health benefits and new articles and studies come out all the time.  See, e.g., an

16  article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link

17  Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes

18  can improve cognition." https://www.wsj.com/articles/the-link-between-diet-

19  exercise-and-alzheimers-11572427802.  That article cites to a study released on

20  October 30, 2019.

21  The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not

22  intended to be a sole source of creatine and does not advertise that it is, but rather

23  is a great tasting drink to add to a well-balanced diet that includes the consumption

24  of other foods containing creatine, such as beef, chicken, pork, eggs, and

25  fish.  Further, Bang as a complete product with zero sugars and zero calories is a

26  healthier option than most energy drinks manufactured by its competitors,

27  including Monster, which contain large quantities of sugar, carbohydrates, and

28  other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-33-

Creatine), Bang contains many ingredients that have been characterized as providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids.  In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.

VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can has "an effect on the VITALS and SUBSTANCES in the human body" as phrased in this Interrogatory, as those terms are defined or understood by VPX, or provides specific health benefits except as compared to other energy drinks offered by competitors.  In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category. *See e.g.*, Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6.  Below is an excerpt from Exhibit C, page 24 of 27, showing Reign's description of ingredients mirroring BANG's description.

|  | Reign |
|---|---|
| All Natural Flavors | Yes |
| Zero Calories | Yes |
| Zero Sugar | Yes |
| No Artificial Colors | Yes |
| 300 MG Caffeine | Yes |
| Electrolytes | Yes |
| BCAA's | Yes |
| CO Q10 | Yes |

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1   and EPS CAGR of 10% and 14%, respectively. The sustainable growth outlook is

2   supported by … 3) innovation in energy-adjacent segments such as coffee and

3   "performance energy" with REIGN…"

4       Monster's counsel stated during meet and confer correspondence that certain

5   paragraphs of the First Amended Complaint were the basis of Monster's

6   Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the First

7   Amended Complaint ("FAC").  Paragraphs 46-48 of the FAC, however, do not

8   provide any context for where those statements come from, none of these alleged

9   statements are full quotes, and Monster provided no citations to where these

10  statements were made.  As such, it does not appear from the quoted language or the

11  descriptions made by Monster in Paragraphs 46 to 48 that these statements are

12  about any specific health effects of creatyl-l-leucine in a can of BANG ready to

13  drink energy drinks or related to the quantity of creatyl-l-leucine in a can.  Monster

14  does not allege that these statements were made in public, to consumers, or in

15  advertisements.  The fact that those statements are not in quotes indicates that the

16  statements are taken out of context and that none of them are about Super Creatine

17  when considered in context.  Further, as stated in the prior objections, there is no

18  evidence from Monster or its experts that any of these statements are false.  VPX

19  has already addressed and denied many of these statements in a post on its website:

20  https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolous-

21  lawsuit-against-vpx/, including the following statement by Jack Owoc addressing

22  numerous false allegations in Monster's Complaint: "I never claim that Bang can

23  reverse intellectual disability and help cure diseases such as Alzheimer's,

24  Parkinson's, Huntington's and other forms of dementia. Bang is infinitely safer and

25  healthier than Monster – consumption of Monster is associated with 17 deaths,

26  heart attack, heartbeat irregularities and countless adverse event reports."

27  **SPECIAL INTERROGATORY NO. 8:**

28      If YOU contend that the Super Creatine contained in BANG increases the

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-35-

circulating levels of creatine or creatinine in the human body, identify all bases supporting YOUR contention, including the approximate amount of the alleged increases.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and is subject to the Protective Order. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as vague and ambiguous as to the terms "BANG" (as defined), "Super Creatine" (as it is not defined in this set of Interrogatories), "contend/contention," "increases the circulating levels," "creatine," and "alleged increases." Responding Party further objects to this Interrogatory as irrelevant, unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Propounding Party further objects to this Interrogatory to the extent it seeks information regarding documents and nonwritten files that may be within the scope of electronic requests for emails, and the Parties are meeting and conferring regarding document production, including custodians, search terms, and objections. Responding Party will not produce documents that are publicly available in response to this Request. Responding Party has no obligation to investigate and discover information and materials from third parties or sources that are equally accessible to Propounding Party such as, for example and without limitation, third party information regarding testing and studies. Responding Party further objects to this Interrogatory as seeking information that calls for expert opinion or a legal conclusion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including specifically request No. 4. Responding Party incorporates by reference all

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-36-

1  objections made in response to Request for Documents, including but not limited

2  to Nos. 4, 36, and 37.

