UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:18-cv-01882-JGB (SHKx)** | Date: | January 2, 2020 |
|---|---|---|---|
| Title: | ***Monster Energy Co. v. Vital Pharm., Inc.*** | | |

Present: The Honorable   Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO SUPPLEMENT ITS RESPONSES TO INTERROGATORIES 4, 7, & 8 [ECF NO. 148]**

The background of this case and the claims alleged in Plaintiff Monster Energy Company's ("Monster" or "Plaintiff") operative, First Amended Complaint ("FAC") are set forth in detail and incorporated into this Order from the previously issued Order (1) Denying Defendant John H. Owoc's Motion to Dismiss for Lack of Personal Jurisdiction; (2) Granting in Part and Denying in Part Defendants' Motion to Dismiss for Failure to State Claim; and (3) Denying Defendants' Motion to Strike ("Order re: Mot. to Dismiss").  Electronic Case Filing Number ("ECF No.") 95, Order re: Mot. to Dismiss; see also ECF No. 136, October 16 Order.

On November 20, 2019, Monster filed a request to compel ("Motion" or "Mot.") Defendant Vital Pharmaceuticals, Inc. ("VPX" or "Defendant") to supplement its responses to Interrogatories 4, 7, and 8.  ECF No. 148, Mot.  These Interrogatories dealt with VPX's alleged contentions about, and its position on, the purported health benefits of a substance called "Super Creatine."  See id.

After reviewing the record and the parties' letters and briefs, the Court **GRANTS IN PART** Monster's Motion with respect to Interrogatories 4, 7, and 8.

/ / /

# I.   BACKGROUND

A.   <u>**Factual And Procedural History**</u>

Monster commenced this action in September 2018 against VPX and John H. Owoc (collectively "Defendants"). ECF No. 1, Compl. On April 3, 2019, Monster filed its FAC against VPX and several other defendants alleging the following claims: (1) a violation of the Lanham Act; (2) unfair competition; (3) false advertising; (4) trade libel; (5) intentional interference with contractual relations; (6) intentional interference with prospective economic advantage; (7) conversion; (8) larceny; (9) false patent marking; (10) a violation of the California Uniform Trade Secrets Act; (11) a violation of the Defend Trade Secrets Act; and (12) a violation of the Computer Fraud and Abuse Act. ECF No. 61, FAC.

On May 20, 2019, the Court denied in part Defendants' Motion to Dismiss and concluded Monster sufficiently pleads Lanham Act, unfair competition, and false advertising claims, among other claims. ECF No. 95, Order re: Mot. to Dismiss. The FAC alleged Defendants label and market BANG Energy Drink, but that BANG does not provide the extraordinary benefits advertised. ECF No. 61, FAC at ¶¶ 44-55. In particular, Monster alleged there is no creatine in BANG and that "Super Creatine" is in fact creatyl-l-leucine, a fundamentally different molecule than creatine; creatyl-l-leucine is functionally useless and passes through the body largely unutilized; and, third, even if creatyl-l leucine did break down into creatine, which it does not, there is not enough of it in BANG to have a material effect on the body—creatyl-l-leucine thus offers no health benefit whatsoever. <u>Id.</u> at ¶¶ 51-55.

Monster and Defendants filed a stipulated protective order on July 25, 2019, which the Court issued on August 5, 2019, ECF No. 125, Stip. Prot. Order. The stipulated protective order provided two-tiers of protection and allowed a producing party to designate documents or information it provides as either "Confidential" or "Highly Confidential–Attorney's Eyes Only." <u>Id.</u> at 4, 12-13. These two tiers control how the respectively designated discovery may be disclosed and provided in relevant part:

> 2.4 "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY" shall be limited to such documents, testimony, information or other things that the Designating Party believes, in good faith, contain information the disclosure of which is likely to cause substantial harm to the competitive position of the Designating Party, contain information subject to the right of privacy of any person, or contain information alleged to be a trade secret. None of the restrictions set forth in this Stipulated Protective Order shall apply to any documents or other information that are or become public knowledge by means not in violation of the provisions of this Stipulated Protective Order, or any law or statute.

> 7.3 Disclosure of "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

writing by the Designating Party, a Receiving Party may disclose Protected Material designated ''HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY'' only to the following persons:

(a) the Receiving Party's Outside Counsel in this action;
(b) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the ''Acknowledgment and Agreement to Be Bound'' (Exhibit A);
(c) the court and its personnel;
(d) court reporters and videographers and their staff;
(e) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the ''Acknowledgment and Agreement to Be Bound'' (Exhibit A); and
(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and
(g) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

Id.

In June and July 2019, Monster served three interrogatories on VPX purportedly in an alleged effort to determine and understand the basis for VPX's position on the purported benefits of Super Creatine. ECF No. 148, Mot. Ex. 1 at 4, Ex. 2 at 3-4. VPX served its responses shortly thereafter. Id. at Exs. 3-4. The parties then met and conferred on multiple occasions. See id. at 2-3. Monster sought more in-depth responses, asking VPX to supplement its interrogatories. See id., Ex. 4 at 6. The parties agreed to several extensions for VPX to supplement its interrogatories. See id. at 3, Ex. 4 at 6. VPX provided its final supplemental responses on October 30, 2019.[1] Id. at Ex. 5. These supplemental responses did not satisfy Monster, see id. at 3, and, on November 14, 2019, the Court held a telephonic conference to discuss the parties' discovery dispute, ECF No. 146, MO re Discovery Dispute Conference.

On November 20, 2019, Monster submitted the present request to the Court asking that VPX be ordered to supplement its responses to Interrogatories 4, 7, and 8. ECF No. 148, Mot. VPX filed its opposition on November 27, 2019, ECF No. 151, Opposition, Monster responded, ECF No. 152, Reply, and the matter is ready for decision.

/ / /

---

[1] In the interim, on October 16, 2019, the Court granted Monster's motion to compel a response to a separate interrogatory and ordered Defendants to provide formulas of BANG products claimed by Defendants to contain creatine or creatyl-l-leucine (''October 16 Order''). ECF No. 136, October 16 Order. The October 16 Order also denied Defendants' Motion to Compel a response to a request for the production of documents concerning the formulation of a particular drink made by Monster. Id.

**B.**     **Disputed Discovery**

Below are the Special Interrogatories ("SI") at issue and the initial and supplemental responses provided by VPX:

**SI No. 4:**

If YOU contend that the "Super Creatine" in BANG creates positive health effects for drinkers, identify all publications, research papers, and DOCUMENTS supporting YOUR claim, and how that source supports YOUR claim that the "Super Creatine" in BANG creates positive health effects for drinkers.

**Response to SI No. 4:**

Responding Party objects to this Interrogatory to the extent it seeks privileged attorney client communications or work product. Responding Party further objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and, as such, will not be produced until a Protective Order is in place. Responding Party objects to this Interrogatory as seeking proprietary information regarding trade secrets, including ingredients, recipes, formulations, formulae, which would be extremely detrimental to Defendant if disseminated or distributed publicly or if provided to Responding Party's competitors or potential competitors. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Responding Party objects to this Interrogatory as vague and ambiguous as to the scope and time. Responding Party objects to the definitions of "BANG" and "SUPER CREATINE" as vague, ambiguous, overbroad, and harassing. Defendant objects to this Interrogatory as vague and ambiguous with respect to the undefined terms "supporting," "YOUR claim," "positive health effects," "health effects." Responding Party further objects to this Interrogatory to the extent this Interrogatory seeks information subject to expert analysis or opinion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including specifically request no. 4 which seeks "All DOCUMENTS and COMMUNICATIONS relating to YOUR studies, research, and tests of BANG products, including but not limited to:

a. The amount of creatine in BANG products;
b. The amount of SUPER CREATINE in BANG products;
c. The amount of creatine in SUPER CREATINE;

d. The incremental effect of including additional SUPER CREATINE in BANG products;
e. The contents of BANG products;
f. Comparisons between BANG products and products manufactured or sold by MONSTER;
g. The health impacts of creatyl-l-leucine; and
h. Discussions or analyses relating to creatinine."

