**MOEZ M. KABA**

mkaba@hueston.com
D: 213 788 4543
T: 213 788 4340
F: 888 775 0898

523 West 6th Street
Suite 400
Los Angeles, CA 90014

# HUESTON HENNIGAN LLP

Wednesday, January 22, 2020

**SUBMITTED THROUGH ECF**

Honorable Shashi H. Kewalramani
George E. Brown, Jr. Federal Building and United States Courthouse
3470 12th Street
Riverside, CA 92501

    **Re:** *Monster Energy Co. v. Vital Pharm., Inc.*, Case No. 5:18-cv-1882-JGB-SHK (C.D. Cal.)

Dear Honorable Shashi H. Kewalramani:

    Plaintiff Monster Energy Company ("Monster"), third party Shook, Hardy & Bacon ("Shook"), and third party Marc Miles ("Miles," together with Shook the "Subpoenaed Parties") submit the below letter brief in support of their motion to quash Defendant Vital Pharmaceuticals, Inc.'s ("VPX) subpoenas to the Subpoenaed Parties. Attached as exhibits to this motion are: (1) the Declaration of Michael H. Todisco ("Todisco Decl."); and (2) the Declaration of Frank C. Rothrock ("Rothrock Decl.").

**HUESTON HENNIGAN LLP**

## I. BACKGROUND

On November 8, 2019, VPX served subpoenas on Monster's former lead counsel in this case (Marc Miles) and his law firm (Shook, Hardy & Bacon). (Rothrock Decl. ¶ 2.) VPX's subpoenas—designed to fish for evidence supporting VPX's unsubstantiated and baseless theory that Monster's counsel conspired with class-action lawyers across the country—seek irrelevant information, needlessly threaten the attorney-client relationship, and are improper under clear federal caselaw. Between November 25, 2019 and January 6, 2020, counsel for Monster and counsel for the Subpoenaed Parties met-and-conferred with VPX's counsel on four separate occasions. (*Id.* ¶ 4.) Despite these efforts, VPX has refused to withdraw these subpoenas, thereby forcing Monster and the Subpoenaed Parties to file the present motion to quash.

## II. LEGAL STANDARD

Subpoenas to opposing party's counsel in a pending litigation are strongly disfavored. Subjecting counsel to discovery "prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Ditech Fin. LLC v. SFR Investments Pool 1*, LLC, 2016 WL 4370034, at *2 (D. Nev. Aug. 15, 2016). Such subpoenas to counsel are improper, moreover, because they "subject[] counsel to harassment" and invade the attorney-client privilege. *Nocal, Inc. v. Sabercat Ventures, Inc.,* 2004 WL 3174427, at *4 (N.D. Cal. Nov. 15, 2004). Given these weighty considerations, subpoenas to a party's counsel are appropriate only in "**extraordinary circumstances**." *Id.* at *4 (emphasis added).

This heavy presumption against taking discovery from counsel displaces the typical rules of discovery. Courts have developed a specialized test for assessing subpoenas to opposing counsel that is far more demanding than the third-party discovery standard under Rule 45. *See, e.g.*, *Flotsam of California, Inc., v. Huntington Beach Conference and Visitors Bureau*, 2007 WL 4171136, at *1 (N.D. Cal., Nov. 26, 2017) (describing the specialized test for "discovery of opposing counsel"). This specialized test departs from the regular rules of discovery in two critical ways.

*First*, the specialized test flips the burden for discovery motions. Typically, it is the "party *resisting* discovery [that] bears the burden." *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, 2012 WL 12884045, at *2 (C.D. Cal. Aug. 27, 2012) (emphasis added). But when a party subpoenas opposing party's **counsel**, "[t]he burden is on the party seeking the discovery to demonstrate its propriety and need." *Flotsam*, 2007 WL 4171136, at *1.

*Second*, the specialized rule dramatically heightens the applicable standard. On a normal subpoena, the subpoenaing party need only make an initial showing of relevance. *See United States v. McGraw-Hill Companies, Inc.*, 2014 WL 12589667, at *4 (C.D. Cal. June 13, 2014). But when subpoenaing counsel, the subpoenaing party must

# HUESTON HENNIGAN LLP

meet a rigorous three-part standard, proving that: "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Flotsam*, 2007 WL 4171136, at *1.

Though Shook is no longer Monster's counsel, the heightened standard still applies. *See, e.g.*, *Walk Haydel & Assocs., Inc. v. Coastal Power & Prod. Co.*, 2008 WL 11351583, at *6 (E.D. La. Dec. 29, 2008) (granting motion to quash subpoena to "former counsel"); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 385 (D.D.C. 2011) (same); *see also Villaflor v. Equifax Info.*, 2010 WL 2891627, at *2 (N.D. Cal. July 22, 2010) (applying heightened test to lawyer that was "not counsel of record in this case"). Moreover, VPX's requests explicitly seek documents from Shook from the time it *was* Monster's counsel in the current lawsuit. (*See* Requests 1-16 (requesting all documents "regardless of date").) These documents are still likely to reveal Monster's litigation strategy because this litigation is still ongoing.

