# EXHIBIT 3

1

2

3                          UNITED STATES DISTRICT COURT

4                          CENTRAL DISTRICT OF CALIFORNIA
                                   EASTERN DIVISION
5

6

7    MONSTER ENERGY COMPANY,          )
                                      )
8                                     )
                 PLAINTIFF,           )
9                                     )
                 V.                   )    ED CV 18-01882-JGB(SHK)
10                                    )
                                      )    JANUARY 13, 2020
11   VITAL PHARMACEUTICALS, INC.,     )    RIVERSIDE, CALIFORNIA
     ET AL.,                          )
12                                    )    (11:02 A.M. TO 11:56 A.M.)
                 DEFENDANTS.          )
13   _____)

14
                                    HEARING
15
                    BEFORE THE HONORABLE SHASHI H. KEWALRAMANI
16                       UNITED STATES MAGISTRATE JUDGE

17
     APPEARANCES:                     SEE NEXT PAGE
18
     COURT REPORTER:                  RECORDED; COURTSMART
19
     COURTROOM DEPUTY:                D. CASTELLANOS
20
     TRANSCRIBER:                     DOROTHY BABYKIN
21                                    COURTHOUSE SERVICES
                                      1218 VALEBROOK PLACE
22                                    GLENDORA, CALIFORNIA  91740
                                      (626) 963-0566
23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF MONSTER ENERGY COMPANY:

 3            HUESTON HENNIGAN LLP
             BY:  MICHAEL HAYES TODISCO
 4               VARUN BEHL
             ATTORNEY AT LAW
 5           523 WEST 6TH STREET
             SUITE 400
 6           LOS ANGELES, CALIFORNIA  90014

 7
             SHOOK HARDY & BACON
 8           BY:  EVA WEILER
                 ATTORNEY AT LAW
 9           5 PARK PLACE
             SUITE 1600
10           IRVINE, CALIFORNIA  92614

11
     FOR THE DEFENDANT VITAL PHARMACEUTICALS, INC.:
12

13           GORDON & REES LLP
             BY:  TIMOTHY K. BRANSON
14               ATTORNEY AT LAW
             633 WEST 5TH STREET
15           52ND FLOOR
             LOS ANGELES, CALIFORNIA  90071
16

17           GORDON & REES SCULLY MANSUKHANI LLP
             BY:  MICHAEL D. KANACH
18               ATTORNEY AT LAW
             275 BATTERY STREET
19           SUITE 2000
             SAN FRANCISCO, CALIFORNIA  94111
20           (TELEPHONICALLY)

