M.D. SCULLY (SBN 135853)
mscully@grsm.com
TIMOTHY K BRANSON (SBN 187242)
tbranson@grsm.com
PETER G. SIACHOS (*Pro Hac Vice*)
psiachos@grsm.com
SARA ANDERSON FREY (*Pro Hac Vice*)
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI LLP
101 W Broadway, Suite 2000
San Diego, CA 92101
Phone: (619) 230-7441
Fax: (619) 696-7124

FRANCIS MASSABKI (*Pro Hac Vice*)
VITAL PHARMACEUTICALS, INC.
1600 North Park Drive
Weston, FL 33326
Phone: (954) 641-0570
Fax: (954) 389-6254
Legal@vpxsports.com

Attorneys for Defendants
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports;
and JOHN H. OWOC, a.k.a. JACK OWOC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, a Florida corporation; and JOHN H. OWOC a.k.a. JACK OWOC, an individual<br><br>Defendants. | CASE NO. 5:18-cv-01882-JGB-SHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS PETER KENT**<br><br>Date: Feb. 7, 2022<br>Time: 9:00 AM<br>Courtroom: 1<br><br>District Judge:<br>Hon. Jesus G. Bernal<br>Magistrate Judge:<br>Hon. Shashi H. Kewalramani<br><br>Trial: Apr. 5, 2022 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION AND BACKGROUND ................................................... 1

II. LEGAL STANDARD ................................................................................... 3

III. ARGUMENT ................................................................................................ 5

    A. Kent Is a Highly Qualified Social Media Expert With 34 Years Of Experience In The Field And Across Numerous Platforms ................. 5

    B. Mr. Kent's Testimony Is Reliable and Will Be Helpful To The Jury .. 8

        1. Mr. Kent Has A Valid Basis for His Opinion That Carpenter Failed to Establish a Nexus Between VPX Instagram Posts and BANG Sales ............................................. 8

        2. Mr. Kent Has A Valid Basis for His Opinion That Instagram Post Captions Are Often Not Read or Merely Skimmed by Users ................................................................... 9

        3. Mr. Kent Has A Valid Basis for His Opinion That Instagram Users Do Not Review or Rely on Hashtag Blocks ........................................................................................ 11

IV. CONCLUSION .......................................................................................... 13

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
 738 F.3d 960 (9th Cir. 2013) ................................................................................ 10

*Cascada LLC, et al. v. Van Der Starre*,
 No. 14-cv-30054 (Co. Dist. Ct. 2014) .................................................................... 6

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014) ...................................................................... 3, 4, 10

*Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*,
 No. CV 08-8525 PSG (PJWx), 2010 WL 2035800 (C.D. Cal. May 19, 2010) .... 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) ........................................................................ 1, 3, 4, 7, 11, 12

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
 2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ................................................ 11, 12

*Emblaze Ltd. v. Apple Inc.*,
 52 F. Supp. 3d 949 (N.D. Cal. 2014) ..................................................................... 4

*Estate of Barabin v. AstenJohnson, Inc.*,
 740 F.3d 457 (9th Cir.2014) ............................................................................... 3, 4

*Houston v. 7-Eleven, Inc.*,
 No. 2014 WL 5856891 (M.D. Fla. Nov. 3, 2014) ................................................. 5

*In re High-Tech Emp. Antitrust Litig.*,
 No. 11-CV-02509-LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ............ 4, 7

*Indacon, Inc. v. Facebook, Inc.*,
 No. 5:10-cv-966 (W.D. Tex. 2010) ........................................................................ 6

*JUUL Labs, Inc., v. 4X Pods, Eonsmoke, LLC*,
 No. 18-cv-15444 (D.N.J. 2018) .............................................................................. 6

*Kevin Halpern, et al. v. Uber Technologies*,
 No. CGC 15-545825 (Cal. Super. Ct. 2019) ......................................................... 6

*Kumho Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999) ................................................................................................ 3

*Louis Bacon v. Peter Nygard*,
 No. 150400/2015 (N.Y. Sup. Ct. 2015) ................................................................. 6

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ...................................................... 9

