M.D. SCULLY (SBN 135853)
mscully@grsm.com
TIMOTHY K BRANSON (SBN 187242)
tbranson@grsm.com
PETER G. SIACHOS (*Pro Hac Vice)*
psiachos@grsm.com
SARA ANDERSON FREY *(Pro Hac Vice)*
sfrey@grsm.com
GORDON REES SCULLY MANSUKHANI LLP
101 W Broadway, Suite 2000
San Diego, CA 92101
Phone: (619) 230-7441
Fax: (619) 696-7124

FRANCIS MASSABKI (*Pro Hac Vice*)
VITAL PHARMACEUTICALS, INC.
1600 North Park Drive
Weston, FL 33326
Phone: (954) 641-0570
Fax: (954) 389-6254
Legal@vpxsports.com

Attorneys for Defendants
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports;
and JOHN H. OWOC, a.k.a. JACK OWOC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MONSTER ENERGY COMPANY, a Delaware corporation,

Plaintiff,

vs.

VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, a Florida corporation; and JOHN H. OWOC a.k.a. JACK OWOC, an individual

Defendants.

Case No. 5:18-cv-01882-JGB-SHK

**DEFENDANTS' L.R. 16-4 MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

District Judge:
Hon. Jesus G. Bernal

Magistrate Judge:
Hon. Shashi H. Kewalramani

<u>Final Pretrial Conference</u>
Date: Feb. 14, 2022
Time: 11:00 AM
Courtroom: 1

Trial: Apr. 5, 2022

Pursuant to C.D. Cal. L.R. 16-4, Defendants Vital Pharmaceuticals, Inc. ("VPX") and John H. Owoc ("Owoc") (collectively, "Defendants") hereby submit the following as their Memorandum of Contentions of Fact and Law.

## I. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

### A. Claim 1 – False Advertising

1. Monster's Claim

For Monster's first claim, stemming from its First, Second, and Third Causes of Action, Monster alleges that the Defendants have violated Section 43(a) of the Lanham Act, the California Unfair Competition Law ("UCL"), and the California False Advertising Law ("FAL"), all predicated on the claim that Defendants have falsely advertised the nature or quality of VPX's Bang product.

The elements required to establish Monster's claim for violation of the Lanham Act are as follows:

1. Defendants made a false statement of fact, in a commercial advertisement, about the nature or quality of VPX's Bang product;
2. That statement actually deceived or had the tendency to deceive, a substantial segment of Defendants' audience;
3. Such deception was material, in that it likely influenced the purchasing decision;
4. Defendants' caused the falsely advertised goods to enter interstate commerce; and
5. Monster has been, or is likely to be, injured as a result of Defendants' false advertising.

*See* 2017 Ninth Cir. Manual of Model Jury Instructions, Sec. 15.5; *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003), *overturned on other grounds Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); Fed. Civ. Jury Instr. 7th Cir. 13.3.1 (2021); *Café Found., Inc. v. Seeley*, 2016 WL 1258624, at *3 n.4 (N.D. Cal. Mar. 31, 2016) (UCL and FAL claims are analyzed together Lanham Act

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

claims).

The key evidence Defendants intend to present in opposition to this claim includes: Defendants will present evidence through testimony and documents showing that Monster has failed to show an organized advertising or promotional campaign with widespread dissemination of a false statement of fact about Bang or Super Creatine (Creatyl-L-Leucine or CLL), including testimony from Jack Owoc, Meg Owoc, Robbie Durand, and others, as well as social media, website posts, product packaging, and cans of Bang. Defendants will present percipient and expert testimony establishing that there are many forms of creatine in the marketplace and that CLL is a creatine analog or derivative and a form of creatine. Defendants will also show that its testing and Monster's own testing shows there is CLL in Bang. Defendants will also show through the use of their consumer surveys and surveys conducted by Monster itself, including two pre-litigation surveys, that demonstrate that Super Creatine is not material to consumers' purchasing decisions. Defendants will also present documents and the testimony of both VPX, Monster representatives (including Monster's 30(b)(6) witness, Emilie Tirre) and third party witnesses that Super Creatine is not material to consumers' purchasing decisions. Defendants will also present percipient and expert testimony about the numerous reasons (other than Super Creatine) that consumers purchase Bang and make it a highly successful product in the energy drink market. Defendants will also present documents and percipient and expert testimony showing that sugar-containing energy drinks (including Monster's flagship Green beverage) result in sugar crash and other adverse health events. Defendants will also demonstrate through documents and testimony that Monster's products and Bang are completely different products that target different consumers and that Monster has wholly failed to establish (1) that consumers buy Bang because of the Super Creatine ingredient, (2) that consumers purchase Bang instead of Monster's products because of the Super Creatine in Bang, or (3) which specific Monster's products have lost sales because of the Super

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Creatine in Bang. Defendants will also show that Bang's growth in sales and market share were incremental to the energy drink market. Defendants will present documents and percipient and expert testimony to demonstrate that Monster has failed to establish any damages as a result of alleged false advertising.

