**FILED**
CLERK, U.S. DISTRICT COURT

09/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ NP _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, | Case No. EDCV 18-1882-JGB(SHKx) |
| Plaintiff, | |
| vs. | JURY INSTRUCTIONS |
| VITAL PHARMACEUTICALS, INC, ET AL. | |
| Defendant | |

JURY INSTRUCTIONS - 1

## <u>JURY INSTRUCTION NO. 1</u>

### <u>Duty of Jury</u>

Members of the jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

## JURY INSTRUCTION NO. 2

### Claims and Defenses

As stated in the beginning of the trial, the following is a brief summary of the positions of the parties:

This lawsuit is between two companies that manufacture and sell energy drinks. The Plaintiff is Monster Energy Company. Defendants are Vital Pharmaceuticals, Inc., known as "VPX," and its founder and CEO, John H. "Jack" Owoc. VPX and Mr. Owoc manufacture and sell an energy drink called BANG. In this lawsuit, Monster alleges that VPX and Mr. Owoc engaged in three kinds of misconduct, which VPX and Mr. Owoc deny.

First, Monster claims that Defendants falsely advertise their BANG energy drink. Specifically, Monster claims that Defendants promote BANG as containing an ingredient that Defendants refer to as "Super Creatine" and as providing the health benefits of creatine, but the alleged "Super Creatine" in BANG is not actually creatine and does not provide any health benefits. VPX and Owoc deny they have falsely advertised BANG or its ingredients, assert that the claimed ingredients are not material to consumers, and deny that Monster has suffered any damages.

Second, Monster claims that VPX and Mr. Owoc have unlawfully interfered with Monster's shelf space placement in stores across the country.  Monster claims that it has contracts to place its beverages on the best shelves in stores nationwide.  Monster alleges that Defendants interfered with these contracts by removing Monster's products from shelves and replacing them with BANG.  VPX responds that it has never interfered with Monster's shelf space placement and that VPX only places its products on shelves authorized by stores and with permission of stores.

Third, Monster claims that Defendants misappropriated Monster's trade secrets by recruiting Monster's employees to join VPX and to bring with them Monster's confidential and valuable business information.  VPX denies that it asked these former Monster employees to share Monster's confidential business information.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                          Jury Instructions

## JURY INSTRUCTION NO. 3

### Burden of Proof – Preponderance of the Evidence

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## JURY INSTRUCTION NO. 4

### Burden of Proof – Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.

This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 5</u>

### <u>Two or More Parties – Different Legal Rights</u>

You should decide the case as to each plaintiff and defendant separately.

Unless otherwise stated, the instructions apply to all parties.

# JURY INSTRUCTION NO. 6

## What is Evidence

The evidence you are to consider in deciding what facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I may instruct you to accept as proved.

## JURY INSTRUCTION NO. 7

### What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that was excluded or stricken by the Court, or that you were instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits were received only for a limited purpose; when you were given a limiting instruction, you must follow it.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

(4)     Anything you may have seen or heard when the court was not in

session is not evidence.  You are to decide the case solely on the evidence received

at the trial.

## <u>JURY INSTRUCTION NO. 8</u>

### <u>Stricken Testimony</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Throughout this trial, certain testimony was stricken by the Court.  Testimony that was stricken, or that you were instructed by the Court to disregard, is not evidence and must not be considered by you during your deliberations.

## JURY INSTRUCTION NO. 9

### Direct and Circumstantial Evidence

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## <u>JURY INSTRUCTION NO. 10</u>

### <u>Ruling on Objections</u>

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## <u>JURY INSTRUCTION NO. 11</u>

### <u>Liability of Corporations—Scope of Authority Not In Issue</u>

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## JURY INSTRUCTION NO. 12

### Agency

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal.

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 13</u>

### <u>Individual Liability for Corporate Actions</u>

A corporate officer or director is not personally liable for the wrongful acts of a corporation unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.

Separately, a corporate officer or director cannot be held vicariously liable for the corporation's torts in which they do not participate.

## JURY INSTRUCTION NO. 14

## Vicarious Liability

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

## <u>JURY INSTRUCTION NO. 15</u>

<u>Credibility of Witnesses</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what

they remember.  Also, two people may see the same event but remember it

differently.  You may consider these differences, but do not decide that testimony

is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully

about something important, you may choose not to believe anything that witness

said.  On the other hand, if you think the witness testified untruthfully about some

things but told the truth about others, you may accept the part you think is true and

ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the

number of witnesses who testify.  What is important is how believable the witnesses

were, and how much weight you think their testimony deserves.

