UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-1882 JGB (SHKx)** | Date | April 12, 2023 |
|---|---|---|---|
| Title | ***Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion for a Permanent Injunction (Dkt. No. 901); and (2) VACATING the April 24, 2023 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Monster Energy Company's ("Monster") motion for permanent injunction against Defendants Vital Pharmaceuticals, Inc. ("VPX") and John H. Owoc ("Owoc") (collectively, "Defendants"). ("Motion," Dkt. No. 901.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **ENJOINS** Defendants as set forth below. The Court **VACATES** the hearing set for April 24, 2023.

## I. BACKGROUND

The parties are familiar with the extensive procedural and factual history of this case; the Court relates only the background necessary to understand the Motion.

On September 4, 2018, Monster initiated this action against Defendants Vital Pharmaceuticals, Inc. ("VPX") and John H. Owoc ("Owoc") (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) On April 3, 2019, Monster filed a first amended complaint. ("FAC," Dkt. No. 61.) On May 20, 2019, the Court granted in part Defendants' motion to dismiss the FAC and dismissed Claim 4 and Claims 7 through 9. ("MTD Order," Dkt. No. 95.)

On April 19, 2022, the Court (1) denied Monster's partial motion for summary judgment on its Lanham Act claim; (2) granted in part VPX's motion for summary judgment on the Lanham Act claim but only with respect to false statements about the '466 Patent, granted VPX's motion on Monster's intentional interference of prospective economic advantage claim, and denied VPX's motion on all other claims; and (3) granted Mr. Owoc's motion for summary judgment on Monster's claims for intentional interference of prospective economic advantage, and claims under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, et seq., Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., and Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq., against Mr. Owoc, and denied Mr. Owoc's motion for summary judgment as to the other claims. ("MSJ Order," Dkt. No. 740.)

On August 25, 2022, a jury trial began on Monster's claims. (Dkt. No. 820.) On September 29, 2022, the jury returned a verdict for Monster. ("Verdict," Dkt. No. 890.) Among other findings, the jury found that: (1) Defendants are liable for false advertising under the Lanham Act; (2) Monster shall be awarded $271,924,174 for damages sustained by Defendants' false advertising; and (3) Defendants' false advertising was willful and deliberate. (Id.)

On December 8, 2022, Monster filed the Motion. (See Motion.) In support, Monster filed the declaration of Sourabh Mishra with attached exhibits, ("Mishra Declaration," Dkt. No. 902), as well as a proposed permanent injunction. ("PPI," Dkt. No. 901-2.)

On January 23, 2023, VPX opposed. ("Opposition," Dkt. No. 915.) In support, VPX filed the following documents:

- Declaration of Nolan Mitchell ("Mitchell Declaration," Dkt. No. 915-1) with attached exhibits;
- Declaration of Rick Oberhofer ("Oberhofer Declaration," Dkt. No. 916) with an attached exhibit;
- Declaration of Hal Gerson ("Gerson Declaration," Dkt. No. 917) with an attached exhibit; and
- Proposed alternative injunction ("DPI," Dkt. No. 915-35).

On the same day, Mr. Owoc joined VPX's Opposition. ("Joinder," Dkt. No. 918.) On February 23, 2023, Monster replied. ("Reply," Dkt. No. 925.) In support, Monster filed the declaration of Amber Munoz with attached exhibits. ("Munoz Declaration," Dkt. No. 926.)

## II.   LEGAL STANDARD

Under the Lanham Act, a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," "to prevent a violation" under 15 U.S.C. § 1125(a) ("Section 1125(a)"). 15 U.S.C. § 1116(a) ("Section 1116(a)"). "A permanent injunction is an extraordinary remedy that may only be awarded upon a

clear showing that the moving party is entitled to such relief." Server Tech., Inc. v. Am. Power Conversion Corp., 2017 WL 2181101, at *3 (D. Nev. May 12, 2017) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); see also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). To obtain a permanent injunction, the moving party must satisfy a four-factor test: (1) it has suffered irreparable injury; (2) remedies at law are inadequate; (3) the balance of hardships favors an equitable remedy; and (4) that the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

"The 'traditional principles of equity' demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case." La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 880 (9th Cir. 2014). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007).

## III.   DISCUSSION

The Court first considers whether Monster is entitled to a permanent injunction and second, whether the PPI is appropriately tailored to enjoin Defendants.

### A.  Irreparable Harm

Monster asserts that it has suffered irreparable harm because Defendants' false advertising has caused it to (1) lose customers, and (2) lose market share. (Mot. at 15.) Defendants contend that Monster has not shown irreparable harm because: (1) the harms are purely economic; (2) VPX "abandoned any marketing focus on Super Creatine or creatine" before the jury rendered its verdict; and (3) VPX's remediation obviates the need for an injunction. (Opp'n at 7.)

Under Section 1116(a) of the Lanham Act, a plaintiff who prevails on the merits of a Lanham Act claim "shall be entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a); Blumenthal Distrib., Inc. v. Comoch Inc., 2023 WL 2356713, at *11 (C.D. Cal. Jan. 24, 2023) (a "plaintiff seeking any injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of violation" under Section 1125(a) "in the case of a motion for a permanent injunction.") Here, the jury found Defendants liable for false advertising, an element of which was injury to Monster and awarded Monster $271,924,174 in lost profits for sales through April 2022.[1] (See "Jury Instructions," Dkt. No. 889; Verdict at 1.) Given this finding, Monster is entitled to a "rebuttable presumption of irreparable harm." Section 1116(a); see also

---

[1] Both parties agree that damages were awarded only up to April 2022. (Opp'n at 10; Reply at 4.)

Knature Co. v. Duc Heung Grp., Inc., 2021 WL 3913194, at *5 (C.D. Cal. July 2, 2021) ("Plaintiffs are entitled to a rebuttable presumption of irreparable injury—and therefore no adequate remedies at law—when they prove a violation of the Lanham Act.").  Defendants "may, upon a proper showing, overcome" this presumption and demonstrate lack of irreparable harm by showing "that the alleged injuries are purely pecuniary, or that [they] [] [have] ceased or will soon cease the infringing activities." Kahala Franchising, LLC v. Real Faith, LLC, 2022 WL 1605377, at *4 (C.D. Cal. May 20, 2022).

### 1. Loss of Customers and Market Share

Defendants assert that Monster's claim that it will continue to lose prospective customers and suffer decreased market share are purely economic harms, not irreparable harm.  (Opp'n at 7.)  Monster disagrees and argues that loss of prospective customers and market share encompasses both intangible and incalculable harms.  (Reply at 2.)

### a. Customers

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001) (affirming the district court's grant of preliminary injunction where district court found that plaintiff stood to "lose its newfound customers and accompanying goodwill and revenue").  Defendants argue that loss of prospective customers constitutes irreparable harm only where it threatens likely "intangible injuries," "such as damage to ongoing recruitment efforts and goodwill." (Opp'n at 8.)  But loss of prospective customers is an intangible injury. Anhing Corp. v. Thuan Phong Co. Ltd., 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) ("Evidence of intangible injury, such as a loss of customers or damage to a party's goodwill, can constitute irreparable harm."); Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 F. App'x 633, 636 (9th Cir. 2013) (finding that district court did not abuse its discretion where it found that irreparable harm will likely result in the absence of preliminary injunction relief where plaintiff provided "evidence of threatened loss of customers or goodwill") (internal alterations omitted); Open Text, S.A. v. Box, Inc., 36 F. Supp. 3d 885, 906 (N.D. Cal. 2014) (the loss of customers as a result of infringing conduct may support a finding of irreparable harm).

Here, Monster has presented "evidence of threatened loss of prospective customers." Stuhlbarg Int'l Sales Co., 240 F.3d at 841.  At trial, Monster offered evidence that Defendants' false advertising of Super Creatine affected Monster's ability to compete in the market, causing Monster to lose existing and prospective customers.  (Mot. at 16.)  For example, numerous witnesses—including VPX's own employees—testified that Super Creatine is BANG's point of difference, allowing Defendants to distinguish BANG from Monster's beverages.  (Id.; Mishra Decl., Exs. 20, 23-24, 27, 29-31.)  At trial, Monster argued that the Super Creatine difference creates an unfair competitive disadvantage for Monster, ultimately leading to lost consumers and sales.  (Mishra Decl., Exs. 29-31.)  That unfair advantage translates not just to lost consumers and

sales for Monster but also to a false perception by consumers and customers that BANG contains creatine.  (Reply at 2.)  Six months after the jury rendered its verdict, Defendants continue to manufacture, distribute, and advertise BANG cans with the Super Creatine label.  (See infra Section III.A.2-A.3.)  Accordingly, unless an injunction is granted, consumers will continue to believe that BANG contains creatine and view Monster's products less favorably than they otherwise would, rendering the threat of future lost customers an intangible irreparable harm.