3      Subject to the foregoing general and specific objections, Responding Party

4  responds as follows:

5      Even though Responding Party is responding to this Interrogatory, to the

6  extent this Interrogatory seeks relevant information, Responding Party does not

7  have the burden of proof as to the topic raised in this Interrogatory. *See e.g.*, Order

8  Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF

9  122, page 6.  For example, Propounding Party has the burden of demonstrating that

10 Creatyl-L-Leucine or Creatyl-L-Glutamine do not provide the benefits of creatine.

11 This Interrogatory appears to seek expert testimony, which is premature at this

12 time and improper prior to the deadline for expert reports.  Expert reports and

13 testimony will be served according to the Federal Rules and the Court's schedule.

14 Responding Party reserves the right to provide a rebuttal to Propounding Party's

15 position after Propounding Party provides its position, evidence, expert reports,

16 and/or testimony.  While Responding Party is not aware of any previous contention

17 that Responding Party has made in this litigation that SUPER CREATINE in

18 BANG® "increases the circulating levels of creatine or creatinine in the human

19 body" by any "alleged increase" as those terms are used in this Interrogatory, and

20 because any such contention in an expert report would be premature at this time,

21 Responding Party explicitly reserves the right to make that contention in this case

22 in the future.  To the extent Propounding Party is referring to a specific contention

23 that Propounding Party believes Responding Party has made about SUPER

24 CREATINE increasing "the circulating levels of creatine or creatinine in the

25 human body," Responding Party objects to this Interrogatory as vague in scope and

26 Responding Party seeks that information from Responding Party so that the scope

27 of this Interrogatory can be clearly defined and Responding Party can respond to

28 any specific contention(s) to which this Interrogatory is targeted.  Responding

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-37-

Party incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3 (ECF 100 and exhibits 100-1 through 100-3) and documents referred to therein, including United States Patent No. 8,445,466. Exhibit L3 to Dr. Li's Declaration is a true and correct copy of the poster presentation for this latest study of BANG®. VPX sponsored a double-blind, placebo-controlled, crossover trial study of BANG®, performed by Nova Southeastern University, entitled "The Effects of BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey Peacock, Jaime Tartar, and Jose Antonio. In conclusion, the BANG® energy drink resulted in a significantly lower (i.e., faster) ($p < 0.05$) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses. Both Creatyl-L-leucine and Creatyl-L-glutamine in certain BANG® products have been branded under the trademark SUPER CREATINE.

This Interrogatory specifically seeks documents from third parties: "identify all bases supporting YOUR contention." Propounding Party will not produce "all" DOCUMENTS that provide any bases or support for any contention(s) in response to this Interrogatory. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the non-privileged information in Responding Party's possession, custody, or control sufficient to respond to this Request is proportionate to the needs of this case and will be produced subject to a Protective Order. Specifically, Responding Party will

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-38-

1   continue to meet and confer with Propounding Party regarding ESI protocols,

2   custodians, search terms, and date ranges.

3   **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

4       VPX maintains the foregoing and previously asserted general and special

5   objections and supplements its response in light of meet and confer efforts to

6   resolve the discovery dispute between the parties, as follows:

7       The Parties have met and conferred as to email search terms and protocols

8   and have agreed to review certain documents which appear targeted at this request

9   and may be responsive to this Interrogatory, such as studies, etc. VPX is reviewing

10  numerous documents and will supplement its rolling production and may

11  supplement this Interrogatory if additional information is discovered. VPX

12  maintains that Monster has the burden of proving all elements of each of the

13  asserted causes of action. Monster has not done so. During meet and confer

14  correspondence relating to this Interrogatory, while this Interrogatory does not seek

15  information regarding *the quantity* of creatyl-l-leucine in BANG energy drinks,

16  Monster claimed that the information regarding the quantity of creatyl-l-leucine

17  and these interrogatories were relevant to claims 1-3 of the First Amended

18  Complaint (FAC), which relate to claims of false advertising, specifically related to

19  alleged statements made to consumers upon which those consumers would rely. In

20  response to Paragraph 51 of the FAC, VPX responded that "Defendants admit

21  Owoc has been asked on social media how much Super Creatine is in BANG® and

22  that such is proprietary information." Monster does not dispute that the BANG

23  formula is a trade secret; in fact, Monster claims that its own formulas (e.g.,

24  REIGN) are trade secrets and such disclosure would harm the owner of the formula

25  if such information was in the hands of a competitor. Monster does not allege that