Further, this Interrogatory is duplicative of request no. 50 which seeks "All DOCUMENTS and COMMUNICATIONS relating to the formulation or changes to the formulation of BANG products." Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4, 36, 37, 48, and 50. Responding Party further objects to the extent this request seeks information from third-parties. Responding Party further objects to this Interrogatory as seeking information that calls for a legal conclusion. Subject to the foregoing general and specific objections, Defendant responds as follows:

Even though Responding Party is responding to this Interrogatory, Responding Party does not have the burden of proof as to the topic raised in this Interrogatory. See e.g., Order Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF 122, page 6. For example, Propounding Party has the burden of demonstrating that Creatyl-L-Leucine does not provide the benefits of creatine. This Interrogatory appears to seek expert testimony, which is improper prior to the deadline for expert reports. Expert reports and testimony will be served according to the Federal Rules and the Court's schedule. Responding Party reserves the right to provide a rebuttal to Propounding Party's position after Propounding Party provides its position, evidence, expert reports, or testimony. Responding Party incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3 (ECF 100 and exhibits 100-1 through 100-3). Exhibit L3 to Dr. Li's Declaration is a true and correct copy of the poster presentation for this latest study of BANG®. VPX sponsored a double-blind, placebo-controlled, crossover trial study of BANG®, performed by Nova Southeastern University, entitled "The Effects of BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey Peacock, Jaime Tartar, and Jose Antonio. In conclusion, the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses. Creatyl-l-leucine in certain BANG products is branded under the trademark SUPER CREATINE.

/ / /

This Interrogatory specifically seeks documents from third parties: "all publications, research papers, and DOCUMENTS supporting YOUR claim." Propounding Party will not produce "all" DOCUMENTS in response to this Interrogatory. Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the non- privileged information in Responding Party's possession, custody, or control sufficient to respond to this Request is proportionate to the needs of this case and will be produced subject to a Protective Order. Specifically, Responding Party will continue to meet and confer with Propounding Party regarding ESI protocols, custodians, search terms, and date ranges.

**Supplemental Response to SI No. 4:**

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows: The Parties have met and conferred as to email search terms and protocols and have agreed to review certain documents which appear targeted at this request and may be responsive to this Interrogatory, such as studies, etc. VPX is reviewing numerous documents and will supplement its rolling production and may supplement this Interrogatory if additional information is discovered. VPX maintains that Monster has the burden of proving all elements of each of the asserted causes of action. Monster has not done so. During meet and confer correspondence relating to this Interrogatory, while this Interrogatory does not seek information regarding the <u>quantity</u> of creatyl-l-leucine in BANG energy drinks, Monster claimed that the information regarding the quantity of creatyl-l-leucine and these interrogatories were relevant to claims 1-3 of the First Amended Complaint (FAC), which relate to claims of false advertising, specifically related to alleged statements made to consumers upon which those consumers would rely. In response to Paragraph 51 of the FAC, VPX responded that "Defendants admit Owoc has been asked on social media how much Super Creatine is in BANG® and that such is proprietary information." Monster does not dispute that the BANG formula is a trade secret; in fact, Monster claims that its own formulas (e.g., REIGN) are trade secrets and such disclosure would harm the owner of the formula if such information was in the hands of a competitor. Monster does not allege that VPX has ever disclosed the formula for BANG or that any consumer has ever relied on any statements from VPX relating to the formula or quantities of ingredients, other than 300 mg

of caffeine, in BANG. VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG product is so successful that Monster introduced an almost identical product called REIGN with almost identical packaging, formula, and branding, which specifically targets and is directed to VPX's customers.  In order to resolve discovery disputes during the discovery process in this case, VPX has disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300 mg. VPX has not disclosed the quantities of the other ingredients in BANG. VPX has not previously disclosed the quantity of creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready to drink cans. No competitors of VPX sell an energy drink with more creatyl-l-leucine than BANG.  No consumers seeking a specific quantity of creatine in any form have been told by VPX how much creatyl-l-leucine is in the proprietary blend of BANG.   Thus, no consumers could reasonably rely on such statements in advertisements (as VPX has not made those statements).  In addition, no false statements of fact were made about the quantities of ingredients or their impact on consumers for this product, no consumer could have relied on or did rely on such statements, no statements deceived consumers or were likely to deceive consumers, and no alleged "deception" (as Monster alleges) was or would be material to a consumer. Further, Monster could not have been harmed by any statements relating to creatyl-l-leucine related to the BANG energy drink.  As set forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the first to use creatyl-l-leucine in an energy drink.  To date, VPX is not aware of any competitors who have sold an energy drink containing creatyl-l-leucine. Upon information and belief, Monster has never made and does not sell an energy drink with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  See Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1: "[M]onster admits that it has never released an energy drink product with Monster branding that contains creatine."; RFA No. 2: "Monster admits that it has never released an energy drink product with Monster branding that contains creatyl-L-leucine."  Creatine supplements come in many forms in the marketplace and such supplements have been scientifically proven to provide positive health effects, including building muscle and strength and boosting athletic performance, and research has also shown that creatine supplements have the potential for helping with age-related neurological diseases, such as improving brain function and boosting memory.  Dr. Li cites to some studies in his Declaration, other studies are available publicly, and studies that are responsive to Monster's proposed email search terms that are agreed upon by the parties will be reviewed and responsive, non-privileged documents will be produced.  Further, there is no dispute that studies show that exercise, a healthy lifestyle, and low carbohydrate

and low sugar diets can provide benefits (unlike many of Monster's energy drinks) can provide health benefits and new articles and studies come out all the time. See, e.g., an article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes can improve cognition." https://www.wsj.com/articles/the-link-betweendietexercise-and-alzheimers-11572427802.  That article cites to a study released on October 30, 2019.  The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not intended to be a sole source of creatine and does not advertise that it is, but rather is a great tasting drink to add to a well-balanced diet that includes the consumption of other foods containing creatine, such as beef, chicken, pork, eggs, and fish.  Further, Bang as a complete product with zero sugars and zero calories is a healthier option than most energy drinks manufactured by its competitors, including Monster, which contain large quantities of sugar, carbohydrates, and other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super Creatine), Bang contains many ingredients that have been characterized as providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids. In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.  VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can creates "positive health effects for drinkers" as phrased in this Interrogatory, except as compared to other energy drinks offered by competitors. In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category.  See e.g., Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6. . . . [Table omitted.]