## III.   ARGUMENT

VPX cannot meet its heightened burden to satisfy this exacting standard. Each of VPX's requests for production[1] suffers from independently fatal defects, failing each part of the relevant three-part test.

### A.   First, VPX cannot prove that subpoenaing Monster's counsel is the *only* way it can obtain the requested documents

VPX carries the burden of showing that "no other means exist to obtain the [requested] information." *Flotsam*, 2007 WL 4171136, at *1. This requirement imposes an obligation on the subpoenaing party to seek the requested discovery elsewhere *before* subpoenaing it from counsel. *See, e.g.*, *NoCal*, 2004 WL 3174427, at *2 ("Plaintiff cannot demonstrate that no other means exist to obtain the discovery because Plaintiff has yet to attempt to depose other parties.").

*Flotsam* best illustrates this principle. In that case, a party served a subpoena on opposing party's counsel. *Flotsam*, 2007 WL 4171136, at *1. Indeed, in *Flotsam*, the party seeking discovery was also represented by the law firm Gordon Rees – the same law firm that represents VPX in this litigation. *Id.* Like VPX's subpoena here, the *Flotsam* subpoena sought "documents relating to press conferences, press releases, and other

---

[1] VPX's Request 1—for documents "with the [F.D.A.] related to VPX, Owoc, or BANG"—is no longer at issue. At the in-person hearing, counsel for the Subpoenaed Parties confirmed that, after a reasonably diligent search, no such documents had been located. (*See* Tr. at 15:14-19; *see also* Rothrock Decl. ¶ 4.) Request 16—for all documents "related to VPX, Owoc, or Bang" with all third parties—is facially overbroad. (*See* Tr. at 29:3-6 (The Court) ("Do you think it's appropriate for [Monster] to subpoena each of [VPX's former] law firms and say provide all documents related to Monster?").)

# HUESTON HENNIGAN LLP

extrajudicial activities concerning th[e] litigation," that the subpoenaing party claimed was "orchestrated" by counsel.  *Id.*  Just like Monster does, the subpoenaed party in that case brought a motion to quash.  *Id.*  The court granted the motion.  *Id.*  It held that the subpoenaing party "had not demonstrated that **no other means** exist to obtain the discovery, nor has it demonstrated its own efforts to obtain the information from other sources."  *Id.*  (emphasis added.)

In fact, *Flotsam* is one of at least **three cases** where VPX's counsel—Gordon Rees—was told that a subpoena to opposing counsel was improper **for this very reason**. See *Flotsam*, 2007 WL 4171136, at *1.  In *Handlin v. On-Site Manager, Inc.*, 2018 WL 1907520, at *6 (Wash. Ct. App. Apr. 23, 2018), Gordon Rees's subpoena to opposing counsel failed because it "did not [first] exhaust other potential sources of information prior to subpoenaing [him]."  *Id.*  Likewise, in *F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 2013 WL 6181127, at *1 (S.D. Ind. Nov. 26, 2013), the court granted a protective order against a Gordon Rees subpoena because "the information sought can be obtained by deposing the third parties."  *Id.*

Like in *Flotsam*, *Handlin*, and *F.D.I.C.*, the subpoenas served by Gordon Rees here fail on this very first step.  Though VPX's subpoenas ask Shook and Miles for various communications with third parties, VPX has not subpoenaed *any* of those parties in this litigation.  (*See e.g.*, Request No. 2 (communications with FDA); Requests Nos. 3-14 (communications with third-party law firms).)  Far from being used only after all other options were exhausted, these subpoenas are the **first and only subpoenas that VPX has issued** since the preliminary injunction stage of this litigation.  (Todisco Decl. ¶ 5.)

Nor can VPX credibly argue that the documents it seeks are not in the possession of others:

- Request 2 asks for documents from "the U.S. Food and Drug Administration related to Monster Products."  These documents (should any exist) could be sought through a Freedom of Information Act Request to the FDA.  *See* 5 U.S.C. § 552.  In fact, there's reason to believe VPX has already done so.  VPX's CEO, defendant Jack Owoc, has repeatedly posted on social media that he possesses "A RECENT FOIA (FREEDOM OF INFORMATION ACT) REPORT PRESENTED TO BANG ENERGY PRODUCED BY THE UNITED STATES GOVERNMENT REVEAL[ING information about] MONSTER ENERGY DRINK."  (*See* Todisco Decl., Ex. 1.)

- Requests 3 through 14 seek information from third-party law firms.  At the in-person hearing, counsel for VPX admitted that VPX has already served these law firms with subpoenas in a related case, asking for the documents it seeks here.  (Tr. at 36:15-17.)  VPX does not explain why it has not made any attempt to do so in this case.

**HUESTON HENNIGAN LLP**

- Request 15 seeks documents related to "media press releases, media statements, and media interviews." At the in-person hearing, counsel for VPX identified only one media comment made by Miles: a statement to the trade-magazine BevNET that Monster's complaint against VPX could be "just the tip of the iceberg for Bang." (Todisco Decl. Ex. 2.) Because Miles's communications with BevNET would also be in the possession of BevNET, VPX cannot first ask for them from Monster's prior litigation counsel.