21

22

23

24

25
```

Exhibit 3, Page 7

14

1              THE COURT: (READING.)

2              ALL COMMUNICATIONS BETWEEN SHOOK HARDY OR MR. MILES

3              AND THE U.S. FOOD AND DRUG ADMINISTRATION RELATED TO

4              VPX OR OWOC OR BANG REGARDLESS OF DATE.

5              MR. TODISCO:  SO, I UNDERSTAND FROM SHOOK THAT THERE

6    ARE NO DOCUMENTS RESPONSIVE TO THIS RFP, AND THAT HAS BEEN

7    REPRESENTED TO MR. KANACH ON --

8              THE COURT:  OKAY.

9              MR. TODISCO:  -- THE PHONE.

10             THE COURT:  ALL RIGHT.

11             MR. KANACH, YOU GOT THAT REPRESENTATION?

12             MR. KANACH:  WHAT WE HEARD FROM SHOOK HARDY --

13             THIS IS MR. KANACH ON THE PHONE --

14             -- WHAT WE HEARD FROM SHOOK HARDY IS THAT THEY

15   STOPPED ALL SEARCHES UNTIL THE COURT COMPELLED THEM TO PRODUCE.

16   THEY WOULD NOT TAKE A POSITION IN WRITING TO US THAT THEY HAD

17   COMPLETED THEIR SEARCH WITH RESPECT TO ANY OF THE DOCUMENT --

18   SPECIFIC DOCUMENT REQUESTS.

19             SO, IF -- IF THEY DO TELL US THAT THEY'VE COMPLETED

20   THEIR REVIEW AND THAT THERE ARE NO DOCUMENTS, THAT WOULD

21   OBVIOUSLY BE SUFFICIENT FOR OUR PURPOSES.  BUT THEY HAVE NOT

22   PUT THAT IN WRITING TO US AT THIS TIME.

23             THE COURT:  MR. TODISCO, YOU GUYS WANT TO PUT THAT IN

24   WRITING?

25             MR. TODISCO:  I WOULD WANT TO CONFER WITH COUNSEL FOR

15

1    SHOOK.  BUT AS TO RFP 1, BASED ON WHAT SHOOK HAS DONE TO DATE,

2    WHICH I BELIEVE IS MORE THAN A REASONABLE SEARCH UNDER --

3           THE COURT:  WELL, YOU NOW INSERTED A PHRASE IN THERE

4    "WHAT SHOOK HAS DONE TO DATE."

5           MR. TODISCO:  YEAH.  SORRY.  WHAT I WAS SAYING IS

6    WHAT SHOOK HAS DONE WOULD BE -- WOULD QUALIFY AS A REASONABLE

7    SEARCH, I BELIEVE, BASED ON WHAT I'VE HEARD OVER THE PHONE AND

8    WOULD HAVE MET THEIR OBLIGATIONS TO SEARCH FOR THESE DOCUMENTS.

9           BUT I DON'T WANT TO SPEAK FOR THEM.  I UNDERSTAND

10   THAT THEY'VE DONE A FAIRLY BROAD --

11          THE COURT:  MS. WEILER JUST SAID YOU'RE SPEAKING FOR

12   THEM.

13          MS. WEILER:  SURE, YOUR HONOR.

14          YES, WE HAVE DONE WHAT I WOULD QUALIFY AS A

15   REASONABLE SEARCH FOR THESE DOCUMENTS TO DATE.  AND NO

16   RESPONSIVE DOCUMENTS TO RFP NUMBER 1 HAVE BEEN LOCATED.

17          THE COURT:  OKAY.

18          YOU GOT THAT ON THE RECORD, MR. KANACH.

19          SO, LET'S MOVE ON TO RFP NUMBER 2.

20          ALL DOCUMENTS AND COMMUNICATIONS BETWEEN

21          YOU AND THE U.S FOOD AND DRUG ADMINISTRATION RELATED

22          TO MONSTER PRODUCTS REGARDLESS OF DATE.

23          MR. KANACH, I DON'T SEE THE RELEVANCY OF THIS

24   REQUEST.

25          MR. BRANSON:  YOUR HONOR, THE NATURE OF THIS REQUEST

16

1    IS TO -- FOR CONTEXT TO SEE IF MONSTER IS TAKING INCONSISTENT

2    POSITIONS WITH RESPECT TO ITS OWN PRODUCTS, WHICH IN -- AT