-ii-

-iii-

*Pinterest, Inc. v. Pintrips, Inc.*,
   No. 13-cv-04608 (N.D. Cal. 2013) .................................................................. 6

*Primiano v. Cook*,
   598 F.3d at 564 (9th Cir.2010) ...................................................................... 4

*RIPL Corp. v. Google, Inc.*,
   No. 2:12-cv-02050 (W.D. Wash. 2012) ......................................................... 6

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ..................................................................... 9

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) ....................................................................... 3

*Vision I Homeowner's Association, Inc. v. Aspen Specialty Ins. Co.*,
   674 F. Supp. 2d 1321 (S.D. Fla. 2009) .......................................................... 5

**Rules**

Federal Rules of Evidence
   Rule 702 ............................................................................... 1, 3, 4, 5, 7, 12

## I. INTRODUCTION AND BACKGROUND

The Court should deny Plaintiff's Motion to Exclude the Testimony of Defendants' Expert Witness Peter Kent because Peter Kent is qualified to give the opinions rendered in his rebuttal report and those opinions are sufficiently reliable to meet the strictures of Federal Rule of Evidence 702 and *Daubert*.

Plaintiff alleges that VPX engaged in unfair competition when it truthfully and accurately advertised that its flagship BANG® performance drinks contain an ingredient known as Super Creatine. Plaintiff asserts that VPX utilized social media platform Instagram as a key component of its alleged advertising campaign and have retained Gregory Carpenter to render unsupported and speculative opinions regarding a purported nexus between VPX's Instagram activity and its sales of BANG.

Plaintiff relies on Mr. Carpenter in a contrived effort to create a link between VPX's Instagram activity and its BANG sales. Mr. Carpenter's report ("Carpenter Report") artificially inflates both the user engagement rates for VPX Instagram posts containing reference to "Super Creatine" or "creatine" and the number of VPX posts that actually advertise Super Creatine. It also deceives the jury on the role that captions play on Instagram posts, including how users interact with captions. And the Carpenter Report also misleads the jury into believing that millions of different Instagram users thoroughly review and have their purchasing decisions driven by a couple of hashtags buried in a string of hashtags known as a "hashtag block" like the one in blue text below:

///
///
///
///
///
///

-1-

DEFENDANTS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE PETER KENT                                           Case No. 5:18-cv-01882-JGB-SHK

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

> Every week on #Friday our page will feature one of our FABULOUS 🌟 #FuelTeam members, stay tuned for next weeks feature!! Tag a person in the comments below 👇 that you think would be a great addition to our #TEAM and let us know which questions you want us to ask our next #FuelTeamFriday #Feature!! .
> #BangEnergy #EnergyDrink #Energy #Fitness #Workout #Travel #Caffeine #Creatine #FuelTeam #Friday #Feature #HealthyLifestyle #Interview #BangFamily #Team #BangEnergyFuelTeam #Marketing #Events #FunFacts #Personality

VPX engaged Peter Kent, an online advertising, social media, and e-commerce expert of more than 34 years, to rebut Mr. Carpenter's unsound opinions. Mr. Kent's June 4, 2021, Report ("Kent Report") rebuts certain of Mr. Carpenter's faulty opinions. Specifically, Mr. Kent opines, in part:

- Likes and videos views on an Instagram post are not a measure of engagement with a post caption as Instagram is an image and video driven application;

- Instagram users often interact with a post without reading anything posted in the caption such that captions often are not part of an Instagram user's experience with the app, yet Carpenter improperly assumed that every user that liked or viewed a VPX post read the caption under the post with which they interacted;

- In tallying the total number of VPX posts that advertise Super Creatine, Carpenter improperly considered VPX Instagram posts that reference "creatine" and "Super Creatine" only in the hashtag block but not in the video or the image of the relevant VPX posts. Carpenter's inclusion of such posts is improper because hashtag blocks are intended to serve an

1  indexing search function rather than serve as a source of information;
2  and
3  • That Carpenter failed to establish any nexus between VPX's Instagram
4  posts and its BANG sales.

*See* Kent Report (DE 585-10).

The Court should deny the Motion because, as explained more fully below, Mr. Kent is exceptionally qualified to render the opinions rendered in his report and his opinions are based on sufficient, reliable data.