2. Defendants' Affirmative Defenses[1]

Defendants' first affirmative defense against Monster's claim for False Advertising is Failure to Mitigate Damages. The elements to this affirmative defense include: (1) Monster failed to use reasonable efforts to mitigate its damages, and (2) the amount by which Monster's damages would have been mitigated. *See Palla v. LM Sports, Inc.*, 2019 WL 6464621, at *9 (E.D. Cal. Dec. 2, 2019) (citing MODEL CIV. JURY INSTR. 9th Cir. 5.3) ("defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence: (1) that the plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated"). Model Civ. Jury Instr. 9th Cir. 5.3. The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of Bang, its inclusion of creatine as an ingredient and its "Super Creatine" advertising for years and did nothing before eventually filing a lawsuit for anti-competitive purposes once Bang started to become a highly successful energy drink product in an attempt to litigate VPX out of the market, as Monster has done with other competitors.

Defendants' second affirmative defense against Monster's claim for False Advertising is Waiver. The elements to this affirmative defense include: the intentional relinquishment of a known right after full knowledge of the facts, or

[1] Although not enumerated here, Defendants expressly reserve the right to assert and do not waive other defenses identified in its Answer, (*see* ECF 123), including failure to state a claim; lack of damages; punitive / enhanced damages improper; attorneys' fees improper; lack of standing; no injunctive relief; reasonable conduct; causation; bad faith; and constitutional protections.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Monster's knowledge of Defendants' alleged violation without timely notification of such violation. *See G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2017 WL 220305, at *43 (E.D. Cal. Jan. 18, 2017), *on reconsideration in part* 2017 WL 698335 (E.D. Cal. Feb. 21, 2017). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of Bang, its inclusion of creatine as an ingredient and its "Super Creatine" advertising for years and did nothing before eventually filing a lawsuit for anti-competitive purposes once Bang started to become a highly successful energy drink product in an attempt to litigate VPX out of the market, as Monster has done with other competitors.

Defendants' third affirmative defense against Monster's claim for False Advertising is Estoppel. The elements to this affirmative defense include: (1) Monster knew the facts; (2) Monster intended his conduct to be acted on (or acted in a manner such that Defendants have a right to believe Monster intended such reliance); (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Monster's conduct to their detriment. *See Buster v. Comp. Comm. of the Bd. of Directors of Mechanics Bank*, 2016 WL 6804581, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of Bang, its inclusion of creatine as an ingredient and its "Super Creatine" advertising for years and did nothing before eventually filing a lawsuit for anti-competitive purposes once Bang started to become a highly successful energy drink product in an attempt to litigate VPX out of the market, as Monster has done with other competitors. Defendants will also show through testimony and documents that Monster attempted to create a shelf-stable form of creatine to include in its Reign product, developed to compete directly with Bang. Defendants will also show through testimony and documents that Monster ultimately developed a copycat

product to Bang (*i.e.*, Reign) that included similar ingredients, can design, and flavors. Defendants will also demonstrate that in the months leading up to the launch of Reign, Monster filed this lawsuit as part of a coordinated smear campaign against VPX, Owoc and Bang, including the creation of a website called The Truth About Bang and the hiring of bloggers on social media to promote and publicize its meritless allegations of false advertising by VPX about Bang, communications to the media, retailers and distributors advising them of the lawsuit and its claims of false advertising about Bang, and placement of Truth About Bang placards on store shelves near Bang products. Defendants will also present evidence that Monster disseminated information to retailers and consumers about claimed dangerous levels of caffeine in Bang, despite numerous adverse health events, including heart attacks and deaths, tied to Monster's own products, and then created new Monster products with the same amount of caffeine as Bang. Defendant will also present evidence concerning Monster's "Operation Eradicate Bang" campaign, f*bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and sales, including the interference, relocation or removal of Bang cans and displays, and taking of shelf space and facings. Defendants will also show that Monster sold its products for many years before obtaining GRAS certification and in practice follows the same FDA labeling rules as VPX on its own cans.

Defendants' fourth affirmative defense against Monster's claim for False Advertising is Unclean Hands. The elements to this affirmative defense include: (1) Monster's conduct is inequitable, and (2) such conduct relates to the subject matter of its claims. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) ("To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct relates to the subject matter of the plaintiff's claims."). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

establishing that Monster was aware of Bang, its inclusion of creatine as an ingredient and its "Super Creatine" advertising for years and did nothing before eventually filing a lawsuit for anti-competitive purposes once Bang started to become a highly successful energy drink product in an attempt to litigate VPX out of the market, as Monster has done with other competitors. Defendants will also show through testimony and documents that Monster attempted to create a shelf-stable form of creatine to include in its Reign product, developed to compete directly with Bang. Defendants will also show through testimony and documents that Monster ultimately developed a copycat product to Bang (*i.e.*, Reign) that included similar ingredients, can design, and flavors. Defendants will also demonstrate that in the months leading up to the launch of Reign, Monster filed this lawsuit as part of a coordinated smear campaign against VPX, Owoc and Bang, including the creation of a website called The Truth About Bang and the hiring of bloggers on social media to promote and publicize its meritless allegations of false advertising by VPX about Bang, communications to the media, retailers and distributors advising them of the lawsuit and its claims of false advertising about Bang, and placement of Truth About Bang placards on store shelves near Bang products. Defendants will also present evidence that Monster disseminated information to retailers and consumers about claimed dangerous levels of caffeine in Bang, despite numerous adverse health events, including heart attacks and deaths, tied to Monster's own products, and then created new Monster products with the same amount of caffeine as Bang. Defendant will also present evidence concerning Monster's "Operation Eradicate Bang" campaign, f*bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and sales, including the interference, relocation or removal of Bang cans and displays, and taking of shelf space and facings. Defendants will also show that Monster sold its products for many years before obtaining GRAS certification and in practice follows the same FDA labeling rules as VPX on its own cans.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendants' fifth affirmative defense against Monster's claim for False Advertising is Laches. The elements to this affirmative defense include: acquiescence despite full knowledge of the facts, with Monster engaging in an unreasonable delay, with such delay prejudicing Defendants. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of Bang, its inclusion of creatine as an ingredient and its "Super Creatine" advertising for years and did nothing before eventually filing a lawsuit for anti-competitive purposes once Bang started to become a highly successful energy drink product in an attempt to litigate VPX out of the market, as Monster has done with other competitors.