# <u>JURY INSTRUCTION NO. 16</u>

## <u>Expert Opinion</u>

You have heard testimony from numerous experts, including Dr. Charles Cowan, Dr. Darren Candow, Dr. Gregory Carpenter, Dr. Richard Kreider, Dr. Keykavous Parang, Dr. Larry Chiagouris, Drew Voth, and Christian Tregillis. These witnesses will testify to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of the witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 17</u>

### <u>Charts and Summaries</u>

Certain charts and summaries <u>not admitted</u> into evidence may have been

shown to you in order to help explain the contents of books, records, documents, or

other evidence in the case.

Certain charts and summaries <u>may have been admitted</u> into evidence to

illustrate information brought in during the trial.

Charts and summaries are only as good as the underlying evidence that

supports them.  You should, therefore, give them only such weight as you think the

underlying evidence deserves.

## JURY INSTRUCTION NO. 18

### Evidence in Electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any

nonjuror other than to describe the technical problem or to seek information about

operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable

jurors to view the exhibits received in evidence in this case.  You may not use the

computer for any other purpose.  At my direction, technicians have taken steps to

ensure that the computer does not permit access to the Internet or to any

"outside" website, database, directory, game, or other material.  Do not attempt to

alter the computer to obtain access to such materials.  If you discover that the

computer provides or allows access to such materials, you must inform the court

immediately and refrain from viewing such materials.  Do not remove the computer

or any electronic data from the jury room, and do not copy any such data.

# JURY INSTRUCTION NO. 19

## Publicity During Trial

If there is any news media account or commentary about the case or anything

to do with it, you must ignore it.  You must not read, watch, or listen to any news

media account or commentary about the case or anything to do with it.  The case

must be decide by you solely and exclusively on the evidence that will be received

in the case and on my instructions as to the law that applies.  If any juror is exposed

to any outside information, please notify me immediately.

## JURY INSTRUCTION NO. 20

### Consideration of Evidence – Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting

dictionaries, searching the Internet, or using other reference materials; and do not

make any investigation or in any other way try to learn about the case on your own.

Do not visit or view any place discussed in this case, and do not use Internet

programs or other devices to search for or view any place discussed during the trial.

Also, do not do any research about this case, the law, or the people involved—

including the parties, the witnesses or the lawyers—until you have been excused as

jurors.  If you happen to read or hear anything touching on this case in the media,

turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on

evidence that has been presented here in court.  Witnesses here in court take an

oath to tell the truth, and the accuracy of their testimony is tested through the trial

process.  If you do any research or investigation outside the courtroom, or gain any

information through improper communications, then your verdict may be

influenced by inaccurate, incomplete or misleading information that has not been

tested by the trial process.  Each of the parties is entitled to a fair trial by an

impartial jury, and if you decide the case based on information not presented in

court, you will have denied the parties a fair trial.  Remember, you have taken an

oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

proceedings, and a mistrial could result that would require the entire trial process

to start over.  If any juror is exposed to any outside information, please notify the

court immediately.

## JURY INSTRUCTION NO. 21

### No Transcript Available to Jury and Taking Notes

During deliberations, you will not have a transcript of the trial testimony.

Some of you may take notes during the trial.  Whether or not you take notes, you should rely on your own memory of what is said.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

## **JURY INSTRUCTION NO. 22**

### Bench Conferences and Recesses

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence was to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## JURY INSTRUCTION NO. 23

## Stipulations of Fact

The parties have agreed to certain facts. You must treat these facts as having

been proved:

1.  Monster is a corporation with its principal place of business in Corona,

    California.

2.  VPX is a corporation with its principal place of business in Weston,

    Florida.

3.  John H. Owoc is the Chief Executive Officer, founder, and sole owner of

    VPX.

4.  VPX manufactures energy drinks called "BANG."

5.  VPX sells energy drinks called "BANG" throughout the United States.

6.  A VPX document states that there is 25 milligrams of CLL per 16 ounces

    of BANG.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 24

### Duty of the Jury

Members of the jury, you have now heard all the evidence and the closing arguments of the attorneys. It is my duty to instruct you on the law that applies to this case. You must follow these instructions as well as those I previously gave you. You will have a copy of my instructions with you when you go to the jury room to deliberate.

You must decide what the facts are. You must consider all the evidence and then decide what you think happened. You must decide the facts based on the evidence admitted in this trial.