Defendants argue that Monster's loss of customers translates to lost sales and, thus, Monster can easily calculate these lost sales.  (Opp'n at 8.)  Defendants point to True Organic for their contention that "statements about customer loss are a claim for loss revenue and profit, which is redressable through monetary damages."  (Opp'n at 8 (quoting True Organic Prod., Inc. v. California Organic Fertilizers, Inc., 2019 WL 1023888, at *7 (E.D. Cal. Mar. 4, 2019) (internal alterations omitted) ("True Organic")).)  The Court disagrees that a loss of customers directly translates to lost sales.  A lost customer may constitute the loss of a relationship with a customer as well as reference to other potential customers.  See Chem-Tainer Indus. Inc. v. Wilkin, 1997 WL 715014, at *8 (C.D. Cal. Feb. 24, 1997), dismissed, 20 F. App'x 843 (Fed. Cir. 2001) ("while lost sales and profits may be compensable through money damages, the loss of customers and goodwill may not be").  And True Organic is distinguishable.  There, the court found no irreparable harm where the plaintiff failed to provide evidence that it had lost customers or sales and where the plaintiff failed to explain why any lost sales it may suffer cannot be redressed through an award of monetary damages.  Id.  Here, Monster presented evidence that it lost customers and an award of monetary damages to Monster has not stopped Defendants from continuing to falsely advertise their products to consumers.  See Nutrition Distribution LLC v. IronMag Labs, LLC, 2018 WL 6264986, at *4 (C.D. Cal. Nov. 16, 2018) ("Monetary damages . . . would be inadequate to protect the public in the absence of an injunction due to the possibility of Defendants selling products [with false statements] in the future . . .")  Thus, the Court concludes that Monster's loss of customers is an irreparable harm.

### b. Market Share

As to Monster's loss of market share, "injury to market share can constitute irreparable harm."  Chem-Tainer Indus. Inc., 1997 WL 715014, at *8; Merck Eprova AG v. Brookstone Pharms., LLC, 920 F. Supp. 2d 404, 432 (S.D.N.Y. 2013) (finding that "[w]hile damages have partially compensated [plaintiff] for its injuries, damages cannot compensate [plaintiff] for the enviable market position—and the corresponding decline in its own market position—that [defendant] has acquired thanks to its false advertising."); Funai Elec. Co. v. Daewoo Elecs. Corp., 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009), aff'd, 616 F.3d 1357 (Fed. Cir. 2010) (finding that evidence in the record established that plaintiff has suffered irreparable harm in the form of loss of market share).

To support its contention that it lost market share, Monster points to evidence presented at trial showing that VPX grew from a 0.1 market share to a 9.4 market share after launching BANG with Super Creatine.  (Mot. at 17; Mishra Decl., Exs. 21, 27, 31, TX-3689.)  Defendants

assert that there is no evidence that Monster will continue to "lose share to VPX." (Opp'n at 9.) Defendants highlight recent market data showing the market share performance of certain top energy drink brands from 2017 through the end of 2022, which they contend demonstrates that Monster has been able to grow and gain share despite VPX's advertising. (Id.; Oberhofer Decl., Ex. A.) For example, Defendants' graph shows that from the second quarter of 2021, measured in dollars, VPX's share has declined from 8.4 to 4.0 while Monster's share has increased from 30.9 to 31. (Oberhofer Decl., Ex. A.) The data also shows that since the second quarter of 2022, VPX's share has declined from 6.6 to 4.0, while Monster's share has risen from 30.7 to 31. (Id.)

The Court is not persuaded that an uptick of 0.1 to 0.3 in Monster's share shows that, as Defendants assert, that it is unlikely that Monster is now or will be harmed by any loss of market share. (Mot. at 10.) Indeed, Defendants' data shows that VPX's share grew from 0.2 to 9.4 between 2017 to 2019, while Monster's share dropped from 37.4 to 33.0. (Reply at 3; Oberhofer Decl., Ex. A.) Thus, it is not clear to the Court that Monster has recovered its loss of share. Furthermore, because Defendants continue to advertise and sell Super Creatine labeled cans, the Court cannot find, as Defendants ask it to, that it is unlikely that Monster is now or will be harmed by any loss of market share. Accordingly, the Court concludes that Monster's loss of market share is an irreparable harm.

### 2. Transition Away from Creatine

Defendants assert that Monster cannot establish irreparable harm because years before the verdict, VPX had already abandoned any marketing focus on Super Creatine or creatine, reflecting the economic reality that neither is an important contributor to sales. (Opp'n at 11.) As support for this contention, Defendants cite to various witnesses' trial testimony including Mr. Owoc's testimony where he stated that VPX's customers do not buy BANG because it contains Super Creatine and that is why Defendants stopped marketing Super Creatine four to five years ago. (Id.; Mitchell Decl., Ex. 3.) The jury rejected this same argument at trial, awarding Monster damages for false advertising. (See Verdict.) Indeed, rather than transition away from creatine, Defendants placed the words "Super Creatine" across the front of their BANG cans and regularly used creatine in social media and other advertisements. (E.g., Exs. 25, 46, 47.) And the Court finds Defendants' argument disingenuous at best. As recently as February 27, 2023, five months after the verdict, BANG's Instagram and Facebook page contained a picture of a BANG can with the Super Creatine label.[2] Similarly, on October 29, 2022, almost a month after the jury's verdict, Mr. Owoc posted a reel of four cans with the Super

---

[2] Courts can take judicial notice of publicly accessible social media posts. Al-Ahmed v. Twitter, Inc., 603 F. Supp. 3d 857, 868-869 (C.D. Cal May 20, 2022) (taking judicial notice of the landing page for plaintiff's twitter account and a public post on the account—both available publicly); see Fed. R. Evid. 201(c)(1) ("The court ... may take judicial notice on its own ...."). Thus, the Court takes judicial notice of BANG's Instagram profile (@bangenergy), BANG's Facebook profile (@BANG Energy), and the February 27, 2023, posts.

Creatine label.[3]  Thus, the Court is unable to agree with Defendants' contention that Defendants' alleged marketing shift shows that Monster is unlikely to suffer ongoing irreparable harm because Defendants continue to advertise Super Creatine.

### 3. Defendants' Remediation

Defendants' last argument as to why Monster has failed to establish irreparable harm is that VPX's advertising has ceased.  See ZapIp LLC v. FlyDive Inc., 2017 WL 8292394, at *4 (C.D. Cal. Oct. 19, 2017) (A presumption of irreparable harm "may be rebutted by evidence showing that the accused infringer has ceased the allegedly infringing activities").  In support of its contention, VPX asserts that it has redesigned the BANG label, promotional materials, and advertising to eliminate any reference to Super Creatine or creatine.  (Opp'n at 13; Gerson Decl. ¶ 5.)  Defendants also assert that VPX has publicly addressed the jury's verdict; announced its decision to stop marketing BANG as containing Super Creatine; has notified its distributors of the label changes along with the jury verdict; and its retailers are aware of its ongoing transition as well as the verdict.  (Gerson Decl ¶ 25.)  VPX also argues that it will not return to the type of advertising that was the subject of the jury's verdict because it is now governed by a board of majority-independent directors, who have instructed VPX to complete the redesign transition.  (Opp'n at 13; Gerson Decl. ¶¶ 4-5.)  Thus, Defendants argue, due to VPX's ongoing remediation efforts, Monster is unlikely to suffer irreparable harm.  (Opp'n at 13.)

The Court acknowledges the efforts that Defendants have taken, but they are insufficient.  When a defendant claims injunctive relief is unwarranted, the defendant "bears the formidable burden of demonstrating voluntary compliance by showing it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  AirWair Int'l Ltd. v. ITX USA LLC, 2021 WL 5302922, at *2 (N.D. Cal. Nov. 15, 2021) (internal citations omitted), appeal dismissed sub nom. Airwair Int'l, Ltd. v. Pull & Bear Espana, SA, 2022 WL 2165416 (9th Cir. Apr. 20, 2022).  Here, as Defendants admit, VPX is still manufacturing cans with the "Super Creatine" label and continued to do so until sometime in March 2023.  (Gerson Decl. ¶ 9.)  Defendants also intend to sell "Super Creatine" cans through the end of the calendar year.  (Id.)  Defendants argue that VPX must continue to sell Super Creatine labeled cans because the destruction of its existing cans "would cause millions of dollars in losses, severely disrupt VPX's supply lines and business relationships, and leave VPX unable to fill existing customer orders or meet consumer demands."  (Id. ¶ 12.)  But Defendants have brought on themselves these unfortunate consequences through their false advertising.