26  VPX has ever disclosed the formula for BANG or that any consumer has ever

27  relied on any statements from VPX relating to the formula or quantities of

28  ingredients, other than 300 mg of caffeine, in BANG. VPX maintains that its

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1   formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade

2   secret which Monster seeks for competitive reasons because VPX's BANG

3   product is so successful that Monster introduced an almost identical product called

4   REIGN with almost identical packaging, formula, and branding, which specifically

5   targets and is directed to VPX's customers.  In order to resolve discovery disputes

6   during the discovery process in this case, VPX has disclosed through meet and

7   confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to

8   drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is

9   less than 40 mg and caffeine is 300 mg.  VPX has not disclosed the quantities of

10  the other ingredients in BANG.  VPX has not previously disclosed the quantity of

11  creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX

12  ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready

13  to drink cans.  No competitors of VPX sell an energy drink with more creatyl-l-

14  leucine than BANG.  No consumers seeking a specific quantity of creatine in any

15  form have been told by VPX how much creatyl-l-leucine is in the proprietary blend

16  of BANG.  Thus, no consumers could reasonably rely on such statements in

17  advertisements (as VPX has not made those statements).  In addition, no false

18  statements of fact were made about the quantities of ingredients or their impact on

19  consumers for this product, no consumer could have relied on or did rely on such

20  statements, no statements deceived consumers or were likely to deceive

21  consumers, and no alleged "deception" (as Monster alleges) was or would be

22  material to a consumer.  Further, Monster could not have been harmed by any

23  statements relating to creatyl-l-leucine related to the BANG energy drink.  As set

24  forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the

25  first to use creatyl-l-leucine in an energy drink.  To date, VPX is not aware of any

26  competitors who have sold an energy drink containing creatyl-l-leucine.  Upon

27  information and belief, Monster has never made and does not sell an energy drink

28  with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  *See*

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-40-

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1:

2  "…Monster admits that it has never released an energy drink product with Monster

3  branding that contains creatine."; RFA No. 2: "Monster admits that it has never

4  released an energy drink product with Monster branding that contains creatyl-L-

5  leucine."

6          Creatine supplements come in many forms in the marketplace and such

7  supplements have been scientifically proven to provide positive health effects,

8  including building muscle and strength and boosting athletic performance, and

9  research has also shown that creatine supplements have the potential for helping

10  with age-related neurological diseases, such as improving brain function and

11  boosting memory.  Dr. Li cites to some studies in his Declaration, other studies are

12  available publicly, and studies that are responsive to Monster's proposed email

13  search terms that are agreed upon by the parties will be reviewed and responsive,

14  non-privileged documents will be produced.  Further, there is no dispute that

15  studies show that exercise, a healthy lifestyle, and low carbohydrate and low sugar

16  diets can provide benefits (unlike many of Monster's energy drinks) can provide

17  health benefits and new articles and studies come out all the time.  See, e.g., an

18  article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link

19  Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes

20  can improve cognition." https://www.wsj.com/articles/the-link-between-diet-

21  exercise-and-alzheimers-11572427802.  That article cites to a study released on

22  October 30, 2019.

23          The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not

24  intended to be a sole source of creatine and does not advertise that it is, but rather

25  is a great tasting drink to add to a well-balanced diet that includes the consumption

26  of other foods containing creatine, such as beef, chicken, pork, eggs, and

27  fish.  Further, Bang as a complete product with zero sugars and zero calories is a

28  healthier option than most energy drinks manufactured by its competitors,

including Monster, which contain large quantities of sugar, carbohydrates, and other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super Creatine), Bang contains many ingredients that have been characterized as providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids.  In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.

VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can "increases the circulating levels of creatine or creatinine in the human body" as phrased in this Interrogatory, or have specific health benefits except as compared to other energy drinks offered by competitors.  In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category. *See e.g.*, Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6.  Below is an excerpt from Exhibit C, page 24 of 27, showing Reign's description of ingredients mirroring BANG's description.

| | Reign |
|---|---|
| All Natural Flavors | Yes |
| Zero Calories | Yes |
| Zero Sugar | Yes |
| No Artificial Colors | Yes |
| 300 MG Caffeine | Yes |
| Electrolytes | Yes |
| BCAA's | Yes |
| CO Q10 | Yes |

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from

-42-

DEFENDANT VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF MONSTER ENERGY COMPANY'S SPECIAL INTERROGATORIES, SETS ONE AND TWO

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales and EPS CAGR of 10% and 14%, respectively. The sustainable growth outlook is supported by … 3) innovation in energy-adjacent segments such as coffee and "performance energy" with REIGN…"