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales and EPS CAGR of 10% and 14%, respectively.  The sustainable growth outlook is supported by . . . 3) innovation in energy-adjacent segments such as coffee and "performance energy" with REIGN . . .[ .]"  Monster's counsel stated during meet and confer correspondence that certain paragraphs of the First Amended Complaint were the basis of Monster's Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the First Amended Complaint ("FAC"). Paragraphs 46-48 of the FAC, however, do not provide any context for where those statements come from, none of these alleged statements are full quotes, and Monster provided no citations to where these statements were made. As such, it

does not appear from the quoted language or the descriptions made by Monster in Paragraphs 46 to 48 that these statements are about any specific health effects of creatyl-l-leucine in a can of BANG ready to drink energy drinks or related to the quantity of creatyl-l-leucine in a can. Monster does not allege that these statements were made in public, to consumers, or in advertisements. The fact that those statements are not in quotes indicates that the statements are taken out of context and that none of them are about Super Creatine when considered in context. Further, as stated in the prior objections, there is no evidence from Monster or its experts that any of these statements are false. VPX has already addressed and denied many of these statements in a post on its website: https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolouslawsuit-against-vpx/, including the following statement by Jack Owoc addressing numerous false allegations in Monster's Complaint: "I never claim that Bang can reverse intellectual disability and help cure diseases such as Alzheimer's, Parkinson's, Huntington's and other forms of dementia. Bang is infinitely safer and healthier than Monster – consumption of Monster is associated with 17 deaths, heart attack, heartbeat irregularities and countless adverse event reports."

<u>SI No. 7:</u>

If YOU contend that the Super Creatine contained in BANG has an effect on the VITALS and SUBSTANCES in the human body, identify all such effects and all DOCUMENTS that support YOUR contention.

**<u>Response to SI No. 7:</u>**

Responding Party objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and is subject to the Protective Order. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as overbroad, vague, and ambiguous as to the terms "BANG" (as defined), "Super Creatine" (as it is not defined in this set of Interrogatories), "contend/contention," "an effect/all such effects," "VITALS," and "SUBSTANCES," as defined in this Interrogatory and the terms used in the definitions of VITALS and SUBSTANCES including the overbroad phrase "including" used in in the definitions. Responding Party further objects to this Interrogatory as irrelevant, unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Propounding Party further objects to this Interrogatory to the extent it seeks information regarding documents and nonwritten files that may be within the scope of electronic requests for emails, and the Parties are meeting and conferring regarding document production, including custodians, search terms, and

objections.   Responding Party will not produce documents that are publicly available in response to this Request.   Responding Party has no obligation to investigate and discover information and materials from third parties or sources that are equally accessible to Propounding Party such as, for example and without limitation, third party information regarding testing and studies.   Responding Party further objects to this Interrogatory as seeking information that calls for expert opinion or a legal conclusion.   To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule.   Further, this Interrogatory appears to be duplicative of document requests, including specifically request No. 4, 36, and 37. Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4, 36, and 37.   Subject to the foregoing general and specific objections, Responding Party responds as follows:

Even though Responding Party is responding to this Interrogatory, to the extent this Interrogatory seeks relevant information, Responding Party does not have the burden of proof as to the topic raised in this Interrogatory. See e.g., Order Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF 122, page 6. For example, Propounding Party has the burden of demonstrating that Creatyl-L-Leucine or Creatyl-L-Glutamine do not provide the benefits of creatine. This Interrogatory appears to seek expert testimony, which is premature at this time and improper prior to the deadline for expert reports. Expert reports and testimony will be served according to the Federal Rules and the Court's schedule. Responding Party reserves the right to provide a rebuttal to Propounding Party's position after Propounding Party provides its position, evidence, expert reports, and/or testimony. While Responding Party is not aware of any previous contention that Responding Party has made in this litigation that SUPER CREATINE in BANG® has "an effect" on "VITALS" or "SUBSTANCES," as those terms are defined in this Interrogatory, and because any such contention in an expert report would be premature at this time, Responding Party explicitly reserves the right to make that contention in this case in the future.   To the extent Propounding Party is referring to a specific contention that Propounding Party believes Responding Party has made about effects on VITALS or SUBSTANCES as those terms are defined, Responding Party objects to this Interrogatory as vague in scope and Responding Party seeks that information from Responding Party so that the scope of this Interrogatory can be clearly defined and Responding Party can respond to any specific contention(s) to which this Interrogatory is targeted. Responding Party incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3 (ECF 100 and exhibits 100-1 through 100-3) and documents referred to therein, including United States Patent No. 8,445,466.   Exhibit L3 to Dr. Li's Declaration is a true and

correct copy of the poster presentation for this latest study of BANG®. VPX sponsored a double-blind, placebo-controlled, crossover trial study of BANG®, performed by Nova Southeastern University, entitled "The Effects of BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey Peacock, Jaime Tartar, and Jose Antonio. In conclusion, the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.  Both Creatyl-L-leucine and Creatyl-L-glutamine in certain BANG® products have been branded under the trademark SUPER CREATINE.

This Interrogatory specifically seeks documents from third parties: "identify all such effects and all DOCUMENTS that support YOUR contention." Propounding Party will not produce "all" DOCUMENTS in response to this Interrogatory.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained.  The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party.  Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the nonprivileged information in Responding Party's possession, custody, or control sufficient to respond to this Request is proportionate to the needs of this case and will be produced subject to a Protective Order.  Specifically, Responding Party will continue to meet and confer with Propounding Party regarding ESI protocols, custodians, search terms, and date ranges.

<u>Supplemental Response to SI No. 7:</u>

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows:

The Parties have met and conferred as to email search terms and protocols and have agreed to review certain documents which appear targeted at this request and may be responsive to this Interrogatory, such as studies, etc. VPX is reviewing numerous documents and will supplement its rolling production and may supplement this Interrogatory if additional information is discovered. VPX maintains that Monster has the burden of proving all elements of each of the asserted causes of action. Monster has not done so.  During meet and confer correspondence relating to this Interrogatory, while this Interrogatory does not seek information regarding <u>the quantity</u> of creatyl-l-leucine in BANG energy

drinks, Monster claimed that the information regarding the quantity of creatyl-l-leucine and these interrogatories were relevant to claims 1-3 of the First Amended Complaint (FAC), which relate to claims of false advertising, specifically related to alleged statements made to consumers upon which those consumers would rely. In response to Paragraph 51 of the FAC, VPX responded that "Defendants admit Owoc has been asked on social media how much Super Creatine is in BANG® and that such is proprietary information." Monster does not dispute that the BANG formula is a trade secret; in fact, Monster claims that its own formulas (e.g., REIGN) are trade secrets and such disclosure would harm the owner of the formula if such information was in the hands of a competitor. Monster does not allege that VPX has ever disclosed the formula for BANG or that any consumer has ever relied on any statements from VPX relating to the formula or quantities of ingredients, other than 300 mg of caffeine, in BANG. VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG product is so successful that Monster introduced an almost identical product called REIGN with almost identical packaging, formula, and branding, which specifically targets and is directed to VPX's customers. In order to resolve discovery disputes during the discovery process in this case, VPX has disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300 mg.  VPX has not disclosed the quantities of the other ingredients in BANG. VPX has not previously disclosed the quantity of creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready to drink cans.  No competitors of VPX sell an energy drink with more creatyl-l-leucine than BANG.  No consumers seeking a specific quantity of creatine in any form have been told by VPX how much creatyl-l-leucine is in the proprietary blend of BANG.    Thus, no consumers could reasonably rely on such statements in advertisements (as VPX has not made those statements). In addition, no false statements of fact were made about the quantities of ingredients or their impact on consumers for this product, no consumer could have relied on or did rely on such statements, no statements deceived consumers or were likely to deceive consumers, and no alleged "deception" (as Monster alleges) was or would be material to a consumer. Further, Monster could not have been harmed by any statements relating to creatyl-l-leucine related to the BANG energy drink. As set forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the first to use creatyl-l-leucine in an energy drink. To date, VPX is not aware of any competitors who have sold an energy drink containing creatyl-l-leucine. Upon information and belief, Monster has never made and does not sell an energy drink with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  See Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1: "[M]onster