**B. Second, the documents sought by VPX are irrelevant, privileged, or both**

Even assuming VPX could show that subpoenaing Monster's counsel was the only way to obtain the requested materials (it cannot), VPX must also show that the documents it seeks are "relevant and not privileged." *Flotsam*, 2007 WL 4171136, at *1. VPX's subpoena fails for this additional, independent reason.

On this point, *Patsy's Italian Restaurant, Inc. v. Banas*, 2007 WL 174131 (S.D.N.Y. Jan. 19, 2007) has compelling parallels to this dispute. There, a party served a subpoena to opposing party's counsel for "communications with news reporters, editors and/or publicists concerning any and all parties to this action," "communications with the [] Liquor Authority concerning defendants," and "any investigation by or on behalf of the plaintiffs concerning defendants." *Id.* at *1. The court quashed the subpoena and held that "the subpoenaing party had 'failed to establish the relevance of documents.'" *Id.* at *3 (noting the serious concerns "about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests"); *see also Flotsam*, 2007 WL 4171136, at *1 (holding that requests to opposing counsel for documents related to purported "extrajudicial activities" was "overly broad and seeks documents protected from disclosure by the attorney-client privilege and the work product doctrine").

The same principles apply here to defeat each of VPX's requests:

- Request 2 seeks communications with the FDA about Monster products. This request is both facially overbroad—it is not limited to Monster *products* that compete with Bang and is not limited to the *time* during which Monster has competed with Bang—and plainly irrelevant. As the court has recognized, this case is not about Monster or Monster's products; it's about *VPX's* representations about *VPX's* products. (ECF No. 136 at 12 ("Plaintiff's allegations relate to Defendants' representations regarding 'creatine' and 'Super Creatine.'").) And at the in-person hearing, VPX's only justification for this request was to pursue the "unclean hands" defense that this Court has already rejected. (Tr. at 15:25-16:9.)

- Requests 3 through 14 seek Shook's communications with third-party law firms.

**HUESTON HENNIGAN LLP**

Those firms are also engaged in litigation against VPX and are pursuing claims similar to those that Monster is pursuing here. (Tr. at 17:1-4; *id.* at 20:15-21.) These requests have three flaws. *First*, they are based on a faulty factual assumption. At the hearing, VPX claimed it needed these documents to see if Monster, through Shook and Miles, had encouraged class-action counsel to file suit. (Tr. at 17:13-17.) That theory can now be put to rest. Shook has no documents with those law firms that pre-date those firms' complaints against VPX, so no responsive documents could possibly support VPX's theory. (Rothrock Decl. ¶ 6.) *Second*, even if Shook *did* have such pre-filing documents, those documents would be irrelevant. The conduct of Monster's counsel is not implicated by any claim or defense in this lawsuit. As the Court properly noted, VPX seems to be pursuing through discovery a claim that it has not asserted. (Tr. at 21:6-7 (The Court) ("Sounds like some sort of a SLAPP action or an anti-SLAPP.").) And *third*, even if these documents existed *and* were relevant, they would be privileged. Courts recognize that parties who are litigating or plan to litigate similar claims against the same party share a common interest. *See, e.g.*, *E & J Gallo Winery v. Encana Energy Servs., Inc.*, 2005 WL 8172972, at *10 (E.D. Cal. Jan. 28, 2005) (explaining that the common interest privilege extends to "plaintiffs who were pursuing separate actions in different states," where "an action is ongoing or contemplated").

- Request 15 seeks documents related to media statements. This request suffers from similar infirmities. It is not tethered to any claim or defense in this action. Indeed, both *Flotsam* and *Patsy's* recognized that, in cases between competitors, counsels' statements to the media were not relevant. *Patsy's*, 2007 WL 174131, at *3 (quashing requests for "communications with news reporters, editors and/or publicists concerning any and all parties to this action"); *Flotsam*, 2007 WL 4171136, at *1 (quashing request for "documents relating to press conferences [and] press releases").

C.   **Third, VPX cannot show that this discovery is "necessary for the survival of a claim or defense"**

VPX's third hurdle is to "demonstrate[] that the requested information is crucial to the case." *Flotsam*, 2007 WL 4171136, at *1. Proving that information is "crucial" is significantly more difficult than showing it is relevant. *Ditech,* 2016 WL 4370034, at *3 ("[F]or information to be crucial, it must have some greater importance to the action than merely being relevant."). "Crucial information includes information **necessary** for the survival of a claim or defense." *Hanover Ins. Co. v. Terra S. Corp.*, 2019 WL 5963986, at *8 (D. Nev. Nov. 12, 2019) (emphasis added). Because VPX cannot satisfy even the lower relevance showing, *see supra* section II.B, it cannot meet this demanding one.

# HUESTON HENNIGAN LLP

Sincerely,


Moez Kaba

Attachments

cc:    Counsel of Record
        Counsel for Third Parties Marc Miles and Shook, Hardy & Bacon