3    LEAST IN AT LEAST ONE CASE THE PRODUCT IS VERY SIMILAR --

4            THE COURT:  ARE YOU TALKING AN UNCLEAN HANDS DEFENSE?

5            MR. BRANSON:  YES, SIR.

6            THE COURT:  OKAY.  WE'VE ALREADY RULED ON THAT.  IT'S

7    NOT RELEVANT.

8            MR. BRANSON:  OKAY.  VERY WELL.

9            THE COURT:  WE'RE OVER IT.  WE'RE DONE.

10           RFP NUMBER 3.

11           ALL COMMUNICATIONS BETWEEN YOU AND THE BURSOR &

12           FISHER LAW FIRM RELATED TO VPX OR OWOC OR BANG

13           REGARDLESS OF DATE.

14           OKAY.  GO AHEAD, MR. TODISCO.

15           MR. TODISCO:  MONSTER DOES NOT UNDERSTAND HOW

16   COMMUNICATIONS BETWEEN ITS COUNSEL AND A THIRD PARTY LAW FIRM

17   HAVE ANY RELEVANCE TO VPX'S DEFENSES OR TO MONSTER'S CLAIMS.  I

18   DON'T BELIEVE THAT CONDUCT OF COUNSEL IS AT -- IS AT ISSUE

19   HERE.

20           MR. BRANSON:  YOUR HONOR, TO GIVE YOU A LITTLE

21   CONTEXT FOR THIS.

22           THE COURT:  SURE.

23           MR. BRANSON:  AND FOR THE NEXT -- MOST OF THE REST OF

24   THEM.

25           THE COURT:  SURE.

17

1              MR. BRANSON:  ALL THESE ATTORNEYS ARE FOR THE MOST

2    PART PLAINTIFFS' ATTORNEYS AND FIRMS IN OTHER CASES THAT ARE

3    PENDING AGAINST MY CLIENT VPX CLASS ACTIONS, OTHER UNFAIR

4    COMPETITION CASE IN FLORIDA.

5              AT THE INCEPTION OF THIS PARTICULAR CASE, MR. MILES

6    MADE STATEMENTS TO THE MEDIA WHICH ESSENTIALLY SAID, YOU KNOW,

7    THIS IS JUST -- THIS IS JUST THE BEGINNING OF, YOU KNOW, WHAT

8    WE SEE AS MORE LITIGATION AT VPX.  I THINK THE EXACT LANGUAGE

9    WAS:

10             THIS LAWSUIT IS JUST THE TIP OF THE ICEBERG -- WOULD

11             NOT BE SURPRISED IF THE FDA TOOK ACTION OR IF THERE

12             ARE OTHER CLASS ACTION LAWSUITS FILED.

13             WE HAVE REASON TO BELIEVE THAT MONSTER AND ITS

14   COUNSEL, PARTICULARLY MR. MILES, ARE COORDINATING AND

15   COOPERATING WITH THESE OTHER LAWYERS.  AND IT'S NOT JUST THE

16   MEDIA STATEMENTS.  WE HAVE OTHER EVIDENCE THAT SUGGESTS THAT

17   THAT'S HAPPENING.

18             SO, WE BELIEVE WE'RE ENTITLED TO SEE TO THE EXTENT

19   THAT MONSTER IS COOPERATING AND COORDINATING WITH THESE OTHER

20   ATTORNEYS ABOUT -- THESE ARE ABOUT OUR CLAIMS.  THESE ARE --

21   THESE ARE ABOUT MY CLIENT AND OUR CLAIMS.

22             IF THESE ARE COORDINATING AND THEY'RE SHARING

23   INFORMATION THAT'S NOT PRIVILEGED -- MAYBE IT'S A FIGHT WHETHER

24   IT'S PRIVILEGED OR NOT.  AND THEY DON'T SEEM TO KNOW IF IT IS.

25   BUT IF -- WE SHOULD BE ABLE TO SEE WHAT THOSE COMMUNICATIONS

20

1   THEY'RE KILLING US IN THE MARKET.  WE NEED TO DO SOMETHING

2   ELSE.

3            THIS IS ALL SOMETHING I THINK WE SHOULD BE ABLE TO

4   SEE.

5            THE COURT:  I DON'T SEE IT.  I MEAN, BASED ON WHAT

6   I'VE HEARD, I DON'T SEE IT.