## II.     LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides that expert opinion is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; see also *City of Pomona v. SQM N. Am. Corp*., 750 F.3d 1036, 1043 (9th Cir. 2014).

Rule 702 imposes a "gatekeeping" obligation on the district court to ensure that proposed expert testimony is relevant and reliable. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline." *City of Pomona*, 750 F.3d at 1044.

> The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir.2014) (*en banc*). The court must assess the expert's reasoning or methodology, using as appropriate criteria

-3-
DEFENDANTS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE PETER KENT                                              Case No. 5:18-cv-01882-JGB-SHK

such as testability publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.*; *see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*City of Pomona*, 750 F.3d at 1043. "'Rule 702 'mandates a liberal standard for the admissibility of expert testimony.'"" *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *2 (N.D. Cal. Apr. 4, 2014).

"[T]he 'existence of other facts' or data that could also have been relied upon does not make the evidence selected irrelevant." *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 959 (N.D. Cal. 2014). "Even if data are 'imperfect, and more (or different) data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony." *Id*. "Questions about what facts are most relevant or reliable" to reaching the conclusions rendered "are for the jury." *Id*.

Motions in limine should not be used to resolve factual disputes or weigh evidence, nor should they be used as disguised motions for summary judgment. *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 WL 2035800 at *1 (C.D. Cal. May 19, 2010) ("Here, the Court discerns that Defendants' motions in limine nos. 1, 2, and 10 are disguised motions for partial summary judgment. Accordingly, the motions are denied.").

### III. ARGUMENT

**A. Kent Is a Highly Qualified Social Media Expert With 34 Years Of Experience In The Field And Across Numerous Platforms**

A witness may be qualified by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The 2000 Amendment Committee Notes on Rule 702 provide that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony." "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Houston v. 7-Eleven, Inc.*, No. 2014 WL 5856891, at *1 (M.D. Fla. Nov. 3, 2014) (quoting *Vision I Homeowner's Association, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009)).

Here, Mr. Kent readily meets that standard. Mr. Kent has been involved with various forms of social media for approximately 34 years. Kent Report ¶ 5 (DE 585-10). He worked with early social media services such as CompuServe, BBS Systems, Prodigy, and AOL in the 80's and 90's. *Id.* ¶ 5. He wrote the documentation and helped design the user interface for a navigator program by CompuServe called NavCIS. *Id.* ¶ 6. He has worked with LinkedIn (where he has a 20,000+ member network and is a LinkedIn learning trainer); Facebook, MySpace, MeetUp, G+, Twitter (3,000 followers), StumbleUpon, Tumblr, Instagram, delicious, Reddit, Pinterest, Telegram, Discord, and others. *Id.* ¶ 7. Mr. Kent has given numerous 20 radio interviews and countless presentations and workshops dedicated to search engine optimization ("SEO") and other forms of digital marketing. *Id.* at 50.

Mr. Kent has extensive experience in the internet-search field, and hashtags are an internet-search function – not merely an Instagram-search function. Mr. Kent has worked in the Internet-search sector since the late 1990s and is the author of seven editions of the best-selling *SEO For Dummies* since 2003. *Id.* ¶¶ 10, 11. He

-5-

also wrote and present several courses on search engines for LinkedIn and published a search engine optimization course with 37,000+ students on Udemy.com. *Id.* ¶¶ 7, 12. Mr. Kent's extensive experience in Search Engine Optimization (SEO) for websites and pay-per-click (PPC) advertising and marketing campaigns uniquely qualifies him to opine on the use of captions and hashtags on Instagram. *Id.* ¶ 3.

SEO keywords—an area where Mr. Kent has extensive experience—is remarkably similar to the hashtag function for social media posts; both SEO keywords and hashtags serve as indexing functions for search and categorization. Kent Report ¶¶ 56, 57, 99 (DE 585-10). As the author of multiple publications and courses related to search, Mr. Kent is undoubtedly qualified to opine on matters pertaining to indexing such as hashtags. However, unlike SEO and pay-per-click advertising, where the equivalent of hashtags are concealed from plain view, hashtags cannot be concealed in Instagram posts, so they are included on the post itself, either in the caption or in the comment section of a post. *Id.* ¶¶ 76-80. As Mr. Kent testified, hashtags serve an indexing and categorization purpose across different social media platforms, including Instagram, LinkedIn, Twitter, and Facebook. Kent Deposition at 125:19 – 126:1 (DE 585-11).