Defendants' sixth affirmative defense against Monster's claim for False Advertising is Statute of Limitations. The elements to this affirmative defense include: Lanham Act false advertising claims in California are governed by a three-year statute of limitations. *See Baby Trend, Inc. v. Playtex Prod., LLC*, 0213 WL 4039451, at *3 (C.D. Cal. Aug. 7, 2013) ("California's statute of limitations for fraud should apply to Lanham Act claims"; adding "California law provides a three-year statute of limitations for fraud"). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged advertising statements identified in the First Amended Complaint more than three years before it filed the present action.

Defendants' seventh affirmative defense against Monster's claim for False Advertising is Preemption. The elements to this affirmative defense include: (1) Congress has enacted a statute that expressly preempts state law; (2) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field; or (3) state law actually

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

conflicts with federal law. *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 369 (N.D. Cal. 2010) (citing *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that the Food and Drug Administration (FDA) regulates a product's or manufacturer's compliance with GRAS designation, that the CLL in Bang is GRAS compliant, and that there is no FDA requirement that VPX list the amount of CLL containing in Bang on the Bang can.

Defendants' eight affirmative defense against Monster's claim for False Advertising is Lack of Personal Jurisdiction as to Mr. Owoc. The elements to this affirmative defense include: "A court may exercise general jurisdiction over a defendant whose contacts with the forum are so 'continuous and systematic' that personal jurisdiction is proper in any action." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1) the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Black v. The Ritz-Carlton Hotel Co., LLC,* 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing Mr. Owoc has continuously resided in Florida for forty years, he does not own any property in California, and he does not regularly travel to California.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**B. Claim 2 - Intentional Interference with Contractual Relations**

1. Monster's Claim

For Monster's third claim, stemming from its Fifth Cause of Action, Monster alleges that Defendants have intentionally interfered with contractual relations between Monster and various retailers.

The elements required to establish Monster's claim for intentional interference with contractual relations are as follows:

1. There was a contract between Monster and a third-party;
2. Defendants knew of that contract;
3. Defendants' conduct prevented performance of that contract or made performance of that contract more expensive or difficult;
4. Defendants' intended to disrupt the performance of that contract or knew that disruption of that contract was certain or substantially certain to occur;
5. Monster was harmed; and
6. Defendants' conduct was a substantial factor in cause Monster's harm.

*See* CACI 2201.

The key evidence Defendants intend to present in opposition to this claim includes: Defendants will demonstrate through witness testimony and documents that Monster has no admissible evidence that VPX intentionally disrupted Monster's contracts with third parties, or specifically that VPX placed its products in Monster's contracted for space. Defendants will also demonstrate through percipient and expert testimony of the numerous other potential causes for the misplacement of products, which were not investigated or ruled out by Monster. Defendants will also present testimony of Monster employees who will testify that they cannot identify even a single VPX employee who knew of Monster's contracts with third-party retailers and intentionally disrupted same. Defendants will also present documents and testimony establishing that VPX had authorization from retailers with respect to

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

placement of its products on shelves and/or that Monster and other beverage competitors engaged in the same or similar shelving practices as VPX. Defendants will also show through documents, and percipient and expert testimony that Monster did not sustain any damages related to any alleged interference.

2. Defendants' Affirmative Defenses[2]

Defendants' first affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Failure to Mitigate Damages. The elements to this affirmative defense include: (1) Monster failed to use reasonable efforts to mitigate its damages, and (2) the amount by which Monster's damages would have been mitigated. *See Palla v. LM Sports, Inc.*, 2019 WL 6464621, at *9 (E.D. Cal. Dec. 2, 2019) (citing MODEL CIV. JURY INSTR. 9th Cir. 5.3) ("defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence: (1) that the plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated"). Model Civ. Jury Instr. 9th Cir. 5.3. The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' second affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Waiver. The elements to this affirmative defense include: the intentional relinquishment of a known right after full knowledge of the facts, or Monster's knowledge of Defendants' alleged