Do not allow anything that happens outside this courtroom to affect your decision. Do not talk about this case or the people involved in it with anyone, including family and persons living in your household, friends and coworkers, spiritual leaders, advisors, or therapists. Do not do any research on your own or as a group. Do not use dictionaries or other reference materials.

These prohibitions on communications and research extend to all forms of electronic communications. Do not use any electronic devices or media, such as a cell phone or smart phone, PDA, computer, tablet device, the Internet, any Internet service, any text or instant-messaging service, any Internet chat room,

blog, or website, including social networking websites or online diaries, to send or receive any information to or from anyone about this case or your experience as a juror until after you have been discharged from your jury duty.

Do not investigate the case. Do not contact anyone to assist you, such as a family lawyer. Do not read, listen to, or watch any news accounts of this trial. You must not let bias, sympathy, prejudice, or public opinion influence your decision. If you violate any of these prohibitions on communications and research, including prohibitions on electronic communications and research, you may be held in contempt of court or face other sanctions. That means that you may have to serve time in jail, pay a fine, or face other punishment for that violation.

I will now tell you the law that you must follow to reach your verdict. You must follow the law exactly as I give it to you, even if you disagree with it. If the attorneys have said anything different about what the law means, you must follow what I say. In reaching your verdict, do not guess what I think your verdict should be from something I may have said or done.

Pay careful attention to all the instructions that I give you. All the instructions are important because together they state the law that you will use in this case. You must consider all of the instructions together.

After you have decided what the facts are, you may find that some

instructions do not apply. In that case, follow the instructions that do apply and use

them together with the facts to reach your verdict.

If I repeat any ideas or rules of law during my instructions, that does not

mean that these ideas or rules are more important than the others. In addition, the

order in which the instructions are given does not make any difference.

## JURY INSTRUCTION NO. 25

## False Advertising—Lanham Act—Elements

Monster claims that VPX and Mr. Owoc are liable for false advertising under the Lanham Act. To succeed on this claim, Monster must prove each of the following by a preponderance of the evidence:

1. VPX and/or Mr. Owoc made one or more false or misleading statements of fact about BANG, the ingredients in BANG, Monster's products, or the ingredients in Monster's products;

2. The false or misleading statement(s) was made in a commercial advertisement or promotion;

3. The false or misleading statement(s) deceived or had the tendency to deceive a substantial segment of its audience;

4. The deception was material, in that it is likely to influence the purchasing decision;

5. VPX and/or Mr. Owoc caused the false or misleading statement(s) to enter interstate commerce; and

6. Monster was or is likely to be injured as a result of the false or misleading statement(s).

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

If you find that Monster has proved each of these elements, then you must

find for Monster. If, on the other hand, you find that Monster has failed to prove

any one of these elements, you must find for VPX and/or Mr. Owoc.

## JURY INSTRUCTION NO. 26

### False Advertising—Lanham Act—Element One—Proof

The Lanham Act is primarily intended to protect a plaintiff's commercial interests from being harmed by unfair competition created by a competitor who uses false or misleading advertising to promote its products.

Monster may prove a statement false or misleading in any one of three ways:

1. By showing that the statement is literally false on its face. A statement is literally false on its face when it explicitly states something untrue.

2. By showing that the statement is literally false by necessary implication. A statement is literally false by necessary implication when it does not explicitly state something that is untrue, but considering the advertisement in its entirety, the only reasonable interpretation of the statement is that it is untrue. If the statement is susceptible to more than one reasonable interpretation, the statement cannot be literally false by necessary implication.

3. By showing that a statement is misleading. A statement is misleading if it is literally true but likely to mislead, confuse, or deceive consumers. Where a statement is not literally false and is only misleading in context, however, the evidence required is higher, and proof that the advertising

actually conveyed the implied message and thereby deceived a significant

portion of the recipients becomes critical.

## <u>JURY INSTRUCTION NO. 27</u>

<u>False Advertising—Lanham Act—Element One—Statements About Ingredients</u>

If VPX and/or Mr. Owoc made a statement that an ingredient in BANG
provides a certain benefit, but you find that the ingredient does not provide the
stated benefit, you must find that the statement is false and misleading. Any such
finding only satisfies Element One (1) of Instruction No. 24, titled "False
Advertising—Lanham Act—Elements."

## <u>JURY INSTRUCTION NO. 28</u>

### <u>False Advertising—Lanham Act—Element One—Puffery</u>

Certain advertising claims are considered puffery and not statements of fact.

Puffery consists of claims that are highly vague or subjective, or exaggerated

advertising, blustering and boasting upon which no reasonable buyer would rely.