Furthermore, Defendants refuse to remove their existing false advertising from their social media accounts.  Defendants assert that "[i]t is impossible for VPX to review and eliminate all of the hundreds of thousands archived and historical social media posts that may include an image of the legacy [BANG] can or logo."  (Id. ¶ 22.)  But VPX does not explain why this is

---

[3] The Court takes judicial notice of the @bangergy.ceo Instagram profile and the October 29, 2022, post.

impossible, especially for its own social media accounts.  Instead, VPX states that it "is removing active content most likely to be seen by consumers . . . [and] expects to complete . . . revisions to the contents of its website by approximately March 31, 2023."  (Id.)  But VPX does not explain what it means by "active content."  Moreover, even though VPX states that it "publicly announced" the label changes and jury verdict, (Gerson Decl. ¶ 25), consumers are still being deceived by its false advertising.  For example, consumers continue to repeat the false claim that BANG contains creatine. (See, e.g., Munoz Decl., Ex. 41 ("The ceo posted a pretty descriptive video on the whole breakdown. A lot of fancy words in there but it sounded like [Bang]'s got [creatine] and the lawsuit is more against the word 'super.'"); Ex. 42 (in December 8, 2022, a consumer posted on twitter: "A reminder that Bangs have creatine.").)

Accordingly, the Court is unable to find that Defendants have shown that "it is absolutely clear" that their wrongful behavior cannot "reasonably be expected to recur", because their wrongful behavior is currently occurring.  AirWair Int'l Ltd., 2021 WL 5302922, at *2 (finding that defendant has not submitted evidence to satisfy the "formidable burden" of showing voluntary cessation is effective "where defendant appears to still have the capacity to sell and/or market infringing products").  Thus, the Court finds that Defendants have not overcome Monster's rebuttable presumption of irreparable harm.

## B.  Inadequate Remedies

Monster asserts that the remedies at law are inadequate because: (1) Defendants are causing Monster continuous irreparable harm by continuing to advertise and sale BANG cans with the Super Creatine label; and (2) VPX's Chapter 11 bankruptcy makes it unclear when or even if VPX will be able to compensate Monster for the injuries it has caused.  (Mot. at 18-20.)  "The terms inadequate remedy at law and irreparable harm describe two sides of the same coin. If the harm being suffered by plaintiff . . . is irreparable, then the remedy at law (monetary damages) is inadequate." Anhing Corp., 2015 WL 4517846, at *23 (internal quotes omitted); see also Knature, 2021 WL 3913194, at *5 (Lanham Act entitles plaintiffs to a "presumption of irreparable injury—and therefore no adequate remedies at law").  "The same evidence demonstrating irreparable harm suggests that damages are inadequate to remedy Defendants' [false advertising]." Anhing Corp., 2015 WL 4517846, at *23.  For the reasons discussed above in connection with irreparable harm, the remedies at law are inadequate to compensate Monster for the harm Defendants' advertising of Super Creatine continues to cause.  See id. (finding that remedies at law were inadequate where there was a risk that defendant would continue to engage in infringing conduct).

Indeed, since Defendants' false advertising occurs through every BANG advertisement and sale, "[a] legal remedy is inadequate [because] it would require a 'multiplicity of suits.'" Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007).  As Monster asserts, if Defendants were allowed to continue falsely advertising Super Creatine, it is likely that Monster would file seriatim lawsuits to recover for the injuries Defendants cause.  (Mot. at 19.)  Defendants argue that VPX's advertising is not continuous

because it is in the midst of transitioning to new labels and advertising "and soon any conceivable 'harm' from the sale of legacy products will be over and can be quantified." (Opp'n at 15.) But as the Court discussed above, the irreparable harm is loss of prospective customers and market shares—ongoing harms that cannot be fully compensated through an award of damages.

The Court is less persuaded by Monster's second contention that a damages award is inadequate because VPX's bankruptcy makes future relief uncertain. (Mot. at 19-20.) "[I]n some limited circumstances, parties have demonstrated such a strong likelihood that their opponent will be unable to pay that courts have awarded them equitable relief." Grokster, 518 F. Supp. 2d at 1217. "The rationale in such cases must be that an award of monetary damages will be meaningless, and the plaintiff will have no substantive relief, where it will be impossible to collect an award for past and/or future infringements perpetrated by a defendant." Id. But VPX is undergoing a chapter 11 reorganization, where "[l]iquidation is not the objective" and "the aim is by financial restructuring to put back into operation a going concern." Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 470 (1974). Here, Monster has offered no proof that damages "payable through a plan of reorganization is an inadequate remedy" or evidence that VPX "would be unsuccessful in reorganizing." In re Columbia Motor Exp., Inc., 33 B.R. 389, 392 (M.D. Tenn. 1983); see Grokster, 518 F. Supp. 2d at 1217 (finding it unlikely that defendant would be able to compensate plaintiff monetarily because the "undisputed evidence at summary judgment" demonstrated that "it is highly likely that the award of statutory damages that ultimately befalls [defendant] in this case will be enormous . . . and would far outstrip the amount of revenue the company has garnered in recent years."). Nevertheless, because Defendants continue to advertise and sell Super Creatine BANG cans, creating an ongoing irreparable harm, the Court finds that legal remedies are inadequate.

## C.  Balance of Hardships

"Under the third factor, the Court considers the hardships facing each party by the grant or denial of a permanent injunction." WB Music Corp., 2018 WL 2121819, at *2. As to Monster, unless the Court enters a permanent injunction, Monster will continue suffering harm without an adequate remedy at law.

As for Defendants, they argue that due to VPX discontinuing its advertising, "the balance of harms is readjusted, because the potential for economic or other harm to the movant has been eliminated." (Opp'n at 16-17 (quoting Ideal Instruments, Inc. v. Rivard Instruments, Inc., 479 F. Supp. 2d 968, 993 (N.D. Iowa 2007) (finding that any potential harm that might have existed was substantially reduced by party's remedial actions)). But as discussed above, Defendants continue to advertise and sell BANG cans with the Super Creatine label, thus the balance of harms has not been "readjusted" and the harm has not been eliminated. Furthermore, "there is no harm to a defendant from an injunction which prevents continuing dissemination of false statements." POM Wonderful LLC v. Purely Juice, Inc., 2008 WL 4222045, at *16 (C.D. Cal. July 17, 2008), aff'd, 362 F. App'x 577 (9th Cir. 2009); see Linotype Co. v. Varityper, Inc., 1989 WL 94338, at

*3 (S.D.N.Y. Aug. 4, 1989) (granting injunction despite defendant's assurance that false ad had "run its course").

Defendants' second argument is that complying with Monster's PPI would be burdensome.  (Opp'n at 17.)  Defendants contend that they cannot realistically remove the term creatine within "30 days (or even much longer)" from all cans, physical locations, and media, because this would result in significant disruptions to Defendants' business, such as by forcing them to destroy their cans and leave them unable to fill existing customer orders.  (Opp'n at 17, 23.)  Monster asserts that Defendants do not need to destroy their inventory, because they need only to "wrap them in shrink sleeves" to cover the Super Creatine label.  (Reply at 9.)  Moreover, while thirty days may be a short timeframe, it has been more than six months since the jury returned its verdict, meaning that Defendants have had six months to stop selling their Super Creatine labeled cans and remove their false advertisements.  Courts have ordered recalls for less than that amount of time.  See, e.g., Homeland Housewares, LLC v. Euro-Pro Operating LLC, 2014 WL 4187982, at *8 (C.D. Cal. Aug. 22, 2014) (ordering removal of false statements from the packaging of defendant's products on sale to consumers and from any of defendant's advertisements or commercials within 4 months of the court's order);  United States v. Kennedy, 2007 WL 404915, at *4 (N.D. Cal. 2007) (ordering removal of false advertising from website within 10 days); PowerFood, Inc. v. Sports Sci. Inst., 1993 WL 13681782, at *10 (N.D. Cal. 1993) (ordering removal of products from retail stores within 10 days); Safeworks, LLC v. Teupen Am., LLC, 717 F. Supp. 2d 1181, 1194 (W.D. Wash. 2010) (ordering removal of promotional and other materials within 20 days).  But considering the burden that may fall on Defendants to remove all false advertising and cans nationwide, the Court will give Defendants an additional 30 days to complete the transition.  Given the extension of time that the Court has granted Defendants and that there is no harm to Defendants for being enjoined from advertising false statements, the balance of hardships favors a grant of the permanent injunction.

## D.  Public Interest

Lastly, the Court considers whether a permanent injunction serves the public.  Grokster, 518 F. Supp. 2d at 1222.  "There is a strong public interest in preventing false advertising of products in the marketplace."  POM Wonderful, 2008 WL 4222045, at *16 (finding that where defendant has made false claims as to the contents of its product and the public is deceived into paying for what it believes is an accurate representation of the product, the public interest favors injunctive relief to prevent the false advertising of defendant's product).