Monster's counsel stated during meet and confer correspondence that certain paragraphs of the First Amended Complaint were the basis of Monster's Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the First Amended Complaint ("FAC").  Paragraphs 46-48 of the FAC, however, do not provide any context for where those statements come from, none of these alleged statements are full quotes, and Monster provided no citations to where these statements were made.  As such, it does not appear from the quoted language or the descriptions made by Monster in Paragraphs 46 to 48 that these statements are about any specific health effects of creatyl-l-leucine in a can of BANG ready to drink energy drinks or related to the quantity of creatyl-l-leucine in a can.  Monster does not allege that these statements were made in public, to consumers, or in advertisements.  The fact that those statements are not in quotes indicates that the statements are taken out of context and that none of them are about Super Creatine when considered in context.  Further, as stated in the prior objections, there is no evidence from Monster or its experts that any of these statements are false.  VPX has already addressed and denied many of these statements in a post on its website: https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolous-lawsuit-against-vpx/, including the following statement by Jack Owoc addressing numerous false allegations in Monster's Complaint: "I never claim that Bang can reverse intellectual disability and help cure diseases such as Alzheimer's, Parkinson's, Huntington's and other forms of dementia. Bang is infinitely safer and healthier than Monster – consumption of Monster is associated with 17 deaths, heart attack, heartbeat irregularities and countless adverse event reports."

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-43-

1

2

3

4   Dated:  October 31, 2019

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GORDON REES SCULLY MANSUKHANI, LLP**

By:   */s/ Timothy K. Branson*
      M. D. Scully
      Timothy K. Branson
      Sean P. Flynn
      Holly L.K. Heffner
      Michael D. Kanach
      Attorneys for Defendants
      Vital Pharmaceuticals, Inc., dba
      VPX Sports and John H. Owoc
      aka Jack Owoc

-44-

1

## <u>CERTIFICATE OF SERVICE</u>

2  I am a resident of the State of California, over the age of eighteen years, and

3 not a party to the within action.  My business address is: Gordon Rees Scully

4 Mansukhani, 275 Battery Street, Suite 2000, San Francisco, CA 94111, my

5 electronic mail address is mkanach@grsm.com.  On October 31, 2019, I served the

6 foregoing document(s) entitled: **DEFENDANT VITAL**

7 **PHARMACEUTICALS, INC., D/B/A VPX SPORTS' RESPONSE TO**

8 **PLAINTIFF MONSTER ENERGY COMPANY'S SPECIAL**

9 **INTERROGATORIES, SET TWO** as follows:

10  ☒  **BY ELECTRONIC MAIL** by transmitting via electronic mail the document(s) listed above to the address(es) listed below on this date pursuant to FRCP 5(b)(2)(E).

11

12 **Counsel for Plaintiff MONSTER ENERGY:**    jhueston@hueston.com
mkaba@hueston.com
sfeldman@hueston.com

13

14 John C. Hueston   jreiter@hueston.com
Moez Kaba    mtodisco@hueston.com
Steven N. Feldman   smishra@hueston.com

15 Joseph A. Reiter
Michael H. Todisco

16 Sourabh Mishra
Hueston Hennigan LLP

17 523 West 6th Street, Suite 400
Los Angeles, CA  90014

18 Phone:  213-788-4340

19  I declare under penalty of perjury under the laws of the United States of

20 America that the above is true and correct and that I am employed in the office of a

21 member of the bar of this court at whose direction this service was made.

22  Executed on October 31, 2019 at San Mateo, California.

23    */s/ Michael D. Kanach*

24    Michael D. Kanach

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**VERIFICATION**

STATE OF CALIFORNIA    )
                             )
CENTRAL DISTRICT         )

I, Marc Kesten, declare:

I am the Corporate Secretary of **VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS**, a corporation organized and existing under the laws of California, which is the Defendant in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing **DEFENDANT VITAL PHARMACEUTICALS, INC., D/B/A VPX SPORTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF MONSTER ENERGY COMPANY'S SPECIAL INTERROGATORIES, SETS ONE AND TWO** on file herein and know the contents thereof.  To the extent I have personal knowledge of the matters set forth therein, the same are true and correct.  Insofar as said matters are a composite of the information of many individuals, I do not have personal knowledge concerning all of the information contained in said Response, but I am informed and believe that the information set forth therein for which I lack personal knowledge is true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Dallas, Texas, on October 30, 2019.

_____
Marc J. Kesten

Gordon Rees Scully Mansukhani, LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1175874/47946719v.1