admits that it has never released an energy drink product with Monster branding that contains creatine."; RFA No. 2: "Monster admits that it has never released an energy drink product with Monster branding that contains creatyl-l leucine." Creatine supplements come in many forms in the marketplace and such supplements have been scientifically proven to provide positive health effects, including building muscle and strength and boosting athletic performance, and research has also shown that creatine supplements have the potential for helping with age-related neurological diseases, such as improving brain function and boosting memory. Dr. Li cites to some studies in his Declaration, other studies are available publicly, and studies that are responsive to Monster's proposed email search terms that are agreed upon by the parties will be reviewed and responsive, non-privileged documents will be produced.  Further, there is no dispute that studies show that exercise, a healthy lifestyle, and low carbohydrate and low sugar diets can provide benefits (unlike many of Monster's energy drinks) can provide health benefits and new articles and studies come out all the time.  See, e.g., an article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes can improve cognition." https://www.wsj.com/articles/the-link-between-dietexercise-and-alzheimers-11572427802.  That article cites to a study released on October 30, 2019.  The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not intended to be a sole source of creatine and does not advertise that it is, but rather is a great tasting drink to add to a well-balanced diet that includes the consumption of other foods containing creatine, such as beef, chicken, pork, eggs, and fish. Further, Bang as a complete product with zero sugars and zero calories is a healthier option than most energy drinks manufactured by its competitors, including Monster, which contain large quantities of sugar, carbohydrates, and other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super Creatine), Bang contains many ingredients that have been characterized as providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids. In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.  VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can has "an effect on the VITALS and SUBSTANCES in the human body" as phrased in this Interrogatory, as those terms are defined or understood by VPX, or provides specific health benefits except as compared to other energy drinks offered by competitors.  In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category.  See e.g., Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6.

Below is an excerpt from Exhibit C, page 24 of 27, showing Reign's description of ingredients mirroring BANG's description.  [Table omitted.]

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales and EPS CAGR of 10% and 14%, respectively. The sustainable growth outlook is supported by … 3) innovation in energy-adjacent segments such as coffee and "performance energy" with REIGN . . . ."  Monster's counsel stated during meet and confer correspondence that certain paragraphs of the First Amended Complaint were the basis of Monster's Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the First Amended Complaint ("FAC"). Paragraphs 46-48 of the FAC, however, do not provide any context for where those statements come from, none of these alleged statements are full quotes, and Monster provided no citations to where these statements were made. As such, it does not appear from the quoted language or the descriptions made by Monster in Paragraphs 46 to 48 that these statements are about any specific health effects of creatyl-l-leucine in a can of BANG ready to drink energy drinks or related to the quantity of creatyl-l-leucine in a can. Monster does not allege that these statements were made in public, to consumers, or in advertisements. The fact that those statements are not in quotes indicates that the statements are taken out of context and that none of them are about Super Creatine when considered in context.  Further, as stated in the prior objections, there is no evidence from Monster or its experts that any of these statements are false. VPX has already addressed and denied many of these statements in a post on its website: https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolouslawsuit-against-vpx/, including the following statement by Jack Owoc addressing numerous false allegations in Monster's Complaint: "I never claim that Bang can reverse intellectual disability and help cure diseases such as Alzheimer's, Parkinson's, Huntington's and other forms of dementia. Bang is infinitely safer and healthier than Monster – consumption of Monster is associated with 17 deaths, heart attack, heartbeat irregularities and countless adverse event reports."

### SI No. 8:

If YOU contend that the Super Creatine contained in BANG increases the circulating levels of creatine or creatinine in the human body, identify all bases supporting YOUR contention, including the approximate amount of the alleged increases.

/ / /

**Response to SI No. 8:**

Responding Party objects to this Interrogatory on the basis that it seeks information that is confidential and proprietary in nature and is subject to the Protective Order. Responding Party further objects to this Interrogatory as vague as to scope and time and seeking irrelevant information and documents. Responding Party further objects to this Interrogatory as vague and ambiguous as to the terms "BANG" (as defined), "Super Creatine" (as it is not defined in this set of Interrogatories), "contend/contention," "increases the circulating levels," "creatine," and "alleged increases." Responding Party further objects to this Interrogatory as irrelevant, unduly burdensome, harassing, and not proportional to the needs of this case under Rule 26(b)(1). Propounding Party further objects to this Interrogatory to the extent it seeks information regarding documents and nonwritten files that may be within the scope of electronic requests for emails, and the Parties are meeting and conferring regarding document production, including custodians, search terms, and objections. Responding Party will not produce documents that are publicly available in response to this Request. Responding Party has no obligation to investigate and discover information and materials from third parties or sources that are equally accessible to Propounding Party such as, for example and without limitation, third party information regarding testing and studies. Responding Party further objects to this Interrogatory as seeking information that calls for expert opinion or a legal conclusion. To the extent information will be analyzed by an expert, such information may be provided in an expert's report as set forth according to the Court's schedule. Further, this Interrogatory appears to be duplicative of document requests, including specifically request No. 4. Responding Party incorporates by reference all objections made in response to Request for Documents, including but not limited to Nos. 4, 36, and 37. Subject to the foregoing general and specific objections, Responding Party responds as follows:

Even though Responding Party is responding to this Interrogatory, to the extent this Interrogatory seeks relevant information, Responding Party does not have the burden of proof as to the topic raised in this Interrogatory. See e.g., Order Denying Monster's Motion for a Preliminary Injunction, dated June 6, 2019, ECF 122, page 6. For example, Propounding Party has the burden of demonstrating that Creatyl-L-Leucine or Creatyl-L-Glutamine do not provide the benefits of creatine. This Interrogatory appears to seek expert testimony, which is premature at this time and improper prior to the deadline for expert reports. Expert reports and testimony will be served according to the Federal Rules and the Court's schedule. Responding Party reserves the right to provide a rebuttal to Propounding Party's position after Propounding Party provides its position, evidence, expert reports, and/or testimony. While Responding Party is not aware of any previous contention that Responding Party has made in this litigation that

SUPER CREATINE in BANG® "increases the circulating levels of creatine or creatinine in the human body" by any "alleged increase" as those terms are used in this Interrogatory, and because any such contention in an expert report would be premature at this time, Responding Party explicitly reserves the right to make that contention in this case in the future.  To the extent Propounding Party is referring to a specific contention that Propounding Party believes Responding Party has made about SUPER CREATINE increasing "the circulating levels of creatine or creatinine in the human body," Responding Party objects to this Interrogatory as vague in scope and Responding Party seeks that information from Responding Party so that the scope of this Interrogatory can be clearly defined and Responding Party can respond to any specific contention(s) to which this Interrogatory is targeted.   Responding Party incorporates by reference the declaration by Dr. Li in support of Defendants' Opposition to Monster's Motion for Preliminary Injunction, including Exhibit L3 (ECF 100 and exhibits 100-1 through 100-3) and documents referred to therein, including United States Patent No. 8,445,466.  Exhibit L3 to Dr. Li's Declaration is a true and correct copy of the poster presentation for this latest study of BANG®. VPX sponsored a double-blind, placebo-controlled, crossover trial study of BANG®, performed by Nova Southeastern University, entitled "The Effects of BANG® Energy on Psychomotor Vigilance," by Christopher Horn, Madaline Kenyon, Cassandra Carson, Anya Ellerbrock, Lia Jiannine, Tobin Silver, Corey Peacock, Jaime Tartar, and Jose Antonio. In conclusion, the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses.  Both Creatyl-L-leucine and Creatyl-L-glutamine in certain BANG® products have been branded under the trademark SUPER CREATINE.