7            MR. KANACH, ANYTHING TO ADD?

8            MR. KANACH:  YES, YOUR HONOR.

9            JUST FOR A LITTLE BIT MORE BACKGROUND HERE.

10           THE COURT:  SURE.

11           MR. KANACH:  OBVIOUSLY THE MONSTER CASE WAS FILED

12   FIRST.  ALL THE OTHER CASES WERE FILED SUBSEQUENTLY.

13           ALSO, THE MAJORITY OF THOSE CLASS ACTION CASES HAVE

14   BEEN DISMISSED, SOME OF WHICH WERE VOLUNTARILY DISMISSED.

15           IT'S JUST -- THE STRENGTH OF THOSE CASES IS VERY

16   SIMILAR TO THE STRENGTH OF THESE CASES -- THIS CASE HERE.

17   WITH RESPECT TO THE -- ALL THE CLAIMS THAT THE PLAINTIFF IS

18   MAKING THESE ARE REALLY COPYCAT CASES THAT WE THINK ARE A

19   STRATEGIC -- YOU KNOW, FOR COMPETITIVE REASONS.  THEY ARE NOT

20   FILING THIS LAWSUIT TO ACTUALLY GET TO THE ROOT OF THE -- YOU

21   KNOW, IS THERE THIS MUCH CREATINE IN IT TO SUPPORT THIS CLAIM.

22           THIS IS A STRATEGIC COORDINATION OF MONSTER'S

23   COUNSEL.  AND THAT'S WHERE WE WANT TO GET THE INFORMATION.

24           BECAUSE IF THE DEFENDANTS ARE SUCCESSFUL IN DEFENDING

25   THIS CASE, AND WE NEED TO, YOU KNOW, SHOW THAT THIS CASE WAS

21

1    EXCEPTIONAL AND ALL THE OTHER CASES ARE DISMISSED, OR THAT THE

2    DEFENDANT VPX WINS ALL THOSE CASES, IT WILL JUST BE EVIDENCE TO

3    SHOW THAT THIS WAS ALL COORDINATED, NOT BECAUSE OF THE STRENGTH

4    OF THEIR CLAIMS, BUT BECAUSE OF -- FOR COMPETITIVE REASONS ON

5    BEHALF OF MONSTER.

6           THE COURT:  SOUNDS LIKE SOME SORT OF A SLAPP ACTION

7    OR AN ANTISLAPP.  IF THAT'S --

8           MR. KANACH:  AND JUST, YOUR HONOR, WHAT WE'VE HEARD

9    FROM SHOOK HARDY DURING OUR EXTENSIVE MEET AND CONFER, BESIDES

10   THE FACT THAT THEY SAID THEY WEREN'T COMPLETE WITH THEIR

11   REVIEW, THEY TOLD US THAT THERE WAS A SINGLE DOCUMENT THAT THEY

12   THOUGHT WAS NOT REALLY -- I FORGET WHAT WORD THEY USED, MAYBE

13   SUBSTANTIVE OR RELEVANT -- THAT WAS RESPONSIVE TO THESE.

14          AND WE SAID, WELL, IF IT'S NOT REALLY A BIG DEAL, CAN

15   YOU PRODUCE IT TO US SO WE CAN SEE IT BEFORE WE TAKE THIS TO

16   THE COURT.  AND THEY REFUSED TO SHOW IT TO US.

17          AND WE ASKED THEM TO PUT -- YOU KNOW, IF THERE ARE SO

18   FEW DOCUMENTS, COULD THEY PUT IT ON A PRIVILEGE LOG.  AND THEY

19   REFUSED TO DO THAT AS WELL.

20          OBVIOUSLY, IF THERE IS A COMMON INTEREST PRIVILEGE

21   THAT THESE PARTIES ARE ALL COORDINATING THEIR ATTACK AND

22   THEY'RE PLAINTIFF'S CLAIMS, SOME OF THOSE MAY FALL UNDER COMMON

23   INTEREST.  SOME OF THOSE MAY NOT.

24          AND AT A MINIMUM, WE WANT TO BE ABLE TO SEE ON A

25   PRIVILEGE LOG -- EVEN IF IT'S ONLY ONE DOCUMENT, WE WANT TO BE

1          MR. BRANSON:  THROUGHOUT HISTORY, THERE HAVE BEEN

2     SEVERAL.

3          THE COURT:  OKAY.  I MEAN, DO YOU THINK IT'S

4     APPROPRIATE FOR THEM TO SERVE THIRD-PARTY SUBPOENAS TO EACH OF

5     THOSE LAW FIRMS AND SAY PROVIDE ALL DOCUMENTS RELATED TO