Mr. Kent has also testified in numerous legal disputes related to social media, including the following matters:

- *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608 (N.D. Cal. 2013);
- *Indacon, Inc. v. Facebook, Inc.*, No. 5:10-cv-966 (W.D. Tex. 2010);
- *Louis Bacon v. Peter Nygard*, No. 150400/2015 (N.Y. Sup. Ct. 2015);
- *RIPL Corp. v. Google, Inc.*, No. 2:12-cv-02050 (W.D. Wash. 2012);
- *Kevin Halpern, et al. v. Uber Technologies*, No. CGC 15-545825 (Cal. Super. Ct. 2019)
- *Cascada LLC, et al. v. Van Der Starre*, No. 14-cv-30054 (Co. Dist. Ct. 2014);
- *JUUL Labs, Inc., v. 4X Pods, Eonsmoke, LLC*, No. 18-cv-15444 (D.N.J. 2018).

-6-

DEFENDANTS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE PETER KENT                                          Case No. 5:18-cv-01882-JGB-SHK

The JUUL Labs, Inc., case specifically concerned the operation of hashtags in social media.

Plaintiff next takes aim (at 8) at the number of Mr. Kent's Instagram followers, oddly arguing that he does not have enough followers or follow enough accounts to be considered an expert on social media. But Plaintiff completely failed to elaborate why the number of accounts that follow Mr. Kent on Instagram and the amount he follows have any bearing on his qualifications to render the opinions in his report.

Kent unquestionably demonstrated his qualifications to opine on the operation of hashtags, but Plaintiff nonetheless ask the Court to exclude his testimony because he did not memorize obscure, arcane components of Instagram that have no relevance to this case. Specifically, Plaintiff makes much ado about Mr. Kent not memorizing the number of people that can be tagged in a post; the maximum number of users someone can tag in an Instagram post; the maximum number of accounts a user can follow; the maximum number of posts a user can like per hour; the maximum length of a video on Instagram; and other impertinent components of the Instagram. Importantly, none of the foregoing Instagram features have any relevance to the components of Instagram that Mr. Kent has given an opinion (i.e., hashtags and their operation).

The aspects of the Instagram platform for which Plaintiff contends (at 8-9) Mr. Kent is not proficient are completely irrelevant to the matters on which Mr. Kent has given expert opinion. Plaintiff essentially asks the Court to strike Mr. Kent because he did not score enough points on Plaintiff's made-up game of Jeopardy. Under Rule 702 and *Daubert*, knowledge, training, and experience are sufficient to recognize a witness as an expert, and Mr. Kent meets that "liberal standard." *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *2.

And Plaintiff also misstates (at 9) Mr. Kent's testimony for its argument that he purportedly "never looked to see" whether certain behaviors are "normal" on

-7-

Instagram. Mr. Kent never said that. Rather, Mr. Kent was answering the very specific question asking him whether it is "common to hashtag names of ingredients on a product page, even though the product doesn't contain that ingredient?" Kent Deposition at 140:4-17 (DE 585-11).

Plaintiff makes the puzzling argument (at 8) that Mr. Kent is not qualified to opine on matters related to Instagram because his curriculum vitae does not reference Instagram. If, as Plaintiff incorrectly contends, Mr. Kent's extensive experience does not qualify him to opine on Instagram merely because Instagram is not specifically referenced in his curriculum vitae, then Mr. Carpenter should be automatically disqualified. Nowhere in either his 16-page curriculum vita or in the nine paragraphs of his report laying out the qualifications for his opinions about Instagram contain *any* reference to Instagram or any other social media platform for that matter.

Critically, Plaintiff failed to establish that Mr. Kent is not qualified to render opinions concerning the use and operation of hashtags and captions in social media. Mr. Kent is qualified to give the opinions rendered in his report and his expertise goes far beyond "mere familiarity." Accordingly, the Court should deny the Motion.