[2] Although not enumerated here, Defendants expressly reserve the right to assert and do not waive other defenses identified in its Answer, (*see* ECF 123), including failure to state a claim; lack of damages; punitive / enhanced damages improper; attorneys' fees improper; lack of standing; no injunctive relief; reasonable conduct; causation; and constitutional protections. Defendants further incorporate by reference its Responses and Supplemental Responses to Plaintiffs' Interrogatories to Owoc (Set Six).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

violation without timely notification of such violation. *See G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2017 WL 220305, at *43 (E.D. Cal. Jan. 18, 2017), *on reconsideration in part* 2017 WL 698335 (E.D. Cal. Feb. 21, 2017). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' third affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Estoppel. The elements to this affirmative defense include: (1) Monster knew the facts; (2) Monster intended his conduct to be acted on (or acted in a manner such that Defendants have a right to believe Monster intended such reliance); (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Monster's conduct to their detriment. *See Buster v. Comp. Comm. of the Bd. of Directors of Mechanics Bank*, 2016 WL 6804581, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit. Defendants will also present testimony and evidence showing Monster's attempts to steal shelf space from VPX and/or interfere with VPX's contractual relationships. Specifically, VPX intends to introduce testimony from various Monster employees including Kellen Flores, James O'Brien, Chad Henry, Jeff Swift, and others regarding Monster's interference with VPX's contractual relationships and shelf space, as well as documents evidencing same. Defendant will also present evidence concerning Monster's "Truth About Bang" campaign, "Operation Eradicate Bang" campaign, f*bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and/or contractual relationships. Defendants will show through documents and testimony that Monster sent notices and other communications to retailers and distributors purporting to advise of Monster's

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

lawsuit and false or unproven claims about the Bang product. Defendants will also present documents and testimony establishing that Monster and other beverage competitors engaged in the same or similar practices as VPX with respective to the placement of its products on shelves.

Defendants' fourth affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Unclean Hands. The elements to this affirmative defense include: (1) Monster's conduct is inequitable, and (2) such conduct relates to the subject matter of its claims. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) ("To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct relates to the subject matter of the plaintiff's claims."). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit. Defendants will also present testimony and evidence showing Monster's attempts to steal shelf space from VPX and/or interfere with VPX's contractual relationships. Specifically, VPX intends to introduce testimony from various Monster employees including Kellen Flores, James O'Brien, Chad Henry, Jeff Swift, and others regarding Monster's interference with VPX's contractual relationships and shelf space, as well as documents evidencing same. Defendant will also present evidence concerning Monster's "Truth About Bang" campaign, "Operation Eradicate Bang" campaign, f*bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and/or contractual relationships. Defendants will show through documents and testimony that Monster sent notices and other communications to retailers and distributors purporting to advise of Monster's lawsuit and false or unproven claims about the Bang product. Defendants will also present documents and testimony establishing that Monster and other beverage competitors engaged in the same or similar practices as VPX with

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

respective to the placement of its products on shelves.

Defendants' fifth affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Laches. The elements to this affirmative defense include: acquiescence despite full knowledge of the facts, with Monster engaging in an unreasonable delay, with such delay prejudicing Defendants. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' sixth affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Statute of Limitations. The elements to this affirmative defense include: intentional interference claims are governed by a two year statute of limitations. *See, e.g., Almont Ambulatory Surgery Ctr., LLC v. United Health Grp., Inc.*, 2015 WL 12777091, at *17 (C.D. Cal. Feb. 12, 2015) ("Under California law, the statute of limitations for an intentional interference with contract claim is two years."). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents that Monster was are of the alleged interference actions identified in the First Amended Complaint more than two years before it filed the present action.

Defendants' seventh affirmative defense against Monster's claim for Intentional Interference with Contractual Relations is Lack of Personal Jurisdiction as to Mr. Owoc. The elements to this affirmative defense include: "A court may exercise general jurisdiction over a defendant whose contacts with the forum are so 'continuous and systematic' that personal jurisdiction is proper in any action." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1)

the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing Mr. Owoc has continuously resided in Florida for forty years, he does not own any property in California, and he does not regularly travel to California.

**C. Claim 3 – Intentional Interference with Prospective Economic Advantage**

1. <u>Monster's Claim</u>

For Monster's fifth claim, stemming from its Sixth Cause of Action, Monster alleges that Defendants have intentionally interfered with economic relationships between Monster and various retailers.

The elements required to establish Monster's claim for Intentional Interference with Economic Relations are as follows:

1. Monster and one third-party were in an economic relationship that probably would have resulted in an economic benefit to Monster;
2. Defendants knew of that relationship;
3. Defendants' attempts to secure self-space for VPX's Bang products was "wrongful";
4. By engaging in such wrongful conduct, Defendants intended to disrupt the relationship between Monster and the third-party or knew that disruption of the relationship between Monster and the third-party was certain or substantially certain to occur;

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

5. The relationship between Monster and the third-party was indeed disrupted;

6. Monster was harmed; and

7. Defendants' conduct was a substantial factor in causing Monster's harm.

*See* CACI 2202.

The key evidence Defendants intend to present in opposition to this claim includes: Defendants will demonstrate through witness testimony and documents that Monster has no admissible evidence that VPX intentionally disrupted Monster's relationships with third parties, or specifically that VPX placed its products in Monster's space. Defendants will also demonstrate through percipient and expert testimony of the numerous other potential causes for the misplacement of products, which were not investigated or ruled out by Monster. Defendants will also present testimony of Monster employees who will testify that they cannot identify even a single VPX employee who interfered with any prospective economic relationships. Defendants will also present documents and testimony establishing that VPX had authorization from retailers with respect to placement of its products on shelves and/or that Monster and other beverage competitors engaged in the same or similar shelving practices as VPX. Defendants will also show through documents, including financial records, and percipient and expert testimony that Monster did not sustain any damages related to any alleged interference.