Puffery does not constitute a false statement of fact. If you find that a claim is

puffery, then that claim does not constitute false advertising.

## JURY INSTRUCTION NO. 29

### False Advertising—Lanham Act—Element One—Statements About Tests and Studies

If VPX and/or Mr. Owoc made a statement that BANG or an ingredient in BANG is supported by tests, studies, clinical trials, or other scientific data, and Monster established these tests, studies, clinical trials, or other scientific data were not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made or the statement is otherwise unsubstantiated, you must find that the statement is literally false.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 30</u>

<u>False Advertising—Lanham Act—Element One—Statements on Product</u>

<u>Packaging</u>

In determining falsity, statements must always be analyzed in their full

context. An accurate ingredient label on product packaging does not cure false or

misleading statements made about a product or its ingredients.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 31</u>

### <u>False Advertising—Lanham Act—Element Two</u>

To establish that a false or misleading statement was made in commercial advertising or promotion, Monster must prove that:

1. VPX and/or Mr. Owoc are in competition with Monster; and

2. VPX and/or Mr. Owoc engaged in commercial speech for the purpose of influencing customers to buy their products.

The statement need not be made in a traditional advertising campaign and may consist instead of less formal types of advertising and promotion, such as in social media posts and blog posts. And although advertising is generally understood to consist of widespread communication through print or broadcast media, "promotion" may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to retailers and distributers.

In order to constitute a promotion, the statement must be sufficiently disseminated to the relevant purchasing public in that industry. The statement by VPX and/or Mr. Owoc must be part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination within the relevant industry. Not all presentations to retailers and distributers constitute advertising or promotion.

## JURY INSTRUCTION NO. 32

### False Advertising—Lanham Act—Element Three

If Monster proves that VPX and/or Mr. Owoc made a statement that is literally false on its face or that is literally false by necessary implication, you may presume that consumers were deceived or had a tendency to be deceived by VPX's and/or Mr. Owoc's false or misleading statement.

If Monster proves that VPX and/or Mr. Owoc intended to deceive consumers, you may presume that consumers were deceived or had a tendency to be deceived by VPX's and/or Mr. Owoc's false or misleading statement.

VPX and/or Mr. Owoc may overcome these presumptions by proving that consumers were not deceived.

If you find that VPX and/or Mr. Owoc did not make a statement that is literally false and that VPX and/or Mr. Owoc did not intend to deceive consumers, Monster must prove by extrinsic evidence that the false or misleading statement deceived or had a tendency to deceive a substantial segment of consumers. Evidence of deception can include consumer surveys and market research.

## JURY INSTRUCTION NO. 33

### False Advertising—Lanham Act—Element Four

A false or misleading statement is material if:

1. The statement misrepresented an inherent quality or characteristic of the product about which the statement was made; or

2. The statement is likely to influence consumer purchasing decisions. The alleged false or misleading statement(s) in the advertisement, not the advertisement as a whole, is likely to influence purchasing decisions.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                Jury Instructions

## <u>JURY INSTRUCTION NO. 34</u>

### <u>False Advertising—Lanham Act—Element Six</u>

The sixth element Monster must prove addresses injury by the diversion of
its sales, or by the lessening of the goodwill that its products enjoy with the buying
public.

Monster may prove this element by showing either (a) that it sustained
actual injury as a result of the challenged advertising statement(s), or (b) that it is
likely to be injured as a result of the challenged advertising statement(s).

## JURY INSTRUCTION NO. 35

### Damages

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Monster on any of its claims, you must determine Monster's damages. Damages means the amount of money that will reasonably and fairly compensate Monster for any injury you find was caused by VPX and/or Mr. Owoc. Monster has the burden of proving damages by a preponderance of the evidence.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                                  Jury Instructions

## **JURY INSTRUCTION NO. 36**

### False Advertising—Lanham Act—Damages

If you find that Monster has not proven by a preponderance of the evidence that it sustained actual injury or that it is likely to be injured as a result of the challenged advertising statements made by VPX and/or Mr. Owoc, you should not award any damages.

If you find that VPX and/or Mr. Owoc are liable for false advertising, you must determine Monster's damages.

Under the Lanham Act, Monster may recover the following damages:

1. Monster's actual damages resulting from VPX and/or Mr. Owoc's false advertising.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                        Jury Instructions

## <u>JURY INSTRUCTION NO. 37</u>

### <u>False Advertising—Lanham Act—Actual Damages</u>

If you find that VPX and/or Mr. Owoc are liable for false advertising under the Lanham Act, Monster is entitled to actual damages that it proves by a preponderance of the evidence. Monster's actual damages are the amount of money that will compensate Monster for harm caused by VPX's and/or Mr. Owoc's false advertising, including Monster's lost profits, which is the profits Monster would have earned if not for VPX's and/or Mr. Owoc's false advertising.