Here, the jury found that the elements of false advertising—including falsity, deception, and materiality—were met.  (See Verdict.)  Yet Defendants have continued to mislead consumers about Super Creatine.  (See supra Section III.A.2-A.3.)  Thus, "the public . . . will benefit from an injunction protecting consumers and competitors from Defendants' false advertising."  Nutrition Distrib. LLC, 2018 WL 6264986, at *4; see also Paisa, Inc. v. N & G Auto, Inc., 928 F. Supp. 1009, 1013 (C.D. Cal. 1996) ("strong public interest in preventing consumer confusion and fraud").  Defendants argue that an injunction that destroys their

inventory and leaves VPX unable to fill customer orders, only denies consumers their preferred energy drink.  (Opp'n at 18 (citing Juicero, Inc. v. iTaste Co., 2017 WL 4676280, at *7 (N.D. Cal. Oct. 17, 2017) (finding little public interest where the plaintiff sought a preliminary injunction enjoining all sales of the product at issue because the injunction would deprive the public of "what may be its only option" for juicing).  Defendants' reliance on Juicero is misplaced because unlike there, Monster's injunction does not prevent consumers from buying BANG; it prevents Defendants from misleading consumers.

Defendants also contend that Monster's PPI burdens legitimate and protected speech by requiring VPX to remove social media posts for including an image of a BANG can with the Super Creatine label because an injunction that regulates and restrains social media activities is contrary to the public interest.[4]  (Opp'n at 18.)  "The protections afforded commercial speech by the First Amendment are not unlimited.  False or misleading commercial speech is not protected speech; only commercial speech that concerns 'lawful activity' and is 'not misleading' is protected by the First Amendment."  Martin v. Tradewinds Beverage Co., 2017 WL 6816608, at *6 (C.D. Cal. Sept. 5, 2017) (quoting Central Hudson Gas & Elec. v. Public Serv.Comm'n, 447 U.S. 557, 566 (1980)).

Speech is commercial if "(1) the speech is admittedly advertising, (2) the speech references a specific product, and (3) the speaker has an economic motive for engaging in the speech."  CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n, 2016 WL 5118530, at *6 (S.D. Cal. Sept. 21, 2016).  Here, Defendants' social media posts concerning Super Creatine are commercial speech.  For example, Monster submitted as evidence an @bangenergy Instagram post shared on February 20, 2023, with an image of a BANG can with the Super Creatine label and the caption reads: "With a blast of berry flavors in every sip, you won't believe it has ZERO sugar, carbs, or calories! Tag a friend in the comments who needs to try this flavor!"  (Munoz Decl., Ex. 79.)  That social media post is advertising Defendants' product by encouraging consumers to tell their friends to buy the BANG can with the Super Creatine label—a label that misleads consumers into believing that the can contains creatine.  See H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd., 2022 WL 104730, at *5 (S.D. Cal. Jan. 11, 2022) (finding that a Facebook post that included a photograph of a woman holding the product at issue with a caption that stated the product is a "great holiday gift" is commercial speech because the image is trying to sell the product).  And Defendants have an economic motive for engaging in this speech because it would increase their sales.  Because that social media post is "misleading commercial speech," it is not "protected speech."  Martin, 2017 WL 6816608, at *6.  Thus, an injunction that requires Defendants to remove social media posts that include a false advertisement, such as the Super Creatine labeled can, is in the public's interest and does not burden protected speech.

---

[4] The cases that Defendants cite in support of their contention are inapposite to their commercial social media posts.  (Opp'n at 18-19.)  See Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (addressing city ordinance restricting right to express political views); Packingham v. North, 137 S. Ct. 1730, 1736-37 (2017) (addressing statute prohibiting sex offenders from accessing social media).

Defendants also contend that Monster's PPI prevents Defendants and others from accurately discussing or criticizing scientific research or engaging in legitimate scientific debate, which burdens free speech and is contrary to the public's interest.  (Opp'n at 19-20.)  The Court disagrees and explains its reasoning below.  (See infra Section III.E.1.)  In sum, the public interest favors granting a permanent injunction.

Overall, the four factors support entering a permanent injunction against Defendants. Plaintiff has established irreparable injury, shown the remedies of law are inadequate, the balance of hardships tips in their favor, and the public interest is served by an injunction.  Accordingly, the Court **GRANTS** Plaintiff's Motion.

## E.  Scope of the Injunction

Monster seeks a permanent injunction that: (1) enjoins false statements; (2) orders removal of false statements; (3) orders corrective advertising; and (4) orders compliance.  (See PPI.)  Defendants argue that the scope of Monster's injunction is convoluted, overboard, and impermissibly burdens and restrains non-commercial and protected speech activities.  (Opp'n at 19.)  The Court agrees with Defendants that Monster's PPI is, in part, overbroad and makes revisions below.

### 1.  Enjoining False Statements

Federal Rule of Civil Procedure 65(d) ("Rule 65(d)") provides that every order granting an injunction must "describe in reasonable detail . . . the act or acts restrained or required."  An injunction should also provide "fair and well-defined notice" of whom or what it enjoins.  Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1132 (9th Cir. 2006).  Generally, "an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law."  iYogi Holding Pvt. Ltd. V. Secure Remote Support, Inc., 2011 WL 6291793, at *19 (N.D. Cal. Oct. 25, 2011), report and recommendation adopted sub nom. Iyogi Holding PVT Ltd. V. Secure Remote Support Inc., 2011 WL 6260364 (N.D. Cal. Dec. 15, 2011).

Courts routinely enjoin defendants from continuing to advertise or promote their products using the specific claims found to be false.  See U-Haul Int'l, Inc., 793 F.2d at 1043 (enjoining defendant from publishing "any advertisement" that "represents, either expressly or impliedly," the "[f]alse[] or deceptive[]" statements at issue); Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc., 2019 WL 4570033, at *3 (C.D. Cal. Aug. 26, 2019), rev'd in part on other grounds, 28 F.4th 35 (9th Cir. 2022) (issuing "an injunction that focuses on the kind of advertising that was at issue at trial").  Here, the jury found Defendants' advertising of Super Creatine to be false or misleading.  (See Verdict; Jury Instructions.)  Accordingly, an injunction that prohibits Defendants from falsely or deceptively claiming that Super Creatine is creatine,

that BANG drinks contain creatine, and that BANG drinks or Super Creatine provide the physical, mental, health, or other benefits of creatine, is appropriate.

Defendants contend that the below underlined phrases in paragraph 1 of Monster's PPI are beyond the scope of the litigation, have only a tenuous connection to any commercial purpose, do not address any irreparable harm to Monster, and could prohibit true statements. (Opp'n at 19-20.)  Paragraph 1 of the PPI states:

> The Enjoined Persons are permanently enjoined from expressly or impliedly using the word 'creatine'—whether alone or together with other words—in selling, offering to sell, marketing, promoting, or advertising any BANG energy drink or <u>any other beverage</u> purporting to contain creatyl-L-leucine, Super Creatine, creatine, <u>any form or purported form of creatine</u>, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule ("BANG Drinks"), including, but not limited to: (1) on any BANG Drinks cans, labels, or packaging; (2) in any presentations, messages, or other communications with third parties. . .  (3) in physical locations, including, but not limited to, retail stores . . . (4) in point-of-sale materials, including, but not limited to, free standing display units, . . .  and (5) in any media, including, but not limited to, print, broadcast, the internet . . . .

(PPI ¶ 1 (emphasis added).)

The Court agrees with Defendants in part.  As currently proposed, the PPI "seems to prohibit future [] advertising even if truthful."  <u>U-Haul Int'l, Inc.</u>, 793 F.2d at 1042 (modifying an injunction by adding the words "falsely or deceptively" to enjoin defendants from publishing or disseminating any advertisement or media press release that "falsely or deceptively represents, either expressly or impliedly, that [defendant's] trucks or trailers are safer than all U-Haul trucks or trailers").  For example, the PPI would enjoin Defendants from ever using "any form or purported form of creatine" in their beverages, even if there was no deception.  The Court is mindful of its obligation to prevent Defendants "from misleading the public in the future with its deceptive ads.  But [the Court] can fulfill that obligation while protecting Defendants' First Amendment rights—and simultaneously increase the 'informed and reliable decisionmaking' that honest advertising can provide."  <u>Id.</u> (quoting <u>Standard Oil Co. v. FTC</u>, 577 F.2d 653, 662 (9th Cir.1978)).  Thus, the Court will add the words "falsely and deceptively" to the PPI to avoid prohibiting future truthful advertising.  Furthermore, although the Court acknowledges that this litigation focused on Defendants' BANG energy drink and not "any other beverages," the Court finds that keeping the language "any other beverage" with the addition of the phrase "falsely or deceptively"  will both protect the public from misleading advertisements as well as allow Defendants to engage in truthful advertising of their beverage products.  Thus, the Court modifies paragraph 1 of the PPI as follows:[5]

---

[5] Additions are italicized, deletions are bracketed.

> The Enjoined Persons are permanently enjoined from *falsely or deceptively using, either* expressly or impliedly, [~~using~~] the word 'creatine'—whether alone or together with other words—in selling, offering to sell, marketing, promoting, or advertising any BANG energy drink or any other beverage purporting to . . . .