This Interrogatory specifically seeks documents from third parties: "identify all bases supporting YOUR contention."  Propounding Party will not produce "all" DOCUMENTS that provide any bases or support for any contention(s) in response to this Interrogatory.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendant reserves the right to produce business records in this action from which the answer to the reasonable scope of this Interrogatory may be ascertained. The answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party.  Responding Party will meet and confer with Propounding Party to narrow the scope of this Request so that the nonprivileged information in Responding Party's possession, custody, or control sufficient to respond to this Request is proportionate to the needs of this case and will be produced subject to a Protective Order.  Specifically, Responding Party will continue to meet and confer with Propounding Party regarding ESI protocols, custodians, search terms, and date ranges.

**Supplemental Response to SI No. 8:**

VPX maintains the foregoing and previously asserted general and special objections and supplements its response in light of meet and confer efforts to resolve the discovery dispute between the parties, as follows:

The Parties have met and conferred as to email search terms and protocols and have agreed to review certain documents which appear targeted at this request and may be responsive to this Interrogatory, such as studies, etc. VPX is reviewing numerous documents and will supplement its rolling production and may supplement this Interrogatory if additional information is discovered.   VPX maintains that Monster has the burden of proving all elements of each of the asserted causes of action. Monster has not done so.   During meet and confer correspondence relating to this Interrogatory, while this Interrogatory does not seek information regarding <u>the quantity</u> of creatyl-l-leucine in BANG energy drinks, Monster claimed that the information regarding the quantity of creatyl-l-leucine and these interrogatories were relevant to claims 1-3 of the First Amended Complaint (FAC), which relate to claims of false advertising, specifically related to alleged statements made to consumers upon which those consumers would rely.  In response to Paragraph 51 of the FAC, VPX responded that "Defendants admit Owoc has been asked on social media how much Super Creatine is in BANG® and that such is proprietary information."  Monster does not dispute that the BANG formula is a trade secret; in fact, Monster claims that its own formulas (e.g., REIGN) are trade secrets and such disclosure would harm the owner of the formula if such information was in the hands of a competitor.  Monster does not allege that VPX has ever disclosed the formula for BANG or that any consumer has ever relied on any statements from VPX relating to the formula or quantities of ingredients, other than 300 mg of caffeine, in BANG. VPX maintains that its formula and the quantity of creatyl-l-leucine is proprietary and a valuable trade secret which Monster seeks for competitive reasons because VPX's BANG product is so successful that Monster introduced an almost identical product called REIGN with almost identical packaging, formula, and branding, which specifically targets and is directed to VPX's customers.   In order to resolve discovery disputes during the discovery process in this case, VPX has disclosed through meet and confer efforts that the quantity of creatyl-l-leucine in a can of BANG® ready to drink cans of BANG® energy drinks with the reference to SUPER CREATINE® is less than 40 mg and caffeine is 300 mg.  VPX has not disclosed the quantities of the other ingredients in BANG.   VPX has not previously disclosed the quantity of creatyl-l-leucine in advertising or on the labels of its cans of BANG®, nor has VPX ever stated that there were more than 40 mg of creatyl-l-leucine in BANG® ready to drink cans.  No competitors of VPX sell an energy drink with more creatyl-l-leucine than BANG.  No consumers seeking a specific quantity of creatine in any form have been told by VPX how much creatyl-

l-leucine is in the proprietary blend of BANG.  Thus, no consumers could reasonably rely on such statements in advertisements (as VPX has not made those statements).  In addition, no false statements of fact were made about the quantities of ingredients or their impact on consumers for this product, no consumer could have relied on or did rely on such statements, no statements deceived consumers or were likely to deceive consumers, and no alleged "deception" (as Monster alleges) was or would be material to a consumer.  Further, Monster could not have been harmed by any statements relating to creatyl-l-leucine related to the BANG energy drink.  As set forth through Dr. Li's Declaration and the patent, to VPX's knowledge, VPX is the first to use creatyl-l-leucine in an energy drink.  To date, VPX is not aware of any competitors who have sold an energy drink containing creatyl-l-leucine.  Upon information and belief, Monster has never made and does not sell an energy drink with creatyl-l-leucine or other form of creatine, even creatine monohydrate.  See Monster Response to Request for Admission ("RFA") Nos. 1-6 (RFA No. 1: "[M]onster admits that it has never released an energy drink product with Monster branding that contains creatine."; RFA No. 2: "Monster admits that it has never released an energy drink product with Monster branding that contains creatyl-l-leucine." Creatine supplements come in many forms in the marketplace and such supplements have been scientifically proven to provide positive health effects, including building muscle and strength and boosting athletic performance, and research has also shown that creatine supplements have the potential for helping with age-related neurological diseases, such as improving brain function and boosting memory.  Dr. Li cites to some studies in his Declaration, other studies are available publicly, and studies that are responsive to Monster's proposed email search terms that are agreed upon by the parties will be reviewed and responsive, non-privileged documents will be produced.  Further, there is no dispute that studies show that exercise, a healthy lifestyle, and low carbohydrate and low sugar diets can provide benefits (unlike many of Monster's energy drinks) can provide health benefits and new articles and studies come out all the time.  See, e.g., an article dated today, October 30, 2019, in the Wall Street Journal, titled "The Link Between Diet, Exercise and Alzheimer's - A new study finds that lifestyle changes can improve cognition."  https://www.wsj.com/articles/the-link-between-dietexercise- and-alzheimers-11572427802. That article cites to a study released on October 30, 2019. The creatyl-l-leucine in a 16 oz. can of a BANG® energy drink is not intended to be a sole source of creatine and does not advertise that it is, but rather is a great tasting drink to add to a well-balanced diet that includes the consumption of other foods containing creatine, such as beef, chicken, pork, eggs, and fish.  Further, Bang as a complete product with zero sugars and zero calories is a healthier option than most energy drinks manufactured by its competitors, including Monster, which contain large quantities of sugar, carbohydrates, and other more harmful ingredients.  And, in addition to creatyl-l-leucine (Super Creatine), Bang contains many ingredients that have been characterized as

providing positive health benefits, including caffeine, vitamins, electrolytes, CoQ10 and amino acids. In fact, as referenced above, a recent peer-reviewed double blind study of Bang RTD demonstrated that the BANG® energy drink resulted in a significantly lower (i.e., faster) (p<0.05) psychomotor vigilance mean reaction time versus the placebo as well as fewer lapses. VPX is not aware of any contentions VPX has made in this case or publicly about the quantity of the creatyl-l-leucine (Super Creatine) in a 16 oz. can of a BANG® energy drink or that the quantity of the creatyl-l-leucine (Super Creatine) in a 16-oz can "increases the circulating levels of creatine or creatinine in the human body" as phrased in this Interrogatory, or have specific health benefits except as compared to other energy drinks offered by competitors. In fact, Monster introduced a similar product called REIGN in order to compete with VPX in a category of drinks third parties call the performance energy category. See e.g., Monster's Motion for a Preliminary Injunction Exhibit C and D to Emilie Tirre's Declaration in support of Monster's Motion, ECF 67-6. Below is an excerpt from Exhibit C, page 24 of 27, showing Reign's description of ingredients mirroring BANG's description. [Table omitted.]