6     MONSTER?

7          BECAUSE AT YOUR CORE YOU'RE SAYING YOU CAN'T COMPETE

8     -- THEY CAN'T COMPETE WITH US IN THE MARKETPLACE.  THEREFORE,

9     THEY'RE GOING TO COME BACK AT US THROUGH THIS BUSINESS STRATEGY

10    OF LAWSUITS AND CLASS ACTIONS.

11         SIMILARLY, THEY MAY SAY, WELL, YOU KNOW WHAT, THEY

12    DON'T LIKE MONSTER.  AND THEY'RE GOING TO DO -- THEY'RE GOING

13    TO DO WHATEVER THEY WANT TO TAKE US OUT.  BECAUSE THAT GOES TO

14    THE MOTIVATION OF -- OF WHATEVER.

15         I MEAN, WE GET -- YOU GET MORE AND MORE FAR AFIELD OF

16    THE CLAIMS THAT ARE BEING MADE HERE.

17         THE CLAIMS THAT ARE BEING MADE HERE ARE RELATED TO

18    BANG AND CREATINE, RIGHT? -- BANG AND CREATINE.

19         AND IT'S BEING EXPANDED -- AND I THINK FAIRLY SO YOU

20    CAN DO THIS IN THE DEPOSITIONS OF WHAT'S YOUR MOTIVATION FOR

21    THIS.  BECAUSE TO SHOW THAT THIS BANG AND CREATINE CASE IS A

22    SUBTERFUGE RATHER THAN AN ACTUAL VIABLE CLAIM.  AND THAT MAY BE

23    THE CASE.  BUT I DON'T KNOW THAT.

24         AND THAT'S -- YOU KNOW, I DON'T KNOW WHEN MSJ

25    DEADLINES ARE COMING UP.  AND YOU'LL HAVE TO DECIDE THAT.

36

1          THEY HAVEN'T COMMITTED EITHER WAY WHETHER THEY'RE

2    GOING TO FILE ONE, BUT WE DID GIVE THEM AN EXTENSION.

3          THE COURT:  ARE YOU INVOLVED IN THAT CASE?

4          MR. BRANSON:  PARDON ME?  YES.  YES.

5          THE COURT:  OH, YOU ARE.  OKAY.  SO, YOU KNOW ABOUT

6    THAT CASE?

7          MR. BRANSON:  I DO.  I DO.

8          THE COURT:  OKAY.  AND, SO, CAN YOU -- CAN YOU SHED

9    SOME LIGHT ON WHAT'S GOING ON THERE.

10         MR. BRANSON:  JUST GENERALLY IN THE CASE, OR?

11         THE COURT:  NO.  JUST ABOUT WITH RESPECT TO THIS

12   MOTION.

13         MR. BRANSON:  WE --

14         THE COURT:  OR A POTENTIAL MOTION.

15         MR. BRANSON:  WE DID SERVE SIMILAR SUBPOENAS TO THE

16   SAME PARTIES IN -- IN FLORIDA.  AND IT'S AT THE POINT WHERE WE

17   RECEIVED SOME WRITTEN OBJECTIONS SIMILAR TO WHAT WE DID HERE.

18         MOST EVERYONE HAS ASKED FOR MORE TIME TO RESPOND TO

19   US.  EVERYONE IS GENERALLY TAKING THE SAME POSITION VAGUELY

20   THAT IT'S ATTORNEY-CLIENT OR WORK-PRODUCT OR COMMON INTEREST --

21   ONE OF -- YOU KNOW, OR SOME ASPECT OF THAT.

22         WE'VE BASICALLY BEEN COOPERATIVE IN GIVING PEOPLE

23   TIME TO SEARCH FOR THEIR DOCUMENTS.  BUT NO MOTIONS -- WE DON'T

24   KNOW IF ANYONE IS GOING TO FILE ANYTHING OR HOW IT'S GOING TO

25   -- IT'S STILL PLAYING THROUGH.

47

1                    C E R T I F I C A T E

2

3

4        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
   ABOVE-ENTITLED MATTER.

5

6

7   /S/ DOROTHY BABYKIN                         1/21/20
   _____         _____
8   FEDERALLY CERTIFIED TRANSCRIBER          DATED
   DOROTHY BABYKIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 3, Page 16