**B.     Mr. Kent's Testimony Is Reliable and Will Be Helpful To The Jury**

Mr. Kent's 53-page report thoroughly covers the bases for his opinions therein. His testimony is admissible because he relies on sufficient data and demonstrated the application of sound methods to reach his conclusions.

   1.   <u>Mr. Kent Has A Valid Basis for His Opinion That Carpenter Failed to Establish a Nexus Between VPX Instagram Posts and BANG Sales</u>

Plaintiff incorrectly argues that Mr. Kent has no basis for his claim that Carpenter failed to establish a nexus between VPX's Instagram posts and BANG sales. Mr. Kent fully explained the basis for that straightforward, self-explanatory opinion. He specifically explained both in his report (at ¶ 100) and his deposition (at 47:14 – 48:14) that Carpenter failed to establish the requisite nexus in his report. One need not look further than Carpenter's report to reach that conclusion.

-8-

DEFENDANTS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE PETER KENT                                              Case No. 5:18-cv-01882-JGB-SHK

1 Because, as Mr. Kent pointed out, Mr. Carpenter failed to establish the requisite nexus between VPX Instagram posts and its BANG sales, it is irrelevant to Mr. Kent's opinions what Mr. Carpenter reviewed or should have done, if anything, to make that connection. Plaintiff is wrong in arguing that Mr. Kent's opinion is unreliable because he did not come to Plaintiff's aid and explain what Carpenter should have done to establish a nexus between VPX's Instagram activity and its BANG sales – a task Carpenter failed to perform. "As a rebuttal witness, Mr. [Kent] was under no obligation to create models or methods of his own." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 51 (S.D.N.Y. 2016); *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *12 (S.D.N.Y. Sept. 16, 2015) ("There is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party."). Thus, it is of no moment that Mr. Kent did not conceptualize a methodology that Mr. Carpenter should have used to establish the requisite nexus that he failed to show.

Accordingly, this opinion is admissible.

2. <u>Mr. Kent Has A Valid Basis for His Opinion That Instagram Post Captions Are Often Not Read or Merely Skimmed by Users</u>

Contrary to Plaintiff's argument, Mr. Kent points to reliable data that he relies upon for his opinion that users often do not read Instagram captions. And Mr. Kent did not concede that he had no facts or data to support that opinion.

Mr. Kent specifically pointed to a survey of Instagram users performed by Preview App, Pty, Ltd., which is provides Instagram software services that integrates with Instagram to facilitate account management (Kent Deposition at 91:3-8 (DE 585-11), wherein the survey concluded that 65% of users said they do not always read Instagram captions. *See* Kent Report at ¶ 35 (DE 585-10). He then recited direct responses from survey participants where many of them stated that they do not always review captions, and if they do, it depends on a number of factors, including

-9-

whether they connect with the poster, if they like the photo, or if the post itself captured the user's attention, among other factors. *Id.* ¶ 37. On the basis of that survey, Mr. Kent opines that Carpenter incorrectly assumes that every single Instagram user reads the caption on every post they look at. *Id.* ¶ 36.

Mr. Kent also analyzed the comments under a VPX Instagram post and highlighted that the substantial majority of the comments did not connect with the substance of the cited caption, thus indicating that users had not actually reviewed the post on which they were commenting. *Id.* at ¶¶ 41-43. He also demonstrated with screen captures that the manner in which Instagram is configured will not always reveal captions to users without the users having to click further to review a post's caption. *Id.* at ¶¶ 43, 44. Thus, Mr. Kent personally observed the manner in which captions appear and are presented to users on Instagram as an expert with deep knowledge in the field. Accordingly, his opinion is based on reliable data.

As a backstop, Plaintiff resorts (at 12) to calling into question the weight that should be afforded to the Preview App survey because Plaintiff disagrees with Mr. Kent's reading of the survey. "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *Pomona*, 750 F.3d at 1044. In asking the Court to strike Mr. Kent on the basis that Plaintiff disagrees with Mr. Kent's reading of the Preview App survey, Plaintiff asks the Court to make a determination reserved for the factfinder. This the Court cannot do. *Id*. The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.