///

///

///

///

///

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

2. Defendants' Affirmative Defenses[3]

Defendants' first affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Failure to Mitigate Damages. The elements to this affirmative defense include: (1) Monster failed to use reasonable efforts to mitigate its damages, and (2) the amount by which Monster's damages would have been mitigated. *See Palla v. LM Sports, Inc.*, 2019 WL 6464621, at *9 (E.D. Cal. Dec. 2, 2019) (citing MODEL CIV. JURY INSTR. 9th Cir. 5.3) ("defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence: (1) that the plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated"). Model Civ. Jury Instr. 9th Cir. 5.3. The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' second affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Waiver. The elements to this affirmative defense include: the intentional relinquishment of a known right after full knowledge of the facts, or Monster's knowledge of Defendants' alleged violation without timely notification of such violation. *See G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2017 WL 220305, at *43 (E.D. Cal. Jan. 18, 2017), *on reconsideration in part* 2017 WL 698335 (E.D. Cal. Feb. 21, 2017). The key evidence Defendants intend to present in support of this affirmative defense

[3] Although not enumerated here, Defendants expressly reserve the right to assert and do not waive other defenses identified in its Answer, (*see* ECF 123), including failure to state a claim; lack of damages; punitive / enhanced damages improper; attorneys' fees improper; lack of standing; no injunctive relief; reasonable conduct; causation; and constitutional protections. Defendants further incorporate by reference its Responses and Supplemental Responses to Plaintiffs' Interrogatories to Owoc (Set Six).

includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' third affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Estoppel. The elements to this affirmative defense include: (1) Monster knew the facts; (2) Monster intended his conduct to be acted on (or acted in a manner such that Defendants have a right to believe Monster intended such reliance); (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Monster's conduct to their detriment. *See Buster v. Comp. Comm. of the Bd. of Directors of Mechanics Bank*, 2016 WL 6804581, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit. Defendants will also present testimony and evidence showing Monster's attempts to steal shelf space from VPX and/or interfere with VPX's relationships. Specifically, VPX intends to introduce testimony from various Monster employees including Kellen Flores, James O'Brien, Chad Henry, Jeff Swift, and others regarding Monster's interference with VPX's relationships and shelf space, as well as documents evidencing same. Defendant will also present evidence concerning Monster's "Truth About Bang" campaign, "Operation Eradicate Bang" campaign, f*Bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and/or relationships. Defendants will show through documents and testimony that Monster sent notices and other communications to retailers and distributors purporting to advise of Monster's lawsuit and false or unproven claims about the Bang product. Defendants will also present documents and testimony establishing that Monster and other beverage competitors engaged in the same or similar practices as VPX with respective to the placement of its products on shelves.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendants' fourth affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Unclean Hands. The elements to this affirmative defense include: (1) Monster's conduct is inequitable, and (2) such conduct relates to the subject matter of its claims. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) ("To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct relates to the subject matter of the plaintiff's claims."). The key evidence Defendants intend to present in support of this affirmative defense includes: The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit. Defendants will also present testimony and evidence showing Monster's attempts to steal shelf space from VPX and/or interfere with VPX's relationships. Specifically, VPX intends to introduce testimony from various Monster employees including Kellen Flores, James O'Brien, Chad Henry, Jeff Swift, and others regarding Monster's interference with VPX's relationships and shelf space, as well as documents evidencing same. Defendant will also present evidence concerning Monster's "Truth About Bang" campaign, "Operation Eradicate Bang" campaign, f*bang campaign, and other blitzes/campaigns designed to interfere with Bang's shelf space and/or relationships. Defendants will show through documents and testimony that Monster sent notices and other communications to retailers and distributors purporting to advise of Monster's lawsuit and false or unproven claims about the Bang product. Defendants will also present documents and testimony establishing that Monster and other beverage competitors engaged in the same or similar practices as VPX with respective to the placement of its products on shelves.

Defendants' fifth affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Laches. The elements to this affirmative

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

defense include: acquiescence despite full knowledge of the facts, with Monster engaging in an unreasonable delay, with such delay prejudicing Defendants. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 954 (S.D. Cal. 2016). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing that Monster was aware of the alleged interference for years before filing suit.

Defendants' sixth affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Statute of Limitations. The elements to this affirmative defense include: interference with prospective economic relations claims are governed by a two-year statute of limitations. *See, e.g.*, *Denver Urb. Homesteading, LLC v. Dervaes Inst.*, 2015 WL 12819140, at *3 (C.D. Cal. July 14, 2015) ("two-year statute of limitations applies to . . . intentional interference with prospective economic relations"). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents that Monster was are of the alleged interference actions identified in the First Amended Complaint more than two years before it filed the present action.

Defendants' seventh affirmative defense against Monster's claim for Intentional Interference with Economic Relations is Lack of Personal Jurisdiction as to Mr. Owoc. The elements to this affirmative defense include: "A court may exercise general jurisdiction over a defendant whose contacts with the forum are so 'continuous and systematic' that personal jurisdiction is proper in any action." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1) the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the

forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing Mr. Owoc has continuously resided in Florida for forty years, he does not own any property in California, and he does not regularly travel to California.

**D. Claim 4 – Trade Secret Misappropriation**

1. Monster's Claim

For Monster's sixth claim, stemming from its Tenth and Eleventh Causes of Action, Monster alleges that Defendants misappropriated Monster's trade secrets under both state and federal law.