Profit is determined by deducting all expenses from gross revenue. Expenses are the operating and production costs incurred in producing the gross revenue.

## JURY INSTRUCTION NO. 38

### False Advertising—Lanham Act—Willfulness

If you find that VPX and/or Mr. Owoc engaged in false advertising, you must decide if Monster proved by a preponderance of the evidence that VPX and/or Mr. Owoc acted willfully.

VPX and/or Mr. Owoc acted willfully if they knew that their advertising was false or misleading or if they acted with indifference to whether their advertising was false or misleading.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 39

### Intentional Interference with Contractual Relations—Elements

Monster claims that VPX and Mr. Owoc intentionally interfered with contracts between Monster and third parties. To establish this claim, Monster must prove each of the following by a preponderance of the evidence:

1. There was a contract between Monster and a third party;

2. VPX and/or Mr. Owoc knew of the contract;

3. VPX's and/or Mr. Owoc's conduct prevented performance of the contract or made performance more expensive or difficult;

4. VPX and/or Mr. Owoc intended to disrupt performance of the contract or knew that disruption of performance was certain or substantially certain to occur;

5. Monster was harmed; and

6. VPX's and/or Mr. Owoc's conduct was a substantial factor in causing Monster's harm.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 40

### Contract Formation—Essential Factual Elements

Monster claims that it entered into a contract with Circle K, AM PM, and Wal-Mart.  To prove that a contract was created, Monster must prove all of the following:

1.  That the contract terms were clear enough that the parties could understand what each was required to do;

2.  That the parties agreed to give each other something of value [a promise to do something or not to do something may have value];

3.  That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If Monster did not prove all of the above, then a contact was not created.

## **JURY INSTRUCTION NO. 41**

### Affirmative Defense: Privilege to Protect Own Economic Interest

VPX and Mr. Owoc claim that there was no intentional interference with contractual relations because they acted only to protect their legitimate economic interests. To succeed, VPX and/or Mr. Owoc must prove all of the following:

1. That VPX and/or Mr. Owoc had a legitimate economic interest in VPX's own claimed contractual relations with Circle K, Wal-Mart, and AM PM;

2. That VPX and/or Mr. Owoc acted only to protect their own economic interest;

3. That VPX and/or Mr. Owoc acted reasonably and in good faith to protect it; and

4. That VPX and/or Mr. Owoc used appropriate means to protect it.

## JURY INSTRUCTION NO. 42

### Intentional Interference—Damages

If you find for Monster on its claim for intentional interference with contractual relations, you must determine Monster's damages. You should award Monster damages in an amount that will reasonably compensate Monster for all loss or harm suffered by Monster that was caused by VPX's and/or Mr. Owoc's interference.

The amount of your award should reflect the financial loss of the benefits of the contract that was interfered with.

To recover damages for lost profits, Monster must prove it is reasonably certain it would have earned the profits but for VPX's and/or Mr. Owoc's interference.

Damages need not be exact. A reasonable approximation based on the available evidence is sufficient.

## JURY INSTRUCTION NO. 43

### Intentional Interference—Punitive Damages

If you find for Monster on its intentional interference with contract claim, you must decide whether VPX's and/or Mr. Owoc's conduct justifies an award of punitive damages.

The purposes of punitive damages are to punish VPX and/or Mr. Owoc for conduct that harmed Monster and to deter similar acts in the future.  The amount, if any, of punitive damages will be an issue decided later.

Monster has the burden of proving by clear and convincing evidence that punitive damages should be awarded.  Punitive damages may be awarded if you find that VPX and/or Mr. Owoc's conduct that harmed Monster was malicious, oppressive, fraudulent, or in reckless disregard of Monster's rights.

Conduct was malicious if it was accompanied by ill will, or spite, or if it is for the purpose of injuring Monster.

Conduct was oppressive if it injured, damaged, or otherwise violated Monster's rights with unnecessary harshness or severity.

Conduct was fraudulent if VPX and/or Mr. Owoc intentionally misrepresented, deceived, or concealed a material fact with the intention to deprive Monster of property or legal rights or otherwise cause injury.