Next, Defendants contend that paragraph 2 of the PPI lacks any clear limitation to commercial or false speech, harm to Monster, or the advertising at issue because it prohibits the enjoined persons from "implying . . . [in] promoting. . . BANG Drinks . . . in the United States that . . . creatyl-l-leucine . . . provides the . . . benefits of creatine or <u>otherwise</u> . . ." (Opp'n at 20.) It is unclear to the Court what the phrase "or otherwise" refers to, and because it is ambiguous, the Court will delete that phrase from the PPI wherever it is vague. See <u>ALPO Petfoods, Inc. v. Ralston Purina Co.</u>, 913 F.2d 958, 972 (D.C. Cir. 1990) (because commercial speech is entitled to appropriate protection under the First Amendment, an injunction restraining false or misleading speech must be narrowly tailored to "cover only the speech most likely to deceive consumers and harm [the plaintiff]"). Furthermore, to avoid prohibiting future advertising that is truthful commercial speech, here too, the Court will add the phrase "falsely or deceptively." Accordingly, the Court modifies paragraph 2 of the PPI as follows:

> Without in any way limiting the generality of the restraint set forth in paragraph 1, the Enjoined Persons are permanently enjoined from *falsely or deceptively* stating, implying, depicting, or otherwise communicating in selling, offering to sell, marketing, promoting, or advertising in the United States that: (1) BANG Drinks contain "Super Creatine," creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; (2) BANG Drinks provide the physical, mental, health, or any other benefits of creatine [~~or otherwise~~]; (3) "Super Creatine" is creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; (4) "Super Creatine" provides the physical, mental, health, or any other benefits of creatine [~~or otherwise~~]; (5) creatyl-Lleucine is "Super Creatine," creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; and (6) creatyl- L-leucine provides the physical, mental, health, or any other benefits of creatine [~~or otherwise~~] (together, the "Enjoined Claims").

Defendants further contend that paragraph 2 of the PPI burdens truthful discussions concerning ongoing scientific research and developments regarding creatyl-L-leucine ("CLL") and creatine forms, "'about which there is legitimate ongoing scientific disagreement.'" (Opp'n at 20 (quoting <u>ONY, Inc. v. Cornerstone Therapeutics, Inc.</u>, 720 F.3d 490, 498 (2d Cir. 2013) ("<u>ONY, Inc</u>").) And that Mr. Owoc has "legitimate commercial and noncommercial interests in CLL and creatine research that go beyond the promotion of BANG, which the injunction needlessly burdens." (Opp'n at 20.) But <u>ONY, Inc.</u> is inapposite. There, the Court addressed

conclusions made by a speaker and author that were drawn from non-fraudulent data and found
that those conclusions were not false advertising.  Id.  Here, the injunction is limited to
advertising and promotional statements, not conclusions made from scientific articles.  As
Defendants' own cited case law states "[u]nder the Lanham Act, a court may issue an injunction
to prevent the use of a 'false or misleading representation of fact' in 'commercial advertising or
promotion.'"  Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1323 (11th Cir. 2010) (finding that an
injunction was too broad because "[n]othing in the language of the injunction explicitly limit[ed]
its scope to advertising or promotional statements").  Here, the injunction is tailored to enjoin
false statements made in "selling, offering to sell, marketing, promoting, or advertising" BANG
drinks.  (PPI ¶¶ 1, 2, 5.a.i.)  With the addition of the phrase "falsely or deceptively," Defendants
are not prevented from ever speaking about their views on CLL or creatine.  They are only
enjoined from doing so in a false or deceptive manner when "selling, offering to sell, marketing,
promoting, or advertising," BANG drinks.  See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d
820, 829 (9th Cir. 2011) ("Because false or misleading commercial statements aren't
constitutionally protected," "permanent injunctions prohibiting deceptive advertising" "rarely
raise First Amendment concerns."); U-Haul Int'l, Inc., 793 F.2d at 1042 ("Nothing is clearer in
the emerging law of commercial free speech than that false or misleading commercial speech is
clearly subject to restraint.")(internal quotes omitted).

Defendants' next contention is that the social media pages, events, and communications
that VPX uses to promote BANG "are also used for other products and purposes, making it
difficult to draw lines for notice and enforcement purposes." (Opp'n at 21-22.)  But Defendants
do not explain how being enjoined from falsely or deceptively making statements in advertising or
selling BANG drinks makes it difficult to draw lines for notice and enforcement purposes and the
Court is unpersuaded that the injunction creates such issues.  Defendants also assert that the PPI
is similar in over broadness to an injunction at issue in ALPO Petfoods, Inc., 913 F.2d at 972
("ALPO").  (Opp'n at 21-22.)  There, the district court issued an injunction that permanently
barred the defendant and its associates "from making any advertising or other related claims that
are false, misleading, deceptive or made without substantiation in fact concerning the effects of
[defendant's] dog food products on hip joint formation, hip joint . . . and similar conditions."  Id.
at 971 (emphasis added).  To ensure that the injunction covered only the speech most likely to
deceive consumers and harm the plaintiff, the D.C. Circuit remanded the injunction for removal
of the words "or other related" to limit the injunction to advertising.  Here, unlike the injunction
at issue in ALPO, the injunction is tailored to enjoining false statements made in "selling,
offering to sell, marketing, promoting, or advertising" BANG drinks, which is the speech that
will most likely deceive consumers and harm Monster.  See Osmose, Inc., 612 F.3d at 1323
(narrowing injunction to commercial advertisements and promotions to avoid any possible First
Amendment concerns).  Accordingly, the Court's modifications to the PPI address Defendants'
First Amendment concerns.[6]

_____

[6] The Court notes that Defendants argue that Monster's brief confirms that the
injunction it seeks burdens and penalizes non-commercial speech.  (Opp'n at 21.)  In its briefing,
Monster contends that Defendants continue to make false claims by highlighting an Instagram

### 2. Removal of False Statements

Paragraph 4 of the PPI requires Defendants to: (1) remove the word "creatine" from all BANG drinks cans, labels, and packaging; (2) remove from all physical locations and web-based points of sale all cans, labels, packaging, and POS Material for BANG drinks that use or contain the term creatine; and (3) remove from all media all material selling, offering to sell, marketing, promoting, or advertising any BANG drinks that use or contain the term creatine within thirty days of the issuance of the injunction. (PPI ¶ 4.) Defendants assert that it is impossible for them to meet these requirements. (Opp'n at 23.)

As to the first requirement that Defendants remove the word "creatine" from all BANG labels and packaging, Defendants have already produced a redesigned can with no mention of the words Super Creatine or creatine on its BANG labels, packaging, and advertising. (Opp' at 4; Gerson Decl. ¶¶ 5-7.) Thus, this requirement is not impossible for Defendants to meet since they're already in the process of meeting it. The Court notes that Monster asserts that the redesigned BANG label will continue to deceive consumers because it lists CLL as an ingredient and it shows the seal and number for the Super Creatine patent. (Reply at 5.) The Court is

_____

video posted by Owoc on @bangenergy.ceo on November 4, 2022, that has since been taken down by Defendants. (Opp'n at 21.) Defendants contend that because Owoc's video is not purely commercial as it does more than propose a commercial transaction by including his critiques about Monster's litigation tactics, his opinions on Defendants' and Monster's studies, and VPX's reorganization, then it is entitled to full First Amendment protection. (Opp'n at 21 (citing Riley v. Nat'l Fed'n of the Blind, Inc., 487 U.S. 781, 796 (1988) ("Riley")).) The Court need not decide whether the injunction enjoins such a video since the video is no longer public. But the Court will note that Owoc's statement in the video that Super Creatine is "just like creatine monohydrate" seems to be misleading and not inextricably entwined with pure speech such that it would be entitled to full First Amendment protection. See Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 474 (1989) (finding that Tupperware presentations that had both a commercial aspect (the presentations sold houseware) and a noncommercial aspect (the presentations discussed subjects such as how to run an efficient home) were not inextricably intertwined and thus the presentations were not "entitled to the constitutional protection afforded noncommercial speech.") Communications can "'constitute commercial speech notwithstanding the fact that they contain discussions of important public issues….[the Supreme Court] [has] made clear that advertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech.'" Id. (quoting Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 67-68 (1983)). And the Court reiterates that misleading commercial speech is not entitled to the constitutional protection afforded noncommercial speech. See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 566 (1980) ("For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading.").

unpersuaded that Defendants should be required to remove CLL as an ingredient or its patent number. Defendants are entitled to include CLL and its patent number in their drinks, but they are not entitled to falsely claim that CLL is something it is not. Thus, because the redesigned label does not mention the word "creatine," it sufficiently addresses the false advertising at issue: that CLL or "Super Creatine" is creatine.

Next, Defendants argue that they cannot realistically remove the term creatine within "30 days (or even much longer)" from all cans, physical locations, and media. (Opp'n at 23.) As the Court discussed above, in light of the burden that may fall on Defendants to remove all false advertising nationwide, the Court will give Defendants an additional 30 days to complete the transition. (See supra Section III.C.)