Further in Exhibit D to Tirre's Declaration, Monster cites to a report from Guggenheim which claims that "Monster has one of the most attractive long-term growth algorithms in our Food and Beverage coverage as we expect organic sales and EPS CAGR of 10% and 14%, respectively. The sustainable growth outlook is supported by . . . 3) innovation in energy-adjacent segments such as coffee and "performance energy" with REIGN . . ." Monster's counsel stated during meet and confer correspondence that certain paragraphs of the [FAC] were the basis of Monster's Interrogatories Nos. 4, 7, and 8, specifically paragraphs 46 to 48 of the [FAC]. Paragraphs 46-48 of the FAC, however, do not provide any context for where those statements come from, none of these alleged statements are full quotes, and Monster provided no citations to where these statements were made. As such, it does not appear from the quoted language or the descriptions made by Monster in Paragraphs 46 to 48 that these statements are about any specific health effects of creatyl-l-leucine in a can of BANG ready to drink energy drinks or related to the quantity of creatyl-l-leucine in a can. Monster does not allege that these statements were made in public, to consumers, or in advertisements. The fact that those statements are not in quotes indicates that the statements are taken out of context and that none of them are about Super Creatine when considered in context. Further, as stated in the prior objections, there is no evidence from Monster or its experts that any of these statements are false. VPX has already addressed and denied many of these statements in a post on its website: https://bang-energy.com/blog/ca-based-monster-energy-file-third-frivolouslawsuit-against-vpx/, including the following statement by Jack Owoc addressing numerous false allegations in Monster's Complaint: "I never claim that Bang can reverse intellectual disability and help cure diseases such as

Alzheimer's, Parkinson's, Huntington's and other forms of dementia.  Bang is infinitely safer and healthier than Monster – consumption of Monster is associated with 17 deaths, heart attack, heartbeat irregularities and countless adverse event reports."

ECF No. 148, Mot., Ex. 1 at 4, Ex. 2 at 3-4, Ex. 5 at 15-23, 28-43 (Plaintiff's First Set of Interrogatories; Plaintiff's Second Set of Interrogatories at 3-4; Defendants' Supplemental Reponses to Plaintiff's Special Interrogatories, Sets 1 & 2).

## II.    LEGAL STANDARD

### A.    Requirements And Scope Of Discovery Under Rule 26

In <u>Dale Evans Parkway 2012, LLV. v. Nat'l Fire and Marine Ins. Co.</u>, ED CV 15-979-JGB (SPx), 2016 WL 7486606, at *3–4 (C.D. Cal. Oct. 27, 2016), this Court provided the following applicable general scope for discovery under Rule 26:

> Fed. R. Civ. P. 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  To be relevant, the information sought "need not be admissible in evidence"; however, it must be "proportional to the needs of the case."  <u>Id.</u>  In determining the needs of the case, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  <u>Id.</u>  A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed. 2d 253 (1978).  Relevancy should be "construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case."  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

<u>See also</u> <u>Nguyen v. Lotus by Johnny Dung Inc.</u>, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (internal citations and quotation marks omitted).

"Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P 26(b)(1).  "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and

resolve their dispute." <u>Duran v. Cisco Sys., Inc.</u>, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. <u>See</u> Fed. R. Civ. P. 26(b)(1); <u>Nguyen</u>, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." <u>United States ex rel. Brown v. Celgene Corp.</u>, No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

## B.   <u>Interrogatory Requirements And Scope Under Rule 33</u>

Federal Rule of Civil Procedure 33 governs interrogatories to parties. The purpose of interrogatories is to limit and clarify the issues for the parties in preparation for further trial proceedings. <u>See Soria v. Oxnard Sch. Dist. Bd. of Trustees</u>, 488 F.2d 579, 587 (9th Cir. 1973). "An interrogatory may relate to any matter that may be inquired into under Rule 26." Fed. R. Civ. P. 33(a)(2). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

"If objections are made, the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers, in the course of which the court will pass on the objections. The change in the burden of going forward does not alter the existing obligation of an objecting party to justify his objections." Fed. R. Civ. P. 33, Advisory Committee Notes 1970 Amendments, Subdivision (a)(3).

Parties responding to interrogatories must do so "to the fullest extent possible" and "objections must be stated with specificity." <u>Celgene Corp.</u>, No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *4 (citations omitted). Further, "answers to interrogatories must be responsive, full, complete and **unevasive**." <u>In re Rivera</u>, No. CV 16-4676 JAK (SSx), 2017 WL 5163695, at *2 (C.D. Cal. Apr. 14, 2017) (internal citations and quotations marks omitted) (emphasis added).

/ / /

## C.   Compelling Discovery

"A party seeking discovery may move for an order compelling an answer, . . . production, or inspection . . . if . . . a party fails to answer an interrogatory submitted under Rule 33[.]" Fed. R. Civ. P. 37(a)(3)(B)(iii).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4); see also L.R. 7-12 (a party's failure to oppose a motion may be deemed consent to the granting of the motion).

"[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (faulting defendant for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection.").

"The party moving to compel bears the burden of demonstrating why the information sought is relevant and why the responding party's objections lack merit." Bluestone Innovations LLC v. LG Elecs. Inc., No. C-13-01770 SI (EDL), 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013).  "The party who resists discovery has the burden to show that discovery Rule should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998); see also United States v. McGraw–Hill Cos., No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance.  In turn, the party opposing discovery has the burden of showing that discovery should not be allowed and has the burden of clarifying, explaining and supporting its objections with competent evidence." (citation and internal quotation marks omitted)).  In addition, as described above, "[r]elevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case." Centeno v. City of Fresno, No. 1:16-CV-653 DAD (SAB), 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016) (citing In re Bard IVC Filters Prod. Liab. Litig., 317 F.R.D. 562, 564 (D. Ariz. 2016)).

## III.   DISCUSSION

## A.   Contention Interrogatories

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete . . . or some other time." Fed. R. Civ. P. 33(a)(2).  "Although contention interrogatories propounded in the early stages of discovery can be a form of discovery abuse" and are generally disfavored, where contention interrogatories are served close to trial, rather than at the inception of an action, "they can also be a useful tool to narrow the issues in dispute." Protective Optics, Inc. v. Panoptx, Inc., No. C-05-02732 CRB (EDL), 2007 WL 963972, at *2 (N.D. Cal. Mar. 30, 2007) (compelling defendants

in patent litigation to respond to contention interrogatories and emphasizing that plaintiff argued "persuasively it cannot adequately obtain the information by other means," plaintiff had been unsuccessful in discovering information through document requests and doubted the likelihood of obtaining the relevant information in deposition," a more costly discovery tool than interrogatories).