Notably, despite Carpenter opining that most users read Instagram captions, Carpenter fails to cite any support for that opinion himself.

///

-10-

DEFENDANTS' OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE PETER KENT                                    Case No. 5:18-cv-01882-JGB-SHK

3. Mr. Kent Has A Valid Basis for His Opinion That Instagram Users Do Not Review or Rely on Hashtag Blocks

To start, Plaintiff mischaracterizes (at 13) Mr. Kent's testimony in arguing that he "admitted" that he did not draw information related to whether users read hashtag blocks from scientific studies or academic articles. DE 557-1 at 13 (citing Kent Deposition at 90:5-16; 135:18-22 (DE 595-11)). Mr. Kent merely testified that he had not seen any study about what percentage of users read hashtags. *Id*. at 135:18-22. And Plaintiff also misleadingly cites page 90 lines 5 through 16 of Mr. Kent's deposition, which did not specifically concern hashtags. *Id.* at 90:5-16. Mr. Kent did not testify that his conclusions regarding hashtag blocks were without basis; rather, he answered specific, narrow questions asking whether he was aware of specific articles regarding Instagram that counsel referenced – more trivia. *See id*.

Plaintiff argues (at 13) that Mr. Kent sourced his opinion from Google searching, but do not offer any citation to support that fabricated assertion. Indeed, Mr. Kent does not reference Google in either his report or deposition as the basis for his opinion concerning hashtags. *Accord* Kent Report (DE 585-10); Kent Deposition (DE 595-11). Contrary to Plaintiff's baseless argument, Mr. Kent cited to authoritative sources in his report in support of his opinion that hashtags are intended to serve as a search indexing tool rather than as a component of an Instagram post that is intended for user reading. *See* Kent Report at ¶¶ 67-71 (DE 585-10). Rather than actually critique the source data Mr. Kent relies upon, Plaintiff makes a superficial attempt to undermine Mr. Kent's opinion (i.e., the "principle" applied) by making the false assertion that he only performed a Google search. Plaintiff's failure on this front is telling.

Plaintiff's reliance on *Dep't of Toxic Substances Control v. Technichem, Inc*., is misplaced because that case did not concern a *Daubert* challenge but rather a motion for summary judgment, and the court there found the expert's opinions unreliable due to both the expert's rank speculation and "key factual errors" in his

-11-

declarations. 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016). Here, Plaintiff has utterly failed to make a remotely close showing as it concerns Mr. Kent's opinions.

Regardless, and contrary to Plaintiff's suggestion (at 13) Rule 702 does not require an expert opinion to be based on information drawn from *scientific studies* or *academic articles*; rather, Rule 702 merely requires that the expert's testimony be based on "sufficient facts or data," which Mr. Kent's testimony demonstrably is.

Plaintiff is also incorrect in its contention (at 14) that Mr. Kent improperly applied the principles relied upon by not asking VPX whether they intended users to reach the lengthy hashtag blocks accompanying certain of its Instagram posts. Mr. Kent's report is clear that the objective in including hashtag blocks is to increase the likelihood that the post containing the hashtag in question will turn up in a search of that specific hashtag. *See* Kent Report 10 ¶ 73 (DE 585-10). Kent's opinion that users do not read lengthy hashtag blocks under posts is not faulty because Kent simply did not inquire as to whether VPX wanted Instagram users to read hashtag blocks under its posts. Whether Instagram users read hashtag blocks is not dependent upon whether VPX wants them to. Put differently, even if VPX *intended* Instagram users to read its lengthy hashtag blocks, that does not automatically result in the conclusion that users in fact did read them, as Mr. Carpenter speculates.

Accordingly, Mr. Kent's opinion that hashtag blocks are not intended to be read by Instagram users is predicated on sufficient data and is the product of reliable methods. As such, his opinion is admissible under Rule 702 and *Daubert*.

///
///
///
///
///
///
///

-12-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion be denied.

Dated: January 13, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Peter G. Siachos*
Peter G. Siachos
M. D. Scully
Timothy K Branson
Sara Anderson Frey
*Attorneys for Defendants*
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports; JOHN H. OWOC, a.k.a. JACK OWOC