The elements required to establish Monster's claim for Trade Secret Misappropriation are as follows:

1. Monster owned pricing-related information;
2. This pricing-related information was a trade secret at the time of the misappropriation;
3. Defendants improperly acquired or improperly used the trade secret;
4. Monster was harmed or that Defendants were unjustly enriched; and
5. Defendants' acquisition or use of the trade secret was a substantial factor in causing Monster's harm or Defendants' unjust enrichment.

*See* CACI 4401 (elements of CUTSA claim); 3 FED. JURY PRAC. & INSTR. § 127:10 (6th ed.) (elements of DTSA claim); *Degree Mech., Inc. v. J.C. Welding, LLC*, 2019 WL 4082689, at *2 (N.D. Cal. Aug. 29, 2019) (elements of DTSA claim); *see also Vendavo, Inc. v. Pricef(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) ("elements of a trade secret misappropriation claim under the DTSA are

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

substantially similar to those under [CUTSA]”).

The key evidence Defendants intend to present in opposition to this claim includes: Defendants will show through testimony and documents that Monster has failed to sufficiently identify its alleged trade secrets. Defendants will also show through testimony of VPX employees, Monster employees, and communications with retailers that Monster failed to take any steps to maintain the secrecy of its alleged confidential information. Defendants will also show that Monster has failed to demonstrate that VPX employees obtained Monster’s trade secrets unlawfully or that VPX improperly used the trade secret information. Finally, Defendants will show through documents and testimony that Monster sustained no damages as a result of any alleged misappropriation.

2. Defendants’ Affirmative Defenses[4]

Defendants’ first affirmative defense against Monster’s claim for Trade Secret Misappropriation is Failure to Mitigate Damages. The elements to this affirmative defense include: (1) Monster failed to use reasonable efforts to mitigate its damages, and (2) the amount by which Monster’s damages would have been mitigated. *See Palla v. LM Sports, Inc.*, 2019 WL 6464621, at *9 (E.D. Cal. Dec. 2, 2019) (citing MODEL CIV. JURY INSTR. 9th Cir. 5.3) (“defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence: (1) that the plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated”). Model Civ. Jury Instr. 9th Cir. 5.3. The key evidence Defendants intend to present

[4] Although not enumerated here, Defendants expressly reserve the right to assert and do not waive other defenses identified in its Answer, (*see* ECF 123), including failure to state a claim; lack of damages; punitive / enhanced damages improper; attorneys’ fees improper; lack of standing; no injunctive relief; reasonable conduct; causation; and constitutional protections. Defendants further incorporate by reference its Responses and Supplemental Responses to Plaintiffs’ Interrogatories to Owoc (Set Six).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

in support of this affirmative defense includes: Defendants will present testimony and documents showing Monster failed to take efforts to maintain the secrecy of its alleged trade secrets.

Defendants' second affirmative defense against Monster's claim for Trade Secret Misappropriation is Waiver. The elements to this affirmative defense include: the intentional relinquishment of a known right after full knowledge of the facts, or Monster's knowledge of Defendants' alleged violation without timely notification of such violation. *See G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2017 WL 220305, at *43 (E.D. Cal. Jan. 18, 2017), *on reconsideration in part* 2017 WL 698335 (E.D. Cal. Feb. 21, 2017). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents showing Monster failed to take efforts to maintain the secrecy of its alleged trade secrets.

Defendants' third affirmative defense against Monster's claim for Trade Secret Misappropriation is Estoppel. The elements to this affirmative defense include: (1) Monster knew the facts; (2) Monster intended his conduct to be acted on (or acted in a manner such that Defendants have a right to believe Monster intended such reliance); (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Monster's conduct to their detriment. *See Buster v. Comp. Comm. of the Bd. of Directors of Mechanics Bank*, 2016 WL 6804581, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present evidence and testimony that Monster accessed or tried to access Bang's pricing information and/or other trade secret or confidential/proprietary information. Such testimony will include Brittany Garrison, Chad Henry, Mario Suarez, Guillame Weaver, and Michael Trento, as well as exhibits to their depositions, among other documents.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendants' fourth affirmative defense against Monster's claim for Trade Secret Misappropriation is Unclean Hands. The elements to this affirmative defense include: (1) Monster's conduct is inequitable, and (2) such conduct relates to the subject matter of its claims. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) ("To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct relates to the subject matter of the plaintiff's claims."). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants intend to introduce testimony and evidence that Monster representatives improperly obtained VPX confidential information, without VPX's consent. Specifically, Defendants will introduce testimony of various Monster employees including Brittany Garrison, Ron Gritton, and others who admitted to obtaining VPX confidential information, along with the documents improperly obtained.

Defendants' fifth affirmative defense against Monster's claim for Trade Secret Misappropriation is Lack of Personal Jurisdiction as to Mr. Owoc. The elements to this affirmative defense include: "A court may exercise general jurisdiction over a defendant whose contacts with the forum are so 'continuous and systematic' that personal jurisdiction is proper in any action." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1) the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (citing

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing Mr. Owoc has continuously resided in Florida for forty years, he does not own any property in California, and he does not regularly travel to California.

**E. Claim 5 – Violation of Computer Fraud and Abuse Act**

1. Monster's Claim

For Monster's seventh claim, stemming from its Twelfth Cause of Action, Monster alleges that Defendants have violated the Computer Fraud and Abuse Act ("CFAA") by accessing or attempting to access certain Monster-owned computers.