Conduct was in reckless disregard of Monster's rights if it showed a complete indifference to Monster's rights, or if VPX and/or Mr. Owoc acted despite a perceived risk that their actions would violate Monster's rights, or if VPX and/or Mr. Owoc were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 44

## Trade Secret Misappropriation—Intro

Monster claims that it is the owner of confidential pricing, marketing,

strategy, financial, and/or other competitively sensitive information. It claims that

this information is a trade secret and that VPX misappropriated it.

"Misappropriation" means the improper acquisition, use, or disclosure of the

trade secret. Monster also claims that VPX's misappropriation caused it harm, or

caused VPX to be unjustly enriched.

VPX denies that Monster had any protectable trade secrets and denies that it

misappropriated any such trade secrets, denies that any such misappropriation

caused Monster harm, and denies that any such misappropriation resulted in VPX

being unjustly enriched.

## JURY INSTRUCTION NO. 45

### Trade Secret Misappropriation—Elements

Monster claims that VPX violated the Defend Trade Secrets Act and the California Uniform Trade Secrets Act by misappropriating Monster's trade secrets. To succeed on these claims, Monster must prove each of the following by a preponderance of the evidence:

1.  Monster owned confidential pricing, marketing, strategy, financial, and/or other competitively sensitive information;

2.  Monster's confidential information was a trade secret at the time of the misappropriation;

3.  VPX improperly acquired, used, or disclosed Monster's confidential information;

4.  Monster was harmed or VPX was unjustly enriched; and

5.  VPX's acquisition, use, or disclosure was a substantial factor in causing Monster to be harmed or causing VPX to be unjustly enriched.

Additionally, to prove its Defend Trade Secrets Act claim, Monster must prove its confidential information relates to products or services used in, or intended for use in, interstate or foreign commerce.

## JURY INSTRUCTION NO. 46

### Trade Secret Misappropriation—Element Two—Trade Secret

To prove that the confidential pricing, marketing, strategy, financial, and/or
other competitively sensitive information was a trade secret, Monster must prove
the following:

1.  The confidential information was secret;

2.  The confidential information had actual or potential independent
    economic value because it was secret; and

3.  Monster made reasonable efforts to keep the confidential information
    secret.

## JURY INSTRUCTION NO. 47

### Trade Secret Misappropriation—Element Two—Independent Economic Value

Monster's confidential pricing, marketing, strategy, financial, and/or other competitively sensitive information has independent economic value if it gives Monster an actual or potential business advantage over others who do not know the information and who could obtain economic value from it.

To determine whether the confidential information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which Monster obtained or could obtain economic value from the confidential information by keeping it secret;

2. The extent to which others could obtain economic value from the confidential information if it were not secret;

3. The amount of time, money, or labor that Monster expended in developing the confidential information; and

4. The amount of time, money, or labor that was or could be saved by a competitor who used the confidential information.

The presence or absence of any one or more of these factors is not determinative.

# JURY INSTRUCTION NO. 48

## Trade Secret Misappropriation—Element Two—Secrecy Requirement

The secrecy required to prove that something is a trade secret does not have
to be absolute in the sense that no one else in the world possesses the information.
It may be disclosed to employees involved in Monster's use of the trade secret as
long as they are instructed to keep the information secret. It may also be disclosed
to nonemployees if they are obligated to keep the information secret. However, it
must not have been generally known to the public or to people who could obtain
value from knowing it.

## JURY INSTRUCTION NO. 49

### Trade Secret Misappropriation—Element Two—Reasonable Efforts to Protect Secrecy

To establish that the confidential pricing, marketing, strategy, financial, and/or other competitively sensitive information constitutes trade secrets, Monster must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Monster, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Monster claims to be a trade secret.

In determining whether or not Monster made reasonable efforts to keep its confidential information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1. Whether documents or computer files containing the confidential information were marked with confidentiality warnings;

2. Whether Monster instructed its employees to treat the confidential information as confidential;

3. Whether Monster restricted access to the confidential information to persons who had a business reason to know it;

4.  Whether Monster kept the confidential information in a restricted or

    secured area;

5.  Whether Monster required employees or others with access to the

    confidential information to sign confidentiality or nondisclosure

    agreements;

6.  Whether Monster took any action to protect the specific confidential

    information, or whether it relied on general measures taken to protect its

    business information or assets;

7.  The extent to which any general measures taken by Monster would

    prevent the unauthorized disclosure of the confidential information; or

8.  Whether there were other reasonable measures available to Monster that

    it did not take.

The presence or absence of any one or more of these factors is not

necessarily determinative.