Defendants further assert that the requirement to remove from all media "all videos and pictures showing the Bang Drinks can, label, or packaging" is overbroad because they cannot police the internet to remove every image of the Super Creatine can or reference to Super Creatine. (Opp'n at 23.) As written, the PPI requires the "potentially Herculean task" of removing all BANG creatine references from the internet without regard to who shared or posted such content. ADG Concerns, Inc. v. Tsalevich LLC, 2018 WL 4241967 (N.D. Cal. 2018) (finding injunction overbroad where it required the enjoined parties to take "all action" to "remove from the Internet" infringing marks; the court instead ordered defendant to "take all action to remove [marks] from its websites or storefronts"); see Iyogi Holding PVT Ltd., 2011 WL 6260364 (revising a proposed injunction to omit the required deletion of all postings referring to plaintiff by anyone because such a deletion is not aimed at postings by defendant or its agents and is therefore overbroad). Accordingly, the Court revises paragraph 4 of the PPI as follows:

Within [thirty (30)] *sixty (60)* days of the issuance of this Permanent Injunction:
a. The Enjoined Persons must remove the term "creatine," whether alone or together with other words *that state, imply, depict, or otherwise communicate the Enjoined Claims*, from all BANG Drinks cans, labels, and packaging;
b. The Enjoined Persons must remove and/or cause[d] to be removed from all physical locations and web-based points of sale, including, but limited to, websites, retail stores, trade shows, expositions, experiential events, fitness clubs, and gyms, all cans, labels, packaging, and POS Material for BANG Drinks that use or contain the term "creatine," whether alone or together with other words [and/or] that state, imply, depict, or otherwise communicate the Enjoined Claims *and that were placed by the Enjoined Persons or at the direction of the Enjoined Persons*; and
c. The Enjoined Persons must remove from all Media all material selling, offering to sell, marketing, promoting, or advertising any BANG Drinks—including all videos and pictures showing the BANG Drinks can, label, or packaging—that use or contain the term "creatine," whether alone or together with other words[, and/or] that state, imply, depict, or otherwise

> communicate the Enjoined Claims *that were posted by the Enjoined Persons or at the direction of the Enjoined Persons.*

### 3. Corrective Statement

The PPI requires Defendants to within "sixty (60) days of the issuance" of the injunction to post a corrective statement "on all webpages they use to sell, offer to sell, market, promote, or advertise any BANG Drinks . . . and on all their social media accounts" the language below:

> In September 2022, a jury issued a unanimous verdict finding that Vital Pharmaceuticals, Inc. (d/b/a Bang Energy) ("VPX") and Chief Executive Officer John H. "Jack" Owoc willfully and deliberately engaged in false advertising by claiming that the BANG energy drink contains creatine, contains "Super Creatine," and provides the benefits of creatine. The United States District Court for the Central District of California has permanently enjoined VPX and Mr. Owoc from selling, offering to sell, marketing, promoting, or advertising BANG as containing creatine, as containing "Super Creatine," or as providing the benefits of creatine.

(PPI ¶ 5.a.i.)  The PPI also requires the following:

> Defendants must deliver to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who they have worked with to sell, offer to sell, market, promote, or advertise BANG Drinks a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction. For at least a period of one (1) year, Defendants have an ongoing obligation to deliver a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who Defendants work with to sell, offer to sell, market, promote, or advertise BANG Drinks.

> For at least a period of one (1) year, Defendants shall cause the Corrective Statement to be published in any presentations (including to retailers, potential retailers, distributors, and potential distributors) that they and/or the Enjoined Persons use to sell, offer to sell, market, promote, or advertise BANG Drinks.

> For at least a period of one (1) year, Defendants must make available copies of this Permanent Injunction at all U.S. trade shows and professional meetings attended by Defendants and/or the Enjoined Persons. The Permanent Injunction shall be placed in a prominent location at Defendants' display or booth at each such trade show and/or professional meeting. The copies of the Permanent Injunction shall

not be accompanied by any other materials selling, offering to sell, marketing, promoting, or advertising any product or service.

(PPI ¶¶ 5.b-5.d.)  Defendants first argue that a corrective statement is unnecessary because VPX has already advised consumers via social media of the verdict and its basis, notified distributors, and announced to the public that it will no longer advertise BANG as containing Super Creatine.[7] (Opp'n at 24; Gerson Decl. ¶¶ 13, 14, 25-27.)  Although the Court acknowledges that Defendants have taken corrective steps, as the Court discussed above, Defendants continue to falsely advertise and sell BANG cans with the Super Creatine label.  (See supra III.A.2-3.)  And some consumers continue to believe and repeat Defendants' false advertising— that BANG energy drinks have creatine.  (See, e.g., Munoz Decl., Ex. 42 (in December 8, 2022, a consumer posted on twitter: "A reminder that Bangs have creatine.").)  Unlike Defendants' cited cases where courts have found corrective statements unnecessary because the defendants engaged in significant remediation[8], here the Court finds a corrective statement appropriate to "remedy lingering confusion caused by" Defendants' past and ongoing deception.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 830 (9th Cir. 2011) (a "splash screen" bearing a disclaimer on defendant's website is justified "so long as it helps to remedy lingering confusion caused by defendants' past deception").

However, the Court finds unnecessary PPI ¶¶ 5.c.-5.d., which require Defendants to share a corrective statement in all of their presentations and to make available copies of the injunction at all U.S. trade shows and professional meetings attended by the Defendants for at least a year.  The "purpose of an injunction is to ensure that past wrongdoing is not repeated, not to further punish the wrongdoer."  Merck Eprova AG, 920 F.Supp.2d at 432.  The Court sees no need for such requirements because the PPI already orders Defendants to "deliver to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who they have worked with to sell, offer to sell, market, promote, or advertise BANG Drinks a written, signed notice" "that includes a copy of" the permanent injunction.  (PPI ¶ 5.b.)  Accordingly, the Court will delete PPI ¶¶ 5.c.-5.d.

_____

[7] In their briefing, Defendants do not distinguish between the PPI's short corrective statement and the longer notice that would need to be sent to, among others, retailers and distributors.  The Court assumes that its arguments for both corrective statements are the same.

[8] See In re Hain Celestial Seasonings Prods. Consumer Litig., 2017 WL 11633199 at *4 (C.D. Cal. 2017) (finding plaintiffs' injunctive claim moot because defendant removed the misleading statement from all of its products, shipped out new products to nationwide distributors and retailers, scrubbed all the misleading labels from its own website and social media accounts, and the general manager of the product swore that defendant had no plans for reintroducing the misleading statement in its packaging); see also Eastman Chem. Co. v. PlastiPure, Inc., 969 F. Supp. 2d 756, 771 (W.D. Tex. 2013) (defendant "engaged in significant amounts of corrective advertising").

Defendants' second argument is that being required to share the corrective statement for "at least" a year regardless of Defendants' changed practices or any harm to Monster burdens protected content. (Opp'n at 24-25.) TrafficSchool.com, Inc. is instructive. 653 F.3d at 830. There, the Ninth Circuit found that a "splash screen" imposed on every page of the defendant's website raised First Amendment concerns because it erected a barrier to all content on the defendant's website, "not merely that which [was] deceptive." Id. The court explained that if all the remaining harm to the plaintiff dissipated, a permanent splash screen would "burden protected speech without justification, thus burdening more speech than necessary." Id. The court instructed the district court to "reconsider the duration of the splash screen in light of any intervening changes in the website's content and marketing practices, as well as the dissipation of the deception resulting from past practices." Id. at 831.

Here, the Court agrees that the requirement of sharing the proposed corrective statements "[f]or at least a period of one (1) year" raises First Amendment concerns. (PPI ¶ 5.a.) Once Defendants remove within 60 days of this order their false advertising from all cans, labels, packaging, physical locations, and media, the harm to Monster will likely be greatly reduced, and sharing corrective statements for at least a year will "burden speech without justification." TrafficSchool.com, Inc., 653 F.3d at 830. Thus, to "tailor the injunction so as to burden no more protected speech than necessary," the Court will reduce the length of time that Defendants must share the corrective statements from one year to one month to remedy any lingering confusion by consumers and non-consumers. Id.

Defendants third argument is that unlike the corrective splash screen in TrafficSchool,[9] Monster's proposed corrective statement provides no information to accompany or counteract any consumer "deception" but serves only to remind the public of the jury's verdict. (Opp'n at 25.) The Court disagrees. The corrective statements help dispel any lingering confusion that BANG drinks contain creatine or provide the benefits of creatine.

Accordingly, the Court modifies the PPI as follows:[10]

  Within sixty (60) days of the issuance of this Permanent Injunction:
  a. For [at least] a period of one (1) [year] *month*, Defendants must post on all webpages they use to sell, offer to sell, market, promote, or advertise any BANG Drinks (including bangenergy.com and vpxsports.com) and on all their social media accounts (including Instagram, TikTok, YouTube, Facebook, and Twitter) the language in paragraph 5(i) below (the

---

[9] In TrafficSchool.com, the splash screen stated: "YOU ARE ABOUT TO ENTER A PRIVATELY OWNED WEBSITE THAT IS NOT OWNED OR OPERATED BY ANY STATE GOVERNMENT AGENCY." 653 F.3d at 829.