"Whether contention interrogatories are appropriate is appropriately addressed on a case-by-case and interrogatory-by-interrogatory basis." Kraft Americas, LP v. Oldcastle Precast, Inc., No. LA CV 12-03681 JAK (Ex), 2013 WL 12125759, at *7 (C.D. Cal. Dec. 18, 2013) (citing, inter alia, Cable & Comp. Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 651-52 (C.D. Cal. 1997) (granting a motion to compel responses to contention interrogatories); see also Lincoln Ben. Life Co. v. Fundament, No. SACV 18-000260-DOC (JDEx), 2018 WL 7051064, at *3-4 (C.D. Cal. Dec. 6, 2018) (plaintiff, who provided no objections, was ordered to respond to defendant's interrogatory as to whether it contended someone was dead or alive).

## B.   **Arguments**

The arguments as to why the Court should compel supplemental responses, or not, all relate generally to the three Interrogatories. Accordingly, the arguments and consideration of Special Interrogatories 4, 7, and 8 will be analyzed together.

### 1.   Monster's Arguments

In the present Motion, Monster argues that Special Interrogatories 4, 7 and 8 are relevant because in seeking VPX's position on the effects of Super Creatine in the human body, these interrogatories directly relate to the allegations in Monster's Complaint and the issues in a prior order by the Court. ECF No. 148, Mot. at 3; ECF No. 152, Reply at 3-4. Monster argues its allegations about Super Creatine bear on at least three of Monster's causes of action, as recognized by this Court: "the Lanham Act false advertising claim, the unfair competition claim, and the false advertising claim." ECF No. 148, Mot. at 4 (citing ECF No. 136, October 16 Order at 7). Further, Monster argues because its requests are relevant, the burden shifts to VPX to show that it properly resisted discovery, and VPX cannot meet this burden. Id. (citing McGraw-Hill Companies, Inc., 2014 WL 1647385, at *8; DIRECTV, Inc., 209 F.R.D. at 458 ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.")).

Monster argues that just as in Lincoln Benefit, VPX has not satisfied its obligation to provide clear and precise answers, and instead provided pages of irrelevant information. ECF No. 148, Mot. at 4; ECF No. 152, Reply at 2. Monster argues it has the right to learn whether VPX is presently making certain contentions about Super Creatine in this litigation, and if so, what the facts supporting the contention. Monster seeks to learn—and argues it has a right to learn—whether VPX is taking these positions as a defense to Monster's claims. Id. at 5.

Finally, Monster argues it is not seeking premature expert testimony.  Monster argues the mere fact that information will be provided to an expert does not shield it from discovery.  Id. at 6; ECF No. 152, Reply at 4-5.  Courts have repeatedly held that "'[n]onprivileged facts known to" a party "are not immune from discovery simply because they will ultimately become part of an expert's opinion.'"  ECF No. 148, Mot. at 6 (quoting Montgomery v. Wal-Mart Stores, Inc., No. 12cv3057-JLS (DHB), 2015 WL 11233384, at *4 (S.D. Cal. July 17, 2015)).  Further, Monster argues it is illogical to assert that an expert would know whether VPX is making a particular contention about VPX's own products—such information is known only to and by VPX.  ECF No. 152, Reply at 5-6.

2.      VPX's Arguments

VPX responds that it served timely objections to SI No. 4, 7, and 8; stated that it was not aware of making the alleged contentions that are the subject of the Interrogatories; and asked Monster to provide evidence of such.  ECF No. 151, Opposition at 3.  VPX argues that unlike the plaintiff in Lincoln Ben. Life Co., who provided no objections and failed to answer the question asked in the interrogatory, VPX contends it responded with an actual, full response and numerous valid objections.  Id. at 8.  VPX argues that after asking Monster multiple times, Monster refused to provide any evidence that VPX had actually made those contentions and Monster never articulated to VPX whether Monster believes VPX has ever made these statements publicly.  Id. at 4.  Further, Monster has not served on VPX an expert report with respect to the subject matter of these contention interrogatories and Monster has not disclosed any experts with respect to these subjects.  Id.  Thus, VPX contends, it is unclear what Monster is attempting to prove with respect to these interrogatories or how they are relevant to any of the causes of action.  Id.

VPX argues that at this time, it does not have sufficient information to further supplement these responses as to whether VPX will (in the future) make these contentions in this case.  Id.  VPX argues it provided good faith responses and, to the extent VPX discovers non-privileged responsive documents related to these interrogatories it will produce them to Monster and will supplement its responses, as appropriate.  Id. at 5-6.  VPX argues that if it is ordered to further supplement its responses to the interrogatories, it should not have to do so until relevant discovery and expert discovery is completed.  Id. at 6.  VPX argues that it has sought information from Monster related to these topics and should be permitted to take depositions of witnesses before taking a position.  Id.  VPX asks this Court to allow all discovery to complete in this case—including completion of Monster's document production to VPX and the exchange of expert discovery related to the benefits of creaty-l-leucine in BANG—before VPX has to further supplement these contention interrogatories.  Id.  VPX argues it is unreasonable to expect VPX to confirm or waive a contention at this stage of the discovery regarding Super Creatine's health effects without review of Monster's document production, witness testimony, and thorough study and potential expert analysis of the product.  Id. at 8.

Finally, VPX argues Monster's interrogatories are objectionable because they are vague and ambiguous, and speculative. Id. at 7-8. Each are phrased as "If you contend," and VPX has not made those contentions and has not determined whether it will make those contentions at some later point. Id. at 7.

## C.   Analysis

In its response to Monster's SI 4, 7, and 8, VPX made numerous objections (as noted above) to the production of this information, including attorney-client privilege, that such information is subject to the protective order, and is not discoverable due to vagueness, and irrelevancy. In their Opposition, however, VPX focuses on that fact that Monster seeks answers to contention interrogatories without providing necessary support, that VPX has answered in good faith and any further responses to these contention Interrogatories are premature, and the Interrogatories are vague, ambiguous, and call for speculation. See ECF No. 151, Opposition. Therefore, the Court will focus on those objections.

### 1.   Contention Interrogatories

Although contention interrogatories are disfavored at early stages in the discovery process, see Protective Optics, Inc., No. C-05-02732 CRB (EDL), 2007 WL 963972, at *2, the parties have been engaging in discovery since at least May 2019, ECF No. 153, Joint Stip. to Continue Deadlines at 2. The Court set an initial discovery cutoff deadline of February 18, 2020, ECF No. 111, Case Scheduling Order at 1, but granted the parties' request to continue that deadline until June 9, 2020, ECF No. 155, Order Granting Joint Stip. at 1.

Here, it is not improper for Monster to "propound contention interrogatories seeking identification of the opposing party's positions and the evidence in support of those positions." See Bos. v. ClubCorp USA, Inc., No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *8 (C.D. Cal. Mar. 11, 2019) (internal citations and quotation marks omitted). Although these contention interrogatories come well before the re-scheduled discovery cutoff, the parties are far along in the discovery process, and Monster could not obtain answers to the Interrogatories from any other source, warranting a response from VPX. See Kraft Americas, LP, No. LA CV 12-03681 JAK (Ex), 2013 WL 12125759, at *7; Protective Optics, Inc., No. C-05-02732 CRB (EDL), 2007 WL 963972, at *2. Further, the inquiries about whether VPX contends Super Creatine (1) creates positive health effects or has an effect on vitals and substances in the human body and/or increases the circulating level of creatine or creatinine properly are calculated to identify and narrow issues and lead to the discovery of relevant evidence for several of Monster's claims against VPX. See Protective Optics, Inc., No. C-05-02732 CRB (EDL), 2007 WL 963972, at *2

Finally, although VPX responded that the Interrogatories call for a legal conclusion, see ECF No. 148, Mot., Ex. 5 at 15-23, 28-43, requesting that VPX state its contention(s) regarding its products is not a legal conclusion and is appropriately requested via an interrogatory. See Fed. R. Civ. P. 33(a)(2); see also Mitchell v. Atkins, No. 3:19-cv-5106-RBL, 2019 WL 6351044, at *2

(W.D. Wash. Nov. 22, 2019).  Thus, Monster demonstrates a need to seek information via contention interrogatories at this stage in the litigation.