The elements required to establish Monster's claim for violation of Section 1030(a)(2) of the CFAA are as follows:

1. Defendants intentionally accessed;
2. A protected computer;
3. Without Monster's authorization or exceeding Monster's authorized access;
4. Defendants obtained information from that computer; and
5. Monster experienced a loss of at least $5,000 in one year from that improper access.

*See LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

The elements required to establish Monster's claim for violation of Section 1030(a)(4) of the CFAA are as follows:

1. Defendants accessed a protected computer;
2. Defendants' access was "knowingly";
3. Defendants' access was with "intent to defraud";
4. Defendants' access was without Monster's authorization or exceeded Monster's authorized access;

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

5. Defendants obtained anything of value; and

6. Defendants' acquisition / access caused Monster to experience a loss of at least $5,000 in one year.

*See LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

The key evidence Defendants intend to present in opposition to this claim includes: Monster has failed to present any evidence of unauthorized access to its computer system. With respect to Cohen's alleged "access" to an unspecific iPhone, Monster's own expert, Melanie Redel, will testify that she is unable to rule out activity stemming from an incoming stimulus or whether it was Cohen who activated the phone at all. Moreover, Monster has no evidence of actual harm to computers, as opposed to economic harm due to the value of the data itself.

2. Defendants' Affirmative Defenses[5]

Defendants' first affirmative defense against Monster's claim for Violation of the CFAA is Failure to Mitigate Damages. The elements to this affirmative defense include: (1) Monster failed to use reasonable efforts to mitigate its damages, and (2) the amount by which Monster's damages would have been mitigated. *See Palla v. LM Sports, Inc.*, 2019 WL 6464621, at *9 (E.D. Cal. Dec. 2, 2019) (citing MODEL CIV. JURY INSTR. 9th Cir. 5.3) ("defendant arguing a plaintiff failed to mitigate damages bears the burden of proving two elements by a preponderance of the evidence: (1) that the plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated"). Model Civ. Jury Instr. 9th Cir. 5.3. The key evidence Defendants intend to present in support of

[5] Although not enumerated here, Defendants expressly reserve the right to assert and do not waive other defenses identified in its Answer, (*see* ECF 123), including failure to state a claim; lack of damages; punitive / enhanced damages improper; attorneys' fees improper; lack of standing; no injunctive relief; reasonable conduct; causation; and constitutional protections. Defendants further incorporate by reference its Responses and Supplemental Responses to Plaintiffs' Interrogatories to Owoc (Set Six).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

this affirmative defense includes: Defendants will present testimony and documents showing Monster failed to take efforts to protect its computer(s).

Defendants' second affirmative defense against Monster's claim for Violation of the CFAA is Waiver. The elements to this affirmative defense include: the intentional relinquishment of a known right after full knowledge of the facts, or Monster's knowledge of Defendants' alleged violation without timely notification of such violation. *See G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2017 WL 220305, at *43 (E.D. Cal. Jan. 18, 2017), *on reconsideration in part* 2017 WL 698335 (E.D. Cal. Feb. 21, 2017). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents showing Monster failed to take efforts to protect its computer(s).

Defendants' third affirmative defense against Monster's claim for Violation of the CFAA is Estoppel. The elements to this affirmative defense include: (1) Monster knew the facts; (2) Monster intended his conduct to be acted on (or acted in a manner such that Defendants have a right to believe Monster intended such reliance); (3) Defendants were ignorant of the true facts; and (4) Defendants relied on Monster's conduct to their detriment. *See Buster v. Comp. Comm. of the Bd. of Directors of Mechanics Bank*, 2016 WL 6804581, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents showing Monster failed to take efforts to protect its computer(s).

Defendants' fourth affirmative defense against Monster's claim for Violation of the CFAA is Lack of Personal Jurisdiction as to Mr. Owoc. The elements to this affirmative defense include: "A court may exercise general jurisdiction over a defendant whose contacts with the forum are so 'continuous and systematic' that personal jurisdiction is proper in any action." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (quoting *Burger King Corp. v.*

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "In the Ninth Circuit, a three-part test determines whether specific jurisdiction exists: (1) the non-resident defendant must purposefully direct its activities at, or consummate some transaction with, the forum state or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F. Supp. 2d 996, 1004 (C.D. Cal. 2013) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)). The key evidence Defendants intend to present in support of this affirmative defense includes: Defendants will present testimony and documents establishing Mr. Owoc has continuously resided in Florida for forty years, he does not own any property in California, and he does not regularly travel to California.

**II. EVIDENTIARY ISSUES**

The parties met and conferred regarding motions in limine and each party intends to file motions in limine to be heard at the Final Pretrial Conference on February 14, 2022. The parties also filed *Daubert* motions on December 20, 2021.

**III. ISSUES OF LAW**

VPX does not presently anticipate that any issues f law may arise at trial other than the issues raised by any motions in limine as well as issues that are not addressed in the parties' proposed jury instructions.

**IV. BIFURCATION OF ISSUES**

VPX requests bifurcation of liability and damages, and bifurcation of punitive damages from other damages issues.