## **JURY INSTRUCTION NO. 50**

### Trade Secret Misappropriation—Element Three—Misappropriation by Acquisition

VPX misappropriated Monster's trade secrets by acquisition if VPX

acquired the trade secrets and knew or had reason to know that it used improper

means to acquire them.

## <u>JURY INSTRUCTION NO. 51</u>

<u>Trade Secret Misappropriation—Element Three—Misappropriation by Disclosure</u>

Alternatively or in addition, VPX misappropriated Monster's trade secret by disclosure if it:

1.  Disclosed it without Monster's consent; and

2.  Did any of the following:

    a.  Acquired knowledge of the trade secret by improper means;

    b.  At the time of disclosure, knew or had reason to know that its knowledge of Monster's trade secrets came from or through current or former Monster employees, and that those employees had previously acquired the trade secrets by improper means; or

    c.  At the time of disclosure, knew or had reason to know that its knowledge of Monster's trade secrets came from or through current or former Monster employees, and that those employees had a duty to Monster to keep the information secret.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

# JURY INSTRUCTION NO. 52

## Trade Secret Misappropriation—Element Three—Misappropriation by Use

Alternatively or in addition, VPX misappropriated Monster's trade secrets by use if it:

1. Used it without Monster's consent; and

2. Did any of the following:

    a. Acquired knowledge of the trade secrets by improper means; or

    b. At the time of use, knew or had reason to know that its knowledge of Monster's trade secrets came from or through current or former Monster employees, and that those employees had previously acquired the trade secrets by improper means; or

    c. At the time of use, knew or had reason to know that its knowledge of Monster's trade secrets came from or through current or former Monster employees, and that those employees had a duty to limit use of information.

## JURY INSTRUCTION NO. 53

### Trade Secret Misappropriation—Element Three—Improper Means

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, wiretapping, or electronic eavesdropping.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1. Independent efforts to invent or discover the information;

2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3. Obtaining the information as a result of a license agreement with the owner of the information;

4. Observing the information in public use or on public display; or

5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## <u>JURY INSTRUCTION NO. 54</u>

<u>Trade Secret Misappropriation—Information Was Readily Ascertainable by Proper</u>

<u>Means</u>

VPX did not misappropriate Monster's trade secret if VPX proves that the

asserted trade secret was readily ascertainable by proper means at the time of the

alleged acquisition or use.

There is no fixed standard for determining what is "readily ascertainable by

proper means." In general, information is readily ascertainable if it can be obtained,

discovered, developed, or compiled without significant difficulty, effort, or

expense. For example, information is readily ascertainable if it is available in trade

journals, reference books, or published materials. On the other hand, the more

difficult information is to obtain, and the more time and resources that must be

expended ingathering it, the less likely it is that the information is readily

ascertainable by proper means.

## **JURY INSTRUCTION NO. 55**

### Trade Secret Misappropriation—Damages

If Monster proves that VPX misappropriated Monster's trade secrets, then

Monster is entitled to recover damages if the misappropriation (1) caused Monster

to suffer an actual loss or (2) caused VPX to be unjustly enriched.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                   Jury Instructions

## **JURY INSTRUCTION NO. 56**

### Trade Secret Misappropriation—Unjust Enrichment

VPX was unjustly enriched if its misappropriation of Monster's trade secrets caused VPX to receive a benefit that it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of VPX's benefit that would not have been achieved except for its misappropriation. Then subtract from that amount the reasonable expenses, if any, that VPX proved by a preponderance of the evidence.

In calculating the amount of unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Monster's actual loss.

## JURY INSTRUCTION NO. 57

### Trade Secret Misappropriation—Exemplary Damages

If you decide that VPX's misappropriation of trade secrets caused Monster's harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Monster and to discourage similar conduct in the future.

In order to recover punitive damages, Monster must prove by clear and convincing evidence that VPX acted willfully and maliciously. You must determine whether VPX acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate that amount later.

"Willful" means that VPX acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances and was not undertaken in good faith.

"Malicious" means that VPX acted with an intent to cause injury, or that its conduct was despicable and done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. VPX acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

## JURY INSTRUCTION NO. 58

### Computer Fraud and Abuse Act—Elements

Monster claims that VPX violated the Computer Fraud and Abuse Act. To succeed on this claim under Section 1030(a)(2), Monster must prove all of the following by a preponderance of the evidence:

1.  VPX intentionally accessed a computer;

2.  The computer was used in or affected interstate or foreign commerce or communication;

3.  VPX either did not have authorization to access the computer, or exceeded its authorized access;

4.  VPX obtained information from the computer; and

5.  Monster sustained $5,000 or more in losses in a one-year period as a result of VPX's unauthorized access.

A "computer" includes any "high speed data processing device performing logical, arithmetic, or storage functions," including "any data storage facility or communications facility directly related to or operating in conjunction with such device." Under this definition, USB drives, smartphones, and online file storage services like Microsoft SharePoint, Google Drive, and Apple iCloud qualify as computers.