[10] The Court notes that Exhibit A is attached to this order.

"Corrective Statement"). The Corrective Statement shall be: in a font size at least [~~50%~~][11] as large as the most prominent language on the page; and immediately adjacent to the most prominent language on the landing page of each website or pinned or otherwise saved as the first post on each social media account. For avoidance of doubt, if multiple webpages on a website sell, offer to sell, market, promote, or advertise BANG Drinks, Defendants must include the Corrective Statement on each such webpage.

    i. In September 2022, a jury issued a unanimous verdict finding that Vital Pharmaceuticals, Inc. (d/b/a Bang Energy) ("VPX") and *former* Chief Executive Officer John H. "Jack" Owoc willfully and deliberately engaged in false advertising by claiming that the BANG energy drink contains creatine, contains "Super Creatine," and provides the benefits of creatine. The United States District Court for the Central District of California has permanently enjoined VPX and Mr. Owoc from *falsely or deceptively* selling, offering to sell, marketing, promoting, or advertising BANG as containing creatine, as containing "Super Creatine," or as providing the benefits of creatine.

b. Defendants must deliver to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who they have worked with to sell, offer to sell, market, promote, or advertise BANG Drinks a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction. For at least a period of one (1) [~~year~~] *month*, Defendants have an ongoing obligation to deliver a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who Defendants work with to sell, offer to sell, market, promote, or advertise BANG Drinks.

## 6. Enjoined Persons

The PPI defines the Enjoined Persons as:

Defendant Vital Pharmaceuticals, Inc. ("VPX"), Defendant John H. "Jack" Owoc ("Mr. Owoc"), and all Defendants' officers, agents, servants, employees, consultants, representatives, parent companies, owners, subsidiaries, affiliates, and attorneys, and other persons acting in concert with them who receive actual notice

---

[11] The Court finds the requirement to issue the corrective statement in a font size at least 50% as large as the most prominent language on Defendants' media pages excessive and unnecessary.

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk <u>mg</u>

of this Permanent Injunction by personal service or otherwise (together, the "Enjoined Persons") . . .

(PPI at 1.)  Defendants first argue that the definition of Enjoined Persons is overbroad and unworkable.  Specifically, Defendants argue that the phrase "other persons acting in concert with [Defendants] who receive actual notice of the injunction", (PPI at 1), is a formulation that courts have rejected as "vague and overly broad" because it "require[s] action (rather than inaction)" and "demand[s] an unknown number of persons to do something."  (Opp'n at 25 (quoting ADG Concerns Inc., 2018 WL 4241967 *11 (revising a paragraph in a proposed injunction to instead of requiring those in active concert, only requiring  ". . . [defendant], through its owner(s) and director(s)," "to take all action to remove from its websites or storefronts any reference to any of Health Concerns' products, or any of Health Concerns' trademarks")); see Safeworks, LLC v. Teupen Am., LLC, 717 F. Supp. 2d 1181, 1193 (W.D. Wash. 2010) (requiring those acting in concert or participation with defendants to "refrain from" using in connection with their products any false or deceptive designation).  But other courts have required an unknown number of persons in active concert to take action.  See United States v. Kennedy, 2007 WL 404915, at *4 (N.D. Cal. Feb. 2, 2007) (ordering "those persons in active concert or participation with [defendant]: (1) to remove from his website . . . false commercial speech. . .; (2) to display prominently on the first page of his website" a copy of the injunction order; and (3) "to maintain the purged website"); PowerFood, Inc. v. Sports Sci. Inst., 1993 WL 13681782, at *10 (N.D. Cal. Mar. 11, 1993) (ordering that "all other persons in active concert or participation with [defendant], shall cause all [of defendant's] products bearing the mark [at issue] to be removed from sale, including removal of products from wholesale and retail stores").  Furthermore, Rule 65(d) permits injunctions enjoining those "in active concert or participation."  Rule 65(d)(2) ("[e]very order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.")

Rule 65(d) "derives from the 'common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control.'"  Vance v. Block, 881 F.2d 1085 (9th Cir. 1989) (quoting Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945)).  "In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."  Id. at 14 (internal quotes omitted); see Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014) ("A party may also be held liable for knowingly aiding and abetting another to violate a court order.")  Excluding the phrase "acting in concert" from the injunction could nullify the decree by allowing Defendants to engage in false advertising through aiders and abettors.  To avoid that result, the Court will keep the phrase.

Defendants' next argument is that the PPI would compel VPX's independent retailers and distributors to return or destroy any legacy products they purchased, creating massive losses, waste, and business interference.  (Opp'n at 25.)  In support of their argument, Defendants cite

Paramount Pictures Corp. v. Carol Pub. Grp., Inc., 25 F. Supp. 2d 372, 376 (S.D.N.Y. 1998), where the court found that the nonparty retailers and distributors were not in active concert or participation with the defendant because they had completed their purchases of the enjoined products prior to the injunction.  But see Aevoe Corp. v. AE Tech Co., 727 F.3d 1375, 1384 (Fed. Cir. 2013) (finding that distributors were "acting in concert" with defendant "in connection with the resale of the enjoined products," because distributors had notice of the injunction and they had an exclusive distribution agreement with the defendant, making them "privies" of the defendant).

The Ninth Circuit has not specifically addressed the question of "whether retailers [or distributors] who sell a party's enjoined product are in 'active concert' with the party." Homeland Housewares, LLC v. Euro-Pro Operating LLC, 2014 WL 4449922, at *3 (C.D. Cal. Sept. 10, 2014).  "The test for determining exactly who is in active concert or participation with the enjoined party depends on the facts of each case."  Certified Nutraceuticals, Inc. v. Clorox Co., 2022 WL 2803118, at *5 (S.D. Cal. July 18, 2022) (finding that nonparty retailers were not "acting in concert" with defendants and thus would not be bound by an injunction because the retailers did not have any distribution agreements with defendants (exclusive or otherwise), defendants did not provide the nonparties with product descriptions, and defendants did not have control over the nonparty's listings, statements, or advertisements); see Homeland Housewares, LLC, 2014 WL 4449922, at *3 (declining to approve defendant's notice to retailers that retailers were not subject to the injunction because whether or not retailers were subject to the injunction was "fact-intensive" and would "more appropriately" be determined "in the course of a contempt hearing"); see Wahoo Int'l, Inc. v. Phix Dr., Inc., 2014 WL 2106482, at *6 (S.D. Cal. May 20, 2014) (denying plaintiff's ex parte application for a temporary restraining order to enjoin defendant and its distributors and retailers in part because the balance of equities weighed in favor of defendant where the plaintiff did not provide any evidence that defendant's distributors and retailers were in "active concert" with defendants).

Accordingly, because determining whether a retailer or distributor is in "active concert" with Defendants is a fact-intensive inquiry, the Court declines to decide as to whether the phrase "acting in concert" would compel retailers and distributors to return or destroy BANG products and subject those retailers and distributors to being held in contempt.  See Regal Knitwear Co., 324 U.S. at 15 (the effect of an injunction on a nonparty "depends on an appraisal of his relations and behavior and not upon mere construction of terms of the order"); see LifeScan Scotland, Ltd. v. Shasta Techs., LLC, 2013 WL 4604746, at *5 (N.D. Cal. Aug. 28, 2013) ("an injunction does not enjoin nonparties acting in their separate capacities; but a nonparty may be held in contempt of an injunction after an assessment of the nonparty's behavior and relations to the enjoined party").  Defendants are "free to explain the lawsuit, the scope of the injunction, the injunction's timetable, and Defendant[s'] own theory of 'active concert or participation' to those retailers [or distributors] who express concern."  Homeland Housewares, LLC v. Euro-Pro Operating LLC, 2014 WL 4449922, at *4.

### 7.  Compliance Certifications

The PPI requires Defendants to submit to the Court a signed, sworn declaration setting forth a detailed summary of each step taken to comply with the injunction. (PPI ¶ 6.) Defendants contend that there is no need to require multiple detailed certifications from both Defendants certifying compliance because it imposes a "heavy burden" on Defendants and the Court. (Opp'n at 26 (citing Lincoln Diagnostics, Inc. v. Panatrex, Inc., 2009 WL 3010840, *9 (C.D. Ill. 2009).) The Court agrees and removes that provision from the injunction order.

## F.  Defendants' Injunction and Request for Stay

Lastly, Defendants request that if the Court determines that injunctive relief is appropriate, the Court should enter Defendants' proposed alternative injunction and stay its issuance and enforcement until after the Court rules on the post-verdict motions or the conclusion of VPX's Chapter 11 proceedings. (Opp'n at 26.) First, Defendants' proposed injunction is inadequate. Defendants' proposed injunction only requires removal of false advertising created after March 2023, leaving prior false advertising publicly available, even if created post-verdict. (See DPI.) And the injunction allows Defendants to produce cans with the false "Super Creatine" label for 45 days until their respective inventories are exhausted. (Id. ¶ 4.) Second, Defendants do not explain why an injunction preventing their false advertising should be delayed. Compare WB Music Corp., 2018 WL 2121819, at *6 (denying stay because defendants "should not be permitted to infringe" while awaiting other determinations), with TransPerfect Glob., Inc. v. MotionPoint Corp., 2014 WL 6068384, *6 (N.D. Cal. 2014) (entering a "generically-worded injunction" and granting stay of the enforcement of the injunction pending resolution of the parties' post-trial motions, which were to include briefing on the language of any permanent injunction ). The Court finds no reason to stay the issuance or enforcement of the injunction. While Defendants await the conclusion of VPX's Chapter 11 proceedings and a decision by this Court to rule on their post-trial motions, they should not be permitted to falsely advertise.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for a permanent injunction and **ENJOINS** Defendants as follows:

Defendant Vital Pharmaceuticals, Inc. ("VPX"), Defendant John H. "Jack" Owoc ("Mr. Owoc"), and all Defendants' officers, agents, servants, employees, consultants, representatives, parent companies, owners, subsidiaries, affiliates, and attorneys, and other persons acting in concert with them who receive actual notice of this Permanent Injunction by personal service or otherwise (together, the "Enjoined Persons") are hereby enjoined as follows:

1. The Enjoined Persons are permanently enjoined from falsely or deceptively using, expressly or impliedly, the word "creatine"—whether alone or together with other words—in selling, offering to sell, marketing, promoting, or advertising any BANG

energy drink or any other beverage purporting to contain creatyl-L-leucine, Super Creatine, creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule ("BANG Drinks"), including, but not limited to: (1) on any BANG Drinks cans, labels, or packaging; (2) in any presentations, messages, or other communications with third parties, including retailers and potential retailers, distributors and potential distributors, and consumers and potential consumers; (3) in physical locations, including, but not limited to, retail stores, trade shows, expositions, experiential events, fitness clubs, and gyms; (4) in point-of-sale materials, including, but not limited to, free standing display units, counter display units, display stands, standees, posters, banners, mobiles, endcaps, shelf edging, dummy packs, display packs, strut cards, stickers, statics, wobblers, suction cups, and hanging signs ("POS Material"); and (5) in any media, including, but not limited to, print, broadcast, the internet, websites, social media (including Instagram, TikTok, YouTube, Facebook, and Twitter), billboards, posters, street teams, promotional booths, wrapped vehicles, mobile applications, and product pages on which any of the Enjoined Persons controls the displayed content (including, as applicable, The Vitamin Shoppe, Amazon, and Walmart) ("Media").

2. Without in any way limiting the generality of the restraint set forth in paragraph 1, the Enjoined Persons are permanently enjoined from falsely or deceptively stating, implying, depicting, or otherwise communicating in selling, offering to sell, marketing, promoting, or advertising in the United States that: (1) BANG Drinks contain "Super Creatine," creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; (2) BANG Drinks provide the physical, mental, health, or any other benefits of creatine; (3) "Super Creatine" is creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; (4) "Super Creatine" provides the physical, mental, health, or any other benefits of creatine; (5) creatyl-L-leucine is "Super Creatine," creatine, any form or purported form of creatine, a derivative of creatine, a precursor of creatine, or creatine bonded to L-leucine or any other amino acid or molecule; and (6) creatyl-L-leucine provides the physical, mental, health, or any other benefits of creatine (together, the "Enjoined Claims").

3. Within seven (7) business days of the issuance of this Permanent Injunction, Defendants must deliver a copy of this Permanent Injunction to all Enjoined Persons. Defendants must deliver a copy of this Permanent Injunction to all new Enjoined Persons within seven (7) business days of the date on which such persons become Enjoined Persons (e.g., hiring).

4. Within sixty (60) days of the issuance of this Permanent Injunction:
    a. The Enjoined Persons must remove the term "creatine," whether alone or together with other words that state, imply, depict, or otherwise communicate the Enjoined Claims, from all BANG Drinks cans, labels, and packaging;

b. The Enjoined Persons must remove and/or cause to be removed from all physical locations and web-based points of sale, including, but limited to, websites, retail stores, trade shows, expositions, experiential events, fitness clubs, and gyms, all cans, labels, packaging, and POS Material for BANG Drinks that use or contain the term "creatine," whether alone or together with other words that state, imply, depict, or otherwise communicate the Enjoined Claims and that were placed by the Enjoined Persons or at the direction of the Enjoined Persons; and

c. The Enjoined Persons must remove from all Media all materials selling, offering to sell, marketing, promoting, or advertising any BANG Drinks—including all videos and pictures showing the BANG Drinks can, label, or packaging—that use or contain the term "creatine," whether alone or together with other words that state, imply, depict, or otherwise communicate the Enjoined Claims that were posted by the Enjoined Persons or at the direction of the Enjoined Persons.

5. Within sixty (60) days of the issuance of this Permanent Injunction:

a. For a period of one (1) month, Defendants must post on all webpages they use to sell, offer to sell, market, promote, or advertise any BANG Drinks (including bangenergy.com and vpxsports.com) and on all their social media accounts (including Instagram, TikTok, YouTube, Facebook, and Twitter) the language in paragraph 5(i) below (the "Corrective Statement"). The Corrective Statement shall be: in a font size at least as large as the most prominent language on the page; and immediately adjacent to the most prominent language on the landing page of each website or pinned or otherwise saved as the first post on each social media account. For avoidance of doubt, if multiple webpages on a website sell, offer to sell, market, promote, or advertise BANG Drinks, Defendants must include the Corrective Statement on each such webpage.

   i. "In September 2022, a jury issued a unanimous verdict finding that Vital Pharmaceuticals, Inc. (d/b/a Bang Energy) ("VPX") and former Chief Executive Officer John H. "Jack" Owoc willfully and deliberately engaged in false advertising by claiming that the BANG energy drink contains creatine, contains "Super Creatine," and provides the benefits of creatine. The United States District Court for the Central District of California has permanently enjoined VPX and Mr. Owoc from falsely or deceptively selling, offering to sell, marketing, promoting, or advertising BANG as containing creatine, as containing "Super Creatine," or as providing the benefits of creatine."

b. Defendants must deliver to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who they have worked with to sell, offer to sell, market, promote, or advertise BANG Drinks a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction. For a period of

one (1) month, Defendants have an ongoing obligation to deliver a written, signed notice, in the form attached as Exhibit A, that includes a copy of this Permanent Injunction to all retailers, e-commerce websites, brokers, distributors, dealers, wholesalers, importers, influencers, and other non-consumers who Defendants work with to sell, offer to sell, market, promote, or advertise BANG Drinks.

**IT IS SO ORDERED.**

Case No. 5:18-cv-1882-JGB-SHK

**Exhibit A**

To:        Our Valued Customers and Partners

Subject:   Corrective Statement Relating to VPX's Advertising and Promotion of "Super Creatine"

In September 2018, Monster Energy Company filed a civil suit against Vital Pharmaceuticals, Inc. d/b/a Bang Energy ("VPX") and its former Chief Executive Officer John H. "Jack" Owoc, alleging false and misleading advertising. In September 2022, a jury issued a unanimous verdict finding that VPX and Mr. Owoc willfully and deliberately engaged in false advertising by claiming that the BANG energy drink contains creatine, contains "Super Creatine," and provides the benefits of creatine.

On [Insert Date Permanent Injunction Issued], the United States District Court for the Central District of California issued a permanent injunction enjoining VPX and Mr. Owoc from falsely or deceptively selling, offering to sell, marketing, promoting, or advertising BANG as containing creatine, as containing "Super Creatine," or as providing the benefits of creatine ("Permanent Injunction"). Attached as **Exhibit 1** to this letter is a copy of the Permanent Injunction.

As part of the Permanent Injunction, the Court ordered removal of the term "creatine," whether alone or together with other words, from the BANG can, label, and packaging. The Court also ordered removal of all cans, labels, packaging, and point-of-sale materials for BANG that use the term "creatine," whether alone or together with other words that state, imply, depict, or otherwise communicate the Enjoined Claims (as defined in the Permanent Injunction), from all physical and web-based points of sale, including, but limited to, retail stores, websites, trade shows, fitness clubs, and gyms. The Court also ordered removal from public availability all materials selling, offering to sell, marketing, promoting, or advertising BANG—including videos and pictures showing the BANG can, label, or packaging—that use the terms "creatine" whether alone

Case No. 5:18-cv-1882-JGB-SHK

or together with other words that state, imply, depict, or otherwise communicate the Enjoined Claims.

If you have any questions, please do not hesitate to contact us directly at: [Insert email] and the following telephone number: [Insert telephone number].