2.      Relevancy

Monster's Interrogatories 4, 7, and 8 seek relevant information from VPX regarding, at a minimum, Monster's false advertising claim and violation of the Lanham Act.  See ECF No. 61, FAC at 1, ¶¶ 121-28, 138-47; ECF No. 95, Order re: Mot. to Dismiss at 14-16.  VPX's responses are deficient and fail to properly answer with the necessary information sought.

Rule 26(b) provides that the information sought must be "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b).  Under this standard, VPX's contentions about the health benefits and effects of Super Creatine are relevant because "relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case."  Dale Evans Parkway 2012, LLC, ED CV 15-979-JGB (SPx), 2016 WL 7486606, at *3–4 (quoting Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992))).  Specifically, the contentions are relevant to establishing the Lanham Act claim and false advertising claim, for Monster to prove its case that VPX is misrepresenting the contents of BANG drinks and the alleged effects/benefits of "Super Creatine."   See ECF No. 61, FAC at ¶¶ 121-28, 138-47.

Monster demonstrated the relevancy of SI 4, 7, and 8 to its claims, and VPX thus has the burden of clarifying, explaining and supporting its objections with competent evidence.  See McGraw–Hill Cos., No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *8.  VPX has failed to do so here.  VPX's responses to Interrogatories 4, 7, and 8, are very difficult to follow, and filled largely with generic, boiler-plate objections and interwoven with a variety of non-responsive materials.

3.      Injury To VPX By Production And Proportionality

After establishing that Monster's requests are relevant to its case, the Court must determine whether the requests are proportional to the needs of the case.  See Fed. R. Civ. P. 26(b)(1); Nguyen, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1; Centeno, No. 1:16-CV-653 DAD (SAB), 2016 WL 7491634, at *4.

Rule 26(b)(1) identifies several factors to be considered in addressing proportionality, including the "importance of the discovery in resolving the issues," the parties "relative access to relevant information," and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); In re Bard IVC Filters Prod. Liab. Litig., 317 F.R.D. at 566.

These factors weigh in favor of production.  As previously discussed, Monster has shown the relevance of the information sought in regard to several of its claims.  Also, answers regarding

the alleged contentions would serve to further narrow, and potentially resolve, several of the issues in the present litigation.  Further, VPX is the only party in possession of the information sought: its own positions regarding purported benefits or health effects of its own product. Consequently, answering whether VPX holds certain positions about its own product or plans to argue such positions is not an unduly burdensome request.  Finally, if VPX is not contending any of the representations regarding Bang that Monster is claiming that VPX is making, VPX can plainly state it does not make such a claim.

Moreover, seeking answers as to whether VPX is making claims about the health benefits and effects of Super Creatine is not unreasonably cumulative or duplicative, cannot be obtained from a source other than VPX, and is not outside the scope permitted by Rule 26(b)(1).  See Fed. R. Civ. P. 26(b)(2)(C).

Additionally, and confusingly, VPX simultaneously objects to the Interrogatories on the basis that the requests seek protected information, confidential and proprietary in nature, and also objects to being asked to supply Monster with information from third party sources that "are equally accessible" to Monster.  ECF No. 148, Ex. 5 at 28, 36.  However, the Court already approved and implemented a stipulated protective order; thus, insofar as any augmented responses might proffer protected materials, such information is subject to the protective order. See Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co., 3107 F.R.D. 288, 293 (D. Del. 1985) ("The balance between the need for information and the need for protection against the injury caused by disclosure is tilted in favor of disclosure once relevance and necessity have been shown.  As the Supreme Court has recognized, 'orders forbidding any disclosure of trade secrets or confidential information are rare.'"); Capsugel Belgium NV v. Bright Pharma Caps, Inc., No. 3:15-CV-321-PK, 2015 WL 5706925, at *3 (D. Or. Sept. 28, 2015) ("Once the moving party has established relevance and necessity, the discovery is virtually always ordered.") (citations and internal quotations omitted); see also Aldapa v. Fowler Pack. Co Inc., 310 F.R.D. 583, 592(E.D. Cal. 2015) ("Protective orders typically govern the dissemination of sensitive or confidential information, [and do] not narrow the scope of allowable discovery.").

Monster's request for VPX to answer the contention Interrogatories is not unduly burdensome and disproportionate to the needs of the case.  However, insofar as Monster is seeking third party information beyond what studies or science VPX relies on, VPX should identify these sources but is not obligated to produce third-party sources readily available to Monster.  The Court concludes this portion of the request to be overly burdensome.

## D.    <u>Conclusion</u>

Accordingly, Monster's Motion is **GRANTED** insofar as VPX must answer directly the contentions posed by Monster in Interrogatories 4, 7, and 8.  If VPX does contend Super Creatine: (1) creates positive health effects; (2) has an effect on vitals and substances in the human body; and/or (3) increases the circulating level of creatine or creatinine in the human body, VPX is **ordered** to produce such information and documentation in its possession that

support such claims—contentions to the extent that such information is not readily available via a third party—or to identify what sources VPX relies upon for such.

## IV.     MOTION <u>IN LIMINE</u> AS MOTION TO COMPEL

Finally, VPX argues that Monster's current request is essentially a motion <u>in limine</u> cloaked as motion to compel.  ECF No. 151, Opposition at 8-9.  VPX argues Monster has made the distinct decision to withhold purported evidence it may have to substantiate (or refute) its allegations in the FAC, which Monster specifically stated were relevant to these interrogatories. <u>Id.</u>  VPX states that it reserves its right to review the documents Monster believes support the allegations in Monster's FAC.  <u>Id.</u>

Monster responds that this is incorrect: it has never claimed that the present Motion is a motion <u>in limine</u>.  ECF No. 152, Reply at 6.  However, Monster argues, no matter how this Motion is stylized, it is entirely appropriate for Monster to know whether VPX is making certain contentions in this lawsuit and to commit VPX to clear and concise positions that VPX chooses to take.  <u>Id.</u>

As previously described, the Court construes Monster's request as a Motion to Compel supplemental answers to the specific Special Interrogatories.  At this stage, prior to the discovery cutoff deadline, any motion to limit evidence at trial is premature and is the province of the District Judge assigned to this matter.

## V.     CONCLUSION

Conclusion, Monster's Motion is **GRANTED** insofar as VPX must answer directly the contentions posed by Monster in Interrogatories 4, 7, and 8.  If VPX does contend Super Creatine: (1) creates positive health effects; (2) has an effect on vitals and substances in the human body; and/or (3) increases the circulating level of creatine or creatinine in the human body, as promptly as can be done taking into account VPX's ability to appeal this order and to identify its sources for said contentions.  However, VPX is not obligated, as this time to supply Monster with all documentation or evidence in support of these contentions, above and beyond what has already been requested in other discovery or what is in available via third party sources at this stage.

**IT IS SO ORDERED.**