Federal Rule of Civil Procedure 42(b) provides that bifurcation may be ordered "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). In analyzing whether bifurcation is appropriate, "courts typically consider factors such as convenience, prejudice to the parties,

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

simplification of discovery and conservation of resources, risk of jury confusion, and separability of the issues." *Eagle Indus. Group, Inc. v. Vogt Manufacturing Co.*, 2014 WL 12603096, at *1 (C.D. Cal. Sep. 25, 2014). The "factors of convenience, avoidance of prejudice and what will be conducive to expedition and economy are all in the alternative," and the "presence of any standard may be sufficient to sustain an order for a separate trial in the exercise of the court's discretion." *Min Productions PTE, Ltd. v. FireForge, Inc.*, 2017 WL 11635012, at *1 (C.D. Cal. Feb. 8, 2017). Courts have observed that bifurcation "may…be appropriate where the evidence offered on two different issues will be wholly distinct ... or where litigation of one issue may obviate the need to try another issue." *Id.* (citations and internal quotation marks omitted).

In analyzing whether to bifurcate trial on the issues of liability and damages, courts will be more likely to bifurcate if there is little or no overlap of issues in each phase. *See, e.g., Trimed, Inc. v. Stryker Corp.*, 2010 WL 11462840, at *4-*5 (C.D. Cal. Sep. 1, 2010); *POM Wonderful LLC v. Welch Foods, Inc.*, 2010 WL 4794235, at *4 (C.D. Cal. Nov. 18, 2010). Courts are also more likely to bifurcate if a matter involves complex issues raising the potential of jury confusion. *See id.* at *5. Bifurcating trial into liability and damages phases promotes judicial economy, as evidence regarding damages does not need to be considered unless and until the defendant is found liable. *See Trimed*, 2010 WL 11462840, at *5.

Here, Monster has filed five separate and independent causes of action against VPX, each with its own damages. It would serve judicial economy to have the jury determine liability. It is possible the jury will find for VPX on one or more of the causes of action, thereby obviating the need for prolonged damages testimony on all causes of action and avoiding jury confusion.

## V. JURY TRIAL

Monster's Second and Third Claims, for violations of the UCL and FAL respectively, are equitable in nature and so should be tried to the Court. *See*

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Nationwide Biweekly Admin., Inc. v. Super. Ct. of Alameda Cty.*, 9 Cal.5th 279, 305 (2020) ("cause of action under the UCL . . . is to be tried by the court rather than by a jury); *id.* at 327 ("no right to a jury trial under the California Constitution in a cause of action under the UCL or the FAL").

Monster's remaining claims, however, should be tried to a jury:

Monster's First Claim, for violation of the Lanham Act is appropriate to present to a jury. *See Adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F.Supp.2d 1029, 1087 (D. Or. 2008) (denying motion to strike jury demand in Lanham Act case because "any legal claim—that is, any claim for monetary damages—entitles a party to a jury trial").

Similarly, Monster's Fourth and Fifth Claims, for intentional interference with contractual relations and intentional interference with prospective economic advantage respectively, are also appropriate to present to a jury. *Cf.* CACI 2210, CACI 2202 (providing jury instructions for interference claims); *Openwave Sys., Inc. v. Myriad France SAS*, 2011 WL 2580991, at *7 (N.D. Cal. June 29, 2011) (advising "intentional interference claim will be resolved in a jury trial if summary judgment is avoided").

Monster's Sixth Claim, for trade secret misappropriation, is similarly appropriate to present to a jury. *Cf.* CACI 4400, 3 FED. JURY PRAC. & INSTR. § 127:10 (providing jury instructions for misappropriation claims).

Finally, Monster's Seventh Claim, for violation of the Computer Fraud and Abuse Act should be presented to a jury. *See, e.g., Oracle USA, Inc. v. Rimini Street, Inc.*, 209 F.Supp.3d 1200, 1206 (D. Nev. 2016), vacated in part by 922 F.3d 879 (observing jury trial for CFAA claim); *Calendar Research, LLC v. StubHub, Inc.*, 2020 WL 4390391, at *27 (C.D. Cal. May 13, 2020) (denying summary judgment on CFAA claim and setting same for jury trial).

Monster demanded a jury trial in both its Original Complaint, (*see* ECF 1 at 32:1-2), as well as in its First Amended Complaint. *See* ECF 61 at 48:8-9.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Defendants also demanded a jury trial in their Original Answer, (*see* ECF 58 at 7:1-5), as well as in their Answer to the FAC. *See* ECF 123 at 27:23-25.

**VI. ATTORNEY'S FEES**

VPX reserves the right to seek attorney's fees under the Lanham Act should VPX prevail and the Court determine this case presents an "exceptional case[]." 15 U.S.C. § 1117(a).

**VII. ABANDONED ISSUES**

Monster's Fourth Cause of Action, for trade libel, Seventh Cause of Action, for conversion, Eighth Cause of Action, for larceny, and Ninth Cause of Action, for false patent marking, have been dismissed and so are considered abandoned. *Compare* ECF 61 (Monster's FAC) *with* ECF 95 (Court Order on MTD).

Defendants acknowledge abandoning the following affirmative defenses that were originally pleaded in their Answer to the FAC (*see* ECF 123): Failure to Join an Indispensable or Necessary Party; Apportionment of Fault; Equitable Indemnity; and Reservation of Defenses.

Dated: January 24, 2022

GORDON REES SCULLY MANSUKHANI LLP

By: */s/ Timothy K. Branson*
M. D. Scully
Timothy K Branson
Peter G. Siachos
Sara Anderson Frey
*Attorneys for Defendants*
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports; JOHN H. OWOC, a.k.a. JACK OWOC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101