A "loss" includes the value of the time and money that Monster spent to
investigate the misconduct, as well as the cost of repairing any damage.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 59

### Computer Fraud and Abuse Act—Damages

If you find that VPX violated the Computer Fraud and Abuse Act, you may award damages for Monster's losses. A "loss" includes the value of the time and money that Monster spent to investigate the misconduct, as well as the cost of repairing any damage, including:

1. The costs of investigating the offense;

2. The costs of responding to the offense;

3. The costs of conducting a damage assessment;

4. The costs for restoring the data, program, system, or information to its condition prior to the offense; and

5. Revenue lost, cost incurred, or other consequential damages incurred because of an interruption of service.

## <u>JURY INSTRUCTION NO. 60</u>

<u>Mitigation of Damages</u>

Monster has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by the preponderance of the evidence:

1.  That Monster failed to use reasonable efforts to mitigate damages; and

2.  The amount by which damages would have been mitigated.

*18-1882, Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*                    Jury Instructions

## JURY INSTRUCTION NO. 61

### Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## JURY INSTRUCTION NO. 62

### Consideration of Evidence—Conduct of Jury

Because you must base your verdict only on the evidence received in the case
and on these instructions, I remind you that you must not be exposed to any other
information about the case or to the issues it involves. Except for discussing the
case with your fellow jurors during your deliberations:

1.  Do not communicate with anyone in any way and do not let anyone else
    communicate with you in any way about the merits of the case or
    anything to do with it. This includes discussing the case in person, in
    writing, by phone, tablet, computer, or any other means, via email, via
    text messaging, or any internet chat room, blog, website, or application,
    including but not limited to Facebook, YouTube, Twitter, Instagram,
    LinkedIn, Snapchat, TikTok, or any other forms of social media. This
    applies to communicating with your family members, your employer, the
    media, or press, and the people involved in the trial. If you are asked or
    approached in any way about your jury service or anything about this
    case, you must respond that you have been ordered not to discuss the
    matter and to report the contact to the court.

2.  Do not read, watch, or listen to any news or media accounts or

    commentary about the case or anything to do with it[, although I have no

    information that there will be news reports about this case]; do not do any

    research, such as consulting dictionaries, searching the Internet, or using

    other reference materials; and do not make any investigation or in any

    other way try to learn about the case on your own. Do not visit or view

    any place discussed in this case, and do not use Internet programs or

    other devices to search for or view any place discussed during the trial.

    Also, do not do any research about this case, the law, or the people

    involved—including the parties, the witnesses, or the lawyers—until you

    have been excused as jurors. If you happen to read or hear anything

    touching on this case in the media, turn away and report it to me as soon

    as possible.

These rules protect each party's right to have this case decided only on

evidence that has been presented here in court. Witnesses here in court take an

oath to tell the truth, and the accuracy of their testimony is tested through the trial

process. If you do any research or investigation outside the courtroom, or gain any

information through improper communications, then your verdict may be

influenced by inaccurate, incomplete or misleading information that has not been

tested by the trial process. Each of the parties is entitled to a fair trial by an

impartial jury, and if you decide the case based on information not presented in

court, you will have denied the parties a fair trial. Remember, you have taken an

oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these

proceedings, and a mistrial could result that would require the entire trial process

to start over. If any juror is exposed to any outside information, please notify the

court immediately.

## <u>JURY INSTRUCTION NO. 63</u>

### <u>Return of Verdict</u>

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

## **JURY INSTRUCTION NO. 64**

### Communication with Court

If it becomes necessary during your deliberations to communicate with me,

you may send a note through the clerk or bailiff, signed by any one or more of you.

No member of the jury should ever attempt to communicate with me except by a

signed writing. I will not communicate with any member of the jury on anything

concerning the case except in writing or here in open court. If you send out a

question, I will consult with the lawyers before answering it, which may take some

time. You may continue your deliberations while waiting for the answer to any

question. Remember that you are not to tell anyone—including the court—how the

jury stands, whether in terms of vote count or otherwise, until after you have

reached a unanimous verdict